UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, )<br>Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:01-CV-00813 |
| ) | |
| BRUCE J. BROWN and ) | JUDGE KANE |
| BROWN SCHULTZ SHERIDAN & ) | |
| FRITZ, ) | MAGISTRATE SMYSER |
| Defendants ) | |

FILED
HARRISBURG, PA

JUN 2 0 2002

MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

## DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 37(a), Defendants, Bruce J. Brown and Brown, Schultz, Sheridan & Fritz (collectively "Brown Schultz"), by and through their attorneys, hereby move this Court for an order compelling plaintiff to produce documents which were withheld from production in response to Defendants' Second Request for Production of Documents served on plaintiff on or about March 28, 2002. In support of their motion, defendants state as follows:

1.    This is an action in which USF&G seeks to recover from Brown Schultz, an accounting firm, for alleged misrepresentations contained in certain audited financial statements prepared by defendants for CCI Construction Company.

2.    USF&G contends that the true financial condition of CCI was materially misstated in the audited financial statements prepared by Brown Schultz for the

years ended December 31, 1996, December 31, 1997 and December 31, 1998. USF&G further contends that it relied on the audited financial statement prepared by Brown Schultz in issuing payment and performance bonds on behalf of CCI and that, as a result of CCI's defaults on the projects bonded by USF&G, USF&G incurred losses of approximately $29,000,000.

       3.    On or about March 28, 2002, defendants' served their Second Set of Document Requests to Plaintiff.  The request sought, among other things:

- All documents that evidence, relate or refer to communications with reinsurers regarding the bonding program and/or payment and performance bonds issued by USF&G to CCI.

- All documents the evidence, relate or refer to communications with reinsurers regarding any payments made or to be made by USF&G under any payment or performance bonds issued by USF&G to CCI.

       4.    On or about May 1, 2002, plaintiff  served its response to defendants' documents requests.  In response to each of foregoing requests, USF&G objected and refused to produce the requested documents on grounds that the documents sought were not relevant and were protected by the attorney client privilege, work product privileges and the common interest exceptions.

       5.    Plaintiff, prior to this request, produced without objection, certain correspondence with its reinsurers which was maintained in its underwriting files for

the CCI bonding program. Plaintiff asserted no claim of privilege with regard to
these documents.

6.      By letters dated May 8 and 15, 2002, counsel for defendants sought to
resolve an disputes regarding the document production providing plaintiff with
pertinent case law with regard to the relevance of the documents sought as well as
plaintiff's need to provide sufficient information to establish the existence of a
privilege with regard to the materials information sought and defendants view that,
in any event, the inapplicability of the privileges asserted to the documents sought.
Plaintiff, in response, continued to object to the production of documents relating to
communications with reinsurers.

7.      Plaintiff has produced no log of those documents it is withholding on
grounds of privilege.

8.      The party resisting production bears the burden of establishing lack of
relevance. Flora v. Hamilton, 81 F.R.D. 576 (M.D.N.C. 1978); Thompson v.
Glenmede Trust Co., 1995 U.S.Dist. LEXIS 18780 (E.D. Pa., December 19, 1995).
The party must demonstrate "that the requested documents either do not come
within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or
else are of such marginal relevance that the potential harm occasioned by discovery
would outweigh the ordinary presumption in favor of broad disclosure." Burke v.
New York City Police Department, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).

9.    Plaintiff's objections to the requests for reinsurance documents do not demonstrate the lack of relevance of those documents but rather simply state in a conclusory fashion that the materials sought are not relevant. This fails to satisfy plaintiff's burden and for that reason alone, production of the documents should be required.

10.  Moreover, courts have found routinely found communications with reinsurers relevant where, as here, an insurer has raised a claim of misrepresentation.  See, e.g., <u>National Union Fire Insurance Company v. Continental Illinois Corp.</u>, 116 F.R.D. 78 (N.D. Ill. 1987); <u>Stonewall Ins. Co. v. National Gypsum Co.</u>, No. 856 Civ. 9671 (SWK), 1988 U.S. Dist. LEXIS 9938 (September 6, 1988 S.D.N.Y); <u>Leksi, Inc. v. Federal Ins. Co.</u>, 129 F.R.D. 99 (D.N.J. 1989); <u>Rhone Poulenc Rorer Inc. v. The Home Indemnity Co.</u>, 1991 U.S. Dist LEXIS 16336 (E.D. Pa. Nov. 7, 1991); <u>Koppers Co. v. The Aetna Cas. and Sur. Co.</u>, 1994 U.S. Dist. LEXIS 21384 (W.D. Pa. August 18, 1994). In each of those cases, the insurer claimed misrepresentation by the policyholder as a basis for rescission or as a defense to the policyholder's claim for coverage. Those courts held that communications between the insurers and their reinsurers were relevant for determining what information the insurers actually relied on in issuing the policies.

11.    In the instant case, USF&G claims that it would not have issued nineteen sets of payment and performance bonds to CCI but for the alleged misrepresentations contained in the audited financials.  As in the above-cited cases,

4

the information sought is clearly relevant to the issue of what USF&G, in fact, was relying upon when issuing the bonds to CCI.

12.    In addition, USF&G's correspondence with its reinsurers, is relevant to USF&G's understanding of the cause of its losses and, as such, is reasonably calculated to lead to the discovery of admissible evidence in that respect as well.

13.    Finally, the communications between USF&G and its reinsurers may contain admissions by USF&G with regard to the cause of its alleged losses as well.

14.    Plaintiff has also refused to produce communications between USF&G and its reinsurers relating to CCI on grounds that such documents are protected from disclosure by the attorney client privilege, work product immunity and the common interest exception.

15.  To properly invoke the attorney-client privilege, the party resisting discovery must demonstrate: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client. Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., 32 F.3d 851, 862 (3d Cir. 1994). The party asserting the

privilege bears the burden of demonstrating that the privilege applies. Joyner v.

Southeastern Pa. Transp. Auth., 736 A.2d 35, 38 n.3 (Pa. Super. Ct. 1999);

Dombrowski v. Bell Atlantic Corp., 128 F. Supp. 2d 216, 218 (E.D. Pa. 2000).

16.     Plaintiff, in its discovery responses fails to demonstrate the applicability

of any privilege.  Plaintiff provides no information from which to ascertain the basis

for its claims of privilege.  Accordingly, for this reason alone plaintiffs' privilege

claims should fail.

17.     The work product doctrine only protects material "prepared in

anticipation of litigation or for trial by or for another party or by or for that other

party's representation." Fed. R. Civ. P. 26(b)(3).  The "mental impressions,

conclusions, opinions, or legal theories" of an attorney are also to be specially

protected.  Hickman v. Taylor, 329 U.S. 495, 510-11 (1947).  The material in question

must have been produced in anticipation of litigation. Allendale Mutual Ins.

Company v. Bull Data Systems, Inc., 152 F.R.D. 132 (1993).

18.     It is difficult to imagine the circumstances under which certain of the

documents requested--communications with reinsurers made in the course of

underwriting certain bonds--would be privileged or subject to work product

immunity.

19.     As to documents which reflect communications with reinsurers with

regarding payments made or to be made under the payment and/or performance

bonds issued to CCI, such documents would be created in the ordinary course of

6

business between USF&G and its reinsurers and as part of a contractual obligation to keep its reinsurers informed as to the status of claims and/or payments made under the bonds. See <u>Allendale Mutual Insurance Company v. Bull Data Systems</u>, 152 F.R.D. 132 (N.D. Ill. 1993). As such, those communications would not qualify as work product of an attorney or an agent of USF&G prepared in anticipation of litigation. <u>Id.</u> Nor is there anything in plaintiff's discovery responses to suggest that the documents sought reflect confidential communications concerning legal advice between counsel for USF&G and USF&G employees.

20.     With respect to the common interest doctrine, the general rule is that material which is otherwise privileged is discoverable if it has been disclosed to a third party. <u>Id.</u> at 139. "An exception to this rule is that where the third party shares a common interest with the disclosing party that is adverse to that of the party seeking discovery, any existing privilege is not waived. <u>Id.</u> However, the common interest doctrine applies only to protect documents which are otherwise privileged. <u>Id.</u>

21.     Since plaintiff has not demonstrated the applicability of either the attorney client privilege or work product immunity to the documents requested, the common interest doctrine is of no use to plaintiff.

