UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY,<br>Plaintiff<br><br>v.<br><br>BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ,<br>Defendants. | CIVIL ACTION NO. 1:01-CV-00813<br><br>JUDGE KANE |

**UNITED STATES FIDELITY AND GUARANTY COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

### I. Introduction

United States Fidelity and Guaranty Company ("USF&G") submits this memorandum in support of its Opposition to Defendants' Motion to Compel Production of Document (the "Motion to Compel") filed by Bruce J. Brown and Brown, Schultz, Sheridan & Fritz (collectively "Brown Schultz"). Summarily, absent a need to construe an ambiguity in an insurance policy or to reconstruct a lost policy, courts have refused to order the production of reinsurance documents. *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 611 (E.D.Pa. 1991), modified 24 Fed. R. Serv. 3d 762 (1991). This is because "reinsurance materials contain confidential business information regarding pricing and coverage of reinsurance policies, which, if revealed to competitors, could damage the insurance carrier's ability to compete in reinsurance markets as well as harm present business relationships with reinsurers." *Id.* at 612 (citing R. Mehr, Principles of Insurance §605 (7th ed. 1980). The complete irrelevancy of reinsurance information

to any claims or defenses raised in the instant accounting malpractice action only further militates against ordered disclosure of such documents. Additionally, Brown Schultz's attempt to procure documents created *after* the anticipation and commencement of litigation is barred by, *inter alia*, the work product privilege.

## II. Background

On or about May 9, 2002, USF&G commenced an action against the public accounting firm of Brown Schultz alleging, *inter alia*, that the true financial condition of CCI Construction Inc. ("CCI") was materially misstated in audited financial statements prepared by Brown Schultz. USF&G alleges it extended CCI's bonding capacity and issued numerous payment and performance bonds based on the audited financial statements prepared by Brown Schultz. As a result of CCI's defaults on projects bonded by USF&G, USF&G incurred losses of approximately $30,000,000.00. The sole cause of action raised by USF&G is that of negligent misrepresentation.

By means of the Second Set of Document Requests to Plaintiff (the "Request") served on USF&G on or about March 28, 2002, Brown Schultz sought the production of the following two overbroad categories of documents relative to USF&G relations with its reinsurers:

1. All documents that evidence, relate or refer to communications with reinsurers regarding the bonding program and/or payment and performance bonds issued by USF&G to CCI; and

2. All documents that evidence, relate or refer to communications with reinsurers regarding any payments made or to be made by USF&G under any payment or performance bonds issued by USF&G to CCI.

The delineated requests are unlimited as to any period of time, presumably seeking even future correspondence between USF&G and its reinsurer regarding the instant case.

USF&G timely served upon Brown Schultz its response to the Request. USF&G noted that the requests were objectionable on grounds of, *inter alia*, irrelevance, overbroadness and work product immunities.

As evidenced by various correspondence between USF&G and Brown Schultz - appended to the Motion to Compel as Exhibits "C" and "D" - USF&G provided Brown Schultz with legal authority supporting its refusal to produce certain documents relating to its reinsurance agreements. Brown Schultz was unwilling - or unable - to ever provide reference to an analogous case in which reinsurance information was found to be relevant to a malpractice action. Additionally, Brown Schultz refused to limit the scope of production sought, including its insistence on documents drafted by USF&G's in-house counsel *after* the onset of the instant litigation.

There are essentially three categories of documents that would be responsive to the pertinent document requests promulgated by Brown Schultz. The first would be various insurance treaties and agreements between and among USF&G and its reinsurers concerning the financial, business and legal parameters of their reinsurer-cedent relationship. These are, obviously, highly confidential and proprietary and have no conceivable bearing on the instant case. The second category would be correspondence and other documentation between USF&G and the reinsurers that was created prior to or contemporaneously with USF&G's decision to issue certain bonds on behalf of CCI. As discussed, *infra*, all such documents contained in the underwriting file have been produced. The third category consists of correspondence and other documentation between and among USF&G and its reinsurers concerning losses on CCI bonds. As also discussed in greater detail, *infra*, the documents are not only irrelevant to any and all

claims and defenses asserted in the instant litigation but are protected from disclosure by the work product doctrine.

