(63)
RB10/11

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

|  |  |  |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, <br> Plaintiff | ) ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:01-CV-00813 <br><br> JUDGE CONNOR |
| BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, <br> Defendants. | ) ) ) ) | MJ Smyser ✓ |

FILED
HARRISBURG, PA

OCT 1 0 2002

MARY E. D'ANDREA, CLE
Deputy Clerk

**AFFIDAVIT OF STEVE J. DEBRUYN, CPA IN OPPOSITION
TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Steve J. DeBruyn, on oath, deposes and says as follows:

1.     I am a Certified Public Accountant and a partner in the firm of Clifton, Gunderson LLP ("Clifton Gunderson").   I also serve as Clifton Gunderson's Construction Contractor Industry Group Leader.  A copy of my resumé is attached hereto as Exhibit "A".

2.     I have been engaged by counsel for the plaintiff, United States Fidelity and Guaranty Company ("USF&G"), to determine if I could render certain opinions concerning the audit procedures performed by, and the conclusions reached with respect to, the audited financial statements prepared by the Defendants for CCI Construction Company, Inc. for the fiscal years ended December 31, 1996, 1997 and 1998.  I have previously determined that I was able to render such opinions.

<u>Facts and Other Materials Relied Upon</u>

3.     I am making this affidavit in opposition to the Defendants' Motion for Summary Judgment.  The facts upon which I relied upon in connection with my opinions are as follows:

- Brown Schultz Sheridan & Fritz ("Brown Schultz") audit work papers for CCI for the fiscal years ended December 31, 1996, 1997 and 1998;

- Brown Schultz' "Permanent File" for CCI.

- The depositions of Bruce J. Brown, Sherri Phillips and Deborah Bowman;

- Various pleadings filed in the above-captioned action;

- 1998 Audited Financial Statements prepared by Brown Schultz for a company known as Pennsylvania Contractors Insurance Co. Inc. ("PCIC");

- Brown Schultz' work papers for the audit of PCIC for the fiscal year ended December 31, 1998; and,

- Work-in-process schedule as of December 31, 1999 prepared by CCI.

- <u>Horwath International Audit Manual</u> (2000 Edition)

4.     In addition to my knowledge and expertise in the fields of construction, accounting and auditing, I also considered the following standards, rules and treatises with respect to which accountants are required to follow in the performance of accounting and auditing work or materials reasonably relied upon by auditors in connection with audit and accounting services:

- Accounting Research Bulletin No.45 (ARB 45), Long-Term Construction Type Contracts


- AICPA Technical Practice Aids - Statement of Position 81-1, Accounting for Performance of Construction-Type in Certain Production-Type Contracts, July 15, 1981;

- AICPA Audit and Accounting Guide for Construction Contractors, May 1, 1997;

- Statement on Auditing Standards No. 47, Audit Risk & Materiality in conducting an audit (American Institute of Certified Public Accountants, 1983);

- Statement on Auditing Standards No. 57, Auditing Accounting Estimates (American Institute of Certified Public Accountants, 1988);

- FAS No. 5, Accounting for Contingencies, March 1975;

- FAS No. 57, Related Party Disclosures, March 1982;

- Statement of Auditing Standards No. 22, Planning and Supervision (American Institute of Certified Public Accountants (1978); and,

- Statement of Auditing Standards No. 31, Evidential Matter (American Institute of Certified Public Accountants (1980).

- AICPA Audit Risk Alert, Construction Industry Developments – 1998/99 (Issued November, 1998).

- Other standards and regulations promulgated by the American Institute of Certified Public Accountants.

5.    Independent auditors performing audit work for construction contractors are required to perform this audit work in accordance with the AICPA Audit and Accounting Guide for Construction Contractors (the "Audit Guide").  Section 1.12 – 1.17 of the Audit Guide includes a primer on construction surety bonding and the pre-qualification process which most sureties employ.  The Glossary part of the Audit Guide includes a description of "Bonding Capacity" which reads as follows:

"The total dollar value of construction bonds that a surety will underwrite for a contractor, based on the surety's predetermination of the overall volume of work that the contractor can handle."

## My Opinion

6.    For reasons explained below, it is my opinion that the audit work performed by Brown Schultz for CCI for the fiscal years ended December 31, 1997 and 1998 did not conform to the applicable standards of care of a certified public accountant and such non-conformance resulted in material misstatements and omissions in the 1997 and 1998 audit reports for CCI prepared by Brown Schultz.  It is also my opinion that the misstatements and omissions were material to the financial position of CCI.

## Basis for My Opinions

7.    Brown Schultz' workpapers demonstrate Brown Schultz' failure to properly address  the risk involved with its audits of CCI for the years ending December 31, 1996, 1997 and 1998.  Because of this failure to properly address  the risks associated with CCI, Brown Schultz' audit programs and its audit fieldwork were inadequate to provide the required assurance that the 1996, 1997 and 1998 audit reports (the "Audit Reports") were conducted in accordance with  Generally Accepted Auditing Standards ("GAAS").  These procedures are required to be followed by Certified Public Accountants, such as Brown Schultz, in the performance of audit work.

8.    GAAS comprises the standards and procedures which must be followed in the planning, preparation and issuance of an audit report by a Certified Public Accountant.  One of GAAS' requirement is that audit fieldwork must be "adequately planned and properly supervised." SAS No. 22, AU Section 311.  The basis for an adequately planned audit is the assessment of risk. While  Brown Schultz' workpapers identified high-risk characteristics in CCI

4

and in CCI's individual construction contracts as noted below including the fact that USF&G was a "significant creditor" and user of the financial statements, Brown Schultz' audit plan work papers for 1996, 1997 and 1998 were virtually identical to each other and did not reflect any consideration of or additional testing procedures for any of the increased audit risks inherent in the CCI audit engagement. Further, not only did the audit plan remain intact during this period, the actual audit work performed by Brown Schultz for the fiscal years ended December 31, 1996, 1997 and 1998 did not change significantly from year to year either. This is significant, in my opinion, in light of the fact that CCI's audit risk profile increased for 1996 through 1998 due to, among other things, the following:

- A significant dollar volume of work was being performed by CCI's subcontractors. This should have led the auditor to consider audit procedures directed at testing subcontract costs. For example consideration should have been given to a review of CCI's subcontractor agreements, confirmations with subcontractors, review and testing of significant subcontractor costs accumulated to date and estimated costs to complete;

- Brown Schultz' knowledge of and its documentation in its audit work papers of past and present claims and defaults with respect to CCI's subcontractors;

- CCI's expansion in new, non-contiguous states;

- Profit fades as acknowledged by Brown Schultz in its audit work papers on CCI's contracts completed in subsequent years. [Profit fades are declines in the estimated or the interim profits (or losses) at the end of the preceding year to the project's actual performance at its completion. Profit fades can be due to a number of factors ranging from the contractor's performance to the default or insolvency of its subcontractors or suppliers. It can also signify that the contractor's original estimate of

5

its costs to perform the work and its profits were inaccurate.]  The primary objective of the auditor is to determine the level of reliance that can be placed by the auditor on the contractor's estimated costs to complete the project.  It is the auditor's job to perform sufficient testing and analysis to determine whether the contractor's estimates of its costs and profits is sound and reasonable.  In light of the profit fades on a number of CCI projects , Brown Schultz was required under GAAS, in my opinion, to question the reliability of CCI's estimates and its costs to complete contracts in progress and estimated profits thereon;

- By the end of 1997 and throughout 1998, CCI was self-performing some contract work which had previously subcontracted out to others and it also purchased approximately $6-7 million worth of new construction equipment in connection with its new self-performing work;

- CCI was not properly allocating all indirect costs to individual contracts. This had the effect of artificially inflating CCI's profits (or reducing losses) on individual projects.  This is important for any user of CCI's audit reports who is interested to see how profitable CCI's contract work was or, alternatively, how much CCI was losing on individual contracts; and,

- The presence of significant-related party transactions including, CCI's relationship with Pennsylvania Contractors Insurance Co., Inc. ("PCIC").  The significance of the CCI/PCIC transactions is discussed in greater detail, *infra*.

9.     It is my further opinion that there were inadequate audit procedures performed by Brown Schultz in such important areas as CCI's contracts-in-progress generally and, specifically, the design and implementation (or the lack of) substantive audit procedures in connection with

accumulated costs and estimated costs to complete of CCI's contracts.  Section 10.33 of the AICPA Audit Guide For Construction Contractors states "One of the most important phases of the audit of a construction contractor relates to estimated costs to complete contracts in process, since that information is used in determining the estimated final gross profit or loss on contracts." In particular, Section 10.33 states "Because of the direct effect on the estimated interim and final gross profit or loss on the contract, the auditor should evaluate whether the contractor's estimate of costs to complete is reasonable."  The audit guide further states that to achieve this, the auditor should "1) critically review representations of management, 2) obtain explanations of apparent disparities between estimated and past performance on contracts, experience on other contracts, and information gained in all other phases of the audit, and 3) document the results of work in these areas."  In my opinion,  Brown Schultz, in violation of the AICPA Audit Guide For Construction Contractors, unduly relied  on CCI management's assertions with respect to costs-to-complete and estimated profits on the CCI contracts.  The determination of the accuracy of the accumulated costs to date and the estimated costs-to-complete is critical to contractors like CCI using the percentage of completion method of accounting.   The percentage of completion method recognizes revenue based on costs incurred to date divided by total estimated costs on the job, multiplied by the contract amount.

