*ORIGINAL*

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

|  |  |  |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, <br> Plaintiff | ) ) ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 1:01-CV-00813 <br><br> JUDGE CONNOR |
| BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, <br> Defendants. | ) ) ) ) | MJ Smyser ✓ |

FILED
HARRISEURG, PA

OCT 1 0 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

**AFFIDAVIT OF DAVID L. HUSSEY IN OPPOSITION
TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

David L. Hussey, on oath, deposes and says as follows:

1.      I am the Chief Credit Officer of the St. Paul Fire and Marine Insurance Company

("St. Paul").  I am making this affidavit in opposition to the Defendants' Motion for Summary

Judgment.  The facts set forth in this affidavit are based upon my own personal knowledge and

the business records of St. Paul and its predecessor, the United States Fidelity and Guaranty

Company ("USF&G") as would be admissible into evidence and as to which I am competent to

testify.  With respect to those facts which are based upon information and belief, I believe them

to be true.

2.      At all times relevant and material to this action, I served as the director of USF&G

and then St. Paul's Northeast Surety Division

3.      While I served as the director of the Northeast Surety Division, my

responsibilities included management and supervision of all branch offices and surety accounts

located in the Northeast Surety Division.  At the time, I was in charge of 6 regional offices and

over 666 active surety accounts. The Harrisburg, Pennsylvania office was located within the Northeast Surety Division.

4.      At the times relevant to this case, it was USF&G's and St. Paul's standard policy to review each of its bonded contractor accounts at least annually. This review would normally be undertaken shortly after USF&G or St. Paul received the contractor's independent auditor's report.

5.      CCI Construction Company, Inc. ("CCI") became a USF&G account in late 1993.

6.      CCI's bonding program, as established by USF&G, consisted of a $15 million per project limit and a $75 million aggregate limit. CCI had a total annual revenue of approximately $48.2 million in 1993. This bonding program remained in effect until approximately early October 1999 when USF&G ceased writing bonds for CCI.

7.      CCI's bonding program was established based upon USF&G's analysis of a number of factors, including CCI's reputation, and its capabilities, financial condition, and the general size and type of construction projects that CCI would be seeking to obtain.

8.      The most objective and accurate basis for ascertaining the financial condition of any contractor, including CCI, is the year-end audited financial statement.

9.      USF&G required CCI to furnish an annual audited financial statement. Each year, that statement was prepared by CCI's certified public accountant which was, upon information and belief, Brown, Schultz Sheridan and Plesic and which was, upon information and belief, re-named Brown, Schultz Sheridan & Fritz ("Brown Schultz"). These annual audited financial statements covered CCI's fiscal year, which ended on December 31 each year. These statements were reviewed and analyzed by Steve Salazar and Anthony S. Phillips in the Harrisburg, Pennsylvania branch office and by James Daily in the Baltimore, Maryland office.

2

10.     During the time when USF&G was writing bonds for CCI, USF&G did not have any specific, formal, underwriting guidelines for its bonding accounts. Rather, USF&G relied upon a series of documents issued by USF&G's home office known as "gray letters" as well as an unofficial underwriting training manual. The "gray letters" and the manual provided general guidance on the types of information USF&G should be obtaining from its contractors (such as, for example, obtaining an audited financial statement each year) and general guidance on underwriting methods and procedures. However, with respect to CCI and many other USF&G accounts of a size similar to CCI, USF&G generally wanted the accounts to maintain a working capital-to-bonding capacity ratio of 3% or better and a net worth-to-bonding capacity ratio of 5% or better. "Working capital" is the dollar amount obtained when current liabilities are subtracted from current assets and "net worth" is determined by subtracting all liabilities from all assets.

11.     Based upon the annual Brown Schultz audited financial statements, upon information and belief, CCI maintained the 3%-5% ratios described above, except on certain, limited occasions when USF&G approved a bond which temporarily increased CCI's bonding capacity beyond $75 million.

12.     In reliance upon the 1996 Brown Schultz Audit Report, I authorized and USF&G issued payment and performance bonds to CCI for the following projects:

|   | PROJECT | DESCRIPTION | BOND NO. | BOND DATE | PENAL AMOUNT |
|---|---------|-------------|----------|-----------|--------------|
| A. | Albemarle – Charlottesville Regional Jail | Additions and Renovations to Regional Jail | 26-0120-12995-98-7 | 1/21/98 | $14,682,402 |
| B. | Johnstown | Air Traffic Control Tower | 26-0120-41362-97-1 | 9/30/97 | $ 3,734,530 |
| C. | Lord Fairfax | Phase I-Lord Fairfax Community College | 26-0120-41364-97-4 | 10/20/97 | $ 7,409,292 |

3

|   | PROJECT | DESCRIPTION | BOND NO. | BOND DATE | PENAL AMOUNT |
|---|---|---|---|---|---|
| D. | Outlook-Hilliard | Construction of Outlook Point at Hilliard | 26-0120-13008-98-0 | 2/23/98 | $ 5,598,750 |
| E. | Perry Point | 80 Bed Psychiatric Care Building | 26-0120-13002-98-1 | 2/13/98 | $13,297,844 |

13.　　In reliance upon the 1997 Brown Schultz audit report, I authorized and USF&G issued payment and performance bonds to CCI for the following projects:

|   | PROJECT | DESCRIPTION | BOND NO. | BOND DATE | PENAL AMOUNT |
|---|---|---|---|---|---|
| A. | Germplasm Ctr | Phase I and II; National Plant Germsplasm | 26-0120-28306-98-1 | 6/16/98 | $15,647,035 |
| B. | James River | Construction of Juvenile Detention Center | 26-0120-08946-99-2 | 1/7/99 | $ 7,220,942 |
| C. | Outlook-Chesterfield | Construction of Outlook Point at Chesterfield | 26-0120-29307-98-8 | 6/24/98 | $ 3,919,156 |
| D. | Outlook-Westerville | Construction of Outlook Point at Westerville | 26-0120-28312-98-1 | 9/27/98 | $ 5,591,730 |
| E. | Scott A.F. Base | Aircraft Parking Apron & Jet Fuel Storage | 26-0120-28305-98-5 | 5/18/98 | $18,880,298 |
| F. | VCU Life Science | The Life Sciences Building | 26-0120-08953-99-9 | 1/15/99 | $21,927,111 |

14.　　In reliance upon the 1998 Brown Schultz audit report, I authorized and USF&G issued payment and performance bonds to CCI for the following projects:

|   | PROJECT | DESCRIPTION | BOND NO. | BOND DATE | PENAL AMOUNT |
|---|---|---|---|---|---|
| A. | Bedford County, State Route 0030 | Road Improvements | 26-0120-08963-99-4 | 7/27/99 | $ 514,976 |
| B. | Cambria County SR 0022 | Road Improvements | 26-0120-08959-99-7 | 6/24/99 | $ 835,299 |
| C. | Summerdale | Sitework-Laboratory Centers of Excellence | 26-0120-08958-99-1 | 6/14/99 | $1,688,139 |

4