ORIGINAL

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| United States Fidelity and Guaranty Company | : | |
| | : | |
| v. | : | Judge Connor |
| | : | |
| Bruce J. Brown and Brown, Schultz Sheridan & Fritz | : | No: 01-CIV-813 |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, Bruce J. Brown and Brown, Schultz, Sheridan & Fritz, submit the following brief in reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment. Plaintiff's Opposition does not identify sufficient evidence so as to create a genuine issue of material fact with regard to the issues raised in Defendants' Motion.

A.    **Plaintiff Has Presented No Evidence to Support its Negligent Misrepresentation Claim with Regard to the 1996 Audited Financial Statement**

Summary judgment should be granted where a party fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Donegal Mutual Insurance Company v. Grossman*, 195 F. Supp 2d 657, 663-64 (M.D. Pa. 2001). In a negligence misrepresentation claim, Plaintiff has the burden of establishing: (1) a misrepresentation of material fact; (2)

made under circumstances in which the person who represented the information should have known, in the exercise of appropriate case, was false; (3) with an intent to induce another to act on the misrepresentation; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).

Plaintiff's opposition to defendants' motion for summary judgment is utterly devoid of any evidence of a material misrepresentation contained in the 1996 audited financial statements. Plaintiff also offers no evidence that Brown, Schultz, Sheridan & Fritz failed to comply with Generally Accepted Auditing Standards in performing the 1996 audit. Accordingly, summary judgment should be granted to defendants with regard to plaintiff's negligent misrepresentation claim arising out of the 1996 audit and the damages it allegedly sustained on bonding issued on project in reliance on the 1996 audit.

B.    *LaPalme* is Consistent With Pennsylvania Law and Plaintiff Has Failed to Establish a Basis for a Duty on the Part of USF&G

Plaintiff claims that *North American Specialty Insurance Company v. Dias & Lapalme*, 258 F.3d 35 (1ˢᵗ Cir. 2001) is distinguishable from this case. It is not. The *Lapalme* court held that there was no evidence to support the conclusion that the accountants knowingly undertook "the substantial risks inherent in the issuance of future bonds." Here, USF&G

2

admits that Brown Schultz could not have knowledge of the specific bonds to be underwritten by USF&G which knowledge was required  the *Lapalme* court required in order to impose open ended liability on the part of the accountants simply by releasing the financial statement. *See* USF&G's Response to Defendants Statement of Material Facts at No. 17.  As stated by the Lapalme court, the premise of the Restatement Rule is that "an acquiescent account is only deemed to accept the risks of *specific transactions* that were made known to him in advance (or substantially similar ones)". *Lapalme* at p. 44. Simply because transactions are of the same general nature (e.g. bonds) is not sufficient to render them substantially similar for purposes of the Restatement. *Lapalme* at p. 44 Plaintiff admits that Brown Schultz did not have knowledge of the specific bonds to be underwritten by USF&G and, following *Lapalme*, Plaintiff fails to raise an issue of fact with regard whether  Brown Schultz owed it a duty under the Restatement and, therefore, summary judgment should be granted.

      C.    **Plaintiff Does Not Raise an Issue of Fact as to the Existence of a Material Misrepresentation in the 1997 and 1998 Audit Reports**

In the course of discovery of this matter, defendants posed to plaintiff the

following interrogatory:

      State the factual basis for your contention that Brown

3

Schultz's Audit Report for the year ended December 31, 1997 was inaccurate, contained omissions and/or was misleading including but not limited to:

> a. The nature of each inaccuracy and/or omission contained in the 1997 Audit Report; and
>
> b. The manner in which the 1997 Audit Report was misleading.

*See* Interrogatory No. 8 of Defendants First Set of Interrogatories Direct to

Plaintiff (Exhibit I). Plaintiff was further asked:

> For each inaccuracy and/or omission identified in response to interrogatory No. 8, is it your contention that it was material to the issuance of the payments and performance bonds identified in paragraph 18 of the complaint? If so, state the factual basis for your contention and the sources of proof for the facts which support your contention.

