# ORIGINAL

76
11/21/02
RW

DO Court

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

United States Fidelity and
Guaranty Company

        v.

Bruce J. Brown and Brown, Schultz
Sheridan & Fritz

:
:
:
:
:
:
:

Judge Conner

No: 01-CIV-813

FILED
HARRISBURG, PA
NOV 2 0 2002
MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## DEFENDANTS' BRIEF IN SUPPORT OF THE OBJECTIONS TO THE NOVEMBER 5, 2002 REPORT AND RECOMMENDATION OF MAGISTRATE SMYSER CONCERNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.     Introduction

Defendants, Bruce J. Brown and Brown Schultz Sheridan & Fritz (collectively "Brown Schultz") object to Magistrate Smyser's Report and Recommendation insofar as it recommends against summary judgment in defendants' favor for the 1997 and 1998 audit reports.

Briefly, by way of background, this is an action for alleged negligent misrepresentation. Plaintiff, United States Fidelity & Guaranty Company ("USF&G") claimed that there were negligent misrepresentations contained in audited financial statements prepared by Brown Schultz for CCI Construction Company for the years ended December 31, 1996, 1997 and 1998. The action is based on the contention that Plaintiff issued certain payment and performance bonds for CCI based on the financial statements. Brown Schultz sought summary judgment on grounds that USF&G cannot establish the required elements of its negligent misrepresentation claim.     Magistrate Smyser, in his report and recommendation, recommended that the summary judgment motion be granted as to the audit report for the year ended December 31, 1996, but denied as to the 1997 and 1998 audit reports.

Defendants object to that portion of Magistrate Smyser's report and recommendation that addresses the 1997 and 1998 audit reports for a number of reasons. The Magistrate did not correctly apply Federal Rule of Civil Procedure 56 and require plaintiff to provide competent, admissible

## I.    Introduction

Defendants, Bruce J. Brown and Brown Schultz Sheridan & Fritz (collectively "Brown Schultz") object to Magistrate Smyser's Report and Recommendation insofar as it recommends against summary judgment in defendants' favor for the 1997 and 1998 audit reports.

Briefly, by way of background, this is an action for alleged negligent misrepresentation.  Plaintiff, United States Fidelity & Guaranty Company ("USF&G") claimed that there were negligent misrepresentations contained in audited financial statements prepared by Brown Schultz for CCI Construction Company for the years ended December 31, 1996, 1997 and 1998.  The action is based on the contention that Plaintiff issued certain payment and performance bonds for CCI based on the financial statements.  Brown Schultz sought summary judgment on grounds that USF&G cannot establish the required elements of its negligent misrepresentation claim.      Magistrate Smyser, in his report and recommendation, recommended that the summary judgment motion be granted as to the audit report for the year ended December 31, 1996, but denied as to the 1997 and 1998 audit reports.

Defendants object to that portion of Magistrate Smyser's report and recommendation that addresses the 1997 and 1998 audit reports for a number of reasons.  The Magistrate did not correctly apply Federal Rule of Civil Procedure 56 and require plaintiff to provide competent, admissible

evidence to establish each element on which it bears the burden of proof at trial and establish the existence of a genuine issue of material fact. Plaintiff did not produce evidence to establish a basis for a duty owed by Brown Schultz to plaintiff, a misrepresentation of material fact by Brown Schultz, reliance by plaintiff on a representation by Brown Schultz, a causal connection between the information from Brown Schultz and the alleged damages. The magistrate improperly considered expert witness evidence submitted by plaintiff in violation of Federal Rule of Civil Procedure 37.

Magistrate Smyser incorrectly determined that privity or a pecuniary interest in a transaction are not requirements under Pennsylvania law for a negligent misrepresentation claim and that his determination in that regard on a motion to dismiss was law of the case. Pennsylvania has not relaxed the privity requirement and, in the absence of such privity, Pennsylvania law requires some actual interest in the transaction and not merely the rendering of professional services.

The magistrate misunderstood the requirements of Restatement (Second) § 552(2) and accepted plaintiff's so-called evidence of Brown Schultz's knowledge with regard to USF&G's intended use of the audit reports without regard to whether it was competent. There is simply no competent evidence that Brown Schultz, prior to releasing its audit report in the years at issue, was aware of the specific bonds to be issued by USF&G

2

during the coming year or that Brown Schultz released its audit reports with the intention of influencing those transactions. This is what was required by the court in *North American Specialty v. LaPalme,* 258 F.3d 35 (1st Cir. 2001) and should be required in this case as well.

Defendants agree with the Magistrate's conclusion that the original expert report of Stephen DeBruyn, plaintiff's expert with regard to the audits performed by Brown Schultz, was deficient. Defendants, however, disagree with the magistrate's conclusion that Plaintiff's failure to produce a report that complied with Rule 26 until after the deadline to produce such a report and after defendants moved for summary judgment raising the deficiencies in the report was harmless. Pursuant to Fed. R. Civ. P. 37, the Supplemental Report of Mr. DeBruyn and his Affidavit should not have been considered by this court as they were untimely and were submitted without leave of court.

Even if it was appropriate for Magistrate Smyser to consider the supplemental DeBruyn Report and the affidavit, he failed to analyze the sufficiency of Mr. DeBruyn's opinion which, even as set forth in the Supplemental Report and the DeBruyn Affidavit, is inadequate to satisfy plaintiff's burden in defeating summary judgment. DeBruyn provides no basis on which to conclude that any failure to comply with Generally Accepted Auditing Standards was the cause of any misstatement in the

3

financial statements.  At most the reports can be read to say that if Brown Schultz had the benefit of information prepared by CCI at the end of 1999, it would have determined that certain jobs did not perform as estimated. The "look back method" utilized by Mr. DeBruyn fails to take into account information available to Brown Schultz at the time of the audits which would be the only information relevant for purposes of evaluating the quality of the audits.  Magistrate Smyser did not address this issue in his report and recommendation.

Contrary to the Magistrate's report and recommendation, there was no evidence presented by Plaintiff from which a jury could reasonably find that the supposed changes in CCI's financial condition would have been material to USF&G's decision to continue with the bonding program it had established. Magistrate  Smyser found that USF&G had no specific underwriting criteria. None of the USF&G underwriters could identify underwriting criteria used by USF&G in its decisions to extend surety credit to CCI. Plaintiff did not provide evidence to establish the bonds would not have been issued except for the alleged misrepresentation.  In addition, USF&G bonded CCI when it was aware that CCI had sustained significant losses and in circumstances when CCI had less working capitol and less equity than portrayed in the restated financials for 1997. The self-serving affidavits of Messrs. Phillips and Daily stating that had the

4

financials reflected the restated amounts contained in the bonding program they would have suspended CCI's bonding program is the only "evidence" cited as to the materiality of the purported misrepresentations and those affidavits are contrary to prior deposition testimony.  Plaintiff cannot avoid summary judgment with affidavits which contradict earlier testimony.   The magistrate erred in determining that plaintiff submitted sufficient evidence on which a reasonable fact finder could conclude that the purported misrepresentations were material to plaintiff's decision to issue the bonds that are the subject matter of this litigation.

