UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

|  |  |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, <br> Plaintiff <br><br> v. <br><br> BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, <br> Defendants. | CIVIL ACTION NO. 1:01-CV-00813 <br><br> JUDGE CONNER |

FILED
HARRISBURG, PA

DEC 0 5 2002

MARY E. D'ANDREA, CLERK
Per_____

**UNITED STATES FIDELITY AND GUARANTY COMPANY'S
RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE'S
[SIC] SMYSER'S REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 72.3, United States Fidelity & Guaranty Company ("USF&G")

hereby responds to Defendants' Objections to Magistrate's [sic] Smyser's Report and

Recommendations Regarding Defendants' Motion for Summary Judgment (the "Objections").

The Objections indicate the existence of neither factual nor legal errors in the Report and

Recommendation issued by Magistrate Judge Smyser on November 5, 2002 (the "Report").  In

the main, the Objections are little more than a rehash of repeatedly rejected legal theories and the

repetition of facts that are demonstrably disputed.

In further response, USF&G addresses the individually enumerated allegations in the

Objections as follows:

<u>Objection No. 1.</u>[1]

This is an action for alleged negligent misrepresentation.

**Response No. 1.**

USF&G admits the allegation in Objection 1.

<u>Objection No. 2.</u>

Plaintiff, United States Fidelity & Guaranty Company ("USF&G") claimed that there were negligent misrepresentations contained in audited financial statements prepared by Brown Schultz for CCI Construction Company for the years ended December 31, 1996, 1997 and 1998.

**Response No. 2.**

USF&G admits the allegation in Objection 2.

<u>Objection No. 3.</u>

The action is based on the contention that Plaintiff issued certain payment and performance bonds for CCI based on the financial statements.

**Response No. 3.**

USF&G admits the allegation in Objection 3, except that it denies that its action is based

on a "contention" that bonds were issued based on certain financial statements.  USF&G has

submitted credible evidence that the bonds were, in fact, issued based on, *inter alia*, USF&G's

analysis of financial statements prepared by Brown Schultz Sheridan & Fritz ("Brown Schultz").

*See,* Affidavit of Anthony S. Phillips in Opposition to the Defendants' Motion for Summary

Judgment ("Phillips Affidavit"), ¶36-38; Affidavit of James Daily in Opposition to the

Defendants' Motion for Summary Judgment ("Daily Affidavit"), ¶17, 19 and 20; and Affidavit of

---

[1] The various statements labeled "Objection No." are taken from Defendants' Objections to Magistrate's [sic] Smyser's Report and Recommendations Regarding Defendants' Motion for Summary Judgment.  So as to maintain accuracy, USF&G has endeavored not to alter any typographical errors, grammatical mistakes or erroneous citations contained in the original as filed and served by Defendants.

David Hussey in Opposition to the Defendants' Motion for Summary Judgment ("Hussey

Affidavit"), ¶12, 13 and 14.[2]

Objection No. 4.

Brown Schultz sought summary judgment on grounds that USF&G cannot establish the required elements of its negligent misrepresentation claim.

**Response No. 4.**

USF&G admits the allegations in Objection 4.

Objection No. 5.

Magistrate Smyser, in his report and recommendation, recommended that the summary judgment motion be granted as to the audit report for the year ended December 31, 1996 but denied as to the 1997 and 1998 audit reports.

**Response No. 5.**

USF&G admits the allegations in Objection 5.

Objection No. 6.

Defendants object to that portion of Magistrate Smyser's report and recommendation that addresses the 1997 and 1998 audit reports.

**Response No. 6.**

USF&G states that the statement of Defendants' intentions in Objection 6 requires no

response. However, USF&G avers that Magistrate Judge Smyser's legal and factual conclusions

in the Report are correct as concerns the recommended denial of summary judgment regarding

the 1997 and 1998 audit reports.

---

[2] The Phillips Affidavit, Daily Affidavit and Hussey Affidavit were previously filed in support of United States Fidelity and Guaranty Company's Opposition to Defendants' Motion for Summary Judgment and are incorporated herein by reference.

Objection No. 7.

The Magistrate, in making his findings as to the 1997 and 1998 audits, failed to require that plaintiff satisfy its burden of providing competent evidence that a genuine issue of material fact exists as each element that it bears the burden of proof at trial.

