

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY,<br>　　　Plaintiff<br><br>v.<br><br>BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ,<br>　　　Defendants. | CIVIL ACTION NO. 1:01-CV-00813<br><br>JUDGE CONNER |

FILED
HARRISBURG, PA

DEC 0 5 2002

MARY E. D'ANDREA, CLERK
Per _____

**UNITED STATES FIDELITY AND GUARANTY COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF ITS RESPONSE TO DEFENDANTS' OBJECTIONS
TO MAGISTRATE'S [SIC] SMYSER'S REPORT AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

United States Fidelity and Guaranty Company ("USF&G") submits this memorandum in support of United States Fidelity And Guaranty Company's Response To Defendants' Objections To Magistrate's [Sic] Smyser's Report And Recommendations Regarding Defendants' Motion For Summary Judgment. Defendants' Objections to Magistrate's [sic] Smyser's Report and Recommendation Regarding Defendants' Motion for Summary Judgment (the "Objections") and the brief filed in support thereof by Bruce J. Brown and Brown Schultz Sheridan & Fritz (collectively, "Brown Schultz") are little more than a rehash of the disputed facts and inaccurate legal theories previously raised by Brown Schultz and summarily rejected by the Court. Moreover, the Objections demonstrate a wholesale misunderstanding of the standards for summary judgment; in effect, Brown Schultz asserts – presumably based on the greater weight it

believes attributable to its evidence – that it is entitled to summary judgment despite the existence of numerous disputed facts and regardless of its lack of entitlement to judgment as a matter of law. However, neither Brown Schultz' subjective belief that the weight of the evidence purportedly favors its case nor its willingness to re-argue inadequate and already rejected legal theories are sufficient grounds to sustain any of Brown Schultz' objections to the Report and Recommendations dated November 5, 2002 by Magistrate Judge Smyser (the "Report").

## II. Facts and Procedural Background

USF&G incorporates herein by reference Section II of United States Fidelity and Guaranty Company's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (the "Summary Judgment Opposition"), which was previously filed with the Court.[1]

## III. Argument

### A. It Is Inappropriate To "Weigh" Evidence In Evaluating A Summary Judgment Motion.

Brown Schultz repeatedly objects to the Report on the basis that in finding the existence of disputed issues of material fact that Magistrate Judge Smyser purportedly failed to decide certain issues which Brown Schultz asserts it is entitled to an adjudication as a matter of law. *See, e.g.,* Objection Nos. 21, 22, 28, 29 and 31 of the Objections. The gravamen of the objections is that the Report fails to indicate that Magistrate Judge Smyser failed to give due weight to certain evidence introduced by Brown Schultz – even if USF&G introduced evidence

---

[1] The Summary Judgment Opposition was previously filed with the Court and is incorporated herein by reference. Because Brown Schultz' arguments relative to the Objections are merely a retread of those previously made by Brown Schultz – and rebutted by USF&G in the Summary Judgment Opposition – USF&G incorporates its arguments in the Summary Judgment Opposition herein and, in the spirit of conservation and courtesy, will not unnecessarily copy verbatim such arguments herein.

in contradiction to that of Brown Schultz. "When deciding a motion for summary judgment . . . a court's role remains circumscribed in that it is *inappropriate for a court to resolve factual disputes* and to make credibility determinations." *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) citing, *Country Floors, Inc. v. A. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991). (emphasis supplied). "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In support of its opposition to the summary judgment motion, USF&G submitted, *inter alia*, affidavits of the three USF&G employees involved in the facts at issue and expert opinions concerning both Brown Schultz' failure to comply with proper accounting practice and the reasonableness of USF&G's underwriting practice. USF&G also submitted excerpts from the depositions of past and present Brown Schultz employees and authenticated documents gleaned from Brown Schultz' working papers. For every element of its *prima facie* case, USF&G introduced at least one piece of competent, authenticated evidence. This evidence showed, at minimum, the existence of a disputed issue of material fact. As such, USF&G has met its burden of proof and the entry of summary judgment would be improper. *Anderson v. Liberty Lobby*, 477 U.S. at 256-57. That Brown Schultz introduced evidence that may or may not contradict USF&G's evidence is irrelevant because "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Big Apple BMW, Inc. v. BMW of North America*, 974 F.2d at 1363. Accordingly, the Report should be affirmed because, *inter alia*, Brown Schultz' speculation as to the weight allegedly given by Magistrate Judge Smyser to

elements of Brown Schultz' evidence that is contradicted by evidence introduced by USF&G is irrelevant. *Id.*

### B. The Report Correctly Recognizes That Neither Privity Nor A Pecuniary Interest In The Transaction By The Defendant Are Elements Of A Claim For Negligent Misrepresentation.

