UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States Fidelity and Guaranty Company : : : v. : : Bruce J. Brown and Brown, Schultz Sheridan & Fritz : | Hon. Christopher Conner No: 01-CIV-813 |

## **DEFENDANTS' STATEMENT OF MATERIAL UNDISPUTED FACTS**

Defendants, Bruce, J. Brown and Brown Schultz Sheridan & Fritz, by and through their counsel, submit the following statement of material facts as to which defendants contend there is no genuine issue to be tried as required by Local Rule 56.1:

1. This action involves a claim for negligent misrepresentation by a surety company against auditors employed by plaintiff's insured. *See generally* Complaint.[1]

2. Plaintiff is a surety company. Complaint at ¶ 7.

3. Plaintiff issued performance and payment bonds to its insured, CCI Construction Company, in connection with construction work for which CCI Construction contracted. Complaint at ¶¶ 16, 18, 20.

---

[1] A copy of the complaint in this matter is Exhibit A defendants' supplemental motion for summary judgment.

4.     Defendants are accountants who audited the financial statements of CCI Construction and issued audit reports concerning the CCI Construction financial statements prepared by the management of CCI Construction. Complaint at ¶ 12.

5.     The claim in this action stems from and is based on the audit reports issued by defendants for the financial statements of CCI Construction for the calendar years ending December 31, 1997 and December 31, 1998.[2] Complaint at ¶ 17-20.

6.     CCI Construction allegedly defaulted on its construction contracts and plaintiff performed on the bonds. Complaint at ¶ 22.

7.     The damages are based on the amount plaintiff allegedly paid on the bonds issued for CCI Construction. Complaint at ¶ 25.

8.     The claim asserted in this action is based on the contention that plaintiff issued bonds for CCI Construction pursuant to a bond program based on the audit reports which misrepresented material information. Complaint at ¶ 17-21.

9.     Plaintiff produced expert witness reports from an accountant/auditor, and a surety bond underwriter. *See* Expert Reports of Steve J. DeBruyn, CPA dated

---

[2]The claim was also based on alleged problems with defendants' audit reports concerning CCI Construction's 1996 financial statement. However, this Court entered summary judgment in favor of defendants on the claim to the extent it was based on the 1996 report on financial statements due to the absence of appropriate expert witness evidence. Copies of the 1997 and 1998 Audited Financial Statements are Exhibits K and L to defendants' supplemental summary judgment motion.

July 22, 2002; September 20, 2002 and October 8, 2002; Expert Report of Richard D. Farnsworth dated September 20, 2002 and September 27, 2002.[3]

10.  Defendants conducted the depositions of plaintiff's expert witnesses on March 11, 2003 (Mr. Farnsworth) and May 7, 2003 (Mr. DeBruyn).

11.  Plaintiff's auditor expert witness, Steve J. DeBruyn, ("DeBruyn") testified there were no false statements by defendants included in defendants' audit reports concerning the financial statements of CCI Construction. Deposition of Steve J. DeBruyn dated May 7, 2003 (hereinafter "DeBruyn Deposition") at pp. 292-93.

12.  DeBruyn indicated in his report that certain adjustments should be made to the financial statements for the financial statements of CCI Construction for 1997 and 1998. *See* 7/22/02 DeBruyn Report at p. 3; 9/20/02 DeBruyn Report.

13.  The proposed adjustments indicated by DeBruyn related to the estimated job costs, and therefore, the estimated costs to complete contracts in process, and the inclusion in revenue $1,162,000 on the 1998 financial statement based on a guaranty by an insurer of a payment on an insurance claim. *See* 7/22/02 DeBruyn Report at pp. 5-6; 9/20/02 DeBruyn Report.