22.     Even if plaintiff had demonstrated the applicability of a privilege, the common interest doctrine has been held not to apply to communications between a reinsured and its reinsurer. See <u>Allendale Mutual Ins. Co.</u>, 152 F.R.D. at 139-141.

7

23.    Accordingly, any applicable privilege was waived by disclosure of the communications to the reinsurers. See <u>Montgomery County v. Microvote Corp.</u>, 175 F.3d 296, 304 (3d Cir. 1999).

24. Plaintiff also has voluntarily produced certain communications with its reinsurers to defendants. To the extent plaintiff contends that such documents are privileged, the disclosure of such documents constitutes a waiver of any privilege or immunity that might apply to the reinsurance documents.

WHEREFORE, defendants respectfully request that this court order plaintiff produce the documents requested by defendants in documents requests nos. 1 and 2 of Defendants Second Set of Document Requests to Plaintiff.

Respectfully submitted,

SWARTZ, CAMPBELL & DETWEILER

BY: _Kathleen M. Carson_
    JEFFREY B. MC CARRON
    KATHLEEN M. CARSON

    1601 Market Street
    34th Floor
    Philadelphia, PA 19103
    (215) 564-5190

Attorneys for Defendants Bruce J. Brown and Brown, Schultz, Sheridan & Fritz

Dated: June 18, 2002

8

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

FILED
HARRISBURG, PA

JUN 2 0 2002

MARY E. D'ANDREA, CLERK
PER_____
DEPUTY CLERK

|  |  |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff | ) ) ) ) ) |
| v. | ) ) |
| BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, Defendants | ) ) ) ) ) ) |

CIVIL ACTION NO. 1:01-CV-00813

JUDGE KANE

MAGISTRATE SMYSER

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS

### I.    Introduction

Pursuant to Federal Rule of Civil Procedure 37(a), Defendants, Bruce J. Brown and Brown, Schultz, Sheridan & Fritz (collectively "Brown Schultz"), by and through their attorneys, hereby move this Court for an order compelling plaintiff to produce documents which were withheld from production in response to Defendants' Second Request for Production of Documents served on plaintiff on or about March 28, 2002. Those documents relate or refer to communications between plaintiff and its reinsurers regarding the matters at issue in this lawsuit. Plaintiff refuses to produce those documents on grounds that they are not relevant and that they are protected by the attorney client privilege, the work product doctrine and/or the "common interest doctrine". Plaintiff has failed to provide any information from which the

applicability of the various privileges it asserts can be ascertained and the documents sought relate to among other things, whether and to what extent plaintiff relied on the audited financial statements in issuing a bonding program to Brown, Schultz, Sheridan & Fritz a critical element of a negligent misrepresentation case.

## II.    Factual Background

This is an action in which USF&G seeks to recover from Brown Schultz, an accounting firm, for alleged misrepresentations contained in certain audited financial statements prepared by defendants for CCI Construction Company.  USF&G contends that the true financial condition of CCI was materially misstated in the audited financial statements prepared by Brown Schultz for the years ended December 31, 1996, December 31, 1997 and December 31, 1998. USF&G further contends that it relied on the audited financial statement prepared by Brown Schultz in issuing payment and performance bonds on behalf of CCI and that, as a result of CCI's defaults on the projects bonded by USF&G, USF&G incurred losses of approximately $29,000,000.

On or about March 28, 2002, defendants' served their Second Set of Document Requests to Plaintiff.  The request sought, among other things:

- All documents that evidence, relate or refer to communications with reinsurers regarding the bonding program and/or payment and performance bonds issued by USF&G to CCI.

2

- All documents the evidence, relate or refer to communications with reinsurers regarding any payments made or to be made by USF&G under any payment or performance bonds issued by USF&G to CCI.

A copy Defendants' Second Set of Document Requests and plaintiff's responses thereto are attached hereto as Exhibit A.

On or about May 1, 2002, plaintiff served its response to defendants documents requests. In response to each of foregoing requests, USF&G objected and refused to produce the requested documents on grounds that the documents sought were not relevant and were protected by the attorney client privilege, work product privileges and the common interest exceptions.

Plaintiff prior to this request did produce certain correspondence with its reinsurers which was maintained in its underwriting files for the CCI bonding program. No objection was made to the production of these communications with reinsurers. Nor was any claim of privilege asserted. Copies of certain of the reinsurance communications produced are attached hereto as Exhibit B.

By letters dated May 8 and 15, 2002, counsel for defendants sought to resolve an disputes regarding the document production providing plaintiff with pertinent case law with regard to the relevance of the documents sought as well as plaintiff's need to provide sufficient information to establish the existence of a privilege with regard to the materials information sought and defendants view that, in any event, the inapplicability of the privileges asserted to the documents sought. Copies of

3

defendant's letters are attached hereto as Exhibit C. Plaintiff, in response, continued

to object to the production of documents relating to communications with reinsurers.

In addition, plaintiff has produced no log of those documents it is withholding on

grounds of privilege. Copies of plaintiff's responses to defendant's letters are attached

hereto as Exhibit D. Counsel also attempted to resolve this issue through numerous

telephone conversations but have been unable to do so.

## III.    Statement of Questions Presented

Whether Plaintiff should be compelled to produce documents which refer or

relate to communications with its reinsurers concerning CCI?

Suggested Answer: Yes

## IV.    Argument

### A.    Documents Relating or Referring to Communications Between USF&G and Its Reinsurers Regarding CCI are Relevant

The party resisting production bears the burden of establishing lack of

relevance. Flora v. Hamilton, 81 F.R.D. 576 (M.D.N.C. 1978); Thompson v.

Glenmede Trust Co., 1995 U.S.Dist. LEXIS 18780 (E.D. Pa., December 19, 1995).

The party must demonstrate "that the requested documents either do not come

within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or

else are of such marginal relevance that the potential harm occasioned by discovery

would outweigh the ordinary presumption in favor of broad disclosure." Burke v.

New York City Police Department, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).

Plaintiff's objections to the requests for reinsurance documents do not demonstrate the lack of relevance of those documents but rather simply state in a conclusory fashion that the materials sought are not relevant. This fails to satisfy plaintiff's burden and for that reason alone, production of the documents should be required.  Moreover, courts have found routinely found communications with reinsurers relevant where, as here, an insurer has raised a claim of misrepresentation.  See, e.g., <u>National Union Fire Insurance Company v. Continental Illinois Corp.</u>, 116 F.R.D. 78 (N.D. Ill. 1987); <u>Stonewall Ins. Co. v. National Gypsum Co.</u>, No. 856 Civ. 9671 (SWK), 1988 U.S. Dist. LEXIS 9938 (September 6, 1988 S.D.N.Y); <u>Leksi, Inc. v. Federal Ins. Co.</u>, 129 F.R.D. 99 (D.N.J. 1989); <u>Rhone Poulenc Rorer Inc. v. The Home Indemnity Co.</u>, 1991 U.S. Dist LEXIS 16336 (E.D. Pa. Nov. 7, 1991); <u>Koppers Co. v. The Aetna Cas. and Sur. Co.</u>, 1994 U.S. Dist. LEXIS 21384 (W.D. Pa. August 18, 1994). In each of those cases, the insurer claimed misrepresentation by the policyholder as a basis for rescission or as a defense to the policyholder's claim for coverage. Those courts held that communications between the insurers and their reinsurers were relevant for determining what information the insurers actually relied on in issuing the policies.

In the instant case, USF&G claims that it would not have issued nineteen sets of payment and performance bonds to CCI but for the alleged misrepresentations contained in the audited financials.  As in the cited cases, the information sought is clearly relevant to the issue of what USF&G, in fact, was relying upon when issuing

5

the bonds to CCI.  In addition, USF&G's correspondence with its reinsurers, is relevant to USF&G's understanding of the cause of its losses and, as such, is reasonably calculated to lead to the discovery of admissible evidence in that respect as well.   Finally, the communications between USF&G and its reinsurers may contain admissions by USF&G with regard to the cause of its alleged losses as well.

The reinsurance documents sought are reasonably calculated to lead to the discovery of admissible evidence and, as such, plaintiff should be required to produce them.

### B.   Plaintiff's Communications with Its Reinsurers are Not Privileged

Plaintiff has also refused to produce communications between USF&G and its reinsurers relating to CCI on grounds that such documents are protected from disclosure by the attorney client privilege, work product immunity and the common interest exception. To properly invoke the attorney-client privilege, the party resisting discovery must demonstrate: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client. Rhone-Poulenc Rorer

6

Inc. v. Home Indemnity Co., 32 F.3d 851, 862 (3d Cir. 1994).  The party asserting the

privilege bears the burden of demonstrating that the privilege applies.  Joyner v.