### III. Argument

A.  **The Documents Sought are Completely and Utterly Irrelevant to the Defense or Prosecution of a Negligent Misrepresentation Claim Against Brown Schultz.**

Absent direct relevance to an issue raised in the litigation, communications with a reinsurer are not discoverable. *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 139 F.R.D. at 611. This is particularly true when the party seeking discovery does not seek to recover any damages from the reinsured company. *Id.*, 26 612-134 citing *In re Texas Eastern Transmission Corp.*, No. MDL 76D4 (E.D. Pa. July 26, 1989. *See, Great Lakes Dredge & Dock Co. v. Commercial Union Assur. Co.*, 159 F.R.D. 502, 504 (N.D. Ill. 1995) ("the relevance of 'all documents' relating to reinsurance is too attenuated to be discoverable"); *Independent Petrochemical Corp. v. Aetna Casualty & Svr. Co.*, 117 F.R.D. 283, 284 (D.D.C. 1986) (reinsurance information is "of very tenuous relevance, if any relevance at all.").

Brown Schultz cannot identify a single case to support its proposition that the documents it seeks are relevant and should be produced. Not one. *Every* case cited by Brown Schultz in support of its averment that "courts have found routinely found [sic] communications with reinsurers relevant…" concern *insurance policy coverage disputes*. E.g., *Natural Union Fire Insurance Co. v. Continental Illinois Corp.*, 116 F.R.D. 78 (N.D. Ill. 1987) (action by insurer to rescind a directors' and officers' liability policies); *Leksi v. Federal Insurance Co.*, 129 (F.R.D. 99 (D.N.J. 1989) (declaratory judgment action concerning insurance coverage); *Stonewall v. National Gypsum*, 1998 WL 96159 (S.D.N.Y.) (dispute as to insurance coverage); *Coppers Co. v. The Aetna Cas. and Sur. Co.*, 1994 U.S. Dist. LEXIS 21384 (W.D. Pa. August 18, 1994)

(environmental coverage policy dispute). The instant case is not an insurance policy coverage dispute nor is it remotely analogous to one. The nature and extent of USF&G's reinsurance coverage is simply not germane to USF&G's claim that Brown Schultz engaged in negligent misrepresentation in its issuance of certain audit reports.

Moreover, the disparity between the instant case and the insurance coverage disputes relied upon by Brown Schultz is not clarified by the non-sequitur that "[a]s in the above-cited cases, the information sought is clearly relevant to the issue of what USF&G, in fact, was relying upon when issuing the bonds to CCI." Motion to Compel, p. 4-5. If followed to its "logical" conclusion, Brown Schultz's averment not only eliminates all reinsurance-related documentation *subsequent* to the issuance of the various bonds - because one may not "rely" on something not in existence at the time of the putative reliance - but would appear to advocate the unfounded position that USF&G relied upon *reinsurance* in its decision to issue bonds, rather than on any facts concerning the financial condition, experience and goals of the bond principal, CCI. Such a proposition would be particularly fallacious to the extent it supports production of documents neither reviewed nor drafted by USF&G's underwriters - the individuals who *relied* upon the audits in issuing the bonds; neither the surety department nor the reinsurance department of USF&G had any bearing upon the underwriter's decision to issue certain bonds. The documents sought by Brown Schultz are simply irrelevant to the single claim asserted by USF&G - negligent misrepresentation by Brown Schultz relative to its issuance of certain audit reports - or to any defenses raised by Brown Schultz in its answer. In fact, Brown Schultz does not deign to identify how the documents it seeks relate to any of the affirmative defenses it asserted. Brown Schultz has, in fact, neither indicated why the reinsurance documents are relevant nor what they anticipate finding in such documents.