10.    It is also my opinion that Brown Schultz placed undue reliance on CCI's management to substantiate significant estimates in the  estimated costs-to-complete  in  the 1996, 1997 and 1998 Audit Reports.  Brown Schultz relied on CCI's representations as to such costs with no documentation substantiating the fact that CCI's management estimates were reasonable other than the fact that they had allegedly been verified by Sherri Phillips, CCI's Chief Financial Officer and/or Stan Sechrist, CCI's Vice President - Construction Operations.  It

does not appear that Brown Schultz understood the requirements of SAS No. 57, Auditing Accounting Estimates (Professional Standards, AU Section 342), and did not follow the guidelines to properly assess the reasonableness of CCI's management estimates.  In addition, it does not appear that Brown Schultz followed the Horwath International Audit Manual with respect to "basic" approaches to evaluate accounting estimates.  The requirements include;

- Reviewing and testing management's process used to develop the estimates;

- Developing an independent expectation to corroborate management's estimates; and,

- Reviewing subsequent events and transactions.

11.    To the contrary, Brown Schultz' work papers show that in 1998, CCI was estimating gross profits on several contracts-in-progress that were materially higher than the historical or originally projected amounts.  Subsequent review of these projects revealed that these contracts had significant profit fades, and one job - no. 454, Albemarle Prison - had a loss of approximately $957,000.00, and profit fade based on Brown Schultz' 1998 workpapers of approximately $2,600,000.  Also, Brown Schultz' 1998 workpapers' files contained no evidence of any consideration by it of the allocation of indirect costs to estimated costs-to-complete, other then two projects, despite Brown Schultz' knowledge that CCI was self-performing more of its subcontract work than in the past.  In addition, there was no follow up between the documented preliminary analytical review work and the final work, despite a material increase in the contracts in progress schedule.  Brown Schultz also failed to document the reasons for the significant underbillings reported at the end of the 1998 year.  The Horwath International Audit Manual, a manual which, on information and belief, Brown Schultz used as an audit guide for its CCI audits, in section 12.049, specifically addresses the procedures to follow if unbilled construction

receivables are significant, including the physical inspection of construction sites and architects' or engineers' reports, and, possibly, obtaining assistance from outside specialist. Job site visits were never conducted by Brown Schultz and the reasons therefor were not documented in Brown Schultz' work papers.

12.     Also, in my opinion, Brown Schultz testing of accumulated job costs was incomplete. In its CCI audit workpapers, Brown Schultz acknowledged that its testing of 25 of CCI's cost transactions was only a test of CCI's cost controls. That is to say, no specific testing of CCI's contract costs was done. This was incorrect under the circumstances extant. The testing of 25 costs allows the auditor to make qualitative assessments about a contractor's cost controls. However, such testing does not replace the need to perform substantive procedures, such as vouching (ascertaining the truth of) significant contract costs and analytical review.

13.     In my opinion, Brown Schultz failed to properly test the direct cost related to subcontractors. CCI had significant and substantiated direct costs related to subcontractors and there was documentation in Brown Schultz' workpapers relating to past and present claims between CCI and its subcontractors as well as evidence of subcontractor defaults. In fact, in the December 31, 1996 financial statements of CCI, Brown Schultz footnoted that the reason for losses on certain projects was "caused by additional costs associated with subcontractor defaults and the related legal expenses to defend those cases ...." Nonetheless, Brown Schultz did not send out any confirmations of amounts owed by CCI to CCI's subcontractors, nor did Brown Schultz' "Permanent Files" or its other work papers document that it reviewed CCI's subcontracts and other, similar construction agreements. In addition, Brown Schultz specifically excluded any job related expenses in its testing of unrecorded liabilities. Instead, as noted above,

9

Brown Schultz relied on a test of 25 selected costs throughout each year - for contract testing purposes only - and there was no evidence in Brown Schultz' workpapers that it performed any analytical procedures related to accumulated job costs.

14.    There was also no evidence in Brown Schultz' workpapers for the 1996, 1997 and 1998 Audit Reports that Brown Schultz read one or more of the contracts for guarantees or any penalty and/or incentive provisions or cancellation and postponement provisions.   Paragraph 10.16 of the AICPA Audit Guide For Construction Contractors states in part "A careful reading of the contract is required to identify guarantees or contingencies associated with a project."

15.    Brown Schultz' audit planning and its audit procedures fell below those which applicable standards of care of a certified public accountant performing in the audit of CCI's financial statements.  In particular, Brown Schultz failed to conform its audit work for CCI to the following standards:

•    GAAS requires all auditors to exercise "due professional care…in the performance of the audit and the preparation of the report." SAS No. 1, AU Section 230. Included in the foregoing section, is the fact that due professional care requires the auditor to exercise professional skepticism.  Based upon my review of Brown Schultz audit work papers for the years 1996, 1997 and 1998 and its Audit Reports for those years, it is my opinion that Brown Schultz failed to act with sufficient professional skepticism and was not diligent in evaluating audit evidence;

•    GAAS also requires that audit field work must be "adequately planned and properly supervised." SAS No. 22, AU Section 311.  As noted above, Brown Schultz' planning documentation for the audit reports for 1996, 1997 and 1998 remain virtually

10

unchanged despite the fact that CCI had experienced significant growth in those years, was self-performing more work, CCI had experienced significant profit fades on a number of jobs, that CCI had begun to expand geographically and the presence and reliance of third party users of the financial statements;

• Brown Schultz also failed to properly address the risks involved in the audit of CCI and, consequently, Brown Schultz did not modify or change its audit procedures or its approach to the audit work for CCI.  SAS No. 1, AU Section 230 and SAS No. 22, AU Section 311; and

• Further, Brown Schultz' limited its testing of, among other things, accumulated job costs, subcontractor costs and subsequent disbursement of job costs. Accordingly, in my opinion, Brown Schultz failed to insure during its performance of audit field work for CCI that "sufficient competent evidential matter…was obtained…." SAS No. 31, AU Section 326.

Brown Schultz' Inappropriate Recording and Inadequate Disclosure of Related
Party Transactions Between PCIC and CCI

16.    PCIC was owned by CCI's sole stockholder, John Ortenzio.  PCIC was a related party to CCI.  *See* FAS No. 57, Related Party Disclosures, March 1982.  Based upon my review of Brown Schultz' 1998 audit work papers, PCIC issued a Guaranty Agreement guaranteeing full payment of a CCI claim in the amount of $1,162,460.00 against the Commonwealth of Pennslyvania on Job Number 439, Mahanoy Prision.  Brown Schultz also performed the audit work for PCIC for a number of years.  The CCI claim of $1,162,460.00 did not meet the recognition standards set forth in AICPA Technical Aids, Statement of Position 81-1, Accounting for Performance of Construction-Type and Certain Production-Type Contracts, July

15, 1981.  Further, in my opinion, the Guaranty Agreement executed by PCIC in favor of CCI and dated less than a month  before the close of CCI's books for the year ended December 31, 1998 did not support the recognition of $1,162,460.00 in revenue for CCI for the year ended December 31, 1998 as recorded in the 1998 audited financial statements.  SOP 81-1, para. 65 states that recognition of additional contract revenue relating to claims is appropriate when it is "probable" the claim will result in additional revenue and the amount can be reliably estimated. In satisfying those requirements, Brown Schultz failed to document or provide evidence that:

- There was a legal basis for the claim or a legal opinion had been obtained.  SOP 81-1 (par. 65 a.).

- The evidence supporting the claim was objective and verifiable and not based upon management's "feel" for the situation or on unsupported representations.  SOP 81-1 (par. 65 d.).

17.    In addition, the recording and disclosure of the related-party transaction involving PCIC and CCI in the 1998 financial statements  was misleading to the user of that report since the PCIC Guaranty was recorded by Brown Schultz as contract revenue and therefore  recorded as an underbilling (buried in the contracts-in-progress schedule) as opposed  to  a separate line item on the balance sheet clearly denoted as being a related-party transaction.  The result was a material misstatement in the 1998 Audit Report of $1,162,460.00 incorrectly reported as revenue. An appropriate disclosure would have been to report the transaction as a separate line item on the balance sheet of CCI indicating that it was specifically guaranteed by a company owned by the sole stockholder of CCI.

18.    In addition, Brown Schultz' workpapers demonstrate that Brown Schultz' work was also deficient in the following areas:

- Lack of documentation of time to indicate that the partner-in-charge of the audit participated in audit planning in 1998;

- The financial statement disclosure checklist included in the Brown Schultz audit workpapers do not appear to have been reviewed;

- The search for Unrecorded Liabilities in the 1998 Brown Schultz workpapers did not go through the last day of Brown Schultz' fieldwork performed in connection with the audit.

### The Audit Reports as Restated

19.     Based upon my analysis of the facts and other materials enumerated previously in this Affidavit, the 1997 and 1998 Audit Reports required substantial restatements as a result of the inadequate  audit work performed by Brown Schultz.  Although I also found that the audit work performed in connection with the 1996 Audit Report was deficient,  it did not result in any material misstatements in my opinion.

20.     Attached hereto as Exhibits B-1 and B-2 are the original and restated schedules of CCI's contracts-in-progress for the year ended December 31, 1997.  In general, as shown on Exhibit B-1, the 1997 work-in-progress schedule prepared by Brown Schultz showed a gross profit on all contracts-in-progress of $1,587,367.00 on total revenue of $29,051,753.00.   In contrapoise, Exhibit "B-2" shows that, as restated by me, CCI's contracts-in-progress for 1997 result in a **decrease** in revenue and gross profits of $815,960.00.