*See* Interrogatory No. 10 of Defendants First Set of Interrogatories Direct to Plaintiff

(Exhibit I). Identical questions were asked with regard to the 1998 audit report.

In their depositions, each of the underwriters were asked if the problems

identified in USF&G's responses to these interrogatories would have had an effect on

USF&G's decision to bond CCI. Mr. Daily testified that he would be unable to

determine whether the deficiencies in the financial statements of CCI prepared by

Brown Schultz as alleged by USF&G would have been material in the underwriting

process for the bonding program. *See* Daily Deposition at pp. 192-193. Mr.

4

Daily also

was unable to state how correct information would affect USF&G's decision to bond

CCI.  In that regard Mr. Daily, who was also testifying as USF&G's corporate

designee with regard to the underwriting of the CCI account, was asked:

> In what way would correct information have affected the
> decisions by USF&G to bond or issue bonds for CCI Construction?

Daily Depo. at p. 275:1-3.  In response he could only state that "we probably wouldn't

have given them as much credit as they were getting." Daily Depo. at p. 275:4-5.

Mr. Phillips, who verified the interrogatories on USF&G's behalf,

testified that, without the benefit of restated financials, he could not make

a determination about whether changes to CCI's financial condition would

have been material to his underwriting decisions. T. Phillips Depo. at

463:25-464:5.  Phillips further testified that he believed that restated

financials for CCI had been prepared by USF&G but that he had not

reviewed them.  T. Phillips Depo. at p. 464:9-15.

Steve Salazar testified that he could not state what changes in the

company's operations, working capitol, balance sheet or work in progress

could be tolerated before they had an impact on underwriting.  Salazar

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW •1631 NORTH FRONT STREET •HARRISBURG, PA 17102

Depo. at pp. 246-247.[1]

Based on this testimony, Plaintiff cannot establish a genuine issue of material fact concerning a misrepresentation that was material to the underwriting of bonds on CCI's behalf. Plaintiff cannot now claim through affidavits submitted after the close of discovery, which are based on information which was other than included in the answers to interrogatories that plaintiff chose to withhold from its employees

---

[1] Mr. Hussey in his affidavit submitted in support of USF&G's opposition to defendants motion for summary judgment attempts to create an issue of fact by contradicting his own deposition testimony. In his affidavit Mr. Hussey states that with regard to the 1997 financials, Mr. DeBruyn's restated financials would have resulted in "an immediate suspension of the CCI account. . . until USF&G could fully ascertain the circumstances under which CCI's interim profits turned into a $109,000 loss for the entire year." *See* Hussey Affidavit at ¶ 15.

In contrast, in his deposition Mr. Hussey was asked:

Q:    What was your tolerance for a change in the financial condition of CCI before you would withhold approval for bonding?

A.    In accounts of this size and this nature doing the volume it's doing, and the fact that you have a substantial amount of bonded work underway or exposure–the tolerance would be–you couldn't cut and run. You couldn't just wake up one day and say I'm not going to give them anymore bonds because you'd be laying yourself exposed. Because for whatever reason that you have come to that conclusion would be the same exact reason no other surety would given them credit.

Hussey 145:9-146:1. Plaintiff cannot use an affidavit that contradicts Mr. Hussey's prior deposition testimony to create an issue of fact. See *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703 (3d Cir. 1988).

6

involved in underwriting the CCI account, during the course of discovery, that the matters complained in the interrogatory responses would have been material to its underwriting process. At a minimum, Plaintiff cannot use affidavits that are inconsistent with the witnesses' prior deposition testimony to create an issue of fact. See *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703 (3d Cir. 1988). In addition, it would be manifestly unfair and defeat the purpose of summary judgment to permit plaintiff to create an issue of fact by virtue of its failure to produce information during discovery.