Finally, Magistrate Smyser erred in determining that there was a triable issue of fact with regard to the issue of justifiable reliance.  The magistrate ignored his own factual findings.  The only evidence the magistrate identified to support justifiable reliance by plaintiff was the Affidavit of Richard Farnsworth, plaintiff's underwriting expert, was also untimely. Farnsworth's report and affidavit were not produced prior to the expert witness deadline and, therefore, should not have been considered.  If Farnsworth's report was submitted in rebuttal to defendants' expert witness submission then it cannot be used by plaintiff in its case in chief to sustain its burden of proof. Moreover, given the magistrate's finding that there was no evidence that plaintiff analyzed the 1998 audit report prior to August 20, 1999, there is no basis for his recommendation that plaintiff

5

relied on this audit report or that its claim reliance was justifiable considering there was only one bond issued after the 1998 audit report was analysed by plaintiff and plaintiff's analysis revealed CCI's financial condition had materially deteriorated to the extent bonding was no longer justified.

For these reasons, the objections to the magistrate's report and recommendation should be sustained and defendants' summary judgment motion granted.

II.     Argument

   A.     Summary Judgment Standard

Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Donegal Mutual Insurance Company v. Grossman,* 195 F. Supp. 2d 657, 663-64 (M.D. Pa. 2001). The summary judgment motion triggered the burden of plaintiff to produce admissible, competent evidence to establish all the elements of the cause of action to establish the existence of a material issue of fact on every element of the cause of action. If plaintiff cannot produce evidence sufficient to prove each element and that there exists a genuine issue of fact concerning every element, then plaintiff cannot survive summary judgment. It is not sufficient for plaintiff to simply deny without basis the

6

facts stated by defendants or to rely on the complaint as the source of proof of the elements of the cause of action.

The first three pages of Magistrate Smyser's Report and Recommendation are devoted to a synopsis of the allegations of the plaintiff's complaint in this matter.  While not altogether clear from the report, to the extent the magistrate relied on any of the allegations of the complaint to deny summary judgment, it is improper.  Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply rest on the allegations of its complaint.  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986). The magistrate also seems to have accepted only those facts in defendants' statement of facts to which plaintiff responded with an unqualified admission.  Without regard for whether plaintiff denies the fact, plaintiff has to prove that the facts are materially other than expressed by defendants.

**B.**      **Elements of a Negligent Misrepresentation Claim**

In this action, USF&G seeks to recover under a theory of negligent misrepresentation. A negligent misrepresentation claim requires proof of

7

several elements.  A cause of action for negligent misrepresentation arises if the proof establishes: 1) a misrepresentation of material fact; 2) made under circumstances in which the person who represented the information should have known, in the exercise of appropriate care, was false; (3) with an intent to induce another to act on the misrepresentation; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.  *Bortz v. Noon*, 729 A.2d 555, 561 Pa. 1999); *see also Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994) *citing* Page Keaton, Prosser and Keaton on the Law of Torts § 105 (5th ed. 1984).  Furthermore, "like any action in negligence, there must be an existence of a duty owed by one party to another." *Kramer v. Dunn*, 749 A.2d 984 (Pa. Super. 2000) *citing, Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999); *Gibbs*, 647 A.2d at 890.  In the absence of privity, a negligent misrepresentation claim can be established only if plaintiff can establish the elements of Restatement (Second) of Torts Section 552.  Section 552 provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) . . . . The liability stated in Subsection (1) is limited to loss

suffered

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW •1631 NORTH FRONT STREET •HARRISBURG, PA 17102

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) Torts § 552.

C.    The Magistrate Was Incorrect as a Matter of Law that Pennsylvania Law Does Not Required Privity or, in the Absence of Privity, a Pecuniary Interest in a Transaction In Order to Impose a Duty on Defendants

Under § 552, a duty arises only if there was privity between plaintiff and defendant, or the defendant had a pecuniary interest in the transaction. *First Options of Chicago, Inc. v. Wallenstein*, 1994 WL 229554 at * 4 (E.D. Pa.1994). "[T]he Pennsylvania Supreme Court, in adopting section 552 of the Restatement, did not intend to eliminate the privity requirement for the maintenance of negligence claims ...." *In re Phar-Mor, Inc. Securities Litigation*, 892 F. Supp. 676, 693 (W.D. Pa. 1995). The negligent misrepresentation claim cannot serve as a basis for a third-party to avoid the privity requirement of a negligence claim:

In sum, we conclude that the negligent misrepresentation claims of plaintiffs are merely cloaked professional malpractice claims and that, under Pennsylvania law, privity is a requisite element to such claims.

*Phar-Mor*, 892 F. Supp. at 694. "Pennsylvania's strict adherence to the privity rule would result in a ruling that negligent misrepresentation may

9

not be used to plead professional negligence claims by persons not in privity with the professional defendant." *PNC Bank, Kentucky, Inc. v. Housing Mortgage Corp.,* 899 F. Supp. 1399, 1408 (W.D. Pa. 1994).

In *PNC Bank,* the court considered a claim against an accountant for negligent misrepresentation in connection with the preparation of audited financial records which were relied upon by a party not in privity with the accountant. In rejecting the claim for failing to properly audit a company, the court concluded:

> [t]he plaintiffs' claim, although couched in terms of negligent misrepresentation, clearly involves the alleged breach by the accountant of his obligation to perform audits of HMC financial statement according to generally accepted auditing principals. This the very heart of a professional negligence claim.

*Id.* at 1407. Accordingly, privity or a pecuniary interest in the transaction, a misrepresentation, and the failure to exercise appropriate care in the transmission of the information is required to maintain a negligent misrepresentation claim.

Here it is undisputed, that there is no evidence that privity exists between USF&G and Brown Schultz. It is undisputed that Brown Schultz's client, with whom it had a contractual relationship, was CCI, not USF&G. Plaintiff's claim in this case, amounts to nothing more than an alleged breach by defendants of their obligation to perform audits of CCI's financial statements in accordance with Generally Accepted Auditing

10

Standards.  As the *PNC* Court noted, this the very heart of a professional

negligence claim, for which the Pennsylvania Supreme Court has not

relaxed the privity requirement. Because plaintiff's claim is in reality

nothing more than a professional negligence claim, privity is required.

Pennsylvania's adoption of Section 552 of the Restatement does not

eliminate the privity requirement in a claim for negligent

misrepresentation.  See *In Re Phar Mor, Inc. Sec. Litig.*, 892 F.Supp. 676

(W.D. Pa. 1995);  *PNC Bank, Kentucky Inc. v. Housing Mtge. Corp.*, 899

F.Supp. 1399 (W.D. Pa. 1994). *See also, First Options of Chicago, Inc. v.

Wallenstein*, 1994 U.S. Dist. LEXIS 7132 (E.D. Pa. May 26, 1994).[1]  As

stated by the Court in PNC

> Pennsylvania's strict privity rule would be swallowed by an exception
> for    negligent misrepresentation claims since an accountant always
> makes a    representations, i.e., a report, which is often then
> reviewed by non-parties to    the contract for various reasons.

*Id.*, slip. op. at 14.