**Response No. 7.**

USF&G denies the allegations in Objection 7. The Report correctly indicates that "the nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial.'" Report, p. 5, quoting Fed. R. Civ. P. 56(c). As required by the pertinent rule, USF&G submitted affidavits, pleadings, deposition excerpts and a large volume of authenticated documents in support of its factual assertions. This competent evidence indicates the existence of numerous issues of material disputed facts. Brown Schultz never moved to strike any of the evidence submitted and no evidence was ever stricken. As required by Local Rule 56.1, USF&G submitted United States Fidelity and Guaranty Company's Response to Defendants' Statement of Material Facts, which detailed response – replete with citation to pertinent and competent evidence – proves that numerous factual disputes exist. Brown Schultz' bald assertion that USF&G failed to satisfy its burden of proof blithely ignores the plethora of competent evidence submitted by USF&G and reviewed by Magistrate Judge Smyser. In fact, the gravamen of Brown Schultz' objections to the Report appears to be Brown Schultz' belief that its evidence is entitled to more weight than that introduced by USF&G. This is contrary to all law extent on the burden of proof on summary judgment motions. "[A] court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent." *Lapinsky v. Amtrak Commuter Services Corp.*, 2001 WL 210288 (E.D. Pa.), citing, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Objection No. 8.

     Magistrate Smyser's determination that privity or a pecuniary interest in a transaction are not requirements under Pennsylvania law for a negligent misrepresentation claim was incorrect.

**Response No. 8.**

     USF&G denies the allegations in Objection 8. As recognized in the Report, Pennsylvania

law unambiguously holds that neither privity nor a pecuniary interest in a transaction are

elements of a claim for negligent misrepresentation. *E.g., Williams Controls, Inc. v. Parente,*

*Randolph, Orlando, Carey & Associates*, 39 F. Supp. 2d 577 (M.D. Pa. 1999); *Eisenberg v.*

*Gagnon*, 766 F.2d 770, 779 (3d Cir. 1985); *Borough of Lansdowne v. Levenson Environ. Serv.*,

99-3781, 2000 WL 1886578 (E.D. Pa. Dec. 12, 2000) ("Under Pennsylvania law, which

incorporates Restatement (Second) of Torts §552, contractual privity is not necessary to maintain

a claim for negligent misrepresentation."). Report, p. 15-17. Moreover, even if, *arguendo*, the

pertinent law were to the contrary, Magistrate Judge Smyser's decision on those issues in his

report denying Brown Schultz' Motion to Dismiss – a decision adopted by Judge Kane on

August 31, 2002 – constitutes the binding law of the case. Report, p. 17.

Objection No. 9.

     Pennsylvania has not relaxed the privity requirement and, in the absence of such privity, Pennsylvania law requires some actual interest in the transaction and not merely the rendering of professional services.

**Response No. 9.**

     USF&G denies the allegations in Objection 9. As recognized in the Report, Pennsylvania

law unambiguously holds that neither privity nor a pecuniary interest in a transaction are

elements of a claim for negligent misrepresentation. *Williams Controls, Inc. v. Parente,*

*Randolph, Orlando, Carey & Associates*, 39 F. Supp. 2d at 578; *Eisenberg v. Gagnon*, 766 F.2d

at 779. Report, p. 15-17. Moreover, Brown Schultz' insistence that Pennsylvania law "requires some actual interest in the transaction" is a gross and misleading misquotation of the pertinent section of the Restatement (Second) of Torts §552. Brown Schultz has derived its purported requirement of "some actual interest" from Section 552 of the Restatement which provides, in pertinent part, that liability may adhere to "[o]ne who, in the ordinary course of his business, profession or employment, *or* in any other transaction in which he has a pecuniary interest . . . ." Restatement (Second) of Torts §552 (emphasis supplied). Further, the "fact that the information is given in the course of the defendants' business, profession or employment is generally a sufficient indication that he has a pecuniary interest in it." Report, pp. 18-19. In every pleading to date, Brown Schultz has eliminated the clause before the word "or." The word "or" in §552 indicates the existence of a disjunctive requirement; namely, that liability may be found against *either* one who is rendering advice in the "ordinary course of his business, profession or employment *or* to one that is doing so in a transaction in which he has a pecuniary interest." *Sain v. Cedar Rapids Community School District*, 626 N.W. 2d 115 (Iowa 2001). Further, even if, *arguendo*, the pertinent law were to the contrary, Magistrate Judge Smyser's decision on that issue in his report denying Brown Schultz' Motion to Dismiss – a decision adopted by Judge Kane on August 31, 2002 – constitute the binding law of the case. Report, p. 17.

<u>Objection No. 10.</u>

The Magistrate accepted plaintiff's so-called evidence of Brown Schultz's knowledge with regard to USF&G's intended use of the audit reports without regard to whether it was competent evidence.

**<u>Response No. 10.</u>**

USF&G denies the allegations in Objection 10. In support of its allegation that Brown Schultz knew of USF&G's intended use of the audit reports, USF&G submitted, *inter alia*,

authenticated excerpts from depositions of Bruce Brown, Susanne Ehgartner and Deborah

Bowman, all present or former employees of Brown Schultz.  USF&G also submitted numerous

documents taken from Brown Schultz' working papers that indicate, among other things, Brown

Schultz' knowledge of USF&G's intended receipt of the audit reports and the nature and extent

of the transactions which would be underwritten in reliance upon those audit reports.  *See, e.g.,*

Exhibits 5, 6, 7, 12, 13, 14, 15, 16 and 17 to the Affidavit of Bruce D. Levin, Esquire ("Levin

Affidavit").[3]  Not only did Brown Schultz not timely question the "competency" of the

delineated evidence but it would be hard pressed to argue that evidence derived from its own

employees and its own documents is not competent evidence regarding the nature and level of

Brown Schultz' knowledge.