Magistrate Judge Smyser previously recognized in his opinion denying Brown Schultz' Motion to Dismiss, that *"[u]nder Pennsylvania law, privity is not a requirement of a claim for negligent misrepresentation."* Report and Recommendation dated August 10, 2001 (the "Decision"). (citations omitted) (emphasis supplied). The Decision was neither appealed nor was any review sought by Brown Schultz. Accordingly, it was adopted by the Court (Kane, J.) on August 30, 2001. *See*, 28 U.S.C.S. 636(b)(7)(B). Further, according to the decision issued by Magistrate Judge Smyser, "the Pennsylvania Supreme Court has adopted the Restatement (Second) of Torts §552 . . . ." *Id.*, p. 7. The denial of Brown Schultz' Motion to Dismiss was based on the unambiguous holdings of several applicable and analogous cases. *E.g., Williams Controls v. Parente, Randolph, Orlando, Carey & Associates*, 39 F.Supp. 2d at 517; *Eisenberg v. Gagnon*, 766 F.2d 770, 779 (3rd Cir. 1985); *Borough of Landsdowne v. Stevenson Envir. Serv. Inc.*, 99-3781, 2000 W.L. 1886578 (E.D. Pa. 2000). Brown Schultz' assertion (and continued reassertion) that privity is a necessary element of a cause of action for negligent misrepresentation is nothing more than a rehash of the same discredited claim it made in its Motion to Dismiss; no new cases or novel arguments have been added relative to the recent summary judgment motion or to Brown Schultz' Objections.

In the Report, Magistrate Judge Smyser correctly recognized that the law of the case doctrine bars a different result upon Brown Schultz' re-argument of its outdated legal theory. Report, p. 17. Magistrate Judge Smyser's conclusion that the law of the case doctrine applies is

based on established precedent. "The law of the case doctrine applies to issues expressly decided by a court in prior rulings and to issues decided by necessary implication." *Bolden v. Southeastern Pennsylvania Transportation Authority,* 21 F.3d 29 (3rd Cir. 1994). Under the law of the case, "when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation." *Diesler v. McCormack Aggregates Co.,* 54 F.3d 1074, 1087 (3rd Cir. 1995); *Bolden v. Southeastern Pennsylvania Transportation Authority,* 21 F.3rd 29 (3rd Cir. 1994) (law of the case doctrine applies both to issues expressly decided by a court in prior rulings and to issues decided by necessary implication).

Moreover, Brown Schultz has proffered no new legal arguments or factual averments that would justify overturning not only what is indisputably the "law of the case" but is also the acknowledged and undisputable state of the law in Pennsylvania. *E.g., Williams Controls v. Parente, Randolph, Orlando, Carey & Associates*, 39 F.Supp. 2d at 528; *Eisenberg v. Gagnon*, 766 F.2d at 779. None of the cases relied upon by the Court in the Decision were overturned on appeal, distinguished as to relevant holdings in subsequent cases or supplanted by statute or new case law. Accordingly, re-adjudication of this issue by the Court in the context of reviewing the legal conclusions in the Report is neither necessary nor appropriate.