14.  DeBruyn expressed the opinion that additional procedures should have been employed to test job costs as a means to scrutinize the amount reflected on the

---

[3] Copies of Mr. DeBruyn's Expert Reports are Exhibits B through D to defendants' supplemental motion for summary judgment. Copies of Mr. Farnsworth's Expert Reports are Exhibits E and F thereto.

financial statements of CCI Construction as the estimated cost to complete the contract. DeBruyn Deposition at pp. 114-115, 120-121.[4]

15. DeBruyn testified that there is no reason to believe that if greater skepticism had been used by defendants in connection with the audit of the financial statement of CCI Construction that the opinion of defendants about the financial statements would have been different. DeBruyn Deposition at pp. 112, 155-56.

16. DeBruyn testified that he is unable to determine or express an opinion about whether the results of the audit by defendants of the financial statement of CCI Construction for 1997 would have been different if additional procedures had been performed by defendants. DeBruyn Deposition at pp. 115-116, 122.

17. DeBruyn did not perform the additional procedures to determine whether additional procedures would have altered the outcome. DeBruyn Deposition at pp. 115, 122.

18. DeBruyn did not perform a re-audit of the CCI financial statements. DeBruyn Deposition at p. 293.

19. DeBruyn indicated that without a review or re-audit of the CCI records, it cannot be determined whether the additional procedures he suggests would have altered the outcome of the audits. DeBruyn Deposition at pp. 116, 118, 122, 124.

20. DeBruyn testified that he requested the CCI Construction records to perform the procedures to determine whether additional procedures would have

---

[4]The pertinent portions of Mr. DeBruyn's deposition are Exhibit G to defendants' supplemental motion for summary judgment.

altered the outcome of the audit and was told by USF&G the records were not available.  DeBruyn Deposition at p. 116.

21.     The CCI Construction records were provided to and were in the possession of plaintiff. *See* Deposition of Matthew Silverstein at pp. 28-29.[5]

22.     DeBruyn has no reason to believe the documents from which he derived information used to develop adjustments to the financial statements existed when defendants performed the audit of the 1997 financial statements, or that the information reflected in those documents was known or available to defendants when they performed their audit of the 1997 financial statement.  DeBruyn Deposition at pp. 130-132.

23.     DeBruyn's proposed adjustments to estimated costs to complete are based on information concerning the actual cost to complete the contract once the contract was completed which revealed that the cost to complete was actually greater than the estimates included in the financial statements.  DeBruyn Deposition at p. 138.

24.     The proposed adjustments to the financial statements by DeBruyn were entirely based on information developed after the audits were completed and not information known or available to defendants when the audits were performed. DeBruyn Deposition at pp. 137-139.

---

[5]The pertinent portions of Mr. Silverstein's deposition are Exhibit H to defendants' supplemental motion for summary judgment.

25. DeBruyn has no reason to believe the documents from which he derived information used to develop adjustments to the financial statements existed when defendants performed the audit of the 1997 financial statements, or that the information reflected in those documents was known or available to defendants when they performed their audit of the 1997 financial statement. DeBruyn Deposition at pp. 130-132.

26. DeBruyn did not determine the reason for the increased cost to complete for each contract in excess of the estimated cost to complete. DeBruyn Deposition at p. 140.

27. The reason for the difference between the estimated cost to complete reflected on the financial statements and the actual cost to complete should be reflected in the CCI Construction records, but plaintiff's auditor did not review the records. DeBruyn Deposition at p. 141.

28. Without the CCI Construction records, DeBruyn is unable to determine the reason for the increased contract costs and whether the increased costs are attributable to conditions of which defendants were or should have been aware when they conducted the audit. DeBruyn Deposition at pp. 141, 148-149, 150-151.

29. DeBruyn does not believe that any job cost reflected on the 1997 financial statement is wrong, and he has no reason to believe that any job cost reflected on the 1998 financial statement is wrong. DeBruyn Deposition at pp. 166, 171-172.

30. The financial statement is the representation of management of the company about the financial condition of the company and the audit report is the auditor's report about the results of the audit of the financial statements. DeBruyn Deposition at pp. 125-126.