Southeastern Pa. Transp. Auth., 736 A.2d 35, 38 n.3 (Pa. Super. Ct. 1999);

Dombrowski v. Bell Atlantic Corp., 128 F. Supp. 2d 216, 218 (E.D. Pa. 2000).

The work product doctrine only protects material "prepared in anticipation of

litigation or for trial by or for another party or by or for that other party's

representation." Fed. R. Civ. P. 26(b)(3).  The "mental impressions, conclusions,

opinions, or legal theories" of an attorney are also to be specially protected.  Hickman

v. Taylor, 329 U.S. 495, 510-11 (1947).  The material in question must have been

produced in anticipation of litigation.  Allendale Mutual Ins. Company v. Bull Data

Systems, Inc., 152 F.R.D. 132 (1993). "Furthermore, the anticipation of future

litigation must have been the primary motivation which led to the creation of the

documents."  Id. at 135.

Plaintiff in its responses fails to demonstrate the applicability of any privilege.

Plaintiff provides no information from which to ascertain the basis for its claims of

privilege.  Accordingly, for this reason alone plaintiffs' privilege claims should fail.

In addition, it is difficult to imagine the circumstances under which certain of

the documents requested--communications with reinsurers made in the course of

underwriting certain risks--would be privileged or subject to work product immunity.

As to documents which reflect communications with reinsurers with regarding

payments made or to be made under the payment and/or performance bonds issued to

7

CCI, such documents would be created in the ordinary course of business between USF&G and its reinsurers and as part of a contractual obligation to keep its reinsurers informed as to the status of claims and/or payments made under the bonds. See Allendale Mutual Insurance Company v. Bull Data Systems, 152 F.R.D. 132 (N.D. Ill. 1993). As such, those communications would not qualify as work product of an attorney or an agent of USF&G prepared in anticipation of litigation. Id. Nor is there anything in plaintiff's discovery responses to suggest that the documents sought reflect confidential communications concerning legal advice between counsel for USF&G and USF&G employees.

Finally, with respect to the common interest doctrine, the general rule is that material which is otherwise privileged is discoverable if it has been disclosed to a third party. Id. at 139. "An exception to this rule is that where the third party shares a common interest with the disclosing party that is adverse to that of the party seeking discovery, any existing privilege is not waived. Id. However, the common interest doctrine applies only to protect documents which are otherwise privileged. Id. Since plaintiff has not demonstrated the applicability of either the attorney client privilege or work product immunity to the documents requested, the common interest doctrine is of no use to plaintiff. Even assuming plaintiff had demonstrated the applicability of a privilege, the common interest doctrine has been held not to apply to communications between a reinsured and its reinsurer. See Allendale Mutual Ins. Co., 152 F.R.D. at 139-141. Accordingly, any applicable privilege was waived by disclosure

8

of the communications to the reinsurers. See <u>Montgomery County v. Microvote Corp.</u>, 175 F.3d 296, 304 (3d Cir. 1999) (Generally, a client waives the attorney-client privilege when it voluntarily discloses privileged communications to a third party.) .

Finally as plaintiff has voluntarily produced certain communications with its reinsurers to defendants, that too constitutes a waiver of any privilege or immunity that might apply to the reinsurance documents.

## V.     Conclusion

Plaintiff's communications with its reinsurers are relevant to the matters at issue in this litigation.  Plaintiff has not demonstrated any basis for the application of the attorney client privilege or the work product doctrine to the requested documents. Even if a privilege applied, it has been waived by the disclosure of otherwise confidential information to the reinsurers and has also been waived to the extent Plaintiff has produced certain communications with its reinsurers in this litigation. Given the foregoing, defendants request that this court order plaintiff to produce the documents requested in Defendants' Second Set of Requests for Production of Documents.

Respectfully submitted,

SWARTZ, CAMPBELL & DETWEILER

BY: _Kathleen M. Carson_
      JEFFREY B. MC CARRON
      KATHLEEN M. CARSON

9

1601 Market Street
34th Floor
Philadelphia, PA 19103
(215) 564-5190

Attorneys for Defendants Bruce J.
Brown and Brown, Schultz, Sheridan &
Fritz

Dated: June 18, 2002

10

## CERTIFICATE OF SERVICE

I, Kathleen M. Carson, Esquire, counsel for defendants, Bruce J. Brown and

Brown, Schultz Sheridan & Fritz, hereby certify that a copy of Defendants' Motion to

Compel Production of Documents, was served upon all counsel listed below by first

class U.S. mail, postage prepaid on June 19, 2002.

Peter Speaker, Esquire
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA 17101

Peter B. McGlynn, Esquire
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, MA 02110

_Kathleen M. Carson_
Kathleen M. Carson

Exh A

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

|  |  |  |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | ) ) ) | |
| Plaintiff | ) ) | NO. 1:01-CIV-00813 |
| v. | ) ) | (Judge Kane) |
| BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, | ) ) ) ) | (Magistrate Judge Smyser) |
| Defendants | ) | |

## DEFENDANTS' SECOND SET OF DOCUMENT REQUESTS TO PLAINTIFF

Pursuant to Federal Rule of Civil Procedure 34, defendants, Bruce J. Brown and Brown, Schultz, Sheridan & Fritz hereby request that Plaintiff, United States Fidelity & Guaranty Company ("USF&G"), produce all documents which are responsive to the Requests for Production of Documents set forth below within the time set by the Federal Rules of Civil Procedure.

### I. **DEFINITIONS**

The following definitions shall apply to these request to produce:

A.     "Plaintiff" or "USF&G" shall mean United States Fidelity & Guaranty Company ("USF&G"), any subsidiary, division or affiliate thereof and any present or former officer, employee, agent, servant, representative or other person acting for or on its behalf.

B.     "Defendants" and/or "Brown Schultz" means Bruce J. Brown and/or

Brown Schultz Sheridan & Fritz or any employee, agent, servant, representative, or any other person acting on behalf of them.

C.    "CCI" shall mean CCI Construction Company, Inc., any subsidiary, division or affiliate thereof and any present or former officer, employee, agent, servant, representative or other person acting for or on its behalf.

D.    The term "Ortenzio" refers to John Ortenzio, his agents, servants, representatives or other persons acting for or on his behalf.

E.    "Document" includes without limitation all written or graphic matter of every kind or description however produced or reproduced, whether drafted or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, including but not limited to: written communications, electronic communications, email, letters, correspondence, memoranda, minutes, notes, photographs, slides, motion pictures, telegrams, telex messages, tape or sound recordings, recordings of any type, contracts, agreements, purchase or sale orders, memoranda of telephone conversations or personal conversations, diaries, desk calendars, interoffice communications, reports, studies, bills, receipts, logs, checks, checkbooks, invoices, requisitions, personal expense accounts, or material similar to any of the foregoing; however denominated and by whomever prepared and to whomever addressed which are in your possession, custody or control or to which you have had, or can obtain access.  "Document" shall not include exact duplicates when originals are available but shall include all copies

made different from originals by virtue of any writing or notation thereon.
the communication the date and place where it occurred;

F.    "Communication" shall mean any transmission of thoughts, opinions or information by speech, writing or signs.

G.    "Person" shall include persons, partnerships, associations, corporations, leagues, governments, (including all instrumentalities, officers, agents and subdivisions thereof) and all other business, legal and artificial entities.

H.    The word "or" shall be all inclusive and shall be taken in the conjunctive as well as the disjunctive and shall mean "and" as well as "or" and it shall be construed to bring the maximum number of documents within the scope of this Request for Production of Documents.

I.    The terms "related to", "relating to", "referring to", or "relate to" means referring to, relating to, reporting to, embodying, establishing, evidencing, comprising, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, presenting or constituting.

J.    The words "you" and "your" include the party responding to this request and all present and former attorneys, accountants, agents, representatives, employees and other person acting or purporting to act for or on plaintiff's behalf.

## II. INSTRUCTIONS

A.    These requests shall be deemed to be continuing so as to require supplementation if you obtain additional or further documents pertaining to any

3

request subsequent to the time an response to that request is served.

     B.    Any document responsive to these requests which is not produced by reason of a claim of attorney-client privilege, attorney work product privilege or for any other reason shall be identified by (1) date, (2) author, (3) recipient(s), (4) general subject matter, (5) identity of persons to whom the contents of the document or copies thereof and (7) the basis upon which it is being withheld.