As part of its case-in-chief, USF&G must prove, *inter alia*, that it justifiably relied *on the audit statements* created by Brown Schultz. *Scarfe Co. v. Rockwell-Standard Corp.*, 446 Pa. 280 (1971). This reliance need be material but need not be the sole item relied upon. *Fort Washington Resources, Inc. v. Tannen*, 858 F. Supp. 455 (E.D. Pa. 1994). To date, in depositions and in interrogatory responses, USF&G's underwriters have testified that they relied upon the audit statements. USF&G's underwriters have also testified that they considered, to a lesser degree, other factors, such as the experience and professional reputation of CCI. Not one USF&G underwriter testified that he relied on reinsurance or that reinsurance in any manner affected his decisions as to the issuance of bonds. Such putative reliance would be even stranger if it concerns reinsurance issues with which the underwriters had no contact or dealings. Mere conjecture by Brown Schultz is insufficient to justify production of the broad categories of documents it seeks, particularly since any and all references to reinsurance in the underwriting files has already been produced. Certainly, Brown Schultz can identify no case law in which the information it seeks was found relevant to the prosecution or defense of an negligent misrepresentation claim relative to accounting malpractice.

There is also no justification for production of documents created after bonds were issued. For obvious reasons, such documents would not be indicative of what the underwriters relied upon. Moreover, as discussed, *infra*, such documents are replete with the thoughts and mental impressions of counsel.

Brown Schultz' averment that the reinsurance information sought might lead to an "understanding of the cause of its losses" is perplexing. Motion to Compel, p. 5. The "cause" of USF&G's losses are CCI's defaults on projects bonded by USF&G. There is no logical nexus between CCI's operational difficulties and USF&G's reinsurance.

**B.    The Document Sought are Protected by Recognized Privileges.**

The following chart identifies correspondence that USF&G avers constitutes privileged communications regarding reinsurance:

| DATE | DOCUMENT | AUTHOR | RECIPIENT | DESCRIPTION | PRIVILEGE |
|---|---|---|---|---|---|
| 05/10/00 | Letter | Simanski, John F., Esquire | Numerous Reinsurers | Communication re. status of claims | Work Product; Common Interest |
| 08/07/00 | Letter | Simanski, John F., Esquire | Numerous Reinsurers | Communication re. status of claims | Work Product; Common Interest |
| 11/20/00 | Letter | Simansky, John F., Esquire | Numerous Reinsurers | Communication re. status of claims | Work Product; Common Interest |
| 06/08/01 | Facsimile | Macomson, Angelique of Willis Re | Feurer, Deborah, Esquire, of St. Paul, Parker, Michael of Willis Re | Communication re. status of claims | Work Product; Common Interest |
| 07/10/01 | Letter | Simanski, John F., Esquire | Numerous Reinsurers | Communication re. status of claims | Work Product; Common Interest |
| 03/18/02 | Letter | Simanski, John F., Esquire | Numerous Reinsurers | Communication re. status of claims | Work Product; Common Interest |

The delineated correspondence was created *after* the issuance of the pertinent payment and performance bonds. Thus, it is impossible for USF&G to have relied upon such correspondence - and information conveyed or received thereby - to make the decision to issue such bonds. As such, there can be no relevance to the instant action. As discussed in greater detail, *infra*, not only do these letters constitute protected work product but they contain the mental impressions, thoughts and opinions of USF&G's counsel regarding anticipated and actual litigation.

### 1. Work-Product Doctrine Protects the Documents Created in Anticipation and in Furtherance of the Instant Litigation.

The work product doctrine arises out of the need to provide an attorney with a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). It protects "intangible things, the results of the lawyer's use of his tongue, his pen and his head, for his client." *Hickman v. Taylor*, 153 F.2d 212, 223 (3d Cir. 1945), *aff'd*, 329 U.S. 495 (1947). It provides an attorney with a "zone of privacy" within which to think, plan, weigh facts and legal theories, and prepare a case. *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 142-43 (D. Del. 1982) (citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980)); *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136 (D. Del. 1977). The work product privilege is intended to aid trial preparation. A lawyer's research, analysis and mental impressions deserved special protection. *Hickman*, 153 F.2d at 223. Production of these private papers is rarely ordered, only upon a strong showing of need. *La Rocca v. State Farm Mut. Auto. Ins. Co.*, 47 F.R.D. 278 (W.D. Pa. 1969).