21.     Among other things, the methodology employed by me in preparing Exhibits B-1 and B-2 consisted of utilizing financial data contained in Brown Schultz' work papers, comparing it to the original profit (or loss) estimates for contracts-in-progress as reported in the

Brown Schultz audited financial statements when each project began and also comparing it to the profit or loss for each of the projects upon completion. Exhibits C-1 through C-7 attached hereto contain each of the contracts-in-progress which I analyzed and restated with respect to the 1997 Brown Schultz audited financial statement. For example, Exhibit C-1 contains a spreadsheet for CCI project number 426, the U.E.P.H. Complex project ("U.E.P.H."). The original profit estimate for U.E.P.H. as reported by Brown Schultz in its 1997 audit work papers was 3.52%. As reported in Brown Schultz' audit reports for the years ended December 31, 1996, 1997 and 1998, U.E.P.H. purportedly had a gross profit in each of those years of 10.02%, 10.61% and 9.30% respectively or roughly three times the original profit estimate. Upon completion, U.E.P.H. had an 8.7% profit. The Brown Schultz work papers for U.E.P.H. failed to document, in accordance with GAAS standards, sufficient evidential material to support the reported gross profits (ranging from 9.30% to 10.61%) in the years 1996 through 1998. Thus, I employed the gross profit percentage earned at the completion of U.E.P.H. - 8.71%. . The methodology used is reasonable in light of the following:

- This method avoids the abuse or intentional misstating of profits that is inherent in the use of the percentage of completion method of accounting;

- This method is conservative in its approach since it used the profit or loss amounts reported by CCI upon project completion. In fact, on some contracts employing CCI's original profit estimates as documented in Brown Schultz' audit workpapers would have resulted in an even larger difference between the audit reports and my restatements. Due to the deficient auditing procedures employed by Brown Schultz, they did not give themselves an opportunity to determine possible problems in the individual contracts; and,

- This method also recognizes profits (or losses) on the contracts based on actual events and transactions in the appropriate year to gain an understanding of the effect of CCI's representation in the estimated costs to complete.

22.   Attached hereto as Exhibits D-1 and D-2 are, respectively, the original and the restated contracts-in-progress schedules for CCI for the year ended December 31, 1998.  Exhibit D-1 is the contract-in-progress schedule prepared by Brown Schultz for the period ending December 31, 1998 and it shows a gross profit of $3,332,292.00 on total revenues of $38,721,607.00.  In contrapoise, the restated contracts-in-progress - Exhibit D-2 - for the period ended December 31, 1998 shows a decrease in revenues and gross profit of $3,126,508.00.  This represents a difference over the years 1997 and 1998 of $3,942,467.00.

23.   Exhibits E-1 through E-10 attached hereto contain each of the contracts-in-progress which I analyzed and restated with respect to the 1998 Brown Schultz audited financial statement.   Exhibit E-4, for example, contains a spreadsheet for CCI project no. 454, the Abermarle Prison project ("Abermarle").  The original profit estimate for Abermarle as reported by Brown Schultz in its work papers was 6.63%  As reported in Brown Schultz' audit reports for the years ended December 31,  1998, Abermarle purportedly had a 11.35% profit in 1998.  As of December 31, 1999, Abermarle had a reported –6.59% loss.  The Brown Schultz work papers for Abermarle failed to document, in accordance with GAAS standards, sufficient evidential material to support the reported gross profit in 1998 of 11.35%.  In addition, the workpapers documented problems with the design and the architect on the project.

24.   I took the information concerning contracts-in-progress as well as other adjustments and prepared for CCI a balance sheet and statement of income for the years ended December 31, 1997 and 1998 and compared that information to the information contained in the

1997 and 1998 Audit Reports. Those comparison reports are attached hereto as Exhibits F-1 and F-2. In summary, the 1997 Audit Report prepared by Brown Schultz had the following line item entries relevant to this analysis:

- Income from Operations          $349,823.00
- Other Income:                   $357,056.00
- Net Income (Loss):              $706,879.00

25. As restated, the foregoing line items reveal the following:

- Income (Loss) from Operations   ($466,137.00)
- Other Income                    $ 357,056.00
- Net Income (Loss)               ($109,081.00)

26. Thus, the difference between the above-referenced line items in the 1997 Audit Report and in the Restated report shows that CCI's profit of $706,879.00 was actually a ***loss*** of $109,081.00.

27. Similarly, the 1998 Audit Report prepared by Brown Schultz showed the following:

- Loss from Operations            ($116,629.00)
- Other Income                    $ 175,670.00
- Net Income (Loss)               $ 59,041.00

28. As restated, however, the foregoing line items reveal the following:

- Income (Loss) from Operations   ($ 3,238,137.00)
- Other Income                    $   175,670.00
- Net Income (Loss)               ($ 3,067,467.00)

29. The difference between the 1998 Audit Report and the restated report for 1998 shows that CCI's profit of $59,041.00 was actually a ***loss*** of $3,067,467.00.

Signed under the pains and penalties of perjury this 8th day of October, 2002.

Stephen J. DeBruyn, CPA

#254700 v1/36432/87

# EXHIBIT A

# CURRICULUM VITAE

**STEPHEN J. DEBRUYN, CPA**

| | |
|---|---|
| **POSITION** | **Partner** |
| **EDUCATION** | B.S. in Accounting<br>Southern Illinois University, 1982 |
| **PROFESSIONAL DESIGNATIONS** | Certified Public Accountant, 1984<br>American Institute of Certified Public Accountants<br>Illinois CPA Society |
| **LICENSES** | Licensed CPA - Illinois |
| **YEARS OF EXPERIENCE** | 20 |
| **PRIOR EXPERIENCE** | 7 years with audit staff of large regional firm. Promoted to manager in 1986, joined Clifton Gunderson June, 1989, promoted to Partner in 1993. |
| **SUPERVISORY EXPERIENCE** | Partner in charge of various audit, review and compilation engagements servicing manufacturers, contractor, retail and wholesale industries as well as employee benefit plans.<br><br>Supervision of staff on multiple concurrent engagements. |
| **AREAS OF SPECIALIZATION** | Firm-wide Construction Industry Group Leader<br><br>Audit, accounting and consulting services for various industries and employee benefit plans.<br><br>Corporate finance; merger and acquisition services.<br><br>Peer reviews and internal inspection programs.<br><br>Consulting services in connection with prospective financial statements, executive search, interpretation of financial results, succession of ownership and business valuations. |

**Stephen J. DeBruyn** (continued)

Income tax planning and preparation for corporations, S-corporations, partnerships and L.L.C.s.

**OTHER SIGNIFICANT EXPERIENCES IN PUBLIC ACCOUNTING**

Advanced training through experience with previous employer in areas of audit efficiencies, documentation of accounting systems in manual or automated environments.

Speaker at annual audit and accounting conference.

Selected to the firms Leadership Career Program class of 1994.

1997 Clifton Gunderson Outstanding Performance Award.

**PUBLICATIONS**

Speaker at the Clifton Gunderson Annual Audit & Accounting Conference.  Sessions on Construction Contractors.
> October, 2000
> October, 1999
> October, 1998

<u>Improved Software Keeps Construction Companies Ahead of Competitors</u>, Clifton Gunderson LLP Relationships Magazine, Issue 6 Summer 2002.

**PREVIOUS TRIAL EXPERIENCE**

IN RE:  Marriage of Lawrence Edward Kuchefski, Petitioner and Sherri Marie Kuchefski, Respondent, Cause #99D284 Circuit Court for the 5th Judicial Circuit of Illinois located in Danville, Illinois, March 2002.

B

# EXHIBIT B-1

EXHIBIT B-1

**CCI CONSTRUCTION COMPANY, INC.**

CONTRACTS-IN-PROGRESS

DECEMBER 31, 1997

| Job number | Project | Total contract price | Estimated total direct contract costs | Estimated total contract earnings (loss) before indirect costs | Inception to December 31, 1997 — Direct contract costs to December 31, 1997 | Inception to December 31, 1997 — Contract earnings (loss) accrued to December 31, 1997 before indirect costs | Inception to December 31, 1997 — Billings to December 31, 1997 | December 31, 1997 — Costs and estimated earnings in excess of billings | December 31, 1997 — Billings in excess of costs and estimated earnings | Year ended December 31, 1997 — Revenues earned | Year ended December 31, 1997 — Direct cost of revenues earned | Year ended December 31, 1997 — Gross profit (loss) before indirect costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 426 | U.E.P.H. Complex | $ 18,961,022 | $ 16,948,701 | $ 2,012,321 | $ 15,878,479 | $ 1,885,254 | 16,899,942 | $ 863,791 | | $ 17,256,553 | $ 15,422,131 | $ 1,834,422 |
| 439 | Mahanoy Prison | 10,289,145 | 10,523,764 | ( 234,619) | 6,308,222 | ( 234,619) | 6,337,295 | | $ 262,692 | 6,074,603 | 6,309,222 | ( 234,619) |
| 445 | Houtzdale Prison | 10,357,787 | 10,440,743 | ( 82,956) | 4,169,371 | ( 82,956) | 4,348,670 | | 263,255 | 4,086,415 | 4,169,371 | ( 82,956) |
| 448 | Outlook Pointe | 4,604,000 | 4,328,590 | 275,410 | 521,254 | 33,165 | 509,198 | 45,221 | | 554,419 | 521,254 | 33,165 |
| 449 | U.E.P.H. Headquarters | 1,387,666 | 1,374,859 | 12,807 | 515,339 | 4,800 | 473,383 | 46,756 | | 520,139 | 515,339 | 4,800 |
| 450 | Johnstown | 3,266,600 | 3,237,111 | 29,489 | 115,461 | 1,052 | | 116,513 | | 116,513 | 115,461 | 1,052 |
| 451 | Lord Fairfax | 6,880,993 | 6,391,785 | 489,208 | 411,608 | 31,503 | 599,088 | | 155,977 | 443,111 | 411,608 | 31,503 |
| | | $ 55,747,213 | $ 53,245,553 | $ 2,501,660 | $ 27,920,734 | $ 1,638,199 | $ 29,168,576 | $ 1,072,281 | $ 681,924 | $ 29,051,753 | $ 27,464,386 | $ 1,587,367 |