D. **Plaintiff's Attempt to Supplement the Expert Report of Stephen DeBruyn is Untimely and Should Not be Considered By This Court.**

Defendants in their moving papers argued that plaintiff cannot establish the necessary element of its negligent misrepresentation claim with respect to the 1997 and 1998 audit reports because the report of its expert, Stephen DeBruyn failed to comply with F.R.C.P. 26(a)(2)(B). The report did not provide any explanation as to the basis for his restatement of the 1997 financials or that the restatement was warranted[2] and, therefore, it is inadmissible. Accordingly, it cannot be used to establish

---

[2] Defendants requested that Plaintiff produce Mr. DeBruyn's workpapers in order to ascertain the basis for his opinion with regard to his proposed restated financials. Plaintiff declined to produce those documents. Copies of Defendants' letter and plaintiff's response thereto are exhibits A and B to Defendants' Reply Brief.

7

that defendants' failed to comply with Generally Accepted Auditing Standards ("GAAS") in their audits of CCI or the misrepresentations that purportedly resulted, necessary elements of plaintiff's negligent misrepresentation claim.

In response to this argument, on September 20, 2002, two months after plaintiff's expert report was due, plaintiff submitted a supplemental expert report of Mr. DeBruyn which attempts to address the deficiencies of his initial report. On October 9, 2002, plaintiff submitted Mr. DeBruyn's affidavit in support of its opposition to defendants' motion for summary judgment which is similar to his supplemental report but contains yet additional information as to the basis for his opinion.[3] The supplemental report and affidavit are untimely and for the reasons set forth below, they should not be considered by this court.

Plaintiff, throughout discovery has had ample opportunity to provide defendants with the basis of its claim, i.e., how the audited financial statements misrepresented the financial condition of CCI. Presumably plaintiff, in order to satisfy the requirements of F.R.C.P. 11, was in possession of this information prior to the commencement of this action. USF&G was certainly in possession of Brown Schultz's workpapers prior to

---

[3] Plaintiff has attempted to designate Mr. DeBruyn's affidavit as an additional expert report of Mr. DeBruyn. A copy of Plaintiff's letter is exhibit C to this reply brief.

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW •1631 NORTH FRONT STREET •HARRISBURG, PA 17102

the commencement of this action having subpoenaed them in the CCI bankruptcy proceedings. As discussed above, Plaintiff did not provide its underwriters with the restated financials so that they could be questioned at their depositions as to the extent to which such restated financials would affect their underwriting decisions.

Plaintiff did not identify the manner in which the 1997 and 1998 audited financials misrepresented the financial condition of the company until July 22, 2002, the deadline for plaintiff's submission of expert reports and then did not identify the basis for the proposed restated financials. At that time, it was incumbent upon plaintiff to submit those expert reports necessary to establish the elements of its negligent misrepresentation claim. Having not done so, it should not be permitted to attempt to correct the problems with Mr. DeBruyn's supplemental report and affidavit long after the time plaintiff's expert report was report was due.

While Magistrate Smyser granted plaintiff leave to submit rebuttal expert reports by September 20, 2002, the supplemental DeBruyn report is not submitted in rebuttal to any report of the defendants' experts on an issue for which defendants' would bear the burden at trial, which was the reason leave was requested by plaintiff to submit rebuttal expert reports.

In any event, the supplemental report is still deficient. Mr. DeBruyn fails to state what Brown Schultz would have discovered had it performed

9

what he believes was necessary to comply with the standard of care. He does not point to a single inaccuracy or error that Brown Schultz would have discovered, *at the time it was conducting the 1997 and 1997 audits,* in the financial information provided by CCI Management. His opinion is based wholly on hindsight and not on the information that was available to Brown Schultz at the time it was conducting its audits. As he states in the supplemental report, his method of recasting the contracts in progress schedules was similar to the "look back" method used by the Internal Revenue Service. "The method involves recasting the contracts-in-process in a given year from information obtained in a subsequent year." *See* DeBruyn Supplemental Report at p. 1. Plaintiff has not put forth any evidence that establishes that "look back" method is an appropriate methodology. The Supplemental Report and the Affidavit, because they do not address the  information  available to Brown Schultz at the time it was conducting its audits, do not establish a genuine issue of material fact as to whether the 1997 and 1998 financial statements at the time they were issued contained misrepresentations of material fact made under circumstances where Brown Schultz should have known, in the exercise of appropriate case, they were false.