A third party, however, can maintain a Section 552 action against a

professional notwithstanding an absence of privity where the professional

had a pecuniary interest in the transaction.  See *Eisenberg v. Gagnon*, 766

---

[1]Section 552 of the Restatement was adopted in *Rempel v.
Nationwide Life Insurance Co.,* 471 Pa. 404, 370 A.2d 366 (1977). Six years
later, the Pennsylvania Supreme Court reaffirmed that privity was
required in order to maintain an action in negligence for professional
malpractice.  *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983).

11

F.2d 770, 779-80 (3d Cir.1985) (holding that privity was not required in limited partners' Section 552 action against an attorney who provided opinion letter concerning tax implications of investing in a partnership in which attorney was the general partner.)  In *Eisenberg*, the court distinguished negligent misrepresentation actions from ordinary negligence claims on the basis that where an attorney negligently misrepresents facts concerning a transaction in which he has a pecuniary interest

> the action does not hinge on the breach of a duty an attorney owes clients or others in privity, but rests on the more general principles applicable to a seller or other interested party who misrepresents the nature and value of goods. . .

*Eisenberg*, 766 F.2d at 779.  Similarly, in *First Options of Chicago, Inc. v. Wallenstein*,  1994 WL 229554 at * 4 (E.D. Pa.1994), a lawyer was sued for negligent misrepresentation for information he provided to others.  The defendant lawyer provided the information during and in connection with the representation of his client for the transaction.  The court refused to allow plaintiff to proceed with a negligent misrepresentation claim since there was no privity and the involvement of the lawyer as a paid professional did not establish a pecuniary interest in the transaction.  *See also Laken v. Fryer*, 2002 U.S. App. LEXIS 5109 (3d Cir. January 16, 2002)(Duty arises under 552 of the Restatement (Second) only when there is privity between the plaintiff and the defendant or the defendant had a

12

pecuniary interest in the transaction. Pecuniary interest requirement was satisfied where lawyer received commissions on percentage of investments solicited by his client);  *I & S Assocs. Trust v. LaSalle Nat'l Bank*, 2001 U.S. Dist. LEXIS 17049 (E.D. Pa. 2001) ( In order for I & S to maintain a negligent misrepresentation action against attorney Greene, I & S must plead facts sufficient to demonstrate that Greene negligently supplied information while engaging in a specific undertaking on I & S's behalf).

Here, the magistrate's in his determination that participation as a paid professional is sufficient to establish the requisite pecuniary interest in the transaction to form the basis for a duty owed by Brown Schultz to USF&G in not in accordance with Pennsylvania law.  The cases have required that the professional profited or expected to profit from the transaction at issue.  See, e.g., First Options of Chicago, Inc. v. Wallenstein, supra at * 4.  There is nothing to suggest that Brown Schultz profited or expected to profit from the bond transactions between USF&G and CCI.

Because Plaintiff cannot establish that it was in privity with Brown Schultz or that Brown Schultz had a sufficient pecuniary interest so as to warrant dispensing with the privity requirement, Magistrate Smyser should have granted summary judgment to defendants because plaintiff cannot establish a basis for a duty on the part of Brown Schultz.

> **D.** Plaintiff Failed to Submit Competent Evidence to Establish the Requirements of § 552.

13

Even if Magistrate Smyser is correct in his assessment that privity is not a requirement under Section 552 and payment of a professional satisfies the pecuniary interest requirement, the Restatement still limits an accountant's liability for negligent misrepresentation to those third parties who the accountant actually knows will receive the information, and then, only for transactions that are the same as, or substantially similar to, the ones the accountant actually knows will be influenced by the supplied information. *Restatement (Second) of Torts* at § 552(2); *North American Specialty Insurance Company v. Lapalme*, 258 F.3d 35 (1st Cir. 2001). "An accountant remains potentially liable in situations in which he actually knows that a third party recipient of his information will rely on that information in the course of a specific transaction, even though the transaction itself does not transpire as long as it is supplanted by a substantially similar transaction." *Id.* at 40. Magistrate Smyser incorrectly concluded that there was evidence sufficient for a fact finder to conclude that defendants were aware that the audit reports would be supplied by CCI to USF&G for the purpose of securing future surety bonds.

Defendants concede that USF&G is listed in their workpapers as a user of the financial statements. That, however, is not proof of the use to which USF&G intended to put the audit reports or that Brown Schultz issued the reports with the intent USF&G rely on the reports for any

14

particular bond transaction.  Once issued, Brown Schultz cannot conceivably be liable for every instance USF&G decided to rely on the information in the report.  The *Lapalme* court properly identified it is imperative the accountant's liability remain in the accountant's control by allowing liability only if the report was issued for the specific transaction with the intent to influence the specific transaction.  The magistrate relied on testimony of Bruce Brown that he was aware that bonding companies use financial statements to determine how they give bonds and he knew generally construction company send financial statements to their bonding companies in order to obtain bonds.  However, this does not amount to specific evidence that the accountants knew that they were undertaking open ended liability with respect to future specific bonds by releasing the financial statement to their client which was what the court required in *North American Specialty Insurance Company v. Lapalme*, 258 F.3d 35 (1st Cir. 2001).  Similarly, Ehgartner's testimony as to what <u>she assumed she knew</u> in 1996 with regard to the why USF&G required audited financials is simply speculation and is not competent evidence of Brown Schultz's knowledge that their audit reports would be supplied by CCI to USF&G for the purpose of securing future surety bonds.

Nor is Mr. Ortenzio's testimony as to what he thinks Bruce Brown may or may not have known is relevant or competent to establish that

15

Brown Schultz for the 1997 and 1998 audits, in fact, knew that their audit reports were being provided to USF&G for the purpose of issuing future bonds. It should also be noted that the testimony of John Ortenzio presented by USF&G and relied upon by the magistrate was as follows:

A:    Did I make him aware of what out program was?

Q:    Yes?

A:    When you say the program, as far as what the aggregate limits were and what the individual job limits were? Is that what you're referring to?

Q:    Yes, sir.

A:    I think he was – I think he was aware of what it was. I'm trying to think if he ever participated in any of the meetings we had with the bonding company and I don't think he did.

                    *              *              *


Q: . . . . Did you discuss with Mr. Brown or anyone else from his organization the purpose for which CCI's bonding companies were requiring audited financial statements?

A: Mr. Brown was aware that we needed to submit our audited financials to the bonding company.

16

Q: Was he aware of the reasons – strike that.  Did you make Mr. Brown

aware of the reasons that the bonding company was requiring these

audited financial statements?

A: I think the only reason I would have communicated to Bruce Brown

was because that's what they wanted.  They wanted audited financials

and that's what we gave them.

Deposition of John Ortenzio at pp. 43-44 (Exhibit A to Defendants' Motion

for Summary Judgment). Sheri Phillips testimony, likewise, does not rise to

the level of competent evidence as to what Brown Schultz knew with regard

to USF&G intended use of the year end audit reports.  The remaining

documents relied upon by the Magistrate are unauthenticated hearsay and

are not competent to establish Brown Schultz's knowledge.