<u>Objection No. 11.</u>

 The magistrate cited no competent evidence that Brown Schultz, prior to releasing its
audit report in the years at issue, was aware of the specific bonds to be issued by USF&G during
the coming year or that Brown Schultz released its audit reports with the intention of influencing
those transactions.

**<u>Response No. 11.</u>**

 USF&G denies the allegations in Objection 11.  The objection is highly misleading in that

USF&G was not required to demonstrate that Brown Schultz "was aware of the specific bonds to

be used by USF&G during the coming years."  Rather, as required by Restatement (Second) of

Torts §552 and all pertinent interpretive caselaw, USF&G introduced competent evidence that

Brown Schultz had specific knowledge of the actual transactions at issue, including the level of

risk it was undertaking.  Such evidence squarely meets the standard for liability under

Restatement (Second) of Torts, §552 even under the stringent interpretation given the

---

[3] The Levin Affidavit was previously filed in support of United States Fidelity and Guaranty Company's Opposition
to Defendants' Motion for Summary Judgment and is incorporated herein by reference.

Restatement by the First Circuit. *North American Specialty Insurance Co. v. Dias & Lapalme*, 258 F.2d 34 (1st Cir. 2001). The Report recognizes that USF&G submitted competent evidence of not only Brown Schultz' knowledge of the "actual transaction" but of Brown Schultz' knowledge of the level of risk inherent in accepting the audit assignment. Report, p. 19-23.

<u>Objection No. 12.</u>

Defendants agree with the Magistrate's conclusion that the original expert report of Stephen DeBruyn, plaintiff's expert with regard to the audits performed by Brown Schultz, was deficient.

**<u>Response No. 12.</u>**

USF&G states that the statement of Defendants' agreement with an aspect of the Report requires no response. USF&G further states, however, the statement regarding this discrete issue is irrelevant and moot because, as recognized by Magistrate Judge Smyser, supplements to that report not only undisputedly comply with the requirements of Fed. R. Civ. P. 26, but Brown Schultz has not demonstrated a valid reason why the original report should not be considered in conjunction with timely supplementations. *Dunkin Donuts v. Patel*, 174 F. Supp. 2d 202 (D.N.J. 2001).

<u>Objection No. 13.</u>

Defendants, however, object to the magistrate's conclusion that Plaintiff's failure to produce a report that complied with Rule 26 until after the deadline to produce such a report and after defendants moved for summary judgment raising the deficiencies in the report was harmless.

**<u>Response No. 13.</u>**

USF&G denies that it was error for Magistrate Judge Smyser to conclude that supplementation of USF&G's expert report "was harmless." Brown Schultz' averment that supplementation of the initial expert report was produced "after the deadline to produce such a

report" is incorrect.  Brown Schultz conveniently ignores, *inter alia*, that the Case Management

Order dated August 17, 2001, provides not only dates for the exchange of expert reports but

provides that "[a]ny *supplements* to reports shall be submitted to opposing parties on or before

October 18, 2002." (emphasis supplied).  This order was never appealed by Brown Schultz.

Although the dates for the initial exchange and rebuttals were later amended, the amending

orders all provide that they specifically do not alter, amend or negate any deadlines other than

those specifically amended.  Thus, "supplementation" of expert reports is not only allowed, but

such supplementation was specifically contemplated by the Court.  Moreover, by implication, the

supplementation requirements of Fed. R. Civ. P. 26(e) indicate that supplementation is neither

unusual, unexpected nor invidious.  Even if, *arguendo*, such supplementation deadlines were

missed, Magistrate Judge Smyser acted within his discretion in determining that the

supplementation submitted by USF&G should be considered relative to the summary judgment

motion.  *Dunkin Donuts, Inc. v. Patel*, 174 F. Supp. 2d at 212.  Brown Schultz has indicated

nothing unfair, untoward or prejudicial concerning USF&G's timely supplementation of certain

expert reports.  Additionally, Brown Schultz' objection to consideration of the supplements was

by means of a reply brief which was not timely filed.  Report, p. 4, n.1.  Magistrate Judge

Smyser, however, considered the reply brief in his analysis.  *Id.*

Objection No. 14.

     Pursuant to Fed. R. Civ. P. 37, consideration of the Supplemental Report of Mr. DeBruyn
and his Affidavit should not have been precluded.