    **C.**    **The Report Is Based On The Significant Evidence Of Material Disputed Facts Submitted By USF&G.**

        1.    There is ample evidence concerning compliance with Restatement (Second) of Torts §552.

Magistrate Judge Smyser correctly recognizes that Restatement (Second) of Torts §552 "requires the identification of a specific class of persons and a *specific transaction* that the supplier of the information intends the information to influence . . . ." Report, p. 20. (emphasis supplied). Further, he recognized that "[t]he risk perceived by the supplier at the time of the

-5-

engagement cabins the extent of the duty that the supplier owes to known third parties." *Id.*, citing *North American Specialty Ins. Co. v. Lapalme*, 258 F.3d 35, 41 (1st Cir. 2001). Brown Schultz' objection that the Report failed to find that USF&G "was aware of the specific bonds to be issued by USF&G during the coming year . . ." is groundless. Objections, no. 11. The Report articulates the correct standard for liability for negligent misrepresentation, which is derived from Restatement (Second) of Torts §552. Pennsylvania has unequivocally adopted this section of the Restatement. *Bortz v. Noon*, 729 A.2d 555 (Pa. 1999); Report, p. 13. The Report is also correct in its conclusion that USF&G has met all elements of that standard; to wit, USF&G has introduced ample evidence that Brown Schultz was aware of the "specific transaction" – the continuance and extension of a bonding program – and that Brown Schultz was aware of the concomitant risks of the audits undertaken, as proven by the introduction of evidence by USF&G demonstrating Brown Schultz' knowledge of CCI's intentions and the parameters of its bonding needs. Report, p. 22-23.

Brown Schultz' contention that the "specific transaction" of which the accountant must be knowledgeable is the specific bonds to be issued at a future date – and not the continuance of a certain bonding program – is contrary to the plain language of Restatement (Second) of Torts §552. Moreover, as discussed in greater detail in the Summary Judgment Opposition, such an interpretation is contrary to industry practice, common sense and public policy. Summary Judgment Opposition, p. 49-52. Additionally, not only is *North American Specialty Ins. Co. v. Lapalme* factually distinguishable from the instant case, but such case simply does not require proof that an accountant knew the inherently unknowable; to wit, the identity and terms of exact projects that would be bid upon and awarded to a contractor at some future date. Rather, the First Circuit's stringent interpretation of Restatement (Second) of Torts §552 in *North American*

*Specialty Ins. Co.* merely requires the introduction of some evidence indicating that the accountant was aware of the parameters of the risks undertaken in performing certain audit work. *North American Specialty Ins. Co. v. Lapalme*, 258 F.3d at 43-44. Summary Judgment Objection, p. 49-50. The Report acknowledges that USF&G introduced evidence of such knowledge. Report, p. 22-23.

        2.     USF&G submitted admissible expert testimony concerning the existence of material misstatements.

The gravamen of Brown Schultz' argument concerning USF&G's putative failure to demonstrate a disputed issue of material fact concerning misrepresentations in the audit report is that because the introduction of any expert testimony by USF&G is allegedly barred because of its alleged failure to comply with Fed. R. Civ. P. 26(b) USF&G cannot prove an essential element of its case; namely, that Brown Schultz breached its duty of care. The basis of Brown Schultz' invocation of this rule is that USF&G's expert purportedly failed to "disclose sufficient information and explanation for the court to determine the validity of the opinions expressed . . . ." Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 39-42. Brown Schultz has essentially reiterated this argument in its untimely reply brief and in the Objections.

Fed. R. Civ. P. 26(a)(2), subtitled, "Disclosure of Expert Testimony," states, in pertinent part, that

> (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case . . . be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for

> the opinions; the qualifications of the witness, including a list of all
> publications authorized by the witness within the preceding ten
> years; the compensation to be paid for the study and testimony; and
> a listing of any other cases in which the witness has testified as an
> expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B). The test as to whether a particular expert report is compliant with this rule is "whether [the report is] sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced. *Dunkin' Donuts Inc. v. Patel*, 174 F.Supp. 2d 202, 212 (D.Md. 2001) quoting *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996).

On July 22, 2002, USF&G served the Expert Report of Steve J. DeBruyn ("DeBruyn Report") on Brown Schultz' counsel. After receiving expert reports from Brown Schultz on August 20, 2002, USF&G served the Supplemental Expert Report of Steve J. DeBruyn ("Supplemental Report") on September 20, 2002, as was allowed under the Court's Case Management Order. The Case Management Order provided a deadline of October 18, 2002 for submission of "[a]ny *supplements* to [expert] reports . . . ." (emphasis supplied). USF&G also filed contemporaneously with the Summary Judgment Opposition the Affidavit of Steve J. DeBruyn in Opposition to the Defendants' Motion for Summary Judgment (the "DeBruyn Affidavit"). To date, no expert depositions have been taken, by either party.