31. DeBruyn used information obtained subsequent to the audits by defendants to develop the proposed adjustments to the financial statements. Dep. at 271.

32. DeBruyn testified that he agreed with the concepts that:

   a. An auditor's report is issued in connection with historical financial statements that purport to present a financial position at a stated date and results of operations and cash flows for a period ended on that date. DeBruyn Deposition at p. 94.

   b. The percentage of completion method of accounting requires a presumption that contractors generally have the ability to produce estimates that are sufficiently dependable to justify the use of the percentage of completion method of accounting and that persuasive evidence to the contrary is necessary to overcome that presumption. DeBruyn Deposition at p. 95.

   c. The previous reliability of a contractor's estimating process is usually an indication of continuing reliability, particularly, if the

       present circumstances are similar to those that prevailed in the past. DeBruyn Deposition at pp. 95-96.

d.    A profit fade (reduction in profit from the amount of profit previously predicted) is not, alone, indicative of a problem with job cost estimates or financial reporting by the contractor. DeBruyn Deposition at p. 108.

e.    Estimating is an integral part of a contractor's business activities and there is a necessity to revise estimates on contracts continually as the work progresses. The fact that circumstances may necessitate frequent revision of estimates does not indicate that the estimates are unreliable for the purpose for which they are used, although results may differ widely from original estimates. Because of the nature of the business, the contractor in the conduct of his business, may still find the estimates reasonably dependable. Despite these widely recognized conditions, a contractor's estimates of total contract revenue and total contract costs should be regarded as reasonably dependable if the minimum total revenue and the maximum total cost can be estimated with a sufficient degree of confidence to justify the contractor's bids on contracts. DeBruyn Deposition at pp. 109-110.

       f.      Contractors, like all business enterprises, are exposed to numerous business risks that vary from contract to contract. The reliability of the estimating process in contract accounting does not depend on the absence of such risks. Assessing business risks is a function of users of financial condition. DeBruyn Deposition at p. 110.

33.    The audit relationship between Brown Schultz and CCI existed since at least as early as 1992. DeBruyn Deposition at pp. 107.

34.    Defendants properly considered their experience with CCI Construction when performing their audit work. DeBruyn Deposition at pp. 108.

35.    DeBruyn has no reason to believe that Sheri Phillips, the Chief Financial Officer of CCI Construction during the time at issue, was other than a competent accountant who understood construction industry accounting. DeBruyn Deposition at p. 88.

36.    The 1997 audit report was peer reviewed and there is no reason to believe the peer reviewers were other than qualified and competent. DeBruyn Deposition at p. 91.

37.    DeBruyn asserts that the 1997 and 1998 financial statements from CCI were not reliable. DeBruyn deposition at p. 286. However, in spite of a determination by DeBruyn that this earlier financial information from CCI Construction was not reliable, the subsequent information he relied on for his adjustments was from CCI

and was not audited, reviewed, or otherwise evaluated to determine the validity of the information DeBruyn Deposition at p. 286.

38.     DeBruyn used a "look back" method, or a modification of the "look back" method to arrive at his proposed adjustments to the estimated costs to complete contracts in progress reflected in the 1997 and 1998 financial statements. DeBruyn Deposition at pp. at 223.

39.     The "look back" method utilizes information obtained subsequent to the event to determine the actual situation and is not a test of the reasonableness of the auditor's assessment of the financial information as of the audit. DeBruyn Deposition at p. 271.

40.     In arriving at his proposed adjustments to the 1997 and 1998 financial statements, Debruyn used information obtained subsequent to the defendants' audits. *See* Supplemental DeBruyn Expert Report at p. 1.

41.     The look back method is used by the Internal Revenue Service for tax related issues. DeBruyn Deposition at p. 226.

42.     DeBruyn is not aware of any instance in which the look back method is used other than in connection with tax related issues. DeBruyn Deposition at p. 228.