     C.    You are requested to produce all documents in your custody, possession or control, including all documents which are in the custody, possession or control of your employees, servants, attorneys, consultants, accountants or agents, regardless of the location of such documents.

     D.    If you object to any Instruction or Definition or to any specific item in the Requests for Production, the precise grounds for your objection(s) shall be stated with particularity.  If any objection rests in whole or in part on a claim of privilege, the privilege claimed should be stated and all facts and all documents relied upon in support of such claim shall be stated or identified with particularity.

     E.    In the event that you object to, or claim a privilege with respect to, any Definition, Instruction or Request for Production, in whole or in part, you are requested to produce all documents (or portions thereof) requested in that portion of the Request for Production as to which you have no objection of claim or privilege.

     F.    In the event that you are able to provide only some of the documents responsive to the Requests for Production within the allotted time, you are requested

to produce the documents which can be produced and to state the reasons for your asserted inability to provide the remaining documents. Once the remaining responsive documents are obtained, those documents should be produced promptly at a mutually agreeable time.

G.     If any documents responsive to the Request for Production was, but no longer is, in your possession, custody or control, please identify that document and state whether any such document (a) is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily; or (d) has been otherwise disposed of; and, in each instance, please explain in detail the circumstances surrounding any such disposition thereof.

H.     Unless otherwise stated, the documents requested herein are those prepared, sent or received during the period beginning January 1, 1994 through the date of full compliance with this Request for Production of Documents.

I.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used, and *vice versa*; and the use of any tense of any verb shall be considered to include also within its meaning all other tenses of the verb so used.

J.     Documents produced in response to this Request for Production of Documents are to be segregated and identified according to the particular paragraph

of the Request for Production set forth above pursuant to which each such document

is being produced.

### III. **DOCUMENTS REQUESTED**

1.  All documents that evidence, relate or refer to communications with

reinsurers regarding the bonding program and/or payment and performance bonds

issued by USF&G to CCI.

2.  All documents that evidence, relate or refer to communications with

reinsurers regarding any payments made or to be made by USF&G under any

payment or performance bonds issued by USF&G to CCI.

3.  Any and all project files of CCI.

4.  Any and all internal USF&G documents that evidence, relate or refer to

USF&G's accounting for payments made or to be made under the payment and

performance bonds issued to CCI.

6

5.  Any and all evaluations or performance reviews of Anthony Phillips, Steve Salazar and Jim Dailey from 1996 to date.

SWARTZ, CAMPBELL & DETWEILER

BY: _Kathleen M Carson_

JEFFREY B. MC CARRON
KATHLEEN M. CARSON

Dated: March 28, 2002

7

## CERTIFICATE OF SERVICE

Kathleen M. Carson certifies that she served a true and correct copy of

Defendants' Second Set of Document Requests to Plaintiff on counsel listed below by

first class mail, postage prepaid this 28th day of March 2001:

Jeffrey Rettig, Esquire
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA 17101

Peter B. McGlynn, Esquire
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, MA 02110

SWARTZ, CAMPBELL & DETWEILER

Kathleen M. Carson

8

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

| | |
|---|---|
| UNITED STATES FIDELITY AND<br>GUARANTY COMPANY,<br>Plaintiff<br><br>v.<br><br>BRUCE J. BROWN and BROWN<br>SCHULTZ SHERIDAN & FRITZ,<br>Defendants. | CIVIL ACTION NO. 1:01-CV-00813<br><br>JUDGE KANE |

## UNITED STATES FIDELITY AND GUARANTY COMPANY'S
## RESPONSE TO DEFENDANTS' SECOND SET OF DOCUMENT REQUESTS

Pursuant to Fed.R.Civ.P. 34, United States Fidelity & Guaranty Company ("USF&G") hereby makes the following responses and objections to Defendants' Second Set of Document Requests to Plaintiff:

### I.    STATEMENT OF GENERAL OBJECTIONS

1.    Subject to the following objections, USF&G will produce the documents listed below at either the place where they are kept in the ordinary course of business in Baltimore, Maryland, at the offices of Bernkopf, Goodman & Baseman, 125 Summer Street, Boston, Massachusetts or at another location, or by such other method, as may be mutually agreed upon by the parties. Any agreement by USF&G to produce the documents in any other manner is solely as a courtesy and is without waiver of the foregoing.

2.    USF&G objects to any Requests, Instructions and Definitions contained in Defendants' Second Set of Document Requests to Plaintiff to the extent that they exceed USF&G's obligations set forth in Fed.R.Civ.P. 26 and 34, and all pertinent Local Rules.

MAY 0 6 2002

3.      USF&G objects to Defendants' Second Set of Document Requests to Plaintiff to the extent that it includes documents subject to the attorney-client privilege and/or the attorney work product doctrine and includes documents that were prepared in anticipation of litigation. Accordingly, USF&G will produce all relevant responsive documents indicated below that are not subject to the attorney-client privilege or the attorney work product doctrine and/or that were not prepared in anticipation of litigation and that are in its possession, custody and control.

4.      USF&G reserves the right to supplement its responses as additional responsive documents become available.

5.      USF&G will produce documents only to the extent that such documents are in its possession, custody or control.

6.      USF&G reserves the right to object on any ground to the use of any document provided in accordance with Defendants' Second Set of Document Requests to Plaintiff in any other subsequent proceeding or the trial of this or any other action.

7.      USF&G reserves the right at any time, to revise, correct or clarify any of the following responses.

8.      To the extent that any documents to be produced constitute trade secrets or confidential business information, USF&G will produce such documents only pursuant to the terms of a mutually agreeable confidentiality stipulation.

9.      USF&G hereby incorporates by reference each and every one of the foregoing general objections into all of the following responses.

## II.    **RESPONSES**

### REQUEST NO. 1

All documents that evidence, relate or refer to communications with reinsurers regarding the bonding program and/or payment and performance bonds issued by USF&G to CCI.

### RESPONSE NO. 1

Subject to the foregoing objections, USF&G further objects that the documents sought are not relevant to the instant action.   Reinsurance documents are not germane to any claims or defenses that have been raised in the instant litigation.  Moreover, any evidence of reinsurance recovery is rendered inadmissible by the collateral source rule.  USF&G further objects on the grounds that the documents sought, even if relevant, are protected, in whole or in part, by the attorney-client privilege, work-product immunity and the common interest exception.  *E.g., United States v. Schwimmer*, 892 F.2d 237, 243-44 (2nd Cir. 1989); *Great American Surplus Lines v. Ace Oil Co.*, 120 F.R.D. 533 (E.D. Cal. 1988); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 139 F.R.D. 609 (E.D. Pa. 1991).

### REQUEST NO. 2

All documents that evidence, relate or refer to communications with reinsurers regarding any payments made or to be made by USF&G under any payment or performance bonds issued by USF&G to CCI.

### RESPONSE NO. 2

Subject to the foregoing objections, USF&G further objects that the documents sought are not relevant to the instant action.  USF&G further objects on the grounds that the documents sought, even if relevant, are protected by the attorney-client, work-produce privileges and the common interest exception.  *E.g., United States v. Schwimmer*, 892 F.2d 237, 243-44 (2nd Cir.

1989); *Great American Surplus Lines v. Ace Oil Co.*, 120 F.R.D. 533 (E.D. Cal. 1988); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 139 F.R.D. 609 (E.D. Pa. 1991).

**REQUEST NO. 3**

Any and all project files of CCI.

**RESPONSE NO. 3**

Subject to the foregoing objections, USF&G further objects that the phrase "project files" is vague and ambiguous. Without waiver of the foregoing, USF&G will make all responsive, non-privileged documents available for inspection and copying. USF&G believes that all "project files" in its possession, custody and control have already been made available to Brown Schultz Sheridan & Fritz for inspection and copying.

**REQUEST NO. 4**

Any and all internal USF&G documents that evidence, relate or refer to USF&G's accounting for payments made or to be made under the payment and performance bonds issued to CCI.

**RESPONSE NO. 4**

Subject to the foregoing objections, USF&G will make all responsive, non-privileged documents available for inspection and copying. USF&G believes that there are no documents that have not already been produced. USF&G will produce, however, an updated version of the spreadsheet of projects and losses previously produced.

**REQUEST NO. 5**

Any and all evaluations or performance reviews of Anthony Phillips, Steve Salazar and Jim Dailey from 1996 to date.