Although Brown Schultz would, undoubtedly, like to discover the impressions of USF&G's counsel regarding the status of the litigation, the relevancy of such information is highly questionable. The comments and impressions of counsel working in the surety claims division of USF&G will shed no light on the justifiability of the underwriter's reliance on the audit reports issued by Brown Schultz.

### 2. No Waiver Has Been Effected.

Pursuant to an earlier document request seeking the contents of the pertinent underwriting files, USF&G - with the exception of some privileged documents identified in its privilege log -

provided the entire contents of its underwriting files. Included in the files - and, accordingly, produced to Brown Schultz - were copies of various correspondence between USF&G and certain reinsurance underwriters. Although USF&G believes that the relevance of even the documents produced is, at best, sketchy, those documents were produced because they were in the underwriting file - which, undoubtedly, is relevant - and were, at minimum, reviewed or seen by the underwriter at a particular time. The production of, in part or in whole, a category of documents simply does not constitute an on-going waiver of privilege. *See, Sampson Five Sales, Inc. v. Oaks*, 201 F.R.D. 351 (M.D. Pa. 2001); *Minatronics Corp. v. Buchanan Ingersoll, P.C.*, 23 Pa. D. and C. 4th (1995). The hesitation of courts to find waiver is particularly strong in cases where the documents produced (in this case, documents in the underwriting file) differ in type and asserted privilege from those for which a privilege is being asserted. *Id*.

Additionally, the "common interest" exception prevents the provision to various reinsurers of documents covered by the work product doctrine from constituting a waiver of that privilege. The "common interest" exception is designed to "protect the free flow of information from [the] client to [the] attorney" when a number of clients share a common interest in litigation. *United States v. Schwimmer*, F.2d 237, 243-44 (2d. Cir. 1989). The primary issue regarding the common interest exception in the insurer and reinsurer relationship is whether the interest exception prevents the waiver of the attorney-client or work product privilege after the privileged document has been shared with a third party. An exception to the general rule of waiver applies when the third party who received the communications shares an interest with the client and adverse to that of the party seeking discovery. The common interest doctrine has been described as follows:

> A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. The third parties receiving copies of the communication and claiming a community of interest may be distinct legal entities from the client receiving the legal advice and may be a non-party to any anticipated or pending litigation. The key consideration is that the nature interest be identical, not similar, and be legal, not solely commercial. The fact that there may be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest" *DuPlan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C. 1975).

Accordingly, the common interest theory has both a theoretical and a practical component. "In theory, the parties among whom privileged matter is shared must have a common legal, as opposed to commercial, interest. In practice, they must have demonstrated cooperation in formulating a common legal strategy." *Bank Brussels Lambert v. Credit Lyonnais (Suisse)*, 160 F.R.D. 437 (S.D.N.Y. 1995). Generally, the reinsurer shares the same interests as the insurer in the resolution of legal disputes between the insurer and its insured. Furthermore, the reinsurer and insurer share the common objective to avoid paying groundless claims, and to pay legitimate claims only when they are within the bounds of the policy. Accordingly, correspondence between insurers and reinsurers are generally deemed privileged if they discuss pending litigation and are not commercial in nature. *Id.*; *Durham Industries v. North River Insurance Co.*, 1980 WL 112701 (S.D.N.Y.). However, the fact that litigation is actually pending is not a prerequisite to applying the common interest theory. "The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter, and it is, therefore, unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply." *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d. Cir. 1989).

Many courts addressing this issue have held that the common interest exception applies to protected and privileged communications between an insurer and reinsurer, *Durham Industries, Inc. v. North River Insurance*, 1980 WL 112701 (S.D.N.Y. 1980); *Great American Surplus Lines v. Ace Oil Co.*, 120 F.R.D. 533 (E.D.Cal. 1988) (holding that initial disclosure of documents from the insurer to reinsurer did not constitute waiver because the decisive inquiry was the reinsurer's "need to know" the information. That court reasoned that, because the reinsurer had a significant financial interest in determining potential liabilities, no waiver existed and the documentation need not be produced.); *Minnesota School Boards Association Insurance Trust v. Employer's Insurance Company of Wausau*, 183 F.R.D. 627 (N.D.Ill. 1999) (holding that the documents were disclosed to the broker and the reinsurer with an expectation that their confidentiality would be preserved and that the common interests of the insurer and reinsurer preserved their confidentiality under the joint defense doctrine).