17

# EXHIBIT B-2

EXHIBIT B-2

## SCHEDULE OF CONTRACTS IN PROGRESS - REVISED
### 31-Dec-97

| Job # | | Job Name | Cost Incurred to Date | Estimated Cost to Complete | Total Estimated Cost | Percent Complete | Contract Price | Estimated Total Gross Earnings | Earnings Recog. | Cost and Earnings | Billings To Date | Excess Cost and Earnings Over Billings | Excess Billings Over Cost and Earnings | GP % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 426 | 6> | | $ 15,878,479 | $ 1,430,469 | $ 17,308,948 | 91.74% | $ 18,961,022 | $ 1,652,074 | $ 1,515,541 | $ 17,394,020 | $ 16,899,942 | $ 494,078 | $ - | 8.71% |
| 439 | 4> | | $ 6,309,222 | $ 4,214,516 | $ 10,523,738 | 59.95% | $ 10,289,145 | $ (234,593) | $ (234,593) | $ 6,074,629 | $ 6,337,295 | $ - | $ 262,666 | -2.28% |
| 445 | 6> | | $ 4,169,371 | $ 6,624,479 | $ 10,793,850 | 38.63% | $ 10,357,787 | $ (436,063) | $ (436,063) | $ 3,733,308 | $ 4,349,670 | $ - | $ 616,362 | -4.21% |
| 448 | 6> | | $ 521,254 | $ 3,913,779 | $ 4,435,033 | 11.75% | $ 4,604,000 | $ 168,967 | $ 19,859 | $ 541,113 | $ 509,198 | $ 31,915 | $ - | 3.67% |
| 449 | | | $ 515,339 | $ 934,356 | $ 1,449,695 | 35.55% | $ 1,387,666 | $ (62,029) | $ (62,029) | $ 453,310 | $ 473,383 | $ - | $ 20,073 | -4.47% |
| 450 | | | $ 115,461 | $ 3,127,293 | $ 3,242,754 | 3.56% | $ 3,266,600 | $ 23,846 | $ 849 | $ 116,310 | $ - | $ 116,310 | $ - | 0.73% |
| 451 | 5> | | $ 411,608 | $ 6,170,750 | $ 6,582,358 | 6.25% | $ 6,880,993 | $ 298,635 | $ 18,674 | $ 430,282 | $ 599,088 | $ - | $ 168,806 | 4.34% |
| TOTALS | | | $ 27,920,734 | $ 26,415,641 | $ 54,336,375 | 51.38% | $ 55,747,213 | $ 1,410,838 | $ 822,239 | $ 28,742,973 | $ 29,168,576 | $ 642,303 | $ 1,067,906 | |
| | | | | | | 2.53% | | | | | | | | |

Net $ (429,978)    $ (425,603)

Previously reported    $ 1,072,281    $ 681,924

Difference    $ (429,978)    $ (385,982)    $ (815,960)

**Critical Assumptions:**

1> Column C, G & K from the supplemental schedules of the audited statements.

2> Column E calculated from Gross Profit % in column N.

3> Gross Profit %'s are based on actual from schedule prepared as of 12/31/99 with exception of Job's #439 &451 as explained below.

4> Gross Profit % used is the 1997 estimated loss as documented in the workpapers. The job performed better and the income realized in 1998 & 1999.

5> Gross Profit % used was based on clients original estimate as documented in 1997 workpaper file since the job had just started and auditors knowledge of the loss is probably not reasonable.

6> Job completed in 1998

97 WIP REVISED FOR ACTUAL GP%

j102878bgdtalwiwip_revised.xls

# EXHIBIT C-1

**EXHIBIT C-1**

Job #: 426
Job Name: U.E.P.H. Complex
Year Started: 1996

| | Inception | As reported 12/31/96 | As reported 12/31/97 | Recast 12/31/97 | As reported 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|---|
| Original Contract | 16,419,918 | 16,419,918 | 16,419,918 | 16,419,918 | 16,419,918 | 16,419,918 |
| Modifications | | 10,845 | 2,541,104 | 2,541,104 | 2,852,338 | 2,852,338 |
| Contract Amount | 16,419,918 | 16,430,763 | 18,961,022 | 18,961,022 | 19,272,256 | 19,272,256 |
| Estimated Costs | 15,842,225 | 14,783,976 | 16,948,701 | 17,308,948 | 17,479,889 | 17,593,112 |
| Gross Profit | 577,693 | 1,646,787 | 2,012,321 | 1,652,074 | 1,792,367 | 1,679,144 |
| Gross Profit % | 3.52% | 10.02% | 10.61% | 8.71% | 9.30% | 8.71% |
| Percent complete | | 3.08% | 93.69% | 91.74% | 100.00% | 100.00% |

Effect on gross Profit        (369,731)

**Notes:**

The job was recast using the final gross profit percentage of 8.71%. Brown Schultz accepted the gross profit %'s in 1996 and 1997 which were above historical %'s and greater then CCI's original estimate. There was no support in the workpapers to substantiate the increase in gross profit from the clients original estimate. Historical gross profits on contracts for CCI ranged from .16% to 6.46% for the years 1994 - 1998.

**Legend:**

| | |
|---|---|
| Inception | From the 1997 Brown Schultz workpaper file, column labeled "original contract". |
| As reported | From the audited financial statement for the respective year prepared by Brown Schultz. Also agrees with audit workpaper file. |
| Recast | As recast in the expert's revised contracts in progress schedule. |
| Contract | As reported on the schedules prepared by CCI as of 12/31/99. |

# EXHIBIT C-2

**EXHIBIT C-2**

Job #: 439
Job Name: Mahanoy Prison
Year Started: 1997

| | Inception 12/31/96 | As reported 12/31/97 | Recast 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|---|
| Original Contract | 10,066,600 | 10,066,600 | 10,066,600 | 10,066,600 | 10,066,600 | 10,066,600 |
| Modifications | - | 222,545 | 222,545 | 1,632,908 | 470,358 | 721,127 |
| Contract Amount | 10,066,600 | 10,289,145 | 10,289,145 | 11,699,508 | 10,536,958 | 10,787,727 |
| Estimated Costs | 10,107,709 | 10,523,764 | 10,523,738 | 10,667,972 | 10,667,972 | 10,704,600 |
| Gross Profit | (41,109) | (234,619) | (234,593) | 1,031,536 | (131,014) | 83,127 |
| Gross Profit % | -0.41% | -2.28% | -2.28% | 8.82% | -1.24% | 0.77% |
| Percent complete | #DIV/0! | 59.95% | 59.95% | 99.99% | 99.99% | 100.00% |

Effect on gross Profit: 16            (1,162,434)

**Notes:**

For 1997, we used the same amount as estimated CCI management and by Brown Schultz.

For 1998, the difference is in the total contract amount because we did not record the contingent gain of $1,162K.

**Legend:**

| | |
|---|---|
| Inception | From the 1997 Brown Schultz workpaper file, column labeled "original contract". |
| As reported | From the audited financial statement for the respective year prepared by Brown Schultz. Also agrees with audit workpaper file. |
| Recast | As recast in the expert's revised contracts in progress schedule. |
| Contract | As reported on the schedules prepared by CCI as of 12/31/99. |

# EXHIBIT C-3

**EXHIBIT C-3**

| | Inception | As reported | Recast | As reported | Contract |
|---|---|---|---|---|---|
| | 12/31/96 | 12/31/97 | 12/31/97 | 12/31/98 | 12/31/99 |
| **Job #:** 445 | | | | | |
| **Job Name:** Houtzdale Prison | | | | | |
| **Year Started:** 1997 | | | | | |
| Original Contract | 10,286,000 | - | 10,286,000 | 10,286,000 | - |
| Modifications | - | - | 71,787 | 651,202 | - |
| Contract Amount | 10,286,000 | - | 10,357,787 | 10,937,202 | - |
| Estimated Costs | 10,086,304 | - | 10,440,743 | 10,793,850 / 11,397,234 | - |
| Gross Profit | 199,696 | - | (82,956) | (436,063) / (460,032) | - |
| Gross Profit % | 1.94% | #DIV/0! | -0.80% | -4.21% / -4.21% | #DIV/0! |
| Percent complete | | | 39.93% | 38.63% / 100.00% | |

Effect on gross Profit [ (353,107) ]

**Notes:**

The job was estimated as a loss as of 12/31/97. We recast using the total loss on the contract at completion. There was nothing in the workpapers to support that Brown Schultz did any work to determine how significant the loss would be. Once a loss is determined it would have been prudent to challenge management's estimates to determine that the entire loss was accrued at 12/31/97.