E.    Plaintiff has not Raised a Genuine Issue of Material Fact as to Justifiable Reliance

Plaintiff argues that the issue of justifiable reliance is an issue of

10

fact which cannot be decided on summary judgment.  This is incorrect. Plaintiff must make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial. *Donegal Mutual Insurance Company v. Grossman*, 195 F. Supp 2d 657, 663-64 (M.D. Pa. 2001).   Plaintiff has not done so.

Justifiable reliance comprises two elements: 1) the plaintiff must in fact rely on the information and 2) the reliance must be reasonable. *Scottiish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606 (5th Cir. 1996); *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 285 A.2d 451 (1971) (whether reliance on an alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false).  Where the means of obtaining the information in question were not equal, the representations of the person believed to possess superior information may be relied upon. *Siskin v. Cohen*, 363 Pa. 580, 70 A.2d 293, 295 (1950). Reliance is unjustified when the relying party was negligent. *Scottish Heritable Trust PLC*, 81 F.3d 606. In deciding whether the recipient justifiably relied on information, a court may consider the degree of sophistication of the parties. *Fort Washington Resources, Inc. v. Tannen*, 854 F. Supp. 455 (E.D. Pa. 1994); *Greenberg v. Tomlin*, 816 F. Supp. 1039, 1056 (E.D. Pa. 1993).

There can be no dispute that USF&G was a sophisticated user of

11

financial statements.  As stated by Mr. Phillips in his affidavit, St. Paul and USF&G have been in the surety bond business for over 100 years.  Before its merger with St. Paul, USF&G was the fourth largest surety bond company in the country with annual surety revenues in excess of $175 million.  USF&G and St. Paul serve as bonding companies for "literally thousands of construction contractors and subcontractors, including some of the largest construction contractors in the United States." *See* Phillips Affidavit at ¶ 5.  During the relevant time frame, USF&G and St. Paul reviewed each of its bonded contractors at least annually after considering, among other things, certain analyses of the contractor's financial condition. Phillips Affidavit at ¶ 9.

     USF&G also had  equal or superior access to information concerning CCI's financial condition.  USF&G admits that it received interim financial information from CCI on a quarterly or bi-annual basis. *See* Plaintiff's Responses to Defendants' Statement of Material Facts at No. 30.  In addition, USF&G admits that it received monthly or quarterly work in process information from CCI which enabled it to track the progress of individual jobs and determine whether there was profit fade. *Id.* USF&G further admits that it received Dun & Bradstreet reports on CCI and had annual meetings with the company and bonding agent to discuss CCI's bonding program.  *Id.* In addition, USF&G received regular information

12

from its agent, Dave Dominiani with regard to CCI account. *See, e.g.*, Plaintiff's Response to Defendants' Statement of Material Fact Nos. 52, 54, 56, 58, 84, 86, 101.

Notwithstanding its sophistication and equal or superior access to information regarding CCI's financial condition, USF&G's underwriters claim a blind and total reliance on the year end audit reports. In that regard, Plaintiff admits that Mr. Hussey, who had final approval of USF&G's bond program for CCI, did not read the year end financial statements audited by Brown Schultz. Plaintiff's Response to Defendants' Statement of Material Facts at No. 49. Mr. Hussey testified that he also did not review any of the annual reviews prepared by Steve Salazar with regard to the CCI account during the course of underwriting the account. See Hussey Deposition at p. 131. In his affidavit he states in a conclusory fashion that, in reliance upon the 1996, 1997 and 1998 audit reports, he authorized issuance of the various payment and performance bonds at issue in this matter. It is difficult to imagine how Mr. Hussey relied on the financial statements without having read them or the annual reviews prepared by Mr. Salazar upon receipt of the financials. Having not read the audit reports or Mr. Salazar's annual review which included an "analysis" of the audited financials, his claimed reliance on those financials is unreasonable as a matter of law.