Moreover, even if the foregoing evidence was competent, it is Brown

Schultz's knowledge of specific bond transactions that is relevant under

Section 552.  As stated by Magistrate Smyser,

> The Restatement requires the identification of a specific class of
> persons and a specific transaction that the supplier of information
> intends the information to influence.  This standard imposes liability
> where "the supplier undertakes to supply information to a third party
> who he or she knows is likely to rely on it in a transaction that has
> sufficiently specific economic parameters to permit the supplier to
> assess the risk of moving forward." *Bily v. Arthur Young & Co.*, 834
> P.2d 745, 769 (Cal. 1992).

17

Report and Recommendation at p. 20.  This statement echoes the Court's holding in *North American Specialty Insurance Company v. Lapalme*, 258 F.3d 35 (1st Cir. 2001) but was not properly applied.

In *Lapalme*, the accounting firm of Dias & Lapalme rendered accounting services to Canty Roofing and Sheetmetal, Inc.  Canty, because it was doing repair work on public buildings, was required to post payment and performance bonds.  In 1994, North American Specialty Insurance Company inspected Canty's financial records as well as those of Canty's principal and entered into a bonding relationship with Canty.  North American required that Canty provide updated financial statements prepared by an independent certified public accountant for each succeeding calendar year.  In late 1995, the sole shareholder of Canty sold the company to a group of businessmen.  Shortly after the transaction, the accounting firm prepared an independent, review level financial statement which lacked specific information concerning the change in ownership and the notes to the financial statement contained misleading comments that implied the prior owner's continuing participation as sole shareholder.  Canty obtained new work on public buildings for which North American issued bonds.  North American claimed it relied on the 1995 financial statement in issuing those bonds.  Canty foundered under its new owners and defaulted on the bonds.  North American, as surety, was forced to step

18

in, which cost it nearly $2,000,000. North American then sued the accountants alleging among other things, negligent misrepresentation, i.e., but for the accountants' omission of accurate ownership information in the 1995 financial statement, it would not have continued furnishing bonds to Canty and would have avoided the ensuing loss.

The court in the *Lapalme* case held that North American failed to raise facts with regard to <u>whether the accountant actually had knowledge of the critical transactions, i.e., the issuance of the bonds on which Canty defaulted</u>. According to the First Circuit, the critical issue was what the accountants knew about North American's intent to use the statement in deciding whether to maintain a bonding program which involved writing specific new bonds for Canty in 1996. While the accountants were apparently told that Canty's new owners intended to use the financial statement meet the corporation's obligations for ongoing bonds, there was no evidence that the financial statement would be used to obtain future bonds. The court found no evidence to support the conclusion that the accountants knowingly undertook "the substantial risks inherent in the issuance of future bonds." It is clear from *Lapalme* the accountant must issue the report with the intent to influence a specific transaction of the accountants were aware. Bond transactions which were not underway

19

prior to the issuance of the financial statements are not transactions for

which accountants issue financial statements with the intent to influence.

The court also found that defaulted bonds were not transactions

which were substantially similar to those that the accountants intended to

influence.  The court found that

> Simply because transactions are of the same general nature (e.g.
> "bonds") is not enough to render them substantially similar for
> purposes of the Restatement rule.  Any other conclusion would make
> a mockery of the basic premise that underbraces the Restatement
> rule: that an acquiescent accountant is only deemed to accept the
> risks of specific transactions that
> were made known to him in advance (or substantially similar ones).

*Id.* at 44.

Here there is no competent evidence that Brown Schultz knew of
USF&G's

intent to use the statements to obtain future bonds.  Nor is there anything
to suggest

that Brown Schultz had advance knowledge of the specific bond
transactions as was

required by the *Lapalme* court.

Pennsylvania courts, like the court in *Lapalme*, require that an

accountant know that the information he was providing would be used for a

specific transaction before liability will be imposed.  In *Williams Controls,*

*Inc. v. Parente, Randolph, Orlando, Carey & Associates*, 39 F. Supp. 2d 517,

(M.D. Pa. 1999), Parente prepared audited financial statements for

Sparkomatic for the period from 1990 to 1992.  In June of 1993,

20

Sparkomatic and Williams Controls entered in to a Memorandum of Intent for the purchase of certain assets of the Kenco Division.  For purposes of the transaction, Sparkomatic engaged Parente to perform audit the Kenco financial statements for the years ended December 31, 1990, 1991 and 1992 and the certify and interim balance sheet dated July 31, 1993.

The *Williams* court found that Pennsylvania would recognize a negligent misrepresentation claim under these facts because Parente knew it was performing its work solely for the sale of the Kenco Division and knew that its work would be relied upon in this transaction.  According to the court,

> Parente was not performing services generically for its client; rather, its work was specifically requested for a sales transaction. . . .  This case does not present the specter of near limitless liability caused by the accountants knowledge "of the ever present possibility of repetition to anyone, and the possibility of action in reliance upon [the information] on the part of anyone to whom it may be repeated."  Restatement (Second) of Torts § 552 cmt. h.  Indeed it presents a scenario sufficiently approaching privity as to warrant liability.

*Id.* at 534. The *Williams* court like the court in *Lapalme* indicated that an accountant could have liability where the information provided to a third party was provided in connection with a specific transaction of which the accountant was aware and where the accountant knew that the information would be relied upon by the third party in connection with *that transaction.*

21

Magistrate Smyser, in his analysis of this issue, overlooked the requirement that plaintiff meet its burden of establishing a genuine issue of material fact with competent evidence admissible at trial. For that reason alone the Magistrate's report and recommendation on this issue should be rejected. Moreover, Plaintiff did not establish that Brown Schultz was provided information about any transactions before it provided the financial statements and Brown Schultz did not supply the financial statements aware of any specific bond transaction. Plaintiff cannot establish that USF&G's issuance of the particular bonds in 1998 and 1999 upon which CCI defaulted, constituted transactions that Brown Schultz knew of, actually sought to influence, or, were substantially similar to transactions of which Brown Schultz was aware and sought to influence.

E.    Magistrate Smyser Incorrectly Determined that Plaintiff's Evidence was Sufficient to Establish A Misrepresentation of Material Fact with Regard to the 1997 and 1998 Financial Statements

Under Pennsylvania law, in order to establish a claim for negligent misrepresentation, *inter alia,* plaintiff must show a misrepresentation of material fact made under circumstances in which the person who represented the information should have known, in the exercise of appropriate care, was false. *Bortz v. Noon, supra.,* 729 A.2d at 561. In that regard it should be noted that

[a]n audit

22

does not guarantee that a client's accounts and financial statements are correct any more than a sanguine medical diagnosis guarantees well-being; indeed, even an audit conducted in strict accordance with professional standards countenances some degree of calibration for tolerable error which, on occasion, may result in a failure to detect a material omission or misstatement. Rather, the "objective of the ordinary examination of financial statements by the independent auditor is the expression of an opinion on the fairness with which they present financial position, results of operations, and changes in financial position in conformity with generally accepted accounting principles." In other words, in issuing an opinion, the auditor certifies only that it exercised appropriate, not flawless, levels of professional care and judgment.

*In re IKON Office Solutions, Inc.*, 277 F.3d 658 (3d Cir. 2002)(citations omitted).