**Response No. 14.**

     USF&G admits the allegations in Objection 14 that the Supplemental Report of Mr.

DeBruyn and his affidavit "should *not* have been precluded." (emphasis supplied).  Magistrate

Judge Smyser acted correctly and well within his discretion in determining whether such

supplementation should be considered. *Dunkin Donuts, Inc. v. Patel*, 174 F. Supp. 2d at 212.  To

preclude consideration would be contrary to the deadlines established by the Court and in

derogation of equitable principles.  Brown Schultz has indicated nothing unfair, untoward or

prejudicial concerning USF&G's timely supplementation of certain expert reports. *Id.*

Additionally, Brown Schultz' objection to consideration of the supplements was by means of a

reply brief which was not timely filed.  Report, p. 4, n.1.  Magistrate Judge Smyser, however,

considered the reply brief in his analysis. *Id.*

Objection No. 15.

       Even if it was appropriate for Magistrate Smyser to consider the supplemental DeBruyn
Report and the affidavit, defendants object to the report and recommendation because the
magistrate failed to analyze the sufficiency of Mr. DeBruyn's opinion therein.

**Response No. 15.**

       USF&G states that the statement of Defendants' intent to object contained in Objection

15 requires no response, but USF&G denies the remaining allegations in that paragraph.

However, USF&G notes that the Report provides that Magistrate Judge Smyser reviewed and

assessed the expert report submitted by Steve J. DeBruyn, C.P.A., as supplemented (the

"DeBruyn Report"), as well as an affidavit submitted by Mr. DeBruyn.  Report, p. 25-26.  The

DeBruyn Report, including the accompanying affidavit, contains a detailed discussion of, *inter*

*alia*, Brown Schultz' failure to comply with proper accounting standards and the material effect

such errors, omissions and failings had on the audit reports.  The DeBruyn Report delineates the

documents and professional standards reviewed and relied upon in rendering the opinions

therein.  It also identifies material misstatements and indicates the "primary causes of the

material misstatements."  The DeBruyn Report appends as exhibits "comparisons of CCI's

-10-

Balance Sheets and Income Statements" containing those adjustments warranted as a result of

defects and deficiencies in the audit reports.  Summarily, the DeBruyn Report identifies what is

wrong, discusses the basis upon which acts and omissions were determined to be wrong and then

not only indicates what adjustments are warranted but shows such adjustments in the appended

restated financials.  By any standard, the DeBruyn Report complies with Fed. R. Civ. P. 26 and is

more than sufficient to warrant consideration relative to summary judgment.  *Dunkin Donuts v.*

*Patel*, 174 F. Supp. at 212.

Objection No. 16.

     The Supplemental Report and the DeBruyn Affidavit are inadequate to satisfy plaintiff's
burden in defeating summary judgment.  DeBruyn provides no basis for the conclusion that any
failure to comply with Generally Accepted Auditing Standards was the cause of any
misstatement in the financial statements.

**Response No. 16.**

     USF&G denies the allegations in Objection 16.  The DeBruyn Report contains a detailed

discussion of, *inter alia*, Brown Schultz' failure to comply with proper accounting standards and

the material effect such errors, omissions and failings had on the audit reports.  The DeBruyn

Report delineates the documents and professional standards reviewed and relied upon in

rendering the opinions therein.  It also identifies material misstatements and indicates the

"primary causes of the material misstatements."  The DeBruyn Report appends as exhibits

"comparisons of CCI's Balance Sheets and Income Statements" containing those adjustments

warranted as a result of defects and deficiencies in the audit reports.  Summarily, the DeBruyn

Report identifies what is wrong, discusses the basis upon which acts and omissions were

determined to be wrong and then not only indicates what adjustments are warranted but shows

such adjustments in the appended restated financials.  By any standard, the DeBruyn Report

complies with Fed. R. Civ. P. 26 and is more than sufficient to warrant consideration relative to summary judgment. *Dunkin Donuts v. Patel*, 174 F. Supp. at 212.

Objection No. 17.

At most the reports can be read to say that if Brown Schultz had the benefit of information prepared by CCI at the end of 1999, it would have determined that certain jobs did not perform as estimated.

**Response No. 17.**

USF&G denies the allegations in Objection 17.  Brown Schultz wholly mischaracterizes the content of the DeBruyn Report.  The DeBruyn Report contains a detailed discussion of, *inter alia*, Brown Schultz' failure to comply with proper accounting standards and the material effect such errors, omissions and failings had on the audit reports.  The DeBruyn Report delineates the documents and professional standards reviewed and relied upon in rendering the opinions therein.  It also identifies material misstatements and indicates the "primary causes of the material misstatements."  The DeBruyn Report appends as exhibits "comparisons of CCI's Balance Sheets and Income Statements containing those adjustments warranted as a result of defects and deficiencies in the audit reports.  Summarily, the DeBruyn Report identifies what is wrong, discusses the basis upon which acts and omissions were determined to be wrong and then not only indicates what adjustments are warranted but shows such adjustments in the appended restated financials.  By any standard, the DeBruyn Report complies with Fed. R. Civ. P. 26 and is more than sufficient to warrant consideration relative to summary judgment. *Dunkin Donuts v. Patel*, 174 F. Supp. at 212.