USF&G avers that the DeBruyn Report meets the enumerated test for compliance with Fed. R. Civ. P. 26(a)(2). Summary Judgment Opposition, p. 56-58. The DeBruyn Report delineates the documents and professional standards "reviewed and relied upon," by Stephen J. DeBruyn, C.P.A., in rendering his opinions thereon. DeBruyn Report, p. 2-3. The DeBruyn Report also identifies material misstatements and indicates the "primary causes of the material misstatements" in three enumerated sections. DeBruyn Report, p. 3-6. Finally, the DeBruyn

Report appends as exhibits "comparisons of CCI's Balance Sheets and Income Statements containing those adjustments warranted as a result of the defects and deficiencies" in the Audit Report. Summarily, the DeBruyn Report identifies what is wrong, discusses the basis upon which such acts and omissions were determined to be wrong and then not only indicates what adjustments are warranted but shows such adjustments in the appended restated financials.

In the Report, Magistrate Judge Smyser found the DeBruyn Report – on its own – to be inadequate. Report, p. 28. However, the Report also found that although the DeBruyn Report, along, was insufficient, the Supplemental Report provided a more than adequate explanation of the basis and reasons contained therein. Report, p. 28. In addition to rebutting various assertions advanced by Brown Schultz' experts, the Supplemental Report discusses in depth the methodology utilized in creating the restated financials. Supplemental Report, p. 1-2. By any standard, the Supplemental Report, taken in conjunction with the DeBruyn Report, is more than sufficient to ensure that "surprise is eliminated." *Dunkin' Donuts, Inc. v. Patel*, 174 F.Supp. at 212. Thus, Magistrate Judge Smyser acted well within his discretion in considering the DeBruyn Report in conjunction with the Supplemental Report and the DeBruyn Affidavit. *Id.*

Additionally, for purposes of Brown Schultz' summary judgment motion, the DeBruyn Affidavit fully complies with the requirements of Fed. R. Civ. P. 56(e).

Brown Schultz' plaint that there are any procedural defects concerning the Affidavit of Richard D. Farnsworth in Opposition to the Defendants' Motion for Summary Judgment ("Farnsworth Affidavit") are far fetched. In its brief in support of the Objections, Brown Schultz claims that "the Farnsworth Affidavit is based on an expert report that was submitted on September 20, 2002, two weeks after it was due." This averment – never previously raised by Brown Schultz – is just plain false. According to the Case Management Order dated August 17,

2001, as amended by Order dated May 8, 2002, the deadline for submission of expert reports by USF&G was July 22, 2002, the deadline for submission of expert reports by Brown Schultz was August 21, 2002 and the deadline for supplements was October 18, 2002. On or about June 10, 2002, USF&G filed the Motion to Amend Case Management Order Regarding Expert Reports ("Motion to Amend"), a copy of which is attached to Brown Schultz' brief. In the Motion to Amend, USF&G states that it intends to timely submit "an expert report as to what it avers are various auditing and accounting errors by Brown Schultz . . . ." Motion to Amend, ¶3. USF&G further states that it believes that the expert it will designate to "be the only expert necessary for USF&G to prove its *prima facie* case . . ." and, accordingly, seeks leave to designate an additional expert "[i]n the event that Brown Schultz seeks to designate any experts *other than its rebuttal expert on accounting* . . . ." (emphasis supplied). Motion to Amend, ¶3 and 4. By Order dated June 14, 2002, Magistrate Judge Smyser allowed the Motion to Amend, providing a date of September 20, 2002 for "submission of rebuttal expert reports."

Prior to July 20, 2002, USF&G submitted the DeBruyn Report, USF&G's sole expert report concerning accounting issues. On or about August 21, 2002, Brown Schultz not only served the reports of two accountants, Donald Brenner and Daniel Coffey, in rebuttal to USF&G's designation of Mr. DeBruyn as its expert on accounting issues but also submitted a report of Rolf Neuschaefer, a purported expert on surety bond underwriting. The report of Mr. Neuschaefer solely concerns *underwriting issues* and, in essence, criticizes the performance of USF&G's underwriters. Presumably, this is submitted in support of one of Brown Schultz' affirmative defenses. Accordingly, as expressly permitted by the order dated June 14, 2002, granting the Motion to Amend, USF&G filed the expert report of Richard Farnsworth, a surety

-10-

bond underwriting expert, on or about September 20, 2002. The report of Mr. Farnsworth was timely. Until the Objections, no issues were raised regarding that report.