43.     There is no support in the accounting literature for the use of the "look back" method used by DeBruyn to derive the proposed adjustments to the 1997 and 1998 financial statements. DeBruyn Deposition at pp. 228-29.

44. DeBruyn is not aware of any instance in which the "look back" method was used to evaluate the propriety of the work performed by auditors of financial statements. DeBruyn Deposition at p. 263.

45. DeBruyn was required to use the same audit procedures employed by, or which should have been employed by, defendants when testing the quality of the work performed by defendants. DeBruyn Deposition at p. 231-32.

46. Defendants did not use, and were not able to use, the "look back" method during their audit of the estimated costs to complete contracts in progress since the data necessary for the "look back" method was not available during the audit. DeBruyn Deposition at pp. 234-35.

47. DeBruyn did not limit his use of the "look back" method to data known to be available to defendants when defendants performed their audit work for CCI. DeBruyn Deposition at p. 235.

48. DeBruyn does not know the information which was available to defendants when they performed their audit work. DeBruyn Deposition at p. 235.

49. The use of the "look back" method by DeBruyn resulted in proposed adjustments to the 1997 and 1998 financial statements based on data not available to defendants during defendants' audit of the CCI financial statements. DeBruyn Deposition at p. 235.

50. The treatment of indirect costs was adequately disclosed in the financial statements. DeBruyn Deposition at p. 253.

51. DeBruyn did not determine whether the absence of allocation of the indirect costs to specific contracts was material. DeBruyn Deposition at p. 252.

52. In the absence of a determination that the absence of allocation of the indirect costs to specific contracts was material, the absence of allocation of indirect costs to specific contracts by CCI Construction was not a basis on which an auditor could properly withhold an opinion on the financial statements. DeBruyn Deposition at p. 253.

53. DeBruyn was critical of the audit report of the 1998 financial statement because the amount of a guaranty ($1,162,000) was included in revenue because (1) the insurance policy did not cover the Mahanoy Prison claim, and (2) it was a guaranty by a stockholder of CCI Construction. DeBruyn Deposition at pp. 177, 181, 182.

54. The $1,162,000 related to PCIC was a claim against an insurance policy coupled with a guaranty by the insurer. DeBruyn Deposition at pp. 194-95.

55. CCI made a claim under a Remedial Work Period Insurance Policy issued by PCIC to CCI with regard to the Mahanoy Prison Project. DeBruyn Deposition at p. 180.

56. Insurance claims can properly be included as revenue on the financial statement if there is a legal basis for the claim. DeBruyn Deposition at p. 191.

57. DeBruyn's belief that the guaranty amount should not have been included in revenue was based on his own lay, non-law trained determination that

the insurance policy did not provide coverage for the claim presented. DeBruyn

Deposition at pp. 191-92.

58. Defendants are as qualified as DeBruyn to make the judgment about whether the insurance claim was a covered claim. Dep. at 193.

59. Pursuant to the PCIC insurance policy PCIC

> agreed to reimburse the INSURED for all COSTS reasonably incurred in fulfilling its legally binding obligations under each DESIGNATED CONTRACT, as defined in Section II, VALIDLY ISSUED by the INSURED during the POLICY TERM, in accordance with the terms and conditions of such DESIGNATED CONTRACT.

*See* Remedial Work Insurance Policy No. 97-003. COSTS are the "ordinary and customary charge for the type of services performed in the geographical area where the remedial work services are performed. . . ." *Id.* at p. 2.[6]

60. The insurance contract issued by PCIC to CCI provided coverage for remedial work. DeBruyn Deposition at p. at 293.

61. Warranty work is considered remedial work. DeBruyn Deposition at p. 293.

62. The claim by CCI Construction under the PCIC insurance policy was for warranty related work. DeBruyn Deposition at p. 293.