## RESPONSE NO. 5

Subject to the foregoing objections, USF&G will make all responsive, non-privileged

documents available for inspection and copying.

UNITED STATES FIDELITY
& GUARANTY COMPANY,
By its attorneys,


Peter B. McGlynn, Esquire
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, MA  02110
Telephone:     (617) 790-3000
Facsimile:     (617) 790-3300

and

Jeffrey Rettig, Esquire
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA  17101
Telephone:     (717) 237-7100
Facsimile:     (717) 237-7105

Dated: May  ⎰⎱ , 2002
#242963 v1/36432/87

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above
document was served upon (each party appearing
pro se and) the attorney of record for each other party
by mail (by hand) 5/1/02

Exh B

Sent to:

American Re - Frank Bonner
Employers Re - Phil Shaw
Frankona Re - John Self
Kemper Re - Brian Simon
Munich American Re - Jack Murray
Prudential Re - Sharon Sims
RECO- Brad Bane
Winterthur Re - Jim Moore
Allstate Re - Robert Ortbal
North American Re - Marty Brady
Transatlantic Re - Roger Rossiter

November 10, 1993

Subject:  CCI Construction Company, Inc.

Dear

I enclose the following information for your consideration in connection with a contractor
account that we are in the process of acquiring:

1.  Underwriting Summary
2.  12/31/91 & 12/31/92 Audited Financial Statements with Analyses
3.  9/30/93 Interim in-house Financial Statement with Analysis
4.  CPA Prepared Personal Financial Statement with Analyses
5.  D&B
6.  Bank Letter
7.  Resumes of Key Personnel
8.  Underwriting Memorandum on Prison Project to be Bid 11/17
9.  Resume of John Heck

CCI has been extremely successful in managing the construction of rehabilitation hospitals
in various parts of the country.  Most of this work was financed through Real Estate
Investment Trusts (REITS) and developed by a national firm founded initially by Mr.
Ortenzio's father.  As the healthcare industry has changed, the rehabilitation hospital
market diminished.  CCI has concentrated in the more recent past on the competitive
construction market in its own region of the country.

As the strong, extremely liquid corporate and personal condition reflects, Mr. Ortenzio
has been very successful in the construction business.  His organization consists of high

USFG/BS  0842

performing individuals and is managed with excellent controls, management information and systems. I visited this contractor's headquarters last week and find them to be a desirable blend of construction ability and financial management expertise.

We have reviewed the various assets indicated in the personal financial statement and are satisfied that the asset values are valid and that none of the investments represent potential cash drains. For example, the $3,115,000 investment item represents Mr. Ortenzio's share as beneficiary of a trust established by his father.

The project in question obviously represents a significant increase in dollar value over anything previously completed or undertaken and the work program similarly is substantially larger than prior experience. We feel that the contractor has the organization to manage this work and the financial base to finance it and support the exposure created. As a matter of practice, little or no work is done with the contractor's own forces. All work is subcontracted and bonded. This coupled with the manner in which cash flow is managed has resulted in the contractor's never having suffered a loss from a defaulted subcontractor.

The prison job in question will be run by Mr. John Heck whose resume is enclosed. As indicated, he has extensive experience on correctional institution construction larger than this one in his former role as construction manager for Morse Diesel. The job breakdown accompanying our underwriting memorandum indicates the makeup of the subcontractors, including $10 million for detention equipment. As usual, all subcontracts of significant size will be bonded . This, coupled with the actual construction being relatively simple consisting of a number of two-story connected structures mitigates the apparent increase in job size.

In summary, we view this contractor as one who has the construction, management and financial capabilities to manage the increased level of activity represented by this proposed project and the work program created. We will be retaining $25 million net on the prison project and would appreciate your maximum overline participation.

We consider the $120 million program level as a maximum at the present time and would like your concurrence on a fixed line basis at this level.

I'd appreciate a response as soon as possible. Please call me on (410) 205-0514 if you have any questions. Thanks for your consideration.

Sincerely,

John A. Huss
Assistant Vice President

USFG/BS 0843

JAH:jeb



UNITED STATES FIDELITY AND GUARANTY COMPANY

P.O. BOX 1138

BALTIMORE, MARYLAND 21203

November 16, 1993

Mr. Martin Brady
Senior Vice President
North American Reinsurance Corporation
237 Park Avenue
New York, NY 10017

Subject: CCI Construction Company, Inc.

Dear Marty:

The following information is attached to provide you with additional detail on this account and submission:

- Letter of 11/15/93 from the agent concerning assets and related companies.
- Analysis of CCI distributions for 1992.
- Breakdown of Clearfield County prison project.

As indicated, we have financial information on CRI General Contractors and Medcom. CRI is a company formed to do California hospital work and will be phasing out. Medcom is owned by John Ortenzio and has supplied specialized hospital furniture, cabinetry and relating items. It is extremely profitable reflecting a $860,000 profit on sales of $12.5 million at 9 months 1993.

Regarding the job breakdown, all work will be subcontracted with the exception of the general conditions, and the subcontractors will be bonded. As previously indicated, the project consists of 15 two-story concrete buildings on slab.

John Ortenzio carries a $1 million insurance policy payable to the corporation. His will provides for a working trust made up of his father, brother and wife which will inherit the company. The will also provides that existing management will operate the company for a period of 18 months at which time a decision will be made as to its disposition.

USFG/BS 0850

Gen. 446-771

The warranty expense indicated in Note 9 is a cash reserve established for future warranty (material and workmanship) expenses.  This money was taken from a project completed in 1992 which generated $1.5 million profit and has been set aside in a separate account in the offshore insurance company to cover warranty exposures.  There have been no payments to date.

The accounts receivables aging consists of a 15 page large printout so hopefully a summary will do.  Of total receivables at 11/5/93, of $3,828,000, $664,000 is over 30 days, $116,000 over 60 and $29,000 over 90 days.  Separately, retainage amounted to $936,000.

I'll call you this afternoon to discuss consideration of a job overline for this project.

Thanks.

Sincerely,

John A. Huss
Assistant Vice President

JAH:jeb

Attachments

USFG/BS 0851

In response to your questions, the UCC filings represented prepaid cash advances on the CMS project and were related to telephone systems on the rehab hospital jobs.  These will be satisfied when the work is completed and the phone systems are operational.

The majority of the re-purchase agreements are handled by the Dauphin Bank which has assets in the neighborhood of $4 billion.  We would love to write their $14 million plus financial institution bond.  I'd like to discuss your participation further this afternoon and will plan on calling.

Thanks.

Sincerely,

John A. Huss
Assistant Vice President

JAH:jeb

Attachments

*NOTE*

*to Jim Moore*
*Winterthur*
*Same Page 1 as to Brady*
*This page addresses*
*Moore's specific questions*

USFG/BS 0852

**winterthur**
reinsurance

**Winterthur Reinsurance**

Two World Financial Center
225 Liberty Street, 42nd Floor
New York, New York 10281

Telephone (212) 416-5700
Telex (71) 177018 winy
Facsimile (212) 524-6839

RECEIVED

November 18, 1993     NOV 2 9 1993

J. A. H.

Mr. John Huss
Assistant Vice President
UNITED STATES FIDELITY & GUARANTY
P. O. Box 1138
Baltimore, MD  21203

RE:  CCI Construction Company

Dear John:

Thank you for the exceptionally fast bid results on the project bid of November 17th.

Earlier in the week, we discussed the general topic of CCI Construction Company making the transition from a company which performed negotiated job which carried very attractive profit margins vs the fierce price competition in the competitive bid market.  We have brought this up because of the $3mm G&A level of the Company.  For example, the Company's gross profit margins for 1992 and 1991 were 8.6% and 7.3% respectively.  As of the 9/30/93 work in progress schedule, their gross profit margins <u>exclusive</u> of negotiated rehabilitation hospitals were 3.8%.  We have emphasized the gross profit margin and G&A levels because of the obvious connection to the breakeven point of the contractor.  We are interested in the contractor's thought process and their business plan based upon varying assumptions.

As you are continuing discussions regarding the account, we look forward to receiving additional information.