The case cited by Brown Schultz for the proposition that the common interest exception to the waiver rule is both anomalous and easily distinguishable from the instant case. Needless to say, *Allendale Mutual Insurance v. Bull Data Systems, Inc.*, 152 F.R.D. 132 (N.D. Ill. 1993), concerns an insurance policy coverage dispute. Moreover, the Court in *Allendale* specifically found that the documents in question were neither prepared by lawyers nor by agents on behalf of lawyers. *Id.* at 136. As such, the documents would not contain the mental impressions of counsel. As evidenced from the privilege chart, *supra*, all communications for which the privilege is claimed are either to or from counsel. Even in its own judicial district, *Allendale* has been disavowed or distinguished when the discovery of counsel's mental impressions is at stake. *Minnesota School Boards Association Insurance Trust*, 183 F.R.D. at 627.

### C. The Balance Of Harms Disfavors Production Of Reinsurance Documents.

Brown Schultz has not only failed to identify the relevance of the information sought, but has failed to articulate any cognizable harm that will befall it if additional documents related to USF&G's reinsurance are not produced. By deposing four underwriters, Brown Schultz was able to inquire as to what was relied upon in making underwriting decisions. The entire underwriting file has been produced. Brown Schultz was also provided with boxes of documents relating to USF&G's efforts to complete the bonded projects. Simply, there is no information relative to the claims and defenses extant that either was not previously produced or which could not have been obtainable by Brown Schultz from other sources.

On the other hand, the relief sought by Brown Schultz is detrimental both to USF&G and its reinsurers but also provides an unwarranted and unmerited strategic advantage to Brown Schultz. As recognized in *Rhone-Poulenc Rorer*, reinsurance information is highly confidential. Further, damage caused to the relationship between USF&G and its reinsurers will only increase the ultimate amount of damages incurred by USF&G.

### D. *In Camera* Review May Be Appropriate.

USF&G avers that information concerning its reinsurance policies and communications between it and its reinsurers are irrelevant to the instant action. Brown Schultz has not articulated why such documents are relevant or what it expects to find in the event that such documents are produced. Likewise, Brown Schultz cannot point to a single non-coverage case in which a party has been forced to produce information concerning reinsurance. Moreover, information concerning reinsurance contains confidential business information regarding, *inter alia*, the pricing and coverage of reinsurance policies and other information that could harm USF&G's competitive position and relationship with reinsurers. Accordingly, although Brown

Schultz's failure to demonstrate any cogent factual or legal support for its position should not require any further action by the Court or the parties. Nevertheless, if the Court has any questions regarding the requested documents, USF&G suggests that *in camera* inspection be conducted before any production to Brown Schultz. This would protect USF&G's vital interests, which include ongoing communications with its reinsurers.

## IV. Conclusion

The documents sought by Brown Schultz are irrelevant to the claims and defenses raised and protected from discovery by the work product doctrine. Moreover, the harm to USF&G if production is ordered greatly outweighs both the benefit to Brown Schultz if such documents are produced and any putative harm if no further production is ordered. Accordingly, the Motion to Compel should be denied, and USF&G should be awarded its fees relative to opposing that motion.

UNITED STATES FIDELITY
& GUARANTY COMPANY,
By its attorneys,

Peter B. McGlynn, Esquire
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, MA  02110
Telephone:    (617) 790-3000
Facsimile:    (617) 790-3300

and

Peter Speaker, Esquire
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA  17101
Telephone:    (717) 237-7100
Facsimile:    (717) 237-7105

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail (by hand) on 7/3/0~~2~~

Dated: June 3, 2002
#245755 v1/36432/87

-13-