**Legend:**

| Inception | From the 1997 Brown Schultz workpaper file, column labeled "original contract". |
|---|---|
| As reported | From the audited financial statement for the respective year prepared by Brown Schultz. |
| | Also agrees with audit workpaper file. |
| Recast | As recast in the experts revised contracts in progress schedule. |
| Contract | As reported on the schedules prepared by CCI as of 12/31/99. |

j:\02878\bgb\aw\contract analysis_1997.xls

# EXHIBIT C-4

Job #: 448
Job Name: Outlook Pointe
Year Started: 1997

|  | Inception | 12/31/96 | As reported 12/31/97 | Recast 12/31/97 | As reported 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|---|
| Original Contract | 4,606,000 |  | 4,606,000 | 4,606,000 | 4,606,000 | 4,606,000 |
| Modifications | - |  | (2,000) | (2,000) | 194,644 | 250,021 |
| Contract Amount | 4,606,000 | - | 4,604,000 | 4,604,000 | 4,800,644 | 4,856,021 |
| Estimated Costs | 4,472,288 | - | 4,328,590 | 4,435,033 | 4,655,443 | 4,677,876 |
| Gross Profit | 133,712 | - | 275,410 | 168,967 | 145,201 | 178,145 |
| Gross Profit % | 2.90% | #DIV/0! | 5.98% | 3.67% | 3.02% | 3.67% |
| Percent complete |  |  | 12.04% | 11.75% | 100.00% | 100.00% |

Effect on gross Profit    (13,306)

**Notes:**

The job was recast using the final gross profit percentage of 3.67%. As of 12/31/97 the job was only 12% complete and the original estimate was 2.90%. Management and Brown Schultz supported the higher gross profit without any additional work.

**Legend:**

| Inception | From the 1997 Brown Schultz workpaper file, column labeled "original contract". |
|---|---|
| As reported | From the audited financial statement for the respective year prepared by Brown Schultz. Also agrees with audit workpaper file. |
| Recast | As recast in the experts revised contracts in progress schedule. |
| Contract | As reported on the schedules prepared by CCI as of 12/31/99. |

**EXHIBIT C-4**

# EXHIBIT C-5

**EXHIBIT C-5**

| | Inception | | As reported | Recast | As reported |
|---|---|---|---|---|---|
| Job #: | 449 | | | | |
| Job Name: | U.E.P.H. Headq. | | | | |
| Year Started: | 1997 | | | | |
| | Inception | 12/31/96 | 12/31/97 | 12/31/97 | 12/31/98 |
| Original Contract | 1,387,666 | - | 1,387,666 | 1,387,666 | 1,387,666 |
| Modifications | - | - | - | - | 68,892 |
| Contract Amount | 1,387,666 | - | 1,387,666 | 1,387,666 | 1,456,558 |
| Estimated Costs | 1,326,311 | - | 1,374,859 | 1,449,695 | 1,521,701 |
| Gross Profit | 61,355 | - | 12,807 | (62,029) | (65,143) |
| Gross Profit % | 4.42% | #DIV/0! | 0.92% | -4.47% | -4.47% |
| Percent complete | | | 37.48% | 35.50% | 100.00% |

Effect on gross Profit (66,829)

**Notes:**

The job was recast using the actual gross profit/(loss) % at completion of the job. Since the job was a loss, the entire loss would have been accrued at 12/31/97. The workpapers of Brown Schultz indicate problems with the job however there is no evidence of additional procedures to determine if a loss was probable.

**Legend:**

| | | |
|---|---|---|
| Inception | From the 1997 Brown Schultz workpaper file, column labeled "original contract". | |
| As reported | From the audited financial statement for the respective year prepared by Brown Schultz. | |
| | Also agrees with audit workpaper file. | |
| Recast | As recast in the expert's revised contracts in progress schedule. | |
| Contract | As reported on the schedules prepared by CCI as of 12/31/99. | |

j:\0287\0\ugp\law\contract analysis,_1997.xls

# EXHIBIT C-6

**EXHIBIT C-6**

Job #: 450
Job Name: Johnstown
Year Started: 1997

| | Inception | 12/31/96 | As reported 12/31/97 | Recast 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|---|---|
| Contract Amount | 3,266,600 | - | 3,266,600 | 3,266,600 | 3,266,600 | 3,266,600 | 3,266,600 |
| Modifications | - | - | - | - | - | - | 465,969 |
| | 3,266,600 | - | 3,266,600 | 3,266,600 | 3,266,600 | 3,266,600 | 3,732,569 |
| Estimated Costs | 3,219,018 | - | 3,237,111 | 3,242,754 | 3,245,082 | 3,242,754 | 3,705,315 |
| Gross Profit | 47,582 | - | 29,489 | 23,846 | 21,518 | 23,846 | 27,254 |
| Gross Profit % | 1.46% | #DIV/0! | 0.90% | 0.73% | 0.66% | 0.73% | 0.73% |
| Percent complete | | - | 3.57% | 3.56% | 36.14% | 36.17% | 100.00% |
| Effect on gross Profit | | | | (204) | | 848 | |

**Notes:**
For both 1997 and 1998 the job was recast using the actual gross profit % at completion of the job.

**Legend:**

| | |
|---|---|
| Inception | From the 1997 Brown Schultz workpaper file, column labeled "original contract". |
| As reported | From the audited financial statement for the respective year prepared by Brown Schultz.<br>Also agrees with audit workpaper file. |
| Recast | As recast in the experts' revised contracts in progress schedule. |
| Contract | As reported on the schedules prepared by CCI as of 12/31/99. |

j:\028\78\bg\law\contract analysis_1997.xls

# EXHIBIT C-7

**EXHIBIT C-7**

**Job #:** 451
**Job Name:** Lord Fairfax
**Year Started:** 1997

| | Inception | 12/31/96 | As reported 12/31/97 | Recast 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|---|---|
| **Contract Amount** | 6,880,993 | | 6,880,993 | 6,880,993 | 6,880,993 | 6,880,993 | 6,880,993 |
| **Modifications** | - | - | - | - | 201,991 | 201,991 | 349,747 |
| | - | | - | - | 7,082,984 | 7,082,984 | 7,230,740 |
| **Estimated Costs** | 6,582,039 | - | 6,391,785 | 6,582,358 | 7,301,111 | 7,821,739 | 7,984,882 |
| **Gross Profit** | 298,954 | - | 489,208 | 298,635 | (218,127) | (738,755) | (754,142) |
| **Gross Profit %** | 4.34% | #DIV/0! | 7.11% | 4.34% | -3.08% | -10.43% | -10.43% |
| **Percent complete** | - | | 6.44% | 6.25% | 91.22% | 36.17% | 99.73% |

| Effect on gross Profit | | |
|---|---|---|
| (12,840) | (520,628) | |

**Notes:**

For 1997 we recast using CCI's original gross profit estimate of 4.34%. We used this because the job was just started and it would have been difficult to determine the entire loss. However, there was also no justification to increase the GP% to the 7.11% accepted by Brown Schultz based on the job just starting and the historical gross profit on contracts for CCI.

For 1998, we recast using the actual gross profit(loss) incurred at job completion. The 1998 year showed a loss but there was no evidence to support that Brown Schultz extended audit procedures to determined the magnitude of the loss.

**Legend:**

| | |
|---|---|
| Inception | From the 1997 Brown Schultz workpaper file, column labeled "original contract". |
| As reported | From the audited financial statement for the respective year prepared by Brown Schultz. Also agrees with audit workpaper file. |
| Recast | As recast in the expert's revised contracts in progress schedule. |
| Contract | As reported on the schedules prepared by CCI as of 12/31/99. |