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW • 1631 NORTH FRONT STREET • HARRISBURG, PA 17102

Similarly, Mr. Phillips, whose responsibility it was to review and approve Mr. Salazar's work, also testified at deposition that he did not fully review the audited financials. He testified that he depended on Steve Salazar to personally analyze the information contained with the 1997 and 1998 financial statements. Phillips Deposition at pp. 368-369.[4] He could not recall if he even read the related party transaction footnote regarding PCIC in the 1998 financial statements. *Id.* Specifically, Mr. Phillips testified:

> Q: Did you personally review and evaluate the financial statement for CCI Construction as they were received in the ordinary course of business in underwriting for CCI Construction?
>
> Mr. McGlynn: Objection.
>
> The Witness: Not fully.

Phillips Deposition at pp. 443:17-22.

*        *        *

> Q: Were there any financial statements which you reviewed and analyzed for any year in connection with CCI Construction for any underwriting process?

---

[4]The portions of Mr. Phillips deposition cited in connection with this reply brief are found at exhibit D of this reply brief.

14

A: I don't think so.

Phillips Deposition at p. 444:7-10.

*          *          *

Q: Did you review the annual review reports which were

prepared for the CCI account?

A: Probably

Q: Did you analyze the information included in the annual

review reports?

A. I don't remember.

Phillips Depo. at p. 446:4-9.

While Mr. Phillips in his affidavit now says that he personally read

and performed a basic analysis of each audited financial statement that

pertained to CCI, this is insufficient to create an issue of fact.  Plaintiff

cannot use an affidavit that contradicts Mr. Phillips prior deposition

testimony to create an issue of fact. See *Martin v. Merrell Dow*

*Pharmaceuticals, Inc.*, 851 F.2d 703 (3d Cir. 1988).

With respect to bonds allegedly issued in reliance on the 1997 audit

report, one was issued after USF&G had been advised that CCI had

sustained a loss of $1.6 million as of June 30, 1998 and two were issued in

January of 1999 long after the information contained in the 1997 audited

financials was stale.   Plaintiffs claimed reliance with regard to these

15

bonds is clearly not justified.

As to the 1998 Audit report, Plaintiff admits that the first analysis of the 1998 financial statements that appears to have been done by USF&G is dated August 20, 1999. *See* USF&G's Response to Defendant's Statement of Material Facts at No. 98. It is difficult to see how USF&G can claim reliance on audited financials that it had not yet analyzed when issuing bonds on the following projects: SR II Perry County; Cambria County State Route 22; Bedford County State Route 30; Summerdale Sitework Laboratory Centers for Excellence; and Cool and Cold Aquaculture. Jim Daily testified that USF&G relied on financial representations from CCI Construction when it decided to commit to bonding in January 1999. *See* Daily Deposition at p. 416:3-12.[5]

Plaintiff further admits that the bonding for the Cool and Cold Buried Process Water Lines was issued on September 30, 1999. *See* Plaintiff's Response to Defendants Statement of Material Fact No. 102. This was after USF&G had been advised that CCI had sustained a significant loss at mid-year and was projecting a loss at year end.

The disclosures in the 1997 and 1998 audited financials were also sufficient to put plaintiff, particularly as a sophisticated user of financial

---

[5]The portions of Mr. Daily's deposition cited in connection with this reply are exhibit E to Defendants' Reply Brief.

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW •1631 NORTH FRONT STREET •HARRISBURG, PA 17102

statements, on notice of the following facts:

1. That indirect costs were not showed earning from contract before allocation from indirect costs and that the completed contracts and contracts in progress schedules to the audited financials showed "gross profits before indirect costs" and contract earnings (accrued or earned) before indirect costs. Plaintiff's Response to Defendants' Statement of Material Fact No. 64.