Moreover, an audit report is not a simple statement of verifiable fact that can be easily checked against uniform standards of indisputable accuracy. Rather, an audit report is a professional opinion based on numerous and complex factors. The report is based on the auditor's interpretation and application of hundreds of professional standards, many of which are broadly phrased and readily subject to different constructions. Although ultimately expressed in shorthand form, the report is the final product of a complex process involving discretion and judgment on the part of the auditor at every stage. Using different initial assumptions and approaches, different sampling techniques, and the wisdom of 20-20 hindsight, few CPA audits would be immune from criticism.

*Bily v. Arthur Young & Co.*, supra. at 763.

Proof of negligent misrepresentation depends on expert testimony or other evidence of a failure to exercise ordinary care. *Bortz v. Noon*, 729 A.2d at 563 (expert testimony or other competent evidence of appropriate care required to establish a breach of duty for a negligent misrepresentation claim). The standard of care in Pennsylvania

23

malpractice cases is measured by the skill generally possessed and employed by practitioners of the profession. See *Incollingo v. Ewing*, 444 Pa. 263, 276 n. 6, 282 A.2d 206, 214, 444 Pa. 299 n. 5a (1971); *Smith v. Yohe*, 412 Pa. 94, 99, 194 A.2d 167, 170 (1963); *National Cash Register v. Haak*, 233 Pa. Super. 562, 335 A.2d 407 (1975). Expert testimony is required to establish the relevant standard and whether the defendant complied with that standard. *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474 (3d Cir. 1979).

The plaintiff has the burden to present expert testimony to establish that the defendant's actions failed to meet the appropriate standard of care. *Gans v. Mundy*, 762 F.2d 338, 343 (3d Cir. 1985) (interpreting Pennsylvania law) *cert. denied* 474 U.S. 1010, 88 L. Ed. 2d 467, 106 S. Ct. 537 (1985); *Freeman v. Murray*, 163 F. Supp. 2d 478 (M.D. Pa. 2001).

Here, the magistrate did not undertake any real analysis of the reports of Plaintiff's expert with regard to the 1997 and 1998 audited financials to determine their sufficiency. The Magistrate also inccorrectly determined that plaintiff's non-compliance with Rule 26 until after all discovery was completed, the deadline for plaintiff's and defendant's submission of expert reports had passed and defendants had filed for summary judgment was harmless and, therefore, no sanction, including

24

precluding consideration of the supplemental expert reports was not warranted.

The Magistrate agreed that the initial report submitted by Mr. DeBruyn was deficient in that it failed to explain how the expert arrived at the restated Balance Sheets and Income Statements contained in his report and as such failed to comply with Fed. R. Civ. P. 26(a)(2)(A).  However, he found that the deficiency was cured by the filing of a supplemental report in which he set forth the "methodology he used to arrive at the restated figures."   In this regard, the sum total of the  Magistrate's analysis consisted of the following:

> In the instant case, the plaintiff must present expert testimony to prove its claim.  If we were to determine that the plaintiff's expert reports should not be considered in connection with the instant summary judgment motion, then it would follow that the defendants should be granted summary judgment.  In the instant case, given that the deficiency in the original report has been cured and therefore the defendants have not been harmed by the deficiency, the extreme sanction of precluding expert reports is not warranted.

Report and Recommendation at pp. 30-31.  The Magistrate's determination that the failure to disclose necessary information was harmless is incorrect.

Pursuant to the Case Management Order dated August 17, 2001, as amended by order dated May 8, 2002, Plaintiff's expert reports were due on July 22, 2002 and defendants' expert reports were due on August 21, 2002. By letter dated June 5, 2002, Plaintiff requested defendants' concurrence in

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW • 1631 NORTH FRONT STREET • HARRISBURG, PA 17102

a proposal whereby plaintiff would be permitted to submit expert reports in rebuttal to reports received from defendants.  Specifically plaintiff stated

> Based on various exchanges during the discovery process, it appears that you [sic] client may assert as defenses certain issues possibly requiring the submission of expert testimony.  Because the exact topics for which your client may introduce expert testimony will be unknown by my client until approximately August 21, 2002, it will be difficult, if not impossible, for my client to produce reports or to designate topics for which it is currently unaware.  Accordingly my client is considering filing a motion that would provide it with 30 days from receipt of Brown Schultz' expert reports to file expert report (and designate experts) in rebuttal to the reports received from your client.

A copy of the letter is attached hereto as Exhibit A.  On June 10, 2002, prior to receiving a response from defendants regarding the proposal, USF&G requested leave of court to file expert reports in rebuttal to designations made by Brown Schultz by September 20, 2002.  With regard to that motion USF&G advised the court that it intended to submit an expert report as to "what it avers are the various accounting errors by Brown Schultz no later than July 22, 2002.  This USF&G believes will be the only expert necessary for USF&G to prove its prima facie case. . . ."

> Plaintiff indicated that the relief sought was justified because

> It is difficult, if not impossible, for a party to determine the nature of all expert testimony it may need until the other party has fully made known the detailed nature of its claims (or, as applicable to Brown Schultz, its defenses).  During the course of discovery, it has become apparent that Brown Schultz may rely upon various affirmative defenses–such as failure to mitigate–for which it will bear the burden of proof.  Unless and until expert reports are

26

provided by Brown Schultz, USF&G is unable to submit any expert reports to rebut or respond to such defendants.

A copy of plaintiff's motion is attached hereto as Exhibit B.

Magistrate Smyser, by order dated June 14, 2002, prior to any response  to the

motion being due, granted plaintiff's motion to amend case management order

regarding expert reports to permit the filing of rebuttal expert reports.

Plaintiff submitted to defendants the Expert Report of Stephen DeBruyn, CPA

on or about July 22, 2002.  A copy of the original report is attached to Defendants

Motion for Summary Judgment as Exhibit C.  Mr. DeBruyn's report

contained restated balance sheets and income statements for  CCI

Construction Company for the years ended December 31, 1997 and

December 31, 1998.  The report, however, contained no information as to

how Mr. DeBruyn arrived at the restated figures  contained in those

exhibits, the source of the restated figures or the means by which Mr.

DeBruyn determined the adjustments for the restated amounts.

Defendants, in their motion for summary judgment, which was filed

on September 1, 2002, raised the issue that the report did not comply with

F.R.C.P. 26.

In order to satisfy  Federal Rule of Civil Procedure 26(a)(2)(A) "the report

must provide the substantive rationale in detail with respect to the basis

27

and reasons for the proffered opinions.  It must explain factually why and how the witness reached them." <u>Dunkin Donuts, Inc. v. Patel</u>, 174 F. Supp. 2d 202, 211 (D.N.J. 2001).  The test of a report is whether it was sufficiently complete, detailed and in compliance and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.  <u>Reed v. Binder</u>, 165 F.R.D. 424, 429 (D.N.J. 1996).  The failure to include an explanation as to how plaintiff's expert arrived at his restated income and balance sheets for the 1997 and 1997 audit reports, as the magistrate found,  rendered the original report deficient.