Even a cursory review of the DeBruyn Report reveals that Brown Schultz failed to comply with professional standards and that this failure resulted in material misrepresentations.  For example, the audited financial statements prepared by Brown Schultz for the year ended

December 31, 1997 incorrectly represented that CCI Construction, Inc. ("CCI") produced a net

profit of $706,879 when, in fact, CCI actually *lost* $109,081. In a similar, but a more significant

vein, Brown Schultz' audited financial statement prepared for CCI for the year ended December

31, 1998 incorrectly showed that CCI produced a profit of $59,041 when it actually *lost*

$3,067,467. The materiality of the differences between the net profit information contained in

Brown Schultz' audited financial statements and CCI's actual net losses are readily apparent. As

such, the bald allegation in Objection No. 17 is unmerited and without support.

Objection No. 18.

The "look back method" utilized by Mr. DeBruyn fails to take into account information
available to Brown Schultz at the time of the audits which would be the only information
relevant for purposes of evaluating the quality of the audits. Magistrate Smyser did not address
this issue in his report and recommendation.

**Response No. 18.**

USF&G denies the allegations in Objection 18. As an initial matter, Brown Schultz

produces no professional opinion to support its assertion about Mr. DeBruyn's methodology.

Assuming, *arguendo*, that Brown Schultz has a legitimate professional difference of opinion,

such difference would only create a disputed issue of material fact. Thus, even if such issue had

been properly and timely raised, consideration of the issue was not necessary to Magistrate Judge

Smyser's conclusions in the Report to "address" this issue.

Objection No. 19.

Defendants further object to the report and recommendation, insofar as the magistrate
found that the affidavits of Mr. Daily and Mr. Phillips created a triable issue of fact with regard
to whether the supposed changes in CCI's financial condition would have been material to
USF&G's decision to continue with the bonding program it had established.

**Response No. 19.**

USF&G denies the allegations in Objection 19.  USF&G notes, however, that the Daily and Phillips Affidavits unambiguously state that the information in the restated financials would have been material to the underwriting decision and that they would have acted differently if the audit reports prepared by Brown Schultz contained that information.  Daily Affidavit, ¶22-24; Phillips Affidavit, ¶36-41.

Objection No. 20.

Magistrate Smyser found that USF&G had no specific underwriting criteria. None of the USF&G underwriters could identify underwriting criteria used by USF&G in its decisions to extend surety credit to CCI.  None of the underwriters could state whether and to what extent "correct" financial information would have changed their decision to continue bonding CCI.

**Response No. 20.**

USF&G denies the allegations in Objection 20.  As an initial matter, Magistrate Judge Smyser "found" that "*in support of [their] contention defendants point out* that the plaintiff had no specific underwriting criteria. . . ."  Report, p. 31.  (emphasis supplied).  This is not a conclusion by Magistrate Judge Smyser that USF&G had no specific underwriting criteria.  More importantly, the lack of specific *written* underwriting criteria – or of any specific criteria – does not indicate reckless or negligence by USF&G's underwriters nor does it negate the justifiability of USF&G's reliance on the audit reports.  The Affidavit of Richard D. Farnsworth in Opposition to the Defendants Motion for Summary Judgment (the "Farnsworth Affidavit") indicates that USF&G's underwriting practices conformed to industry practice and that reliance on the audit reports was reasonable.[4]  Farnsworth Affidavit, ¶8, 9, 14 and 16.  The Phillips Affidavit, the Daily Affidavit and the Hussey Affidavit unambiguously state that the information in the restated

---

[4] The Farnsworth Affidavit was previously filed in support of United States Fidelity and Guaranty Company's Opposition to Defendants' Motion for Summary Judgment and is incorporated herein by reference.

financial would have been material to their underwriting decisions.  Phillips Affidavit, ¶36-38;

Daily Affidavit, ¶17, 19 and 20; Hussey Affidavit, ¶12, 13 and 14.

Objection No. 21.

Evidence was presented that USF&G bonded CCI when it was aware that CCI had sustained significant losses and in circumstances when CCI had less working capitol [sic] and less equity than portrayed in the restated financials for 1997.