Even if, *arguendo*, the Court were inclined to elevate form over substance, Brown Schultz has failed to preserve its right to do so. No motions to strike any expert reports, affidavits or testimony, including that of Mr. DeBruyn, have ever filed by Brown Schultz. The reply brief in which Brown Schultz voices its objection to the consideration of Mr. DeBruyn's supplements and affidavits was "not timely filed." Report, p. 4. Magistrate Judge Smyser, however, considered the arguments raised in that pleading. Having taken the position that the technical prevails over the equitable – a position apparently taken by Brown Schultz despite its acknowledgement of the validity equitable test utilized in *Dunkin Donuts*, Brown Schultz should be estopped from raising an argument it did not properly present or preserve.

### D. The Report Correctly Recognizes The Existence Of A Material Dispute As To USF&G's Justifiable Reliance.

As an initial matter, "[t]he question of justifiable reliance is most appropriately left to the jury. Reasonableness of reliance involves all of the elements of the transaction, and is rarely susceptible of summary disposition." *Williams Controls v. Parente, Randolph, Orlando, Carey & Associates*, 39 F.Supp. at 534, quoting *In re Atlantic Fin. Management, Inc. Sec. Litig.*, 718 F.Supp. 1003, 1008 (D. Mass. 1988); *Krisa v. The Equitable Life Assurance Society*, 109 F.Supp. 2d 316 (M.D. Pa. 2000) ("justifiable reliance issue is properly left for jury resolution"). Regardless of the inappropriateness of this issue for resolution by summary judgment, as discussed in greater detail in the previously Summary Judgment Opposition, USF&G's underwriters not only relied upon the audited financial statements prepared by Brown Schultz but, in doing so, were acting justifiably and in accordance with established industry practices.

-11-

USF&G need not prove that any particular audit report was the sole inducement for its decision to issue payment and performance bonds on behalf of CCI. *Delahanty v. First Pennsylvania Bank*, 318 Pa. Super. 90 (1983). USF&G can prove justifiable reliance for purposes of the cause of action for negligent misrepresentation by proving that the information in the audit reports was a "substantial factor" in determining its course of conduct. *Neuman v. Corn Exchange Nat. Bank & Trust Co.*, 356 Pa. 442, 445 (1947); *Blue Bell v. Peat, Marwick*, 715 S.W.2d 408, 415 (Tx. 1986).

Magistrate Judge Smyser correctly acknowledged that not only did USF&G present evidence "in the form of declarations from those who were involved in the decisions to issue bonds" that USF&G relied upon the audit reports but that, in the form of the Farnsworth Affidavit, USF&G "presented evidence that their reliance on the reports was justifiable." Report, p. 33-34. As such, the Report properly recommends the denial of summary judgment as to an issue of fact that is disputed. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d at 1363.

### IV. <u>Conclusion</u>

For the foregoing reason, the Report should be adopted by the Court without alteration.

UNITED STATES FIDELITY & GUARANTY COMPANY,
By its attorneys,

*/s/ Bruce D. Levin*
Peter B. McGlynn, Esquire
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, MA  02110
Telephone:    (617) 790-3000
Facsimile:    (617) 790-3300

and

Peter Speaker, Esquire
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA  17101
Telephone:    (717) 237-7100
Facsimile:    (717) 237-7105

Dated: December 5th, 2002
#258087 v1/36432/87

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

United States Fidelity and
Guaranty Company

v.

Bruce J. Brown and Brown Schultz
Sheridan & Fritz                              No. 01-CIV-813

**Certificate of Service**

I, Kristy L. House, hereby certify that a copy of the foregoing document was served upon counsel Kathleen Carson, Esquire via FedEx on December 5, 2002.

*Kristy L. House*
Kristy L. House