63. The claim by CCI under the PCIC policy was a covered claim.

---

[6]A copy of the PCIC Remedial Work Period Insurance Policy is Exhibit N to defendants' supplemental motion for summary judgment.

# 13

64. In any event, even if not covered under the policy, the PCIC guaranty provided:

> PCIC will guarantee the claim that was filed by CCI, in the amount of One Million Two Hundred Thousand Dollars ($1,200,000), with the Department of General Services, Commonwealth of Pennsylvania, for the project known as Mahanoy State Correctional Institution, Frackville, Pennsylvania. If the Department of General Services, Commonwealth of Pennsylvania, fails to pay all or any part of the subject claim, PCIC will pay the difference owing or the full amount of the claim if no part of the claim is paid.

Guaranty Agreement dated December 1, 1998 between Pennsylvania Contractors Insurance Company and CCI Construction Company.[7]

65. The guaranty was a legally binding obligation without regard for the interpretation of the insurance policy.

68. DeBruyn testified that the PCIC guaranty was assumed to be valid. DeBruyn Deposition at pp. 179-80.

69. The guaranty was not a guaranty by a stockholder of CCI Construction. DeBruyn Deposition at p. 190.

70. It was not necessary for the amount included in revenue on the financial statement to actually be received by the company during the period for which the financial statement was issued. DeBruyn Deposition at p. 196.

71. PCIC paid CCI Construction on the guaranty in full. DeBruyn Deposition at p. 197.

---

[7] A copy of the PCIC Guaranty is Exhibit J to defendants' supplemental motion for summary judgment.

72. Whatever concern might have existed by the inclusion of the PCIC guaranty in revenue was not a problem for underwriting if the amount was paid in full to CCI Construction. *See* Deposition of Richard D. Farnsworth at p. 237.[8]

73. The financial statement for 1998 specifically informed the reader in footnote 8 that:

    **8. Related party transactions**:

    . . . . During 1997, the Company incurred warranty insurance expense of $825,000 with Pennsylvania Contractors Insurance Company, a corporation under common control. These costs are allocated as a direct cost of contracts. There were no such costs in 1998. . . .

    In addition, Pennsylvania Contractors Insurance Company has guaranteed a claim of $1,162,460 filed by the Company with a contract owner. If the owner fails to pay all or any part of this claim, the insurance company will pay the unpaid portion.

    *See* CCI Financial Statement for the Years Ended December 31, 1998 and 1997 at fn. 8.

74. DeBruyn asserts that this disclosure was misleading because the guaranty amount was recorded as contract revenue and not a separate line item on the balance sheet clearly denoted as a related party transaction. *See* Affidavit of Steve J. DeBruyn, CPA at ¶ 17. *See also*, Supplemental Expert Report at p. 3 ("In addition, a more useful disclosure would have been to report the

---

[8]The pertinent portions of Mr. Farnsworth's deposition are Exhibit I to defendants' supplemental motion for summary judgment.

transaction as a separate line on the balance sheet of CCI indicating that it was a guarantee by the stockholder.").

75. However, Richard Farnsworth, plaintiff's underwriting expert, upon review of the foregoing footnote, understood that the $1,162,000 was included in revenue on the 1998 financial statement.

76. Mr. Farnsworth stated:

> I believe that the way the disclosure reads it's a guaranteed claim of $1,162,000. A reader of the financial report would reasonably interpret that it was included in revenue. If it was not then it should certainly have been disclosed. But I believe that the way it's stated one could reasonably conclude that it was included in revenue.

Farnsworth Deposition at p. 236.

                                      SWARTZ CAMPBELL, LLC

                              BY:    s/Kathleen M. Carson
                                        JEFFREY B. MC CARRON
                                        KATHLEEN M. CARSON
                                        1601 Market Street
                                        34th Floor
                                        Philadelphia, PA 19103
                                        (215) 564-5190

                                        Attorneys for Defendants

Dated: September 12, 2003