Sincerely,                                USFG/BS 0855

James P. Moore
Assistant Vice President

JPM/dm

Winterthur
Reinsurance Corporation of America

A member of the
"Winterthur" Swiss Insurance Group

# ≣EMPLOYERS REINSURANCE CORPORATION

5200 Metcalf · P.O. Box 2991 · Overland Park, Kansas 66201-1391
(913) 676-5200 · Facsimile (913) 676-5221

November 15, 1993

A General Electric Capital Services Company

Mr. John A. Huss
Assistant Vice President
United States Fidelity & Guaranty Company
6225 Smith Avenue - Second Level, Bldg. B  (21209)
P.O. Box 1138
Baltimore, Maryland  21203

NATIONAL ACCOUNTS

NOV 19 1993

RE:    CCI CONSTRUCTION COMPANY, INC.

Dear John,

We have spent the last few days reviewing the underwriting package on CCI Construction Company. We have also independently researched Continental Medical Systems which is controlled by John Ortenzio's family interests.

CCI Construction has been a very successful company acting as the general construction arm of Continental Medical Systems. However, we feel that in the context of the proposed bid they have not exhibited a sufficient track record in the public construction market. Accordingly, I am not willing to authorize our reinsurance participation in the estimated $62,000,000 Pennsylvania state prison job. I am willing to favorably reconsider our position if USF & G is able to gain the indemnity of Continental Medical Systems or Rocco Ortenzio personally.

The other issue is establishment of the fixed line authorization. You've requested a $120,000,000 authorization, which I assume is predicated on the potential backlog with the prison bid. Since we have elected not to participate in the proposed $62,000,000 bid, I feel we should reasses the fixed line pending the outcome of the bid.

John, I am not oblivious to the very fine balance sheet that CCI Construction is showing. However, I'm compelled to believe the success of the company as a national broker GC who consistently earns $7.5% plus job margins is based on the father/son relationship of John Ortenzio as CCI building for Rocco Ortenzio as Continental Medical Systems. I am not be comfortable in making such a significant commitment to CCI in hard-bid public construction at this time. I also acknowledge the financial substance of the Ortenzio family interests and again would be willing to reconsider our position on the $62,000,000 project and the proposed $120,000,000 fixed line if additional third party indemnity is provided.

I'll be available this week if you'd like to call to discuss.

Sincerely,

Phillip M. Shaw
Second Vice President

USFG/BS  0857

PMS:hpb

*Exh C*

# *Swartz* | *Campbell* | *Detweiler*

**Kathleen M. Carson**
*Attorney at Law*

Swartz, Campbell & Detweiler
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316

phone  215-299-4272
fax      215-299-4301
e-mail  kcarson@scdlaw.com
web     www.scdlaw.com

May 8, 2002

**<u>VIA FACSIMILE</u>**
Bruce D. Levin, Esquire
Bernkopf Goodman & Baseman
125 Summer Street
Boston, MA 02110

**Re: USF&G v. Brown Schultz Sheridan & Fritz.**

Dear Bruce:

We are writing with regard to USF&G's responses to defendants Second Request for Production of Documents. To the extent USF&G responded to the requests, the responses appear to be deficient. To the extent objections were interposed to the requests, the objections are not well taken. This letter is sent pursuant to LR 26.3 in an attempt to resolve the issues raised by your responses without court intervention.

## 1. Request Nos. 1 and 2

Request Nos. 1 and 2 seek: (1) documents concerning communications with reinsurers regarding the bonding program and/or payment and performance bonds issued by USF&G to CCI; and (2) documents concerning communications with reinsurers regarding payments made or to be made by USF&G under the payment and performance bonds issued to CCI. You have objected to producing that information on grounds of relevance, inadmissibility, attorney client privilege, work product and the "common interest exception".

First, your claim that reinsurance documents are not germane to the matters at issue in this litigation is both incorrect and unsupportable. Courts have found communications with reinsurers relevant where an insurer has raised a claim of misrepresentation. See, e.g., <u>National

Philadelphia,
Pennsylvania

Mt. Laurel,
New Jersey

Media,
Pennsylvania

Wilmington,
Delaware

Allentown,
Pennsylvania

Harrisburg,
Pennsylvania

Scranton,
Pennsylvania

West Chester,
Pennsylvania

Fort Myers,
Florida

Bedminster,
New Jersey

Cleveland,
Ohio

Bruce D. Levin
May 8, 2002
Page 2

Union Fire Insurance Company v. Continental Illinois Corp., 116 F.R.D. 78 (N.D. Ill. 1987);
Stonewall Ins. Co. v. National Gypsum Co., No. 856 Civ. 9671 (SWK), 1988 U.S. Dist. LEXIS 9938
(September 6, 1988 S.D.N.Y); Leksi, Inc. v. Federal Ins. Co., 129 F.R.D. 99 (D.N.J. 1989); Rhone
Poulenc Rorer Inc. v. The Home Indemnity Co., 1991 U.S. Dist LEXIS 16336 (Nov. 7, 1991);
Koppers Co. v. The Aetna Cas. and Sur. Co., 1994 U.S. Dist. LEXIS 21384 (W.D. Pa. August 18,
1994). USF&G's communications with its reinsurers are reasonably calculated to lead to the
discovery of admissible evidence where, as here, USF&G is maintaining a negligent
misrepresentation claim. In addition, we note that in the context of this action, the
communications with reinsurers are also reasonably calculated to lead to the discovery of
admissible evidence with regard to the cause of $31,000,000 in damages allegedly sustained by
USF&G and the cause of the losses on the various projects. Finally, the communications may
contain admissions by USF&G with regard to the cause of its alleged losses.

Second, courts have routinely permitted discovery of reinsurance agreements themselves
pursuant to F.R.C.P. 26(b)(2). See, e.g, Continental Life Insurance Co. v. Shearson Lehman
Hutton, Inc., 1990 U.S. Dist. LEXIS 17037 (December 13, 1990 E.D. Pa.); Allendale Mutual Ins.
Co. v. Bull Data Systems, Inc., 152 F.R.D. 132 (N.D. Ill. 1993). While the fact of reinsurance may
be inadmissible, it, nevertheless, has been held to be discoverable.

Third, your contention that documents relating reinsurance are protected from disclosure
by the attorney client privilege and/or the work product doctrine is without support. To the
extent that you contend that such documents are privileged, it is incumbent upon you to establish
the basis for application of the privilege. We have not received any log of the documents withheld
on the basis of a claimed privilege, let alone one that contains information sufficient to establish
the basis upon which you are withholding documents which are clearly relevant to these
proceedings. Presumably this is because there is no basis for your claims of privilege and/or work
product immunity.

Moreover, it is difficult to imagine the circumstances under which communications with
reinsurers made in the course of underwriting certain risks would be privileged or subject to work
product immunity. As to documents which reflect communications with reinsurers with
regarding payments made or to be made under the payment and/or performance bonds issued to
CCI, such documents would be created in the ordinary course of business between USF&G and
its reinsurers and likely as part of a contractual obligation to keep its reinsurers informed as to
the status of claims and/or payments made under the bonds. See Allendale Mutual Insurance
Company v. Bull Data Systems, 152 F.R.D. 132 (N.D. Ill. 1993). As such, those communications
would not qualify as work product of an attorney or an agent of USF&G prepared in anticipation
of litigation. Nor would they appear to be subject to the attorney client privilege as there is
nothing in your response to suggest that the documents were created by a lawyer, were sent to

Bruce D. Levin
May 8, 2002
Page 3

a lawyer and  were for the purpose of obtaining legal advice.

Finally, we note that certain communications with reinsurers have already been produced by USF&G in the context of this litigation which would constitute a waiver of any privilege that might apply to those documents.

Please advise us by Friday May 10, 2002, if you will produce the reinsurance documents requested. To the extent that you maintain that any responsive document is privileged or subject to the work product production, please provide a privilege log.

**Request No. 3**

Request No. 3 sought all project files of CCI.  John Ortenzio in his deposition in the bankruptcy proceedings testified that the project files maintained by CCI were turned over to USF&G after CCI defaulted.  Your have indicated that all "project files" in USF&G's possession, custody and control have been made available for inspection.  To date USF&G has produced underwriting materials, USF&G's general file, files for the CCI bankruptcy proceeding and the payment and performance bond files for the jobs at issue in this lawsuit.  If the project files are subsumed within the payment and performance bond files, please advise us.  Otherwise, please provide us with dates to review those files.

**Request No. 4**

Other than the documents contained in the payment and performance bond files, are there any documents in USF&G's possession, custody and control which concern USF&G's accounting for payments made under the bonds? If so, please produce them.  In addition, please advise when we will received your updated version of the spreadsheet of projects and losses previously produced.