# EXHIBIT D-1

Case 1:01-cv-00813-CCC    Document 63    Filed 10/10/2002    Page 18 of 72

## CCI CONSTRUCTION COMPANY, INC.

### CONTRACTS-IN-PROGRESS

### DECEMBER 31, 1998

| Job number | Project | Total contract price | Estimated total direct contract costs | Estimated total contract earnings (loss) before indirect costs | Inception to December 31, 1998 — Direct contract costs to December 31, 1998 | Inception to December 31, 1998 — Contract earnings (loss) before indirect costs | Inception to December 31, 1998 — Billings to December 31, 1998 | December 31, 1998 — Costs and estimated earnings in excess of billings | December 31, 1998 — Billings in excess of costs and estimated earnings | Year ended December 31, 1998 — Revenues earned | Year ended December 31, 1998 — Direct cost of revenues earned | Year ended December 31, 1998 — Gross profit (loss) before indirect costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 439 | Mahanoy Prison | $ 11,699,418 | $ 10,667,972 | $ 1,031,446 | $ 10,666,808 | $ 1,031,333 | $ 10,481,740 | $ 1,216,401 | | $ 5,623,543 | $ 4,357,586 | $ 1,265,957 |
| 450 | Johnstown | 3,266,600 | 3,245,082 | 21,518 | 1,172,766 | 7,776 | 730,724 | 449,818 | | 1,064,029 | 1,057,305 | 6,724 |
| 451 | Lord Fairfax | 7,082,984 | 7,301,111 | ( 218,127) | 6,659,984 | ( 218,127) | 6,570,468 | | $ 128,611 | 5,998,746 | 6,248,376 | ( 249,630) |
| 455 | Albemarle Prison | 14,524,840 | 12,875,751 | 1,649,089 | 4,819,694 | 617,292 | 4,719,426 | 717,560 | | 5,436,986 | 4,819,694 | 617,292 |
| 456 | Perry Point | 12,937,341 | 11,463,840 | 1,473,501 | 4,734,492 | 608,547 | 3,108,536 | 2,234,503 | | 5,343,039 | 4,734,492 | 608,547 |
| 458 | Outlook - Hilliard | 5,380,745 | 4,801,310 | 579,435 | 2,715,193 | 327,677 | 2,732,602 | 310,268 | | 3,042,870 | 2,715,193 | 327,677 |
| 457 | Camp Hill | 1,495,629 | 1,372,273 | 123,356 | 547,295 | 49,197 | 617,799 | | 21,307 | 596,492 | 547,295 | 49,197 |
| 459 | Scott Air Force Base | 14,870,150 | 13,929,350 | 940,800 | 6,026,575 | 407,040 | 6,571,905 | | 138,290 | 6,433,615 | 6,026,575 | 407,040 |
| 460 | Genn Plasma Center | 15,556,000 | 14,667,024 | 897,976 | 2,905,995 | 177,917 | 2,252,156 | 831,756 | | 3,083,912 | 2,905,995 | 177,917 |
| 461 | Outlook - Chesterfield | 3,842,372 | 3,629,824 | 212,548 | 1,518,251 | 88,902 | 1,097,444 | 509,709 | | 1,607,153 | 1,518,251 | 88,902 |
| 462 | Outlook - Westerville | 5,589,900 | 5,218,140 | 371,760 | 458,553 | 32,669 | 419,511 | 71,711 | | 491,222 | 458,553 | 32,669 |
| | | $ 96,254,979 | $ 89,171,677 | $ 7,083,302 | $ 42,225,608 | $ 3,130,223 | $ 39,302,311 | $ 6,341,726 | $ 288,208 | $ 38,721,607 | $ 35,389,315 | $ 3,332,292 |

# EXHIBIT D-2

EXHIBIT D-2

## SCHEDULE OF CONTRACTS IN PROGRESS - REVISED
### 31-Dec-98

| Job # | Job Name | Cost Incurred to Date | Estimated Cost to Complete | Total Estimated Cost | Percent Complete | Contract Price | Estimated Total Gross Earnings | Earnings Recog. | Cost and Earnings | Billings To Date | Excess Cost and Earnings Over Billings | Excess Billings Over Cost and Earnings | GP % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 439 | 4> | $ 10,666,808 | $ 1,164 | $ 10,667,972 | 99.99% | $ 10,536,958 | $ (131,014) | $ (131,014) | $ 10,535,794 | $ 10,481,740 | $ 54,054 | $ - | -1.24% |
| 450 | | $ 1,172,766 | $ 2,069,988 | $ 3,242,754 | 36.17% | $ 3,266,600 | $ 23,846 | $ 8,624 | $ 1,181,390 | $ 730,724 | $ 450,666 | $ - | 0.73% |
| 451 | | $ 6,659,984 | $ 1,161,755 | $ 7,821,739 | 85.15% | $ 7,082,984 | $ (738,755) | $ (738,755) | $ 5,921,229 | $ 6,570,468 | $ - | $ 649,239 | -10.43% |
| 454 | | $ 4,819,694 | $ 10,662,333 | $ 15,482,027 | 31.13% | $ 14,524,840 | $ (957,187) | $ (957,187) | $ 3,862,507 | $ 4,719,426 | $ - | $ 856,919 | -6.59% |
| 455 | | $ 4,734,492 | $ 7,222,199 | $ 11,956,691 | 39.60% | $ 12,937,341 | $ 980,650 | $ 388,308 | $ 5,122,800 | $ 3,108,536 | $ 2,014,264 | $ - | 7.58% |
| 456 | | $ 2,715,193 | $ 2,166,757 | $ 4,881,950 | 55.62% | $ 5,380,745 | $ 498,795 | $ 277,415 | $ 2,992,608 | $ 2,732,602 | $ 260,006 | $ - | 9.27% |
| 457 | | $ 547,295 | $ 898,978 | $ 1,446,273 | 37.84% | $ 1,495,629 | $ 49,356 | $ 18,677 | $ 565,972 | $ 617,799 | $ - | $ 51,827 | 3.30% |
| 459 | | $ 6,026,575 | $ 8,247,282 | $ 14,273,857 | 42.22% | $ 14,870,150 | $ 596,293 | $ 251,761 | $ 6,278,336 | $ 6,571,905 | $ - | $ 293,569 | 4.01% |
| 460 | | $ 2,905,995 | $ 12,433,313 | $ 15,339,308 | 18.94% | $ 15,565,000 | $ 225,693 | $ 42,757 | $ 2,948,752 | $ 2,252,156 | $ 696,596 | $ - | 1.45% |
| 461 | | $ 1,518,251 | $ 2,274,170 | $ 3,792,421 | 40.03% | $ 3,842,372 | $ 49,951 | $ 19,997 | $ 1,538,248 | $ 1,097,444 | $ 440,804 | $ - | 1.30% |
| 462 | | $ 458,553 | $ 5,045,263 | $ 5,503,816 | 8.33% | $ 5,589,900 | $ 86,084 | $ 7,172 | $ 465,725 | $ 419,511 | $ 46,214 | $ - | 1.54% |
| TOTALS | | $ 42,225,606 | $ 52,183,201 | $ 94,408,807 | 44.73% | $ 95,092,519 | $ 683,712 | $ (812,244) | $ 41,413,362 | $ 39,302,311 | $ 3,962,604 | $ 1,851,554 | 0.72% |

| | Previously reported | Difference | Net |
|---|---|---|---|
| | $ 6,341,726 | $ (2,379,122) | $ 2,111,051 |
| | $ 288,208 | $ (1,563,346) | $ (3,942,467) |

*Critical Assumptions:*

1> Column C, G & K from the supplemental schedules of the audited statements.

2> Column E calculated from Gross Profit % in column N.

3> Gross Profit % are based on actual from schedule prepared as of 12/31/99 with exception of Job #439  as explained below.

4> Gross Profit % is the 1998 amount based on total estimated cost to date and contract income reduced for $1,162,460 in revenue recorded by the auditor incorrectly.  A claim amount was recived and recognized in 1999



# EXHIBIT E-1

EXHIBIT E-1

Job #: 439
Job Name: Mahanoy Prison
Year Started: 1997

| | Inception | 12/31/96 | As reported 12/31/97 | Recast 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|---|---|
| **Original Contract** | 10,066,600 | - | 10,066,600 | 10,066,600 | 10,066,600 | 10,066,600 | 10,066,600 |
| **Modifications** | | - | 222,545 | 222,545 | 1,632,908 | 470,358 | 721,127 |
| **Contract Amount** | 10,066,600 | - | 10,289,145 | 10,289,145 | 11,699,508 | 10,536,958 | 10,787,727 |
| **Estimated Costs** | 10,107,709 | - | 10,523,764 | 10,523,738 | 10,667,972 | 10,667,972 | 10,704,600 |
| **Gross Profit** | (41,109) | - | (234,619) | (234,593) | 1,031,536 | (131,014) | 83,127 |
| **Gross Profit %** | -0.41% | #DIV/0! | -2.28% | -2.28% | 8.82% | -1.24% | 0.77% |
| **Percent complete** | | | 59.95% | 59.95% | 99.99% | 99.99% | 100.00% |

16  | Effect on gross Profit | (1,162,434)

**Notes:**
For 1997 we used the same amount as estimated by Brown Schultz since they were estimating a loss with the best information available at that time.
For 1998, the difference is in the total contract amount because we did not record the contingent gain of $1,162K.

**Legend:**

| | |
|---|---|
| Inception | From the 1997 Brown Schultz workpaper file, column labeled "original contract" |
| As reported | From the audited financial statement for the respective year prepared by Brown Schultz. |
| | Also agrees with audit wokpaper file. |
| Recast | As recast in the expert's revised contracts in progress schedule. |
| Contract | As reported on the schedules prepared by CCI as of 12/31/99. |

j:\02878\bigblaw\contract analysis_1998.xls

# EXHIBIT E-2

**EXHIBIT E-2**

Job #:              450
Job Name:       Johnstown
Year Started:   1997

| | Inception | 12/31/96 | As reported 12/31/97 | Recast 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|---|---|
| | 3,266,600 | - | 3,266,600 | 3,266,600 | 3,266,600 | 3,266,600 | 3,266,600 |
| Modifications | | - | - | - | - | - | 465,969 |
| Contract Amount | 3,266,600 | - | 3,266,600 | 3,266,600 | 3,266,600 | 3,266,600 | 3,732,569 |
| Estimated Costs | 3,219,018 | - | 3,237,111 | 3,242,754 | 3,245,082 | 3,242,754 | 3,705,315 |
| Gross Profit | 47,582 | - | 29,489 | 23,846 | 21,518 | 23,846 | 27,254 |
| Gross Profit % | 1.46% | #DIV/0! | 0.90% | 0.73% | 0.66% | 0.73% | 0.73% |
| Percent complete | | | 3.57% | 3.56% | 36.14% | 36.17% | 100.00% |

(204) Effect on gross Profit                                  848

**Notes:**
For both 1997 and 1998 the job was recast using the actual gross profit % at completion of the job.

j:\02878\bgtlaw\contract analysis_1998.xls

# EXHIBIT E-3

EXHIBIT E-3

Job #: 451
Job Name: Lord Fairfax
Year Started: 1997

| | Inception | 12/31/96 | As reported 12/31/97 | Recast 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|---|---|
| | 6,880,993 | - | 6,880,993 | 6,880,993 | 6,880,993 | 6,880,993 | 6,880,993 |
| **Modifications** | - | - | - | - | 201,991 | 201,991 | 349,747 |
| Contract Amount | 6,880,993 | - | 6,880,993 | 6,880,993 | 7,082,984 | 7,082,984 | 7,230,740 |
| Estimated Costs | 6,582,039 | - | 6,391,785 | 6,582,358 | 7,301,111 | 7,821,739 | 7,984,882 |
| Gross Profit | 298,954 | - | 489,208 | 298,635 | (218,127) | (738,755) | (754,142) |
| Gross Profit % | 4.34% | #DIV/0! | 7.11% | 4.34% | -3.08% | -10.43% | -10.43% |
| Percent complete | | | 6.44% | 6.25% | 91.22% | 36.17% | 99.73% |

(12,840) Effect on gross Profit     (520,628)

**Notes:**
For 1997, we recast using CCI's original gross profit estimate of 4.34%. We used this because the job was just started and it would have been difficult to determine the entire loss. However, there was also no justification to increase the GP% to the 7.11% accepted by Brown Schultz based on the job just starting and the historical gross profit on contracts for CCI.