2. That CCI sustained losses from operations in 1994, 1995, 1996 and 1998. Plaintiff's Response to Defendants' Statement of Material Fact Nos. 61, 67, 71, 94.

3. That the audited financials stated that "because of the inherent uncertainties in estimating costs, it is at least reasonably possible that the estimates used will change in the near term." Plaintiff's Response to Defendants' Statement of Material Fact No. 65.

Plaintiff has not and cannot establish justifiable reliance, a necessary element of its case. For this reason as well summary judgment should be granted to defendants.

E.     The PCIC Transaction

Plaintiff contends that the PCIC transaction recorded in the 1998 financial statements should not have been recorded as additional contract revenue and contract overbillings. According to plaintiff's expert, the

17

transaction did not meet the standards to be recorded as contract revenue.

DeBruyn Supplemental Report at

3.

The facts surrounding the PCIC transaction are as follows: CCI
submitted a claim to the owner of the Mahanoy Project. PCIC issued a
written guaranty that it would pay that portion of the claim that was not
paid by the project owner. The amount of the claim was $1,162,460. The
audited financials for 1998 included this amount in revenues. The project
owner paid a portion of the claim and PCIC *paid* the remainder in 1999.

Plaintiff says that the claim should not have been recognized
because Brown Schultz failed to document that there was a legal basis for
the claim or a legal opinion had been obtained and that the evidence
supporting the claim was objective and verifiable and not based upon
management's feel for the situation or on unsupported representations.
See DeBruyn Affidavit at ¶ 12.

Plaintiff ignores the existence of the guaranty between PCIC and
CCI and ignores the fact the Brown Schultz was also PCIC's auditor.
Plaintiff also ignores the
fact that portion of the claim not paid by the project owner was in fact
paid by PCIC. See Deposition of Bruce J. Brown (7/19/02) at p. 98-99.

Plaintiff also claims that the PCIC Guaranty should have been

18

included as a line item on the balance sheet and noted as a related party transaction and therefore, the recording and disclosure of the transaction was misleading. However, USF&G was certainly aware that PCIC was owned by John Ortenzio, the sole shareholder of CCI. There were disclosure with to PCIC that relationship in a number of the audited financials received by USF&G. In addition, the 1998 financial statement disclosed the amount of the claim guaranteed by PCIC and the fact that an amount equal to contract costs attributable to claims is included in revenues when realization is probable and the amount can be reliably estimated. See Exhibit N to Defendants Motion for Summary Judgment at fn. 1 and fn. 8. From this information, it should have been apparent to USF&G that there was the possibility that this amount had been included in revenues. USF&G, as sophisticated user of financial statements, had sufficient information to inquire if in fact this was the case if it was so important to its underwriting process.

CONCLUSION

Based on Defendants' Motion for Summary Judgment and this reply brief, defendants respectfully request that summary judgment be granted in their favor and against Plaintiff.

Respectfully submitted,

19

SWARTZ, CAMPBELL & DETWEILER

BY: *Kathleen M. Carson*

Jeffrey B. McCarron
Kathleen M. Carson

1601 Market Street
Philadelphia, PA 19103
(215) 564-5190

Dated: October 31, 2002

## CERTIFICATE OF SERVICE

I, Kathleen M. Carson, Esquire, counsel for defendants, Bruce J. Brown and

Brown, Schultz Sheridan & Fritz, hereby certify that a copy of defendants' reply brief

in support of their motion for summary judgment and the exhibits thereto were

served upon all counsel listed below by first class U.S. mail, postage prepaid or

overnight mail as indicated below on October 31, 2002.

Peter Speaker, Esquire        **BY FIRST CLASS MAIL**
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA 17101

Peter B. McGlynn, Esquire    **VIA FEDERAL EXPRESS**
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, MA 02110

20

_Kathleen M. Carson_
**Kathleen M. Carson**

**Date: October 31, 2002**

21

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW • 1631 NORTH FRONT STREET • HARRISBURG, PA 17102