After defendants produced their expert witness reports and filed their summary judgment motion, Plaintiff, on or about September 20, 2002, submitted a Supplemental Report of Mr. DeBruyn.  The Supplemental Report purported to explain the basis for the restated financials. The supplemental report was submitted to the court in conjunction with plaintiff's opposition to defendants' motion for summary judgment. The supplemental report was not submitted in rebuttal to any expert report submitted by defendants on a defense on which they would bear the burden at trial which was the basis upon which plaintiff requested and was granted leave to submit such reports. Rather, the supplemental report included the detail which should have been included in Mr. DeBruyn's original report.  As the Magistrate found, the information contained in the

28

supplemental report should have been submitted in Mr. DeBruyn's initial report which was due on July 22, 2002 over two months prior to the date on which the supplemental report was submitted to defendants.  As such, notwithstanding Magistrate Smyser's finding to the contrary, the supplemental report is untimely, was submitted without leave of court and should  be stricken.

On or about October 16, 2002, in support of its opposition to defendants summary judgment motion, plaintiff submitted an affidavit from Mr. DeBruyn which contained even more information with regard to how Mr. DeBruyn arrived at his restated financials and, for the first time, by way of exhibits, provided specific information on a job by job basis.  A copy of the DeBruyn Affidavit was submitted in conjunction with the Plaintiff's opposition to defendants' motion for summary judgment.[2]

During discovery Plaintiff was asked to identify its contentions and the facts to support its contentions about the misrepresentations. Defendants requested that plaintiff

State the factual basis for your contention that Brown Schultz's Audit Report for the year ended December 31, 1997 was inaccurate,

---

[2] Plaintiff now purports to formally  designate this affidavit as yet a further supplemental expert report long after both the initial deadline or deadline for submission of reports in rebuttal to those submitted by defendants.  A copy of plaintiff's letter was submitted as Exhibit C to Plaintiff's reply brief.

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW •1631 NORTH FRONT STREET •HARRISBURG, PA 17102

contained omissions and/or was misleading, including but not limited
to:

    a.    The nature of each inaccuracy and/or omission contained in the
1996 Audit Report; and

    b.    The manner in which the 1997 Audit Report was misleading.

*See* Defendants First Set of Interrogatories to Plaintiff, Interrogatory No.

8. Plaintiff was further asked

For each inaccuracy and/or omission identified in response to
interrogatory No. 8, is it your contention that it was material to the
issuance of the payment and performance bonds identified in
Paragraph 18 of the Complaint?  If so, state the factual basis for your
contention and the sources of proof for the facts which support your
contention.

*Id.*  The information about plaintiff's contentions concerning the

misrepresentation is disclosed in plaintiff's answers to the interrogatories.

Defendants relied on the answers to interrogatories in conducting

depositions of plaintiff's underwriters. The reports by DeBruyn reflect

considerable information about the nature of the misrepresentations by

Brown Schultz nor included in the answers to interrogatories.

    Plaintiff  bears the burden on the question of whether Brown Schultz

negligently performed the audits of CCI which resulted in the financial

statements misrepresenting the financial condition of CCI in some

material way.  Plaintiff did not produce restated financials in the course of

discovery.  Having not produced those restated financials, defendants were

deprived of an opportunity to examine plaintiff's underwriters with regard

30

to the effect those financials would have on their underwriting decisions.
Indeed, plaintiff's underwriters testified that they could not determine to
what extent a change in the audited financial statements would have
effected their underwriting of payment and performance bonds for CCI.

Plaintiff, after being requested to do so by defendants, refused to
produce Mr. DeBruyn's work papers  in order for defendants to be able to
ascertain how he arrived at the restated financials.  Copies of Defendants'
letters requesting production of the work papers were attached as Exhibit
A to Defendants' Reply Brief.   Only after defendants raised the
deficiencies of Mr. DeBruyn's report in its summary judgment motion did
plaintiff's expert provide the basis for Mr. DeBruyn's restated balance
sheet and income statements for the 1997 and 1998 audit reports.

The rules do not alow parties to conduct litigation in this fashion.
Federal Rule of Civil Procedure 37(c)(1) provides that

> A party that without substantial justification fails to
> disclose information required by Rule 26(a) or 26(e)(2) is
> not, unless the failure is harmless, permitted to use as
> evidence at a trial, at a hearing or on a motion any witness
> or information not so disclosed.  In addition to or in lieu of
> this sanction, the court on motion and after affording an
> opportunity to be heard may impose other appropriate
> sanctions.

The non-producing party shoulders the burden of proving substantial
justification for its conduct or that the failure to produce was harmless.
*See Tolerico v. The Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002) *citing,*

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW •1631 NORTH FRONT STREET •HARRISBURG, PA 17102

*Stallworth v. E.Z. Serve Convenience Stores*, 199 F.R.D. 366, 368 (M.D. Ala. 2001). Plaintiff cannot establish either of these conditions.

"Substantial justification" for the failure to make a required disclosure has been regarded as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Id., citing, United States v. Dentsply Intern., Inc.*, 2000 U.S. Dist. LEXIS 6994, No. Civ. A. 99-5, 2000 WL 654378, *7 (D. Del. May 10, 2000). "The test of substantial justification is satisfied if 'there exists a genuine dispute concerning compliance. '" *Id. citing, Henrietta D. v. Giuliani*, 2001 U.S. Dist. LEXIS 21848, No. 95- CV-0641, 2001 WL 16021114, *5 (E.D. N.Y. Dec. 11, 2001).

A party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Id.* at 176.

> This connotation of the term "harmless" is derived from the Committee Note to the 1993 amendments to Rule 37(c), which offers as examples of "harmless" violations of Rule 26(a), the inadvertent failure to disclose the name of a potential witness known to all parties or the failure to list as a trial witness a person listed by another party.

*Id.*

As the Committee Notes state:

> Paragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rule 26(a) and 26(e)(1). This automatic

32

> sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at trial, or on a motion, such as one under Rule 56. . . .
>
> Limiting the automatic sanction to violations "without substantial justification" coupled with the exception for violations that are "harmless" is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures.  In the latter situation, however, exclusion would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party.

Advisory Committee Notes, 1993 Amendments.

The failure to disclose this information until after the filing of summary judgment motions was not harmless.  The circumstances of Plaintiff's non-disclosure is in no way like what was contemplated as harmless by advisory committee.  This is not an inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties or the failure to list as a trial witness a person so listed by another party. in plaintiff's expert report be considered inadvertent or an honest mistake. Plaintiff's expert clearly had the ability to explain how he arrived at his restated balance sheets and income statements at the time he submitted his initial report.  Plaintiff also could have provided the information when defendants' requested Mr. DeBruyn's work papers in an attempt to ascertain how he arrived at his restated financials.  Plaintiff declined to do so. It can only be assumed that this was a considered

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW • 1631 NORTH FRONT STREET • HARRISBURG, PA 17102

strategy by Plaintiff to produce as little information as late as possible with regard to its claim.

In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with the disclosure requirements of F.R.C.P. 26(a), four factors are to be considered: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation. *Tolerico*, 205 F.R.D. 169, 176.