**Response No. 21.**

USF&G denies the allegations in Objection 21.  Brown Schultz fails to indicate the

identity of the evidence that purportedly "was presented."  More importantly, however, Brown

Schultz fails to indicate why any such evidence would be relevant to the determination of a

summary judgment motion.  Having produced testimony from its experts and its underwriters

that the audit reports were a material aspect of USF&G's underwriting decisions, the evidence

purportedly presented would only reveal the existence of a material disputed fact.  The effect

such putative evidence would have on the justifiability of USF&G's reliance on the audited

financial would not be appropriate for adjudication.  *Big Apple BMW, Inc. v. BMW of North*

*America, Inc.*, 974 F.2d at 1363.

Objection No. 22.

The self serving affidavits of Messrs. Phillips and Daily stating that had the financials reflected the restated amounts contained in the bonding program they would have suspended CCI's bonding program is the only "evidence" cited as to the materiality of the purported misrepresentations.

**Response No. 22.**

USF&G denies the allegations in Objection 22.  Among other relevant evidence, the

Hussey Affidavit also contained testimony as to the materiality of Brown Schultz'

misrepresentations.  Hussey Affidavit, ¶12, 13 and 14.  As an initial matter, the characterization

of the affidavits as "self-serving" is as baseless as it is irrelevant. Brown Schultz has never

raised any objections – even a frivolous one such as "self serving" – to the admissibility of either

the Phillips Affidavit or the Daily Affidavit. These affidavits unambiguously state that Messrs.

Phillips and Daily would have acted differently if they were aware of the true financial condition

of CCI as revealed in the restated financials. Phillips Affidavit, ¶36-38; Daily Affidavit, ¶17, 19

and 20; Hussey Affidavit, ¶12, 13 and 14. Such affirmation under oath are more than sufficient

for summary judgment purposes. Fed. R. Civ. P. 56(e); *Big Apple BMW, Inc. v. BMW of North

America, Inc.*, 974 F.2d at 1363.

Objection No. 23.

     Those affidavits are contradicted by prior deposition testimony and cannot establish a fact
dispute on this issue.

**Response No. 23.**

     USF&G denies the allegations in Objection 23. As recognized by Magistrate Judge

Smyser, the affidavits simply are not contradicted by prior deposition testimony. Report, p. 33,

n. 3. That the affidavits contain a more detailed discussion of certain issues does not mean that

the affidavits contradict prior deposition testimony. Magistrate Judge Smyser does note,

however, that Brown Schultz failed to "provide the court all of the pages of deposition testimony

that they cite as being in contradiction to the declarations." *Id.* However, even if, *arguendo*, the

missing pieces of the summary judgment record are considered, the deposition testimony does

not contradict the affidavits.

Objection No. 24.

     The Magistrate was incorrect in his determination that plaintiff submitted sufficient
evidence for which a reasonable factfinder could conclude that the purported misrepresentations
were material to its decisions to issue the bonds that are the subject matter of this litigation.

**Response No. 24.**

USF&G denies the allegations in Objection 24.  The Phillips Affidavit, the Daily

Affidavit and the Hussey Affidavit are more than sufficient to create a disputed issue of material

fact.  Phillips Affidavit, ¶36-38; Daily Affidavit, ¶17, 19 and 20; Hussey Affidavit, ¶12, 13 and

14.  Moreover, the testimony of Anthony Phillips, James Daily and David Hussey concerning the

materiality of Brown Schultz' errors is bolstered by the enormous variances between the audit

reports and the restated financials.  For example, the audited financial statements prepared by

Brown Schultz for the year ended December 31, 1997 incorrectly represented that CCI

Construction, Inc. ("CCI") produced a net profit of $706,879 when, in fact, CCI actually *lost*

$109,081.  In a similar, but a more significant vein, Brown Schultz' audited financial statement

prepared for CCI for the year ended December 31, 1998 incorrectly showed that CCI produced a

profit of $59,041 when it actually *lost* $3,067,467.

Objection No. 25.

Defendants object to Magistrate Smyser's determination that a triable issue of fact exists
as to whether plaintiff justifiably relied on the Brown Schultz audited financials in making its
underwriting decisions.

**Response No. 25.**

USF&G states that the statement of Defendants' objection requires no response but

denies the remaining allegations in Objection 25.  USF&G notes, however, that Objection No. 25

and several following objections, are oblivious to the established law that "[t]he question of

justifiable reliance is most appropriately left to the jury . . . and is rarely susceptible to summary

disposition." *Williams Controls v. Parente, Randolph, Orlando, Carey and Associates*, 39 F.

Supp. at 534.  Regardless of the proper summary judgment standards, there is ample evidence,

including the Farnsworth Affidavit, demonstrating that USF&G adhered to reasonable

underwriting practices and was justified and reasonable in relying upon professionally prepared audit reports. Farnsworth Affidavit, ¶14, 15 and 19.

Objection No. 26.

Magistrate Smyser found that it was undisputed that there was no evidence that anyone from USF&G analyzed the 1998 audit report prior to August 20, 1999.