Finally, on a related note, the Payment History produced by USF&G at Bates Nos. USFG/BS 1313-1432 appears to be incomplete. It only includes information up to September or October of 2001 depending on the job.  Please produce an updated Payment History.

**Request No. 5**

We reviewed the evaluations and/or performance reviews produced in response to this request. Our requests were for performance reviews and/or evaluations of Messrs. Dailey, Phillips and Salazar from 1996 to the present.  For Mr. Bailey we received reviews for the following periods: 3/01-3/02; 3/00-3/01; 3/99-3/00; 1/1/98 to 12/31/98.  For Mr. Phillips we received reviews

Bruce D. Levin
May 8, 2002
Page 4

for the period from : 1/01-2/01 (w/attachment dated 3/1/01-3/1/02); 3/00-3/01; and 3/99-3/00. For Mr. Salazar we received reviews for the following time periods: 3/00-01; 3/00-3/01(self appraisal); and 3/99-3/00 (self appraisal).  Please produce performance reviews and/or evaluations for all of the requested years.  In addition, with respect to Mr. Salazar, is there an evaluation of him for the period 3/99-3/00 other than the self-appraisal produced?  If so, please produce it.

      We look forward to your advice with regard to the above matters.

                    Very truly yours,

                    SWARTZ, CAMPBELL & DETWEILER

                    BY: _____
                    JEFFREY B. MC CARRON
                    KATHLEEN M. CARSON

KMC/kc

# *Swartz|Campbell|Detweiler*

**Kathleen M. Carson**
*Attorney at Law*

Swartz, Campbell & Detweiler
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316

phone    215-299-4272
fax      215-299-4301
e-mail   kcarson@scdlaw.com
web      www.scdlaw.com

# FAX COVER SHEET

DATE/TIME:          May 8, 2002 (1:36pm)

TO:                 Bruce D. Levin

FAX NUMBER:         617-790-3300

FROM:               Kathleen M. Carson

CLIENT/MATTER:      USF&G v. Brown Schultz

If you experience any difficulties with this transmission or you do not receive the number of pages indicated, please contact Melissa at 215-299-4357.

| DOCUMENTS | NUMBER OF PAGES |
|---|---|
| Correspondence | |
| | |
| | |

COMMENTS:

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE

05/08/02  13:50 FAX 215 299 4301      SWARTZ CAMPBELL&DETWEILR          ☑001

```
                    *********************
                    ***   TX REPORT   ***
                    *********************

        TRANSMISSION OK

        TX/RX NO              4208
        CONNECTION TEL             916177903300
        SUBADDRESS
        CONNECTION ID
        ST. TIME              05/08 13:49
        USAGE T               01'11
        PGS. SENT                 5
        RESULT                OK
```

# *Swartz\Campbell\Detweiler*

**Kathleen M. Carson**
*Attorney at Law*

Swartz, Campbell & Detweiler
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316

phone   215-299-4272
fax     215-299-4301
e-mail  kcarson@scdlaw.com
web     www.scdlaw.com

# FAX COVER SHEET

DATE/TIME:          May 8, 2002 (1:36pm)

TO:                 Bruce D. Levin

FAX NUMBER:         617-790-3300

FROM:               Kathleen M. Carson

CLIENT/MATTER:      USF&G v. Brown Schultz

If you experience any difficulties with this transmission or you do not receive the number of pages indicated, please contact Melissa at 215-299-4357.

| DOCUMENTS | NUMBER OF PAGES |
|-----------|-----------------|
| Correspondence |  |
|  |  |
|  |  |

# *Swartz* | *Campbell* | *Detweiler*

**Kathleen M. Carson**
*Attorney at Law*

Swartz, Campbell & Detweiler
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316

phone   215-299-4272
fax     215-299-4301
e-mail  kcarson@scdlaw.com
web     www.scdlaw.com

May 15, 2002

**VIA FACSIMILE**
Bruce Levin, Esquire
Bernkopf, Goodman & Baseman, LLP
125 Summer Street
Boston, MA 02110

   **Re: USF&G v. Brown Schultz Sheridan & Fritz**

Dear Bruce:

   This will serve to respond to your letters of May 10, 2002 and May 14, 2002.

   With regard to your letter of May 10, 2002, please be advised that we are not willing to wait for supplementation of your interrogatory responses until after you receive our client's expert report. Presumably when your client brought this negligent misrepresentation claim against Brown Schultz it had a basis on which to do so and can articulate it. We are certainly entitled to know the basis for your client's claim in order to prepare a defense. This includes, but is not limited to, the manner in which your client claims the financial statements misrepresented the financial condition of CCI. If it is something other than or in addition to that which is presently contained in your interrogatory answers, we are entitled to that information now and are certainly entitled to it long before you propose to provide it. Given that the interrogatories themselves state that they are incomplete and you apparently are unwilling to provide complete answers, we have no choice but to move to compel full and complete answers to those interrogatories at this time.

Philadelphia,
Pennsylvania   Mt. Laurel,
New Jersey   Media,
Pennsylvania   Wilmington,
Delaware   Allentown,
Pennsylvania   Harrisburg,
Pennsylvania   Scranton,
Pennsylvania   West Chester,
Pennsylvania   Fort Myers,
Florida   Bedminster,
New Jersey   Clevelan
Ohio

*Swartz* | *Campbell* | *Detweiler*

Bruce Levin, Esquire
May 15, 2002
Page 2

In response to your letter of May 14, 2002, we have the following comments:

1.  We find it difficult to believe that St. Paul/USF&G only maintains performance reviews and/or evaluations of its employees for one or two years. Are those records not maintained in personnel files maintained by the company and have those files been searched? Were the files of the supervisors of Messrs. Hussey, Phillips and Salazar searched? To the extent plaintiff does not have performance evaluations for the years the 1996 to 1999, please provide an explanation as to why not. If the evaluations were destroyed please advise us and provide us with a copy of your client's document retention/destruction policy.

2.  In our letter we requested that you update the Payment History produced by USF&G at Bates Nos. USFG/BS 1313-1432 which is incomplete. It only includes information up to September or October of 2001 depending on the job. Again we request that you produce an updated Payment History.

3.  With respect to our requests for reinsurance materials, the cases cited to you, while coverage cases, clearly hold that such information is relevant, particularly where, as here, a claim of misrepresentation has been raised. In each of the cases cited, the insurer claimed misrepresentation by the policyholder as a basis for rescission or as a defense to the policyholder's claim for coverage. Those courts held that communications between the insurers and their reinsurers were relevant for determining what information the insurers actually relied on in issuing the policies. In the instant case, USF&G claims that it would not have issued nineteen sets of payment and performance bonds to CCI but for the alleged misrepresentations contained in the audited financials. As in those cases, the information sought is clearly relevant to the issue of what USF&G was relying upon when issuing the payment and performance bonds to CCI. In addition, USF&G's correspondence with it reinsurers possibly will contain information as to USF&G's understanding of the cause of its losses and, as such, is reasonably calculated to lead to the discovery of admissible evidence in that respect as well.

We also note that the case you cite as the "leading" Pennsylvania case on this issue was reversed in part on reconsideration by Rhone Poulenc Rorer Inc. v. The Home Indemnity Co., 1991 U.S. Dist LEXIS 16336 (Nov. 7, 1991). In that decision, the court permitted reinsurance discovery again finding it relevant to the insurer's misrepresentation claim. Further, a subsequent decision out of the Western District of Pennsylvania has also found this information to be relevant. Koppers Co. v. The Aetna Cas. and Sur. Co., 1994 U.S. Dist. LEXIS 21384 (W.D. Pa. August 18, 1994). Both cases decision cited in our letter of May 8th and apparently ignored

*Swartz | Campbell | Detweiler*

Bruce Levin, Esquire
May 15, 2002
Page 3

by you.

4. As to your self-serving comment with regard to the necessity of addressing the
other objections your client has raised with regard to production of reinsurance
materials, as you know, it is your client's burden to establish the basis for the
application of any privilege. If you intend to claim privilege as a basis for the
withholding of these documents, you must provide information to establish its
applicability. Obviously, it will be up to the court to decide what effect the failure
to provide such information will have on any privilege you claim.

Please be advised that we will be filing a motion to compel production of the reinsurance
information we requested. If you wish to reconsider your position with regard to this
information, please feel free to contact us.