For 1998, we recast using the actual gross profit/(loss) incurred at job completion. The 1998 year showed a loss but there was no evidence to support that Brown Schultz extended audit procedures to determined the magnitude of the loss.

j:\02878\bgblew\contract analysis_1998.xls

# EXHIBIT E-4

**EXHIBIT E-4**

Job #: 454
Job Name: Abermarle Prison
Year Started: 1998

| | Inception | 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|
| **Original Contract** | 13,335,600 | - | 13,335,600 | 13,335,600 | 13,335,600 |
| **Modifications** | | - | 1,189,240 | 1,189,240 | 1,247,317 |
| **Contract Amount** | 13,335,600 | - | 14,524,840 | 14,524,840 | 14,582,917 |
| | | | | | |
| **Estimated Costs** | 12,451,265 | - | 12,875,751 | 15,482,027 | 15,544,471 |
| | | | | | |
| **Gross Profit** | 884,335 | - | 1,649,089 | (957,187) | (961,554) |
| | | | | | |
| **Gross Profit %** | 6.63% | #DIV/0! | 11.35% | -6.59% | -6.59% |
| | | | | | |
| **Percent complete** | | | 37.43% | 31.13% | 81.58% |

Effect on gross Profit (1,574,441)

**Notes:**
The job was recast using the actual gross profit/(loss) % at 12/31/99. The 11.35% profit margin was grater then any of the four previous years. In addition, the contract modification of $1,189, 240 only increased cost to complete by $424,486 (or 64.6% margin). In addition, Brown Schultz workpapers identified a problem with the delsign and the architect on the job, but still accepted a significantly higher gross profit.
Even if Brown Schultz would have used the original gross profit of 6.63%, the effect on the 1998 profit would have been a decrease of approximately $275,000.

j:\02878\bgblaw\contract analysis_1998.xls

# EXHIBIT E-5

**EXHIBIT E-5**

Job #: 455
Job Name: Perry Point
Year Started: 1998

| | Inception | 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|
| Original Contract | 12,769,663 | - | 12,769,663 | 12,769,663 | 12,769,663 |
| Modifications | | - | 167,678 | 167,678 | 229,991 |
| Contract Amount | 12,769,663 | - | 12,937,341 | 12,937,341 | 12,999,654 |
| | | | | | |
| Estimated Costs | 11,609,351 | - | 11,463,840 | 11,956,691 | 12,013,954 |
| | | | | | |
| Gross Profit | 1,160,312 | - | 1,473,501 | 980,650 | 985,700 |
| | | | | | |
| Gross Profit % | 9.09% | #DIV/0! | 11.39% | 7.58% | 7.58% |
| | | | | | |
| Percent complete | | | 41.30% | 39.60% | 93.34% |

Effect on gross Profit    (220,219)

**Notes:**
The job was recast using the actual gross profit/(loss) % at 12/31/99.  The 11.39% profit margin was
in excess of historical amounts and original estimates.

j:\02878\bgblaw\contract analysis_1998.xls

# EXHIBIT E-6

**EXHIBIT E-6**

Job #: 456
Job Name: Outlook Hilliard
Year Started: 1998

| | Inception | 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|
| Original Contract | 5,235,000 | - | 5,235,000 | 5,235,000 | 5,235,000 |
| Modifications | | - | 145,745 | 145,745 | 365,748 |
| Contract Amount | 5,235,000 | - | 5,380,745 | 5,380,745 | 5,600,748 |
| Estimated Costs | 4,660,341 | - | 4,801,310 | 4,881,950 | 5,081,715 |
| Gross Profit | 574,659 | - | 579,435 | 498,795 | 519,033 |
| Gross Profit % | 10.98% | #DIV/0! | 10.77% | 9.27% | 9.27% |
| Percent complete | | | 56.55% | 55.62% | 100.00% |

Effect on gross Profit    (50,241)

**Notes:**
The job was recast using the actual gross profit/(loss) % at 12/31/99.

j:\02878\bg\law\contract analysis_1998.xls

# EXHIBIT E-7

**EXHIBIT E-7**

| Job #: | 457 |
| Job Name: | Camp Hill |
| Year Started: | 1998 |

| | Inception | 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|
| **Original Contract** | n/a | - | 1,495,629 | 1,495,629 | 1,495,629 |
| **Modifications** | | - | - | - | - |
| **Contract Amount** | - | - | 1,495,629 | 1,495,629 | 1,495,629 |
| **Estimated Costs** | n/a | - | 1,372,273 | 1,446,273 | 1,446,265 |
| **Gross Profit** | #VALUE! | - | 123,356 | 49,356 | 49,364 |
| **Gross Profit %** | #VALUE! | #DIV/0! | 8.25% | 3.30% | 3.30% |
| **Percent complete** | | | 39.88% | 37.84% | 100.00% |

Effect on gross Profit ⎜ (30,518)

**Notes:**
The job was recast using the actual gross profit/(loss) % at completion of the job.

j:\02878\bg\law\contract analysis_1998.xls

# EXHIBIT E-8

**EXHIBIT E-8**

| Job #: | 459 |
| Job Name: | Scott AFB |
| Year Started: | 1998 |

| | Inception | 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|
| **Original Contract** | 13,698,278 | - | 13,698,278 | 13,698,278 | 13,698,278 |
| **Modifications** | - | - | - | - | 6,073,737 |
| **Contract Amount** | 13,698,278 | - | 14,870,150 | 14,870,150 | 19,772,015 |
| **Estimated Costs** | 12,680,694 | - | 13,929,350 | 14,273,857 | 18,979,483 |
| **Gross Profit** | 1,017,584 | - | 940,800 | 596,293 | 792,532 |
| **Gross Profit %** | 7.43% | #DIV/0! | 6.33% | 4.01% | 4.01% |
| **Percent complete** | | | 43.27% | 42.22% | 98.53% |

Effect on gross Profit (155,329)

Notes:
The job was recast using the actual gross profit/(loss) % at 12/31/99.

j:\02878\bgblaw\contract analysis_1998.xls

# EXHIBIT E-9

**EXHIBIT E-9**

| Job #: | 460 |
| Job Name: | Germ Plasma |
| Year Started: | 1998 |

| | Inception | 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|
| **Original Contract** | 15,500,000 | - | 15,500,000 | 15,500,000 | 15,500,000 |
| **Modifications** | - | - | 65,000 | 65,000 | 655,581 |
| **Contract Amount** | 15,500,000 | - | 15,565,000 | 15,565,000 | 16,155,581 |
| **Estimated Costs** | 15,068,940 | - | 14,667,024 | 15,339,308 | 15,922,012 |
| **Gross Profit** | 431,060 | - | 897,976 | 225,692 | 233,569 |
| **Gross Profit %** | 2.78% | #DIV/0! | 5.77% | 1.45% | 1.45% |
| **Percent complete** | | | 19.81% | 18.94% | 61.87% |

Effect on gross Profit    (135,143)

Notes:
The job was recast using the actual gross profit/(loss) % at 12/31/99.

j:\02878\bg\blaw\contract analysis_1998.xls

# EXHIBIT E-10

**EXHIBIT E-10**

Job #: | 461
Job Name: | Outlook-Chester
Year Started: | 1998

| | Inception | 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|
| **Original Contract** | 3,850,000 | - | 3,850,000 | 3,850,000 | 3,850,000 |
| **Modifications** | - | - | (7,628) | (7,628) | 265,065 |
| **Contract Amount** | 3,850,000 | - | 3,842,372 | 3,842,372 | 4,115,065 |
| **Estimated Costs** | 3,609,612 | - | 3,629,824 | 3,792,421 | 4,061,553 |
| **Gross Profit** | 240,388 | - | 212,548 | 49,951 | 53,512 |
| **Gross Profit %** | 6.24% | #DIV/0! | 5.53% | 1.30% | 1.30% |
| **Percent complete** | | | 41.83% | 40.03% | 97.01% |

Effect on gross Profit | (68,913)

Notes:
The job was recast using the actual gross profit/(loss) % at 12/31/99.