Defendants are clearly prejudiced by the insufficiency of the report and the magistrate's finding to the contrary has no basis. Defendants should be able to rely on the factual record as it exists at the close of expert and fact discovery in order to make a determination as to whether and on what basis to pursue a motion for summary judgment. This is particularly true in light of the fact that defendants have repeatedly requested that plaintiff tell them in what manner the audited financial statements for the years at issue misrepresented the financial condition of the company and the basis therefor.

34

Defendants moved to dismiss plaintiff's complaint for failure to specify a the misrepresentation contained in the financial statements. While the magistrate found that under notice pleading requirements, this was not required, plaintiff presumably had a good faith basis to allege that the statements were inaccurate, misleading or contained omissions. By filing the complaint, plaintiff's counsel was certifying to the court that the allegations and other factual contentions had evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. *See* Fed. R. Civ. P. 11(b)(3). Plaintiff, in its complaint, did not identify any factual contentions which it believed would have evidentiary support after it had a reasonable opportunity to conduct further investigation or discovery. Accordingly, plaintiff's counsel was certifying that the claim, in fact, at the time the complaint was filed had evidentiary support including evidentiary support for the misrepresentations and the bases therefore.

Plaintiff's strategy was to produce as little information as late as possible with regard to its claim. This deliberate failure to fully disclose the basis for plaintiff's expert opinion at the time it was due and then again after it was requested to provide documentation to explain how it arrived at the restated balance sheets and income statements has prejudiced defendants. Defendants should be permitted to file summary

35

judgment with the knowledge that those experts necessary to plaintiff's case in chief, their opinions and the basis for those opinions have been fully disclosed.  The supplemental report and DeBruyn Affidavit should not have been considered by Magistrate Smyser.

>    **F.    Magistrate Smyser Failed to Consider Whether the Supplemental Reports Were Deficient.**

Even if the Court is to consider the late filed supplemental report and affidavit, they are still deficient.  The reports still fail to identify any incorrect information in the 1997 and 1998 audited financial statements. DeBruyn still does not give any basis for his opinion that the "negligent audit work performed by Brown Schultz resulted in an overstatement of both income and equity in the amount of $815,960 for 1997 and $3,126,508 for 1998."  No link is established between the alleged negligent audit work and the adjustments.

The DeBruyn reports identify the following deficiencies with the 1997 and 1998  audited financial statements:

- Brown Schultz failed to properly identify the risks associated with CCI and because of this Brown Schultz's audit programs and audit fieldwork were inadequate to provide the required assurance that the Audit Reports were fairly presented in accordance with GAAP;

36

- Inadequate audit procedures were performed by Brown Schultz in areas of contracts in progress;

- The financial disclosure checklist included in the audit workpapers does not appear to be reviewed and job site visits were not done and considerations not documented.

As to 1998 he also contends that

- There was an inappropriate recording and inadequate disclosure of related-party transaction between PCIC and CCI, a party related to CCI;

- There was a lack of documentation of time to indicate the partner in charge participated in the audit planning in 1998; and

- The 1998 search for unrecorded liabilities did not go through the last day of fieldwork.

However, nowhere does DeBruyn provide a basis for the conclusion that any of the purported failures to comply with Generally Accepted Auditing Standards was the cause of any misstatement in the financial statements. He fails to state what Brown Schultz would have discovered had it performed its audits in accordance with what Mr. DeBruyn opines is the standard of care. At most the reports can be read to say that if Brown Schultz had the benefit of information prepared by CCI at the end of 1999,

37

they would have determined that certain jobs did not perform as estimated. The "look back method" utilized by Mr. DeBruyn fails to take into account information available to Brown Schultz at the time of the audits which would be the only information relevant for purposes of evaluating the quality of the audits.

Plaintiff's expert report fails to comply with the requirements of Rule 26 in this regard as well and, therefore, his testimony with regard to the standard of care and the manner in which it was not complied with by defendants should be inadmissible.

Without Mr. De Bruyn's report, plaintiff cannot establish the necessary elements of a negligent misrepresentation claim with regard to the 1997 and 1998 year end audited financials, summary judgment in favor of defendants should have been recommended as to 1997 and 1998 as well.

F.    The Magistrate Incorrectly Determined that there was a Genuine Issue of Material Fact with Regard to the Existence of Material Misrepresentations In the 1997 and 1998 Audited Financial Statements

The magistrate determined that the affidavits of Mr. Daily and Mr. Phillips were sufficient to create a triable issue of fact with regard to whether the "misrepresentations" identified by Mr. DeBruyn in the 1997 and 1998 audited financials were material to USF&G's decision to extend surety credit to CCI in 1998 and 1999.

38

Defendants questioned the underwriters at length the extent to which the problems identified in the financial statements in Plaintiff's answers to interrogatories would have impacted their decision to extend surety credit.

Mr. Salazar could not state what changes to CCI's operations, balance sheet, working capitol or work-in-progress could be tolerated before it would have had an impact on underwriting. Salazar Depo. at pp. 246-247. Mr. Phillips, Mr. Salazar's supervisor, could not make a determination about whether changes to CCI's financial condition would been material to his underwriting decisions without the benefit of restated financials which he had not seen. T. Phillips Depo. at pp. 463-464. Mr. Daily, the home office underwriter charged with overseeing Mr. Salazar's and Mr. Philips' underwriting of the CCI account could not identify how "correct" information would have affected USF&G's decision to bond CCI. At most, he could state "we probably wouldn't have given them as much credit as they were getting." Daily Depo. at p. 275:1-5.

Daily and Phillips in affidavits submitted in support of Plaintiff's opposition to defendants motion for summary judgment stated that based on information that was different than that set forth in USF&G's responses to interrogatories, i.e., the DeBruyn restated financials, they were now able to say that

39

G.     Plaintiff Did Not Establish that It Justifiably Relied on the
       1997 and 1998 Financial Statement In Issuing Surety Bonds.

Plaintiff must show that it justifiably relied on the 1997 and 1998

financial statements in order to establish its claim for negligent

misrepresentation. *See Bortz v. Noon,* 729 A.2d at 561. Justifiable reliance

requires consideration of the relationship of the parties involved and the

nature of the transaction.  See *Rempel v. Nationwide Life Ins. Co., Inc.,* 471

Pa. 404, 409, 370 A.2d 366 (1977).  Justifiable reliance comprises two

elements: 1) Plaintiff must, in fact, rely on the information; and 2) the

reliance must be reasonable.  *Scottish Heritable Trust, PLC v. Peat*

*Marwick Main & Co.,* 81 F.3d 606 (5th Cir. 1996); *Scaife Co. v. Rockwell-*

*Standard Corp.,* 446 Pa. 280, 285 A.2d 451(1971).

There is nothing in the Magistrate's report and recommendation to

indicate that he took into account evidence of USF&G's status as a

sophisticated user of financial statements or evidence of USF&G's equal or

superior access to information concerning CCI's financial condition.  The

sole evidence cited by the Magistrate in support of his conclusion that

Plaintiff presented evidence of justifiable reliance sufficient to defeat

summary judgment is the Farnsworth Affidavit.