**Response No. 26.**

USF&G denies the allegations in Objection 26. USF&G denies the allegations in Objection 26 and further states that the objection is taken out of context. Magistrate Judge Smyser stated that "[n]o Annual Review of the 12/31/98 financials by Mr. Salazar has been *found*" and "first analysis . . . *appears to have been done* . . . dated August 20, 1999." Report, p. 12-13. (emphasis added). This is referring to written documentation. However, throughout the Report there are multiple statements evidencing USF&G's reliance on the Audit Reports in deciding whether or not to issue bonds. Phillips Affidavit, ¶27, 30 and 40; Daily Affidavit, ¶20 and 24; Hussey Affidavit, ¶14. Magistrate Judge Smyser found ample support for USF&G's assertions that it relied upon the 1998 Report, that the report was material to the decision making process for issuance of bonds, and that the reliance upon the Report was justifiable. Report, p. 33.

Objection No. 27.

Accordingly, there is no basis for him to have found that plaintiff submitted sufficient evidence that it, in fact, relied on the 1998 audit report in issuing bonds prior to this date.

**Response No. 27.**

USF&G denies the allegations in Objection 27. Throughout the Report there are multiple statements evidencing USF&G's reliance on the Audit Reports in deciding whether or not to issue bonds. Phillips Affidavit, ¶27, 30 and 40; Daily Affidavit, ¶20 and 24; Hussey Affidavit,

¶14. Magistrate Judge Smyser found ample support for USF&G's assertions that it relied upon the 1998 Report, that the report was material to the decision making process for issuance of bonds, and that the reliance upon the Report was justifiable. Report, p. 33.

Objection No. 28.

The only evidence cites by the magistrate in support of his finding that plaintiff's reliance on the 1997 and 1998 audited financials was justifiable is the Affidavit of Richard Farnsworth which was untimely and not submitted in rebuttal to any report of defendants. As such it should not have been considered by the magistrate.

**Response No. 28.**

USF&G states that the statement as to what has been cited by the Magistrate requires no response but denies the remaining allegations in Objection 28. USF&G notes, however, that the statement in Objection No. 25 is oblivious to the established law that "[t]he question of justifiable reliance is most appropriately left to the jury . . . and is rarely susceptible to summary disposition." *Williams Controls v. Parente, Randolph, Orlando, Carey and Associates*, 39 F. Supp. at 534. Further, not only was the Farnsworth Affidavit timely filed, but Brown Schultz has never moved to strike that affidavit or otherwise called it into question on procedural grounds. In the Farnsworth Affidavit, Mr. Farnsworth opines that based on, *inter alia*, his considerable experience in the surety industry, that, in general, it is justifiable for an underwriter to rely heavily upon audited financial statements and that, in particular, USF&G was justified in its reliance in the matter extant. Farnsworth Affidavit, ¶14, 15 and 19.

Objection No. 29.

The paragraph of the Farnsworth Affidavit cited by the magistrate also does not create an issue of fact as to whether USF&G's reliance was justifiable.

**Response No. 29.**

USF&G denies the allegations in Objection 29.  USF&G notes, however, that Objection

No. 25 and several following objections are oblivious to the established law that "[t]he question

of justifiable reliance is most appropriately left to the jury . . . and is rarely susceptible to

summary disposition." *Williams Controls v. Parente, Randolph, Orlando, Carey and Associates*,

39 F. Supp. at 534.  It is baseless for Brown Schultz to imply that the Farnsworth Affidavit does

not contain an unequivocal opinion that surety underwriters in general, and USF&G's

underwriters, in particular, are justified in relying upon unqualified professionally prepared audit

reports in making underwriting decisions.  Farnsworth Affidavit, ¶14, 15 and 19.

Objection No. 30.

The magistrate cites paragraph 15 of the affidavit the full text of which states[:]

The overall physical appearance of the Brown Schultz audit reports was good.  They
were a full report with supporting schedules, including schedules of completed contracts
and work-in-progress. From a surety underwriter's perspective, these audit reports
appeared to be professional and lent itself to a high degree of reliance by USF&G.

**Response No. 30.**

USF&G states that no response is necessary to the statement in Objection 30 concerning

what the Magistrate cites.  USF&G notes that expert testimony in the Farnsworth Affidavit that

the audit reports "appeared to be professional" indicates that USF&G's underwriters were

particularly justified in relying upon the audit reports.  In addition to the opinion of USF&G's

expert that "from a surety underwriter's perspective" the audit reports lent themselves "to a high

degree of reliance," USF&G introduced testimony from its underwriters that, in fact, they

materially relied upon the audit reports.  *See,* Daily Affidavit, ¶17, 19 and 20, Hussey Affidavit,

¶12, 13 and 14, Phillips Affidavit, ¶36-38.

Objection No. 31.

There was no basis for the magistrate to find that there was a triable issue of fact with regard to justifiable reliance based solely on the physical appearance of the financial statements.