Very truly yours,

SWARTZ, CAMPBELL & DETWEILER

BY: _Kathleen M. Carson_
JEFFREY B. MC CARRON
KATHLEEN M. CARSON

KMC/kc

Exh D

# BERNKOPF, GOODMAN & BASEMAN LLP

COUNSELLORS AT LAW
125 SUMMER STREET
BOSTON, MASSACHUSETTS 02110-1621
TELEPHONE (617) 790-3000
TELECOPIER (617) 790-3300

May 17, 2002

Bruce D. Levin
DIRECT DIAL: (617) 790-3314
e-mail: blevin@bgblaw.com

*VIA FACSIMILE*

Kathleen Carson, Esquire
Swartz Campbell Detweiler
1601 Market Street
Philadelphia, PA  19103-2316

     Re:    United States Fidelity & Guaranty Company v. Brown Schultz Sheridan & Fritz

Dear Kathy:

I have received your vitriolic and self-serving letter dated May 15, 2002. The attacks on my client's integrity are uncalled for and unprofessional. Moreover, I am taken aback that my client's sincere and legitimate attempts to resolve matters consensually should be met in such a non-constructive manner.

As an initial matter, I note that my client suggested that we agree upon a date for the supplementation of interrogatories. Although you are certainly entitled to disagree with the date proposed in my letter dated May 10, 2002, your failure to even suggest a different date indicates to me that you may be more interested in creating a false appearance of cooperation than in legitimately attempting to resolve any dispute. My letter clearly states the reasons why supplementation is not proper at the present time. Are you willing to actually address the issue extant and propose a date for supplementary responses that is fair, rational and in keeping with both the letter and the spirit of the applicable rules?

Having addressed the issues of supplementation, performance reviews and payment histories in my letter dated May 10, 2002, I do not believe a response to your comments on those matters in your latest letter are necessary. It appears obvious that you have raised these issues in your letter solely for self-serving purposes. As indicated in my letter, my client will attempt to promptly provide all documents I have indicated it will provide.

As for the reinsurance issue, I must respectfully disagree with your legal conclusions. In particular, I am strongly opposed to producing any documents created after the initiation of the instant litigation. Although I have strong reservations as to relevancy, I am willing to discuss the possible production of documents not created in anticipation of litigation, such as the policies

BERNKOPF, GOODMAN & BASEMAN LLP

Kathleen Carson, Esquire
May 17, 2002
Page 2

themselves.  We would need to, however, discuss far stricter confidentiality protections than
those already in place.

     Please feel free to call me if you have any questions or comments.

                                        Very truly yours,

                                        Bruce D. Levin

cc:     Peter B. McGlynn, Esquire
        Mark Holtschneider, Esquire
BDL/mlb
#245653 v1/36432/87

# BERNKOPF, GOODMAN & BASEMAN LLP

COUNSELLORS AT LAW
125 SUMMER STREET
BOSTON, MASSACHUSETTS 02110-1621
TELEPHONE (617) 790-3000
TELECOPIER (617) 790-3000

May 17, 2002

Bruce D. Levin
DIRECT DIAL: (617) 790-3314
e-mail: blevin@bgblaw.com

## TELECOMMUNICATION TRANSMITTAL

TO:                              KATHLEEN CARSON, ESQUIRE

COMPANY:                         SWARTZ CAMPBELL DETWEILER

TELECOPIER NUMBER:               (215) 299-4301

FROM:                            BRUCE D. LEVIN, ESQ.        ATTORNEY #: 57

TOTAL NUMBER OF PAGES _____3_____ INCLUDING THIS COVER SHEET

*IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE.*

PHONE:                           (617) 790-3000

TELECOMMUNICATOR:                MLB

CLIENT/MATTER NO:                36432/87

MESSAGE:

Please Note: The information contained in this facsimile message is privileged and confidential, intended only for the use of the individual named above and others who have been specifically authorized to receive such. If the recipient is not the intended recipient, you are hereby notified that dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by telephone at (617) 790-3000. Thank you.          #230473 v1/36432/87

# BERNKOPF, GOODMAN & BASEMAN LLP

COUNSELLORS AT LAW
125 SUMMER STREET
BOSTON, MASSACHUSETTS 02110-1621
TELEPHONE (617) 790-3000
TELECOPIER (617) 790-3300

May 14, 2002

Bruce D. Levin
DIRECT DIAL: (617) 790-3314
e-mail: blevin@hgblaw.com

*VIA FACSIMILE*

Kathleen Carson, Esquire
Swartz Campbell Detweiler
1601 Market Street
Philadelphia, PA  19103-2316

Re:    United States Fidelity & Guaranty Company v. Brown Schultz Sheridan & Fritz

Dear Kathleen:

I acknowledge receipt of your letter dated May 8, 2002 regarding USF&G's responses to the Second Request for Production of Documents (the "Request").

Because I believe that we are in complete accord regarding Request Nos. 3, 4 and 5, I would like to address them first.

My client has informed me that the "project files" you seek in Request No. 3 have been subsumed within the payment and performance bond files. Those files have previously been made available for your inspection and copying.

As for Request No. 4, there are no responsive documents other than those contained in the payment and performance bond files. You should receive an updated spreadsheet of project and losses by the end of next week.

All documents in my client's possession, custody and control regarding Request No. 5 have been produced. I will, however, request that another search be performed to make certain that production has been complete.

As for Request Nos. 1 and 2, several issues remain to be discussed. Primarily, as discussed in greater detail, *infra*, I do not believe that either your letter or the case law cited therein provide sufficient grounds to find sufficient relevance to merit the production of the documents sought. I note, in particular, that the cases you rely upon all concern coverage disputes. *E.g.*, *National Union Fire Ins. Co. v. Continental Illinois Corp.*, 116 F.R.D. 78 (N.D. Ill. 1987) (action by insurer to rescind a directors' and officers' liability policies); *Leksi v. Federal Insurance Co.*, 129 F.R.D. 99 (D.N.J. 1989) (declaratory judgment action concerning

BERNKOPF, GOODMAN & BASEMAN LLP

Kathleen Carson, Esquire
May 14, 2002
Page 2


insurance coverage); *Stonewall v. National Gypsum*, 1988 WL 96159 (S.D.N.Y.) (dispute as to coverage). In fact, in the leading Pennsylvania case, not only is coverage in dispute but the court notes that Fed. R. Civ. P. 26(b)(2) is inapplicable unless monetary damages are sought for which the insurer may be liable. *Rhone-Poulenc Rorer, Inc.*, 139 F.R.D. 609 (E.D. Pa. 1991). Basically, I am unaware of any cases that require production of reinsurance information in a case even roughly analogous to the instant case.

In light of the lack of reference in your letter to any cases or situations in which either the reinsurance policies or communications between USF&G and its insurers are relevant, I do not believe it is currently necessary to address the other objections my client has raised. Please be advised that such objections have not been waived. However, because my client is truly interested in resolving this matter without judicial intervention, I invite you to bring to my attention any cases providing for the production of documents relating to reinsurance that are analogous to the instant case and are not, like those in your letter dated May 8, 2002, insurance coverage disputes.

Please feel free to call me if you have any questions or comments.

Very truly yours,

Bruce D. Levin

cc:    Peter B. McGlynn, Esquire
       Mark Holtschneider, Esquire
BDL/mlb
#245188 v1/36432/87

# BERNKOPF, GOODMAN & BASEMAN LLP

COUNSELLORS AT LAW
125 SUMMER STREET
BOSTON, MASSACHUSETTS 02110-1621
TELEPHONE (617) 790-3000
TELECOPIER (617) 790-3300

May 14, 2002

Bruce D. Levin
DIRECT DIAL: (617) 790-3314
e-mail: blevin@bgblaw.com

## TELECOMMUNICATION TRANSMITTAL

TO:                          KATHLEEN CARSON, ESQUIRE

COMPANY:                     SWARTZ CAMPBELL DETWEILER

TELECOPIER NUMBER:           (215) 299-4301

FROM:                        BRUCE D. LEVIN, ESQ.        ATTORNEY #:  57

TOTAL NUMBER OF PAGES ___3___ INCLUDING THIS COVER SHEET

*IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE.*

PHONE:                       (617) 790-3000

TELECOMMUNICATOR:            MLB

CLIENT/MATTER NO:            36432/87

MESSAGE:

Please Note: The information contained in this facsimile message is privileged and confidential, intended only for the use of the individual named above and others who have been specifically authorized to receive such. If the recipient is not the intended recipient, you are hereby notified that dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by telephone at (617) 790-3000. Thank you.            #230473 v1/36432/87