j:\02878\bgplaw\contract analysis_1998.xls

# EXHIBIT E-11

EXHIBIT E-11

| | | 462 |
|---|---|---|
| **Job #:** | | Outlook-Westerville |
| **Job Name:** | | 1998 |
| **Year Started:** | | |

| | Inception | 12/31/97 | As reported 12/31/98 | Recast 12/31/98 | Contract 12/31/99 |
|---|---|---|---|---|---|
| **Original Contract** | 5,589,900 | - | 5,589,900 | 5,589,900 | 5,589,900 |
| **Modifications** | - | - | - | - | 178,095 |
| **Contract Amount** | 5,589,900 | - | 5,589,900 | 5,589,900 | 5,767,995 |
| **Estimated Costs** | 5,213,830 | - | 5,218,140 | 5,503,816 | 5,679,439 |
| **Gross Profit** | 376,070 | - | 371,760 | 86,084 | 88,556 |
| **Gross Profit %** | 6.73% | #DIV/0! | 6.65% | 1.54% | 1.54% |
| **Percent complete** | | | 8.79% | 8.33% | 63.42% |

Effect on gross Profit:   (25,507)

**Notes:**
The job was recast using the actual gross profit/(loss) % at 12/31/99.

j\02878\bgplaw\contract analysis_1998.xls

# EXHIBIT F-1

EXHIBIT F-1

## CCI CONSTRUCTION COMPANY, INC.
## BALANCE SHEET – DECEMBER 31, 1997

### ASSETS

| | As Reported | Adjustments | As Restated |
|---|---|---|---|
| Current assets: | | | |
| Cash and cash equivalents | $ 1,128,337 | $ - | $ 1,128,337 |
| Investments in marketable securities | 3,702,992 | - | 3,702,992 |
| Accounts receivable, trade: | | | |
| Customers: | | | |
| Current | 8,230,674 | - | 8,230,674 |
| Retained | 1,121,610 | - | 1,121,610 |
| Shareholder | - | - | - |
| Affiliates | 3,485 | - | 3,485 |
| Note receivable | 22,569 | - | 22,569 |
| Costs and estimated earnings in excess of billings on uncompleted contracts | 1,072,281 | (429,978) | 642,303 |
| Prepaid expenses | 6,185 | - | 6,185 |
| Shop inventory | 639 | - | 639 |
| Total current assets | 15,288,772 | (429,978) | 14,858,794 |
| Property and equipment: | | | |
| Automobiles and trucks | 427,342 | - | 427,342 |
| Furniture | 553,587 | - | 553,587 |
| Machinery and equipment | 1,323,233 | - | 1,323,233 |
| Other | 72,453 | - | |
| | 2,376,615 | - | 2,376,615 |
| Less accumulated depreciation | 920,919 | - | 920,919 |
| | 1,455,696 | - | 1,455,696 |
| | $ 16,744,468 | $ (429,978) | $ 16,314,490 |

NOTE: Adjustments per "Contracts in Progress – Revised" schedule.

## LIABILITIES AND SHAREHOLDER'S EQUITY

|  | As Reported | Adjustments | As Restated |
|---|---|---|---|
| Current liabilities: |  |  |  |
|   Accounts payable, trade: |  |  |  |
|     Vendors: |  |  |  |
|       Current | $ 7,846,395 | $ - | $ 7,846,395 |
|       Retained | 1,078,950 | - | 1,078,950 |
|   Notes payable | 815,781 | - | 815,781 |
|   Accrued loss on jobs | - | 732,685 | 732,685 |
|   Accrued expenses | 808,601 | - | 808,601 |
|   Taxes withheld and accrued | 58,023 | - | 58,023 |
|   Billings in excess of costs and estimated |  |  |  |
|     earnings on uncompleted contracts | 681,924 | (346,703) | 335,221 |
|     Total current liabilities (all current) | 11,278,674 | 385,982 | 11,675,656 |
|  |  |  |  |
| Shareholder's equity: |  |  |  |
|   Common stock, $1 par, 1,000 shares authorized; |  |  |  |
|     39 shares issued and outstanding | 39 | - | 39 |
|   Capital in excess of par | 9,758 | - | 9,758 |
|   Retained earnings | 5,208,489 | (815,960) | 4,392,529 |
|   Unrealized gain on marketable securities | 236,508 | - | 236,508 |
|  | 5,454,794 | (815,960) | 4,638,834 |
|  | $ 16,744,468 | $ (429,978) | $ 16,314,490 |

NOTE:  Adjustments per "Contracts in Progress – Revised" schedule.

EXHIBIT F-1

**CCI CONSTRUCTION COMPANY, INC.**
**STATEMENT OF INCOME**
**Year Ended December 31, 1997**

|  | Original | Adjustments | As Restated |
|---|---|---|---|
| Revenue | $ 34,921,676 | $ (815,960) | $34,105,716 |
| Cost of contracts | 32,617,473 | = | 32,617,473 |
| Gross profit | 2,304,203 | (815,960) | 1,488,243 |
| General and administrative expenses | 1,954,380 | = | 1,954,380 |
| Income from operations | 349,823 | (815,960) | (466,137) |
| Other income | 357,056 | = | 357,056 |
| Net income (loss) | $ 706,879 | $ (815,960) | $ (109,081) |

NOTE:  Adjustments per "Contracts in Progress – Revised" schedule.

# EXHIBIT F-2

# CCI CONSTRUCTION COMPANY, INC.
## BALANCE SHEET – DECEMBER 31, 1998

### ASSETS

| | As Reported | Adjustments | As Restated |
|---|---|---|---|
| Current assets: | | | |
| Cash and cash equivalents | $ 2,429,866 | $ - | $ 2,429,866 |
| Investments in marketable securities | 631,481 | - | 631,481 |
| Accounts receivable, trade: | | | |
| Customers: | | | |
| Current | 5,964,311 | - | 5,964,311 |
| Retained | 1,822,224 | - | 1,822,224 |
| Affiliates | 365,756 | - | 365,756 |
| Costs and estimated earnings in excess of billings on uncompleted contracts | 6,341,726 | (2,379,122) | 3,962,604 |
| Prepaid expenses | 170,232 | - | 170,232 |
| Shop inventory | 38,161 | - | 38,161 |
| Total current assets | 17,763,757 | (2,379,122) | 15,384,635 |
| Property and equipment: | | | |
| Automobiles and trucks | 1,269,567 | - | 1,269,567 |
| Furniture | 851,738 | - | 851,738 |
| Machinery and equipment | 5,947,290 | - | 5,947,290 |
| Other | 344,128 | - | 344,128 |
| | 8,412,723 | - | 8,412,723 |
| Less accumulated depreciation | 1,651,485 | - | 1,651,485 |
| | 6,761,238 | - | 6,761,238 |
| Other assets: | | | |
| Cash surrender value of officer's life insurance | 55,453 | - | 55,453 |
| Investments | 34,000 | - | 34,000 |
| | 89,453 | - | 89,453 |
| | $ 24,614,448 | $(2,379,122) | $ 22,235,326 |

NOTE:  Adjustments per "Contracts in Progress – Revised" schedule.

### LIABILITIES AND SHAREHOLDER'S EQUITY

|  | As Reported | Adjustments | As Restated |
|---|---|---|---|
| Current liabilities: |  |  |  |
|   Accounts payable, trade: |  |  |  |
|     Current | $ 10,974,274 | $ - | $ 10,974,274 |
|     Retained | 2,180,967 | - | 2,180,967 |
|   Current portion of long-term debt | 1,338,280 | - | 1,338,280 |
|   Accrued loss on jobs | - | 1,826,956 | 1,826,956 |
|   Accrued expenses | 333,060 | - | 333,060 |
|   Taxes withheld and accrued | 91,601 | - | 91,601 |
|   Billings in excess of costs and estimated earnings |  |  |  |
|     on uncompleted contracts | 288,208 | (263,610) | 24,598 |
|     Total current liabilities | 15,206,390 | 1,563,346 | 16,769,736 |
| Long-term debt, net of current portion | 4,164,375 | - | 4,164,375 |
|     Total liabilities | 19,370,765 | 1,563,346 | 20,934,111 |
| Shareholder's equity: |  |  |  |
|   Common stock, $1 par, 1,000 shares authorized; |  |  |  |
|     39 shares issued and outstanding | 39 | - | 39 |
|   Capital in excess of par | 9,758 | - | 9,758 |
|   Retained earnings | 5,254,834 | (3,942,468) | 1,312,366 |
|   Accumulated other comprehensive income (loss), |  |  |  |
|     unrealized gain (loss) on marketable |  |  |  |
|     securities | (20,948) | - | (20,948) |
|  | 5,243,683 | (3,942,468) | 1,301,215 |
|  | $ 24,614,448 | $(2,379,122) | $ 22,235,326 |

NOTE:  Adjustments per "Contracts in Progress – Revised" schedule.

EXHIBIT F-2

**CCI CONSTRUCTION COMPANY, INC.**
**STATEMENT OF INCOME**
**Year Ended December 31, 1998**

|  | Original | Adjustments | As Restated |
|---|---|---|---|
| Revenue | $  52,534,453 | $   (3,126,508) | $49,407,945 |
| Cost of contracts | 51,145,382 | = | 51,145,382 |
| Gross profit | 1,389,071 | (3,126,508) | (1,737,437) |
| General and administrative expenses | 1,505,700 | = | 1,505,700 |
| Income (loss) from operations | (116,629) | (3,126,508) | (3,238,137) |
| Other income | 175,670 | = | 175,670 |
| Net income (loss) | $       59,041 | $   (3,126,508) | $(3,067,467) |

NOTE:  Adjustments per "Contracts in Progress - Revised" schedule.