With regard to the 1998 audited financials, the magistrate found that

it was undisputed that no annual review of the December 31, 1998

financials has been found.  Indeed, Mr. Phillips in his Affidavit

40

acknowledged that to his knowledge none was prepared by Mr. Salazar for the 12/31/98 audited financials.  It is also undisputed that there is no evidence that any analysis of the 1998 audited financials was conducted by USF&G until August 20, 1999.  *See* Plaintiff's Response to Defendants' Material Undisputed Facts at No. 98.  As such, USF&G could not have in fact  relied  on the 1998 financial statement with regard to its decision to issue to bonds prior to August 20, 1998. *See, Bily v. Arthur Young & Co.,* 834 P.2d 745 (Cal. 1992) (no reliance where plaintiff had no read the audit report).  This includes all of the bonds plaintiff contends it issued in reliance upon the December 31, 1998 audited financial statements with the exception of the Cool & Cold Aquaculture (Buried Process Water Lines) project. *See* Complaint at ¶ 20.

The bonds issued on the Cool & Cold Aquaculture (Buried Process Water Lines) project were not issued until September 30, 1999 which was after USF&G received notice that CCI had sustained a significant loss for the first six months of the year and was projecting a loss at year end.  *See* USFG/BS 0945-946 (Exhibit 14 to Carson Affidavit). USF&G had sufficient information when issued bonds after August 20, 1999 to realize the financial condition of CCI had significantly deteriorated. Its reliance at that time on the December 31, 1998 audited financials was not reasonable in light of the more recent CCI prepared financial information available to

41

it indicating changes to CCI's financial condition.  *See Amaco Enterprises, Inc. v. Smolen*, 1995 U.S. App. LEXIS 20486, *3-*4 (9th Cir. 1995) (no justifiable reliance where plaintiff loaned money based on financial statements that were over a year old).

There was no evidence that contradicted either of these facts yet the magistrate found that the Farnsworth report was evidence presented by plaintiff that their reliance was justifiable.  First, the Farnsworth Affidavit is  based on an expert report that was submitted on September 20, 2002, two months after it was due. It is being used by plaintiff here to establish an element on which it bears the burden of proof at trial and not in rebuttal to any expert report of defendants. For the reasons set forth above in connection with the reports of Mr. DeBruyn, plaintiff, having failed to timely disclose the report, should be precluded from using it to defeat summary judgment.

Second, even if Magistrate Smyser appropriately considered the Farnsworth Report, Farnsworth cannot and does not establish reliance in fact–rather he only opines as to the reasonableness of the reliance.  Having found that it was undisputed that there was no evidence that USF&G conducted any analysis of the 1998 financial statement prior to August 20, 1999, there was no basis for the magistrate to conclude that there was any reliance on the part of USF&G on the 1998 audit report until that date.

42

Since all but one of the bonds which plaintiff claims were issued in reliance upon 1998 audited financials were issued prior to that date with the exception of a single bond, summary judgment should have been granted as to all of those bonds.

Based on the foregoing, USF&G cannot establish that it reasonably or justifiably relied on the 1997 or 1998 audited financial statements in issuing bonds on behalf of CCI, a necessary element of its negligent misrepresentation claim. As such, summary judgment should be granted in favor of defendants and against USF&G.

V.      Conclusion

Based on the foregoing, defendants, Bruce J. Brown and Brown, Schultz, Sheridan & Fritz request that this Court reject that report and recommendation of Magistrate Smyser insofar as it addresses the 1997 and 1998 audited financials and enter summary judgment favor of defendants and against plaintiff with regard to those audit reports.

Respectfully submitted,

SWARTZ, CAMPBELL & DETWEILER

BY: _____
      Jeffrey B. McCarron
      Kathleen M. Carson
      1601 Market Street
      Philadelphia, PA 19103
      Attorneys for Defendants

43

**Dated: November 20, 2002**

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW •1631 NORTH FRONT STREET •HARRISBURG, PA 17102

## CERTIFICATE OF SERVICE

     I, Kathleen M. Carson, Esquire, counsel for defendants, Bruce J. Brown and

Brown, Schultz Sheridan & Fritz, hereby certify that a copy of defendants' brief

in support of their objections to the magistrate's report and recommendations with

regard to defendants' motion for summary judgment was  served upon all counsel

listed below by  first class U.S. mail, postage prepaid or overnight mail as indicated

below on November 20, 2002.


Peter Speaker, Esquire            BY FIRST CLASS MAIL
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA 17101

Peter B. McGlynn, Esquire    VIA FEDERAL EXPRESS
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, MA 02110


                        *Kathleen M. Carson*
                        Kathleen M. Carson


Date: November 20, 2002

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW • 1631 NORTH FRONT STREET • HARRISBURG, PA 17102

**TABLE OF AUTHORITIES**

*Amaco Enterprises, Inc. v. Smolen*, 1995 U.S. App.
LEXIS 20486, *3-*4 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Bily v. Arthur Young & Co.*, supra., at . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bortz v. Noon*, 729 A.2d at 563 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Dunkin Donuts, Inc. v. Patel, 174 F. Supp. 2d 202, 211 (D.N.J. 2001) . . . . . 23

*Freeman v. Murray*, 163 F. Supp. 2d 478 (M.D. Pa. 2001) . . . . . . . . . . . . . . 20

*Gans v. Mundy*, 762 F.2d 338, 343 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 19

*Henrietta D. v. Giuliani*, 2001 U.S. Dist. LEXIS 21848, No. 95- CV-0641, 2001
WL 16021114, *5 (E.D. N.Y. Dec. 11, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*In re IKON Office Solutions, Inc.*, 277 F.3d 658 (3d Cir. 2002) . . . . . . . . . . 19

*Incollingo v. Ewing*, 444 Pa. 263, 276 n. 6, 282 A.2d 206, 214, 444 Pa. 299 n. 5a
(1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474 (3d Cir. 1979) . . . . . 19

*National Cash Register v. Haak*, 233 Pa. Super. 562, 335 A.2d 407 (1975) . 19

*North American Specialty v. LaPalme*, 258 F.3d 35 (1st Cir. 2001) . . . . . 2, 11

Reed v. Binder, 165 F.R.D. 424, 429 (D.N.J. 1996) . . . . . . . . . . . . . . . . . . . . . 23

*Rempel v. Nationwide Life Ins. Co., Inc.*, 471 Pa. 404, 409,
370 A.2d 366 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280,
285 A.2d 451(1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

46

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW •1631 NORTH FRONT STREET •HARRISBURG, PA 17102

*Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606 (5th Cir. 1996) ............................................... 34

*Smith v. Yohe*, 412 Pa. 94, 99, 194 A.2d 167, 170 (1963) ............... 19

*Stallworth v. E.Z. Serve Convenience Stores*, 199 F.R.D. 366, 368 (M.D. Ala. 2001) ............................................... 25

*Tolerico v. The Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002) ....... 25

*United States v. Dentsply Intern., Inc.*, 2000 U.S. Dist. LEXIS 6994, No. Civ. A. 99-5, 2000 WL 654378, *7 (D. Del. May 10, 2000) ..................... 26

*Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Associates*, 39 F. Supp. 2d 517, (M.D. Pa. 1999) ................................... 16

47

SWARTZ, CAMPBELL & DETWEILER
ATTORNEYS AT LAW • 1631 NORTH FRONT STREET • HARRISBURG, PA 17102