**Response No. 31.**

USF&G denies the allegations in Objection 31.  USF&G notes, however, that the statement in Objection No. 31 is oblivious to the established law that "[t]he question of justifiable reliance is most appropriately left to the jury . . . and is rarely susceptible to summary disposition."  *Williams Controls v. Parente, Randolph, Orlando, Carey and Associates*, 39 F. Supp. at 534.  It is a vast and unjustified misreading of both the Report and the Farnsworth Affidavit for Brown Schultz to conclude that a triable issue was created "based solely on the physical appearance of the financial statements."  Of course, as a matter of simple common sense it is eminently more justifiable to rely upon statements with professional physical appearances than those that might have an unusual or unprofessional appearance.  The Farnsworth Affidavit reveals that Mr. Farnsworth's opinion that USF&G was justified in relying upon the audited financial statements is based on a multitude of factors, including standard industry practice.  Farnsworth Affidavit, ¶14, 15 and 19.

Objection No. 32.

In addition, the magistrate ignored undisputed evidence that USF&G was a sophisticated user of financial statements and that USF&G had equal or greater access than Brown Schultz to financial information regarding the CCI.

**Response No. 32.**

USF&G denies the allegations in Objection 32.  USF&G notes, however, that the statement in Objection No. 32 is oblivious to the established law that "[t]he question of justifiable reliance is most appropriately left to the jury . . . and is rarely susceptible to summary

disposition." *Williams Controls v. Parente, Randolph, Orlando, Carey and Associates*, 39 F.

Supp. at 534. Further, Brown Schultz can point to no legal authority showing that USF&G's

alleged financial sophistication is relevant to the issue of whether an underwriter may justifiably

rely upon an audited financial statement relative to making underwriting decisions. Moreover,

even if, *arguendo*, the level of sophistication were relevant, such a factor would be one of weight

and not determinative of the existence of a disputed issue of material fact. Having presented

competent evidence of both is reliance and the justifiability of that reliance, USF&G has met its

burden of proof. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d at 1363.

<u>Objection No. 33.</u>

The magistrate further failed to take into consideration the fact that certain of the bonds
were issued by USF&G when had more current financial information provided by CCI and upon
which it could base its decisions. Its claimed reliance on stale audit reports was not justified as a
matter of law.

**<u>Response No. 33.</u>**

USF&G denies the allegations in Objection 33. USF&G notes, however, that the

statement in Objection No. 33 is oblivious to the established law that "[t]he question of

justifiable reliance is most appropriately left to the jury . . . and is rarely susceptible to summary

disposition." *Williams Controls v. Parente, Randolph, Orlando, Carey and Associates*, 39 F.

Supp. at 534. Brown Schultz fails to identify which "law" would find any reliance unjustified if,

*arguendo*, there was competent evidence that USF&G "had more current financial information . .

. ." Brown Schultz also ignores the distinction between audited financial statements – which are

highly credible -- and unaudited financial information provided by a contractor. USF&G

introduced expert testimony as to the justifiability of USF&G's reliance on the audit reports.

Farnsworth Affidavit, ¶14, 15 and 19. To the extent Brown Schultz has an expert opinion to the

contrary, summary judgment would be an improper means of adjudicating such dispute. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d at 1363.


USF&G files contemporaneously herewith and incorporates herein by reference United States Fidelity & Guaranty Company's Memorandum of Law in Response to Defendants' Objections to Magistrate's [sic] Smyser's Report and Recommendations Regarding Defendants' Motion for Summary Judgment.

USF&G also incorporates herein by reference all pleadings, affidavits and exhibits filed on or about October 10, 2001 relative to USF&G's Opposition to Defendants' Motion for Summary Judgment.

> UNITED STATES FIDELITY & GUARANTY COMPANY,
> By its attorneys,
>
> *Bruce D. Levin*
>
> Peter B. McGlynn, Esquire
> Bruce D. Levin, Esquire
> Bernkopf, Goodman & Baseman LLP
> 125 Summer Street, Suite 1300
> Boston, MA  02110
> Telephone:    (617) 790-3000
> Facsimile:    (617) 790-3300
>
> and
>
> Peter Speaker, Esquire
> Thomas, Thomas & Hafer
> 305 North Front Street
> Harrisburg, PA  17101
> Telephone:    (717) 237-7100
> Facsimile:    (717) 237-7105

Dated: December 5th, 2002

#258074 v1/36432/87

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

United States Fidelity and            :
Guaranty Company                      :
                                      :
            v.                        :
                                      :
Bruce J. Brown and Brown Schultz      :
Sheridan & Fritz                      :          No. 01-CIV-813


### Certificate of Service

I, Kristy L. House, hereby certify that a copy of the foregoing document was

served upon counsel Kathleen Carson, Esquire via FedEx on December 5, 2002.


Kristy L. House