# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

United States Fidelity and          :
Guaranty Company                    :
                                    :
           v.                       :     Hon. Christopher Conner
                                    :
Bruce J. Brown and Brown, Schultz   :
Sheridan & Fritz                    :     No: 01-CIV-813


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR SUPPLEMENTAL SUMMARY JUDGMENT MOTION

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      Introduction        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      USF&G's Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.      Plaintiff's Proposed Adjustments to CCI's Financial
                Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.      Mr. DeBruyn's Use of a "Look Back" Method . . . . . . . . . . . . . 13

        D.      Treatment of Indirect Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        E.      The PCIC Guaranty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.    Statement of Questions Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.     Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.      Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . 20

        B.      Elements of a Negligent Misrepresentation Claim . . . . . . . . . . . 21

        C.      Mr. DeBruyn's Testimony Is Insufficient As A Matter of Law to
                Establish the Existence of a Misrepresentation In the 1997 or
                1998 Financial Statements About Which Defendants Ought to
                Have Known  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        D.      Mr. DeBruyn's Testimony is Inadmissible Because His Use of a
                "Look Back" Method  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        E.      Plaintiff Cannot Establish that Not Including Indirect Costs in
                Job Costs Was Misleading or Resulted in a Misrepresentation of
                Material Fact in the 1997 or 1998 Financial Statements. . . . . . . 34

**Page(s)**

F.    Plaintiff Cannot Establish that the 1998 Financial Statements
Materially Misrepresented the Financial Condition of CCI
Because the PCIC Guaranty Was Included in Revenue . . . . . . . 36

V.    Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## TABLE OF CITATIONS

Page(s)

*Amoco Oil Co. v. McMahon*, 1997 U.S. Dist. LEXIS 1303, 1997 WL
    50448 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248, 91. L.Ed. 2d 202,
    106 S. Ct. 2505 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994) . . . . . . . . . . . . . . . . . . 27

*Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 91 L.Ed. 2d 265, 106 S.
    Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*City of Rome v. Glanton*, 958 F. Supp. 1026, 1039 (E.D. Pa. 1997) . . . . . . . . . . . . . 22

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 379, 392 (1993) . . . . . . 30, 31

*Donegal Mutual Insurance Company v. Grossman*, 195 F. Supp. 2d 657,
    662-63 (M.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Elcock v Kmart Corp*, 233 F.3d 734, 745-46 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . 31

*Freeman v. Murray*, 163 F. Supp. 2d 478 (M.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . 23

*Gans v. Mundy,* 762 F.2d 338, 343 (3d Cir. 1985) (interpreting Pennsylvania
    law) *cert. denied* 474 U.S. 1010, 88 L. Ed. 2d 467, 106 S. Ct. 537 (1985) . . . . 22

*Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994) . . . . . . . . . . . . . . . . . 21, 24

*In re IKON Office Solutions, Inc.*, 277 F.3d 658 (3d Cir. 2002) . . . . . . . . . . . . . . . . . 24

*Incollingo v. Ewing*, 444 Pa. 263, 276 n. 6, 282 A.2d 206, 214, 444
    Pa. 299 n. 5a (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Kumho Tire Co., Ltd v. Carmichael*, 309 U.S. 141 (1999) . . . . . . . . . . . . . . . . . . . . . 30

*Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474 (3d Cir. 1979) . . . . . . . . 22, 23

*National Cash Register v. Haak*, 233 Pa. Super. 562, 335 A.2d 407 (1975) . . . . . . . . 22

iv

**Page(s)**

*Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . 31, 32

*Powell v. Risser*, 375 Pa. 60, 65, 99 A.2d 454, 456 (1953) . . . . . . . . . . . . . . . . . . . . . 23

*Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.*, 1998 U.S. Dist.
     LEXIS 4235 (E.D. Pa. Apr. 1, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Smith v. Yohe*, 412 Pa. 94, 99, 194 A.2d 167, 170 (1963) . . . . . . . . . . . . . . . . . . . . . 22

*U.S. v. Mathis,* 264 F.3d 321 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

## STATUTES

Federal Rule of Evidence 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Restatement (Second) of Torts § 552, comment on § 1 (e) . . . . . . . . . . . . . . . . . . . . 22

## I.    Introduction

Plaintiff, United States Fidelity & Guaranty Company ("USF&G"), brought this action against Bruce J. Brown and Brown Schultz Sheridan & Fritz (collectively "Brown Schultz") for alleged negligent misrepresentations contained in financial statements for the years ended December 31, 1996, 1997 and 1998 prepared by CCI Construction Company's ("CCI") management and which were audited by Brown Schultz. The action is based on the contention that USF&G issued certain payment and performance bonds for CCI based on the financial statements.  Defendants seek summary judgment through this supplemental motion based on plaintiff's expert witness evidence which is insufficient to establish the existence of a valid cause of action by plaintiff against defendants.

This supplemental summary judgment motion is based on information that was not available to the defendants as of the deadline set forth in the case management order for filing summary judgment motions.[1]  Since that deadline, defendants have taken the depositions of plaintiff's auditor expert, Steve J. DeBruyn, CPA and plaintiff's underwriting expert, Richard Farnsworth . The testimony by plaintiff's expert witnesses, alone and when coupled with other sources of proof,

---

[1]The case management order provided that the deadline for filing of summary judgment motions was August 30, 2002. Defendants request that the Court consider this motion even though submitted after the deadline because it is based on information that was not available to them at that time.  In addition, allowing defendants to proceed with this motion may avoid the necessity of a trial altogether or limit the issues to be tried.

2

establish the absence of a valid cause of action by plaintiff for negligent misrepresentation against defendants.

Plaintiff cannot prove that the 1997 and 1998 financial statements misrepresented the financial condition of CCI and/or that defendants knew or should have known that CCI's financial statements were, in some way, inaccurate or misleading.   Plaintiff's auditor expert stated in his original report that income and equity were overstated in specific amounts supposedly due to the failure of defendants to perform sufficient audit procedures and adequate testing. Plaintiff's auditor expert testified at his deposition that he made these adjustments to the 1997 and 1998 financial statements on the basis of information which was not available to the defendants at the time they were conducting their audits of CCI. Plaintiff's auditor expert also did not perform the additional procedures and/or tests that he indicated ought to have been performed by the defendants during the course of the audits.  He concedes that he did not and could not make a determination that, if those procedures had been performed, they would have affected the outcome of the audits. Plaintiff's auditor expert's proposed adjustments are based on speculation or conjecture and do not establish the existence of a misrepresentation regarding CCI's financial condition about which the auditor's should have known.

Moreover, plaintiff's auditor expert's opinion and testimony regarding the adjustments he proposes to CCI's financial statements would be inadmissible at trial. The proposed adjustments are not based on an accepted methodology or a reliable

test of the proficiency employed by defendants under the circumstances presented at the time the audit was performed. Without the testimony of an expert concerning the existence of misrepresentations in the financial statements about which defendants ought to known, plaintiff cannot succeed with its negligent misrepresentation claim.

While plaintiff's auditor expert also criticized the fact that indirect costs were not allocated to specific contracts, he could not say that the failure to allocate those costs was material. Moreover, both he and plaintiff's underwriting expert conceded at their depositions that manner in which indirect costs were presented in CCI's financial statements was not misleading and was sufficient for underwriting purposes. Plaintiff cannot establish a misrepresentation of material fact with regard to the treatment of indirect costs in the 1997 and 1998 financial statements.

Finally, Plaintiff's auditor expert, in his reports, criticized the recognition of $1,162,000 in revenue in the 1998 financial statement. The $1,162,000 represented an amount that had been guaranteed by Pennsylvania Contractor's Insurance Company ("PCIC") on a claim relating to the Mahanoy Prison Project  in the event some or all of that amount was not paid by the contract owner.  Plaintiff's auditor expert indicated in his reports and at his deposition that this amount should not have been recorded as revenue and that the disclosures in the financial statements regarding its inclusion as revenue were inadequate.  However, plaintiff's auditor expert conceded at his deposition that it was appropriately recognized as revenue even though it had not yet been paid by PCIC.  More importantly, plaintiff's

underwriting expert testified based on the "related party transactions" footnote in the 1998 financials that a reader would understand that the amount of the guarantee had been included in revenue and that whatever concern existed from an underwriting standpoint concerning the inclusion of the PCIC guaranty in revenue was not a problem if the amount was paid in full, which it was. Based on plaintiff's experts' testimony, plaintiff cannot establish a misrepresentation of material fact in the 1998 financial statement based on the $1,162,000 guaranteed by PCIC.

## II.    Statement of Facts

### A.    USF&G's Claim

Plaintiff, USF&G, is a surety company. Complaint at ¶ 7.[2]  Plaintiff issued performance and payment bonds to its insured, CCI, in connection with construction work for which CCI contracted. Complaint at ¶¶ 16, 18, 20. Defendants, Bruce Brown and Brown Schultz Sheridan & Fritz are accountants who audited the financial statements of CCI and issued audit reports concerning the CCI financial statements prepared by the management of CCI.  Complaint at ¶ 12.  The claim in this action stems from and is based on the audit reports issued by defendants for the financial statements of CCI for the calendar years ending December 31, 1997 and December 31, 1998.[3] Complaint at ¶ 17-20.

_____

[2]A copy of the Complaint is Exhibit A hereto.

[3]The claim was also based on alleged problems with defendants' audit reports concerning CCI Construction's 1996 financial statement.  However, this Court entered summary judgment in favor of defendants on the claim to the extent it was based on the 1996 report on financial statements due to the absence of appropriate

CCI allegedly defaulted on its construction contracts and plaintiff performed on the bonds. Complaint at ¶ 22. The claimed damages are based on the amount plaintiff allegedly paid on the bonds issued for CCI. Complaint at ¶ 25.

Plaintiff, in support of its claim, produced expert witness reports from an accountant/auditor, and a surety bond underwriter. *See* Expert Reports of Steve J. DeBruyn, CPA dated July 22, 2002; September 20, 2002 and October 8, 2002; Expert Reports of Richard D. Farnsworth dated September 20, 2002 and October 8, 2002.[4] Defendants conducted the depositions of plaintiff's expert witnesses on March 11, 2003 (Mr. Farnsworth) and May 7, 2003 (Mr. DeBruyn). Defendants did not have the benefit of the testimony of plaintiff's expert witnesses as of the deadline for the filing of summary judgment motions. The testimony by plaintiff's expert witnesses, alone and when coupled with other sources of proof, establish the absence of a valid cause of action by plaintiff against defendants.

### B.    Plaintiff's Proposed Adjustments to CCI's Financial Statements

Plaintiff's auditor expert witness, Steve J. DeBruyn, CPA ("DeBruyn") indicated in his original report that certain adjustments should be made to the financial statements for the financial statements of CCI Construction for 1997 and 1998. *See* 7/22/02 DeBruyn Report at p. 3; 9/20/02 DeBruyn Report. According to DeBruyn

─────────────────

expert witness evidence.

[4]The reports of Mr. DeBruyn are Exhibits B-D. The reports of Mr. Farnsworth are Exhibits E and F.

> it is my opinion that the audit work performed by Brown Schultz
> for CCI for the fiscal years ended December 31, 1997 and 1998
> did not conform to applicable standards of care of a Certified
> Public Accountant and this resulted in material misstatements
> and omission in Brown Schultz's 1997 and 1998 Audit Reports.
> Specifically, the negligent audit work performed by Brown
> Schultz resulted in an overstatement of both income and equity
> in the amount of $815,960 for 1997 and $3,126,508 for 1998.

7/22/02 DeBruyn Report at p. 3. The proposed adjustments indicated by DeBruyn

related to the estimated job costs, and therefore, the estimated costs to complete

contracts in process, and the inclusion in revenue $1,162,000 on the 1998 financial

statement based on a guaranty by an insurer of a payment on an insurance claim. *See*

7/22/02 DeBruyn Report at pp. 5-6; 9/20/02 DeBruyn Report.

The proposed adjustments to the financial statements by DeBruyn were

entirely based on information developed after the audits were completed and not

information known or available to defendants when the audits were performed.[5]

DeBruyn Deposition at pp. 137-139.[6] DeBruyn has no reason to believe the

documents from which he derived information used to develop adjustments to the

financial statements existed when defendants performed the audit of the 1997

financial statements, or that the information reflected in those documents was

known or available to defendants when they performed their audit of the 1997

---

[5]The financial statement is the representation of management of the company
about the financial condition of the company and the audit report is the auditor's
report about the results of the audit of the financial statements. DeBruyn Deposition
at pp. 125-126.

[6]The pertinent portions of the deposition of Steve J. DeBruyn are Exhibit G.

7

financial statement. DeBruyn Deposition at pp. 130-132. Mr. DeBruyn's proposed adjustments to estimated costs to complete are based on information concerning the actual cost to complete the contract once the contract was completed which revealed that the cost to complete was actually greater than the estimates included in the financial statements. DeBruyn Deposition at p. 138.

Mr. DeBruyn did not determine the reason for the increased cost to complete for each contract in excess of the estimated cost to complete. DeBruyn Deposition at p. 140. According to DeBruyn, the reason for the difference between the estimated cost to complete reflected on the financial statements and the actual cost to complete should be reflected in the CCI records, but he did not review those records. DeBruyn Deposition at p. 141. Without the CCI records, DeBruyn cannot determine the reason for the increased contract costs and whether the increased costs are attributable to conditions of which defendants were or should have been aware when they conducted the audit. DeBruyn Deposition at pp. 141, 148-149, 150-151. While he requested those records he was informed by USF&G that the records were not available. DeBruyn Deposition at p. 116. DeBruyn has no reason to believe that any job cost reflected on the 1997 financial statement is wrong, and has no reason to believe that any job cost reflected on the 1998 financial statement is wrong. DeBruyn Deposition at pp. 166, 171-172.

While USF&G advised DeBruyn that the records were not available, USF&G had obtained most of CCI's project files when USF&G took over performance of the

projects from CCI. *See* Deposition of Matthew Silverstein at pp. 28-29.[7]  According to Matt Silverstein of St. Paul's surety claim department, in certain instances the CCI files were turned over to the completion contractor, in certain instances they were returned to CCI when the project was complete and in certain instances they are still in USF&G's possession. *Id.*

DeBruyn contends that additional procedures should have been employed by Brown Schultz to test job costs as a means to scrutinize the amount reflected on the financial statements of CCI as the estimated cost to complete the contract.  DeBruyn Deposition at pp. 114-115, 120-121. However, DeBruyn testified that there is no reason to believe that if greater skepticism had been used by Brown Schultz in connection with the audit of the financial statements of CCI that the opinion of defendants about the financial statements would have been different. DeBruyn Deposition at pp. 112, 155-56.  He also is  unable to determine or express an opinion about whether the results of the audit by defendants of the financial statement of CCI Construction for 1997 would have been different if additional procedures had been performed by defendants. DeBruyn Deposition at pp. 115-116, 122.

 DeBruyn did not re-audit the CCI  financial statements or perform the additional procedures he believes ought to have been performed in order to determine whether such additional procedures would have altered the outcome.  DeBruyn Deposition at pp. 115, 122, 293.  Again, DeBruyn indicated that he would need to

---

[7]The pertinent portions of the deposition of Matthew Silverstein are at Exhibit H.

review the CCI records to determine whether additional procedures by the auditors would have altered the outcome of the audits. DeBruyn Deposition at pp. 116, 118, 122, 124. Those records were not made available to him by USF&G.

DeBruyn agreed that:

i.    An auditor's report is issued in connection with historical financial statements that purport to present a financial position at a stated date and results of operations and cash flows for a period ended on that date. DeBruyn Deposition at p. 94.

ii.   The percentage of completion method of accounting requires a presumption that contractors generally have the ability to produce estimates that are sufficiently dependable to justify the use of the percentage of completion method of accounting and that persuasive evidence to the contrary is necessary to overcome that presumption. DeBruyn Deposition at p. 95.

iii.  The previous reliability of a contractor's estimating process is usually an indication of continuing reliability, particularly, if the present circumstances are similar to those that prevailed in the past. DeBruyn Deposition at pp. 95-96.

iv.   A profit fade (reduction in profit from the amount of profit previously predicted) is not, alone, indicative of a problem with job cost estimates or financial reporting by the contractor. DeBruyn Deposition at p. 108.

v.    Estimating is an integral part of a contractor's business activities and there is a necessity to revise estimates on contracts continually as the work progresses. The fact that circumstances may necessitate frequent revision of estimates does not indicate that the estimates are unreliable for the purpose for which they are used, although results may differ widely from original estimates. Because of the nature of the business, the contractor in the conduct of his business, may still find the estimates reasonably dependable. Despite these widely recognized conditions, a contractor's estimates of total contract revenue and total contract costs should be regarded as reasonably dependable if the minimum total revenue and the maximum total cost can be estimated with a sufficient degree of confidence to justify the contractor's bids on contracts. DeBruyn Deposition at pp. 109-110.

vi.    Contractors, like all business enterprises, are exposed to numerous business risks that vary from contract to contract. The reliability of the estimating process in contract accounting does not depend on the absence of such risks. Assessing business risks is a function of users of financial condition. DeBruyn Deposition at p. 110.

The audit relationship between CCI Construction existed since at least as early as 1992. DeBruyn Deposition at pp. 107. DeBruyn agreed that defendants properly considered their experience with CCI when performing their audit work. DeBruyn

11

Deposition at pp. 108.  DeBruyn testified he has no reason to believe that Sheri Phillips, the Chief Financial Officer of CCI during the time at issue, was other than a competent accountant who understood construction industry accounting.  DeBruyn Deposition at p. 88.  The 1997 audit report was peer reviewed and there is no reason to believe the peer reviewers were other than qualified and competent.  DeBruyn Deposition at p. 91.

Even though DeBruyn agreed with the foregoing concepts, DeBruyn used information obtained subsequent to the audits by defendants to develop the proposed adjustments to the financial statements. DeBruyn Deposition at p. 271. Moreover, the subsequent information relied on by Mr. DeBruyn was from CCI and was not audited, reviewed, or otherwise evaluated to determine the validity of the information in spite of a determination by DeBruyn that earlier financial information from CCI was not reliable. DeBruyn Deposition at p. 286.

### C.    Mr. DeBruyn's Use of a "Look Back" Method

Plaintiff's auditor expert witness used a "look back" method, or a modification of the "look back" method to arrive at his proposed adjustments to the estimated costs to complete contracts in progress reflected in the 1997 and 1998 financial statements.  DeBruyn Deposition at pp. at 223; DeBruyn Supplemental Expert Report at p. 1.  The "look back" method utilizes information obtained subsequent to the event to determine the actual situation and is not a test of the reasonableness of the auditor's assessment of the financial information as of the audit. DeBruyn

Deposition at p. 271. The look back method is used by the Internal Revenue Service for tax related issues.  DeBruyn Deposition at p. 226.

DeBruyn testified that he is not aware of any instance in which the look back method is used other than in connection with tax related issues.  DeBruyn Deposition at p. 228.  There is no support in the accounting literature for the use of the "look back" method used by DeBruyn to derive the proposed adjustments to the 1997 and 1998 financial statements.  DeBruyn Deposition at pp. 228-29. DeBruyn is not aware of any instance in which the "look back" method was used to evaluate the propriety of the work performed by auditors of financial statements.  DeBruyn Deposition at p. 263.

DeBruyn admits that he was required to use the same audit procedures employed by, or which should have been employed by, defendants when testing the quality of the work performed by defendants. DeBruyn Deposition at p. 231-32. DeBruyn admits that he did not do this.  DeBruyn Deposition at pp. 115, 122, 293. Brown Schultz did not use, and was not able to use, the "look back" method during its audit of the estimated costs to complete contracts in progress since the data necessary for the "look back" method was not available during the audit. DeBruyn Deposition at pp. 234-35. DeBruyn did not limit his use of the "look back" method to data known to be available to defendants when defendants performed their audit work for CCI Construction. DeBruyn Deposition at p. 235. In fact, DeBruyn does not

13

know the information which was available to defendants when they performed their audit work. DeBruyn Deposition at p. 235.

DeBruyn admits that the use of the "look back" method by him may have led to proposed adjustments to the financial statements based on data not available to defendants during defendants' audit of the CCI financial statements. DeBruyn Deposition at p. 235.

### D.    Treatment of Indirect Costs

Mr. DeBruyn was critical of the treatment of indirect costs. According to Mr. DeBruyn's original report, CCI was not properly allocating indirect costs to individual contract. DeBruyn Report at p. 4. However, at his deposition, Mr. DeBruyn testified that the treatment of indirect costs was adequately disclosed in the financial statements. DeBruyn Deposition at p. 253. He further testified that he did not determine whether the absence of allocation of the indirect costs to specific contracts was material. DeBruyn Deposition at p. 252.

Mr. DeBruyn conceded that without a determination that the absence of allocation of the indirect costs to specific contracts was material, the absence of allocation of indirect costs to specific contracts by CCI was not a basis on which an auditor could properly withhold an opinion on the financial statements. DeBruyn Deposition at p. 253.

Finally, Mr. Farnsworth, plaintiff's underwriting expert, testified that from an underwriting standpoint, the presentation by Brown Schultz of indirect costs as a separate line item was acceptable.  According to Mr. Farnsworth

> they [Brown Schultz] gave you the information that the analysts needed to make a proper determination of profit or loss on individual jobs as well as the, you know, income or loss for the period covered by the financial statement.

Deposition of Richard Farnsworth at p. 178.[8]

### E.    The PCIC Guaranty

Plaintiff's auditor expert was critical of the audit report of the 1998 financial statement because the amount of a guaranty ($1,162,000) was included in revenue. The guaranty related to an insurance claim by CCI Construction under an Remedial Work Period Insurance Policy issued by PCIC to CCI.  DeBruyn Deposition at p. 180. The insurance policy provided coverage for remedial work in connection with the Mahanoy Prison contract.  DeBruyn Deposition at p. 180.[9] In addition to the

---

[8]The pertinent portions of the deposition of Richard Farnsworth are at Exhibit I hereto.

[9] The PCIC insurance policy specifically provided that PCIC

> agreed to reimburse the INSURED for all COSTS reasonably incurred in fulfilling its legally binding obligations under each DESIGNATED CONTRACT, as defined in Section II, VALIDLY ISSUED by the INSURED during the POLICY TERM, in accordance with the terms and conditions of such DESIGNATED CONTRACT.

See Remedial Work Insurance Policy No. 97-003. COSTS are the "ordinary and customary charge for the type of services performed in the geographical area where the remedial work services are performed. . . ." Id.  at p. 2. The Policy is attached

15

insurance policy, PCIC also guaranteed that it would pay CCI that amount of the claim which was not paid by the contract owner. *See* PCIC Guaranty. According to DeBruyn, the amount should not have been included in revenue on the 1998 financial statement because (1) the insurance policy did not cover the Mahanoy Prison claim, and (2) it was a guaranty by a stockholder of CCI Construction. DeBruyn Deposition at pp. 177, 181, 182.

Mr. DeBruyn, in his deposition, agreed that he was no more qualified than the defendants to determine if the claim was covered by the PCIC insurance policy. DeBruyn Deposition at p. 193. Mr. DeBruyn's conceded that his belief that the guaranty amount should not have been included in revenue was based on his own lay, non-law trained determination that the insurance policy did not provide coverage for the claim presented. DeBruyn Deposition at pp. 191-92.

Mr. DeBruyn testified that the insurance contract issued by PCIC to CCI Construction provided coverage for remedial work. DeBruyn Deposition at p. at 293. According to Mr. DeBruyn, the claim by CCI Construction under the PCIC insurance policy was for warranty related work. DeBruyn Deposition at p. 293. Mr. DeBruyn agreed that warranty work is considered remedial work. DeBruyn Deposition at p. 293. Finally, Mr. DeBruyn testified that insurance claims can properly be included as revenue on the financial statement if there is a legal basis for the claim. DeBruyn Deposition at p. 191.

---

hereto as Exhibit N.

16

Even if not covered by the insurance policy, the guaranty from PCIC provided:

> PCIC will guarantee the claim that was filed by CCI, in the amount of One Million Two Hundred Thousand Dollars ($1,200,000), with the Department of General Services, Commonwealth of Pennsylvania, for the project known as Mahanoy State Correctional Institution, Frackville, Pennsylvania.  If the Department of General Services, Commonwealth of Pennsylvania, fails to pay all or any part of the subject claim, PCIC will pay the difference owing or the full amount of the claim if no part of the claim is paid.

Guaranty Agreement dated December 1, 1998 between PCIC and CCI Construction Company.[10]   Mr. DeBruyn testified that the PCIC guaranty was assumed to be valid. DeBruyn Deposition at pp. 179-80. He also agreed that the guaranty was not a guaranty by a stockholder of CCI Construction.  DeBruyn Deposition at p. 190. DeBruyn testified that it was not necessary for the amount included in revenue on the financial statement to actually be received by the company during the period for which the financial statement was issued and that PCIC, in fact, paid CCI Construction on the guaranty in full.  DeBruyn Deposition at pp. 196-197.

Plaintiff's underwriting expert, Richard Farnsworth testified that whatever concern might have existed by the inclusion of the PCIC guaranty in revenue was not a problem for underwriting if the amount was paid in full to CCI Construction. *See* Deposition of Richard D. Farnsworth  at p. 237.

The report on CCI's financial statement for 1998 by defendants specifically informed the reader in footnote 8 that:

---

[10]The PCIC Guaranty is at Exhibit J.

17

**8.  Related party transactions**:

.  .  .  .  During 1997, the Company incurred warranty
insurance expense of $825,000 with Pennsylvania
Contractors Insurance Company, a corporation under
common control.  These costs are allocated as a direct cost
of contracts.  There were no such costs in 1998. .  .  .

        In addition, Pennsylvania Contractors Insurance
Company has guaranteed a claim of $1,162,460 filed by the
Company with a contract owner.  If the owner fails to pay
all or any part of this claim, the insurance company will
pay the unpaid portion.

*See* CCI Financial Statement for the Years Ended December 31, 1998 and 1997 at fn.

8. [11]

        Mr. DeBruyn is also critical of the manner in which the transaction was

disclosed in the 1998 financials and, in that regard, opined that

        the recording and disclosure of the related party transaction involving
        PCIC and CCI in the 1998 financial statements was misleading to the
        user of that report since the PCIC Guaranty was recorded by Brown
        Schultz as contract revenue and therefore as an underbilling (buried in
        the contracts in progress schedule) as opposed to a separate line item on
        the balance sheet clearly denoted as being a related party transaction.
        The result was a material misstatement in the 1998 Audit Report of
        $1,162,460 incorrectly reported as revenue.  An appropriate disclosure
        would have been to report the transaction as a separate line item on the
        balance sheet of CCI indicating that it was specifically guaranteed by a
        company owned by the sole stockholder of CCI.

*See* Affidavit of Steve J. DeBruyn, CPA at ¶ 17. *See also*, Supplemental Expert Report

at p. 3 ("In addition, a more useful disclosure would have been to report the

-------------------

        [11]Copies of the 1997 and 1998 audited financial statements for CCI are
attached hereto as Exhibit K and L.

transaction as a separate line on the balance sheet of CCI indicating that it was a guarantee by the stockholder.").

However, plaintiff's underwriting expert, testified that he understood that the $1,162,000 was, in fact, included in revenue on the 1998 financial statement. Mr. Farnsworth stated:

> I believe that the way the disclosure reads it's a guaranteed claim of $1,162,000. A reader of the financial report would reasonably interpret that it was included in revenue. If it was not then it should certainly have been disclosed. But I believe that the way it's stated one could reasonably conclude that it was included in revenue.

Farnsworth Deposition at p. 236.

### III.    Statement of Questions Presented

A.    Whether the testimony of plaintiff's expert, Steve DeBruyn, is based on speculation and conjecture and is insufficient as a matter of law to establish the existence of misrepresentation of material facts about which defendants ought to have known at the time they audited CCI's 1997 and 1998 financial statements.

Suggested Answer: Yes.

B.    Whether Mr. DeBruyn's testimony is inadmissible because his use of a "Look Back" method.

Suggested Answer: Yes.

C.    Whether there is a genuine issue of material fact that the treatment of indirect costs in the 1997 and 1998 financials did not result in a material misrepresentation of CCI's financial condition.

Suggested Answer: No.

D.    Whether there is a genuine issue of material fact that the inclusion of the PCIC guaranty amount in revenue in the 1998 CCI financial

19

statements did not result in a material misrepresentation of CCI's financial condition.

Suggested Answer: No.

**IV.    Argument**

**A.    Standard for Summary Judgment**

Summary judgment is proper pursuant to Federal Rule of Civil Procedure 56

when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A factual dispute is material if it might affect the outcome of the suit under the

applicable law. *Donegal Mutual Insurance Company v. Grossman*, 195 F. Supp. 2d

657, 662-63 (M.D. Pa. 2001) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248,

91. L.Ed. 2d 202, 106 S. Ct. 2505 (1986).  A factual dispute is genuine only if there is

a sufficient evidentiary basis which would allow a reasonable fact finder to return a

verdict for the non-moving party. *Id.*

Once the moving party has shown that there is an absence of evidence to

support the claims of the non-moving party, the non-moving party may not simply sit

back and rest on the allegations of its complaint.  The non-moving party must "go

beyond the pleadings and by [its] own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a

genuine issue for trial."  *Donegal Mutual Insurance Company*, 195 F. Supp. 2d at

20

663-64, *citing, Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 91 L.Ed. 2d 265, 106 S. Ct. 2548 (1986).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Id.*

### B.     Elements of a Negligent Misrepresentation Claim

In this action, USF&G seeks to recover under a theory of negligent misrepresentation. The elements of the tort of negligent misrepresentation are: (1) a misrepresentation of material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make there presentation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation. *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994); *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999); *City of Rome v. Glanton*, 958 F. Supp. 1026, 1039 (E.D. Pa. 1997); *Amoco Oil Co. v. McMahon*, 1997 U.S. Dist. LEXIS 1303, 1997 WL 50448 (E.D. Pa. 1997).

 A person is not a guarantor of the correctness of the statements he provides. Rather, a person is liable for negligent misrepresentation only if "he has failed to exercise the care or competence of a reasonable man in obtaining or communicating the information."  Restatement (Second) of Torts § 552, comment on § 1 (e). I the context of a claim against a professional, proof of negligent misrepresentation

21

depends on expert testimony or other evidence of a failure to exercise ordinary care.

*Bortz v. Noon*, 729 A.2d at 563 (expert testimony or other competent evidence of

appropriate care required to establish a breach of duty for a negligent

misrepresentation claim). The standard of care in Pennsylvania malpractice cases is

measured by the skill generally possessed and employed by practitioners of the

profession. See *Incollingo v. Ewing*, 444 Pa. 263, 276 n. 6, 282 A.2d 206, 214, 444 Pa.

299 n. 5a (1971); *Smith v. Yohe*, 412 Pa. 94, 99, 194 A.2d 167, 170 (1963); *National*

*Cash Register v. Haak*, 233 Pa. Super. 562, 335 A.2d 407 (1975). Expert testimony is

required to establish the relevant standard and whether the defendant complied with

that standard. *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474 (3d Cir. 1979).

The plaintiff has the burden to present expert testimony to establish that the

defendant's actions failed to meet the appropriate standard of care. *Gans v. Mundy,*

762 F.2d 338, 343 (3d Cir. 1985) (interpreting Pennsylvania law) *cert. denied* 474

U.S. 1010, 88 L. Ed. 2d 467, 106 S. Ct. 537 (1985); *Freeman v. Murray*, 163 F. Supp.

2d 478 (M.D. Pa. 2001). The requirement of expert testimony applies to malpractice

actions against members of all professions. See *Lentino v. Fringe Employee Plans,*

*Inc.*, 611 F.2d 474 (3d Cir. 1979); *Powell v. Risser*, 375 Pa. 60, 65, 99 A.2d 454, 456

(1953).

**C.     Mr. DeBruyn's Testimony Is Insufficient As A Matter of Law to Establish the Existence of a Misrepresentation In the 1997 or 1998 Financial Statements About Which Defendants Ought to Have Known**

Plaintiff must establish the existence of a misrepresentation of material fact made under circumstances in which Brown Shultz ought to have known of its falsity as a prerequisite to recovery in this action. *See Gibbs v. Ernst, supra.* 538 Pa. at 207, 467 A.2d at 889. Expert testimony is necessary to establish these elements of plaintiff's claim. *Bortz v. Noon*, 729 A.2d at 563. Plaintiff , through its experts, cannot establish that the 1997or 1998 financial statements contained any incorrect information, misrepresented the financial condition of CCI as of the audit date or that Brown Schultz knew or ought to have known that the financial statements did not fairly present the financial condition of CCI as of the audit dates.

> An audit
>
> does not guarantee that a client's accounts and financial statements are correct any more than a sanguine medical diagnosis guarantees well-being; indeed, even an audit conducted in strict accordance with professional standards countenances some degree of calibration for tolerable error which, on occasion, may result in a failure to detect a material omission or misstatement. Rather, the "objective of the ordinary examination of financial statements by the independent auditor is the expression of an opinion on the fairness with which they present financial position, results of operations, and changes in financial position in conformity with generally accepted accounting principles." In other words, in issuing an opinion, the auditor certifies only that it exercised appropriate, not flawless, levels of professional care and judgment.

*In re IKON Office Solutions, Inc.*, 277 F.3d 658 (3d Cir. 2002)(citations omitted).

Plaintiff's auditor expert witness, Mr. DeBruyn, opines that negligent audit work performed by Brown Schultz resulted in "material misstatements and omissions in Brown Schultz' 1997 and 1998 Audit Reports." According to Mr. DeBruyn, defendants were negligent in (1) not performing additional audit procedures in connection with estimated job costs and, therefore, the estimated costs to complete contracts in process and (2) the inclusion in revenue $1,162,000 on the 1998 financial statement based on a guaranty by an insurer of a payment on an insurance claim. *See* 7/22/02 DeBruyn Report at pp. 5-6; 9/20/02 DeBruyn Report.   It is Mr. DeBruyn's opinion that the financial statements at issue overstated both income and equity in the amount of $815,960 for 1997 and $3,126,508 for 1998 and should be adjusted accordingly. *See* 7/22/02 DeBruyn Report at p. 3; 9/20/02 DeBruyn Report.  Mr. DeBruyn's own testimony establishes that his opinions are based on speculation and conjecture.

First, the proposed adjustments to the financial statements were entirely based on information developed after the audits were completed and not on information known or available to defendants when the audits were performed. *See* DeBruyn Deposition at pp. 137-139.  DeBruyn's proposed adjustments to estimated costs to complete contracts in progress are based on information concerning the actual costs to complete the contract once the contract was completed which information revealed that the cost to complete was greater than the estimates included in the financial statements.  DeBruyn at p. 138. DeBruyn could not say that

24

the documents from which he derived information to develop his proposed

adjustments to the financial statements were known or available to Brown Schultz

when they performed their audits of the 1997 and 1998 financials. DeBruyn did not

determine the reason for the increased costs to complete for the contracts and could

not say whether the increased costs were attributable to conditions of which

defendants were or should have been aware when they conducted the audits.

DeBruyn deposition at p. 130-132, 141, 148-149, 150-151. DeBruyn Deposition at p.

140.

  DeBruyn, was also unable to say that had Brown Schultz performed the

additional audit procedures that he believes were required for a proper audit of CCI's

financials, that those procedures would have altered the outcome of the audits, let

alone resulted in the adjustments to the financial statements that he proposes.

DeBruyn testified that he had no reason to believe that if greater skepticism had been

used by Brown Schultz in connection with the audit of the financial statements of

CCI Construction that the opinion of defendants about the financial statements

would have been different. DeBruyn Deposition at pp. 112, 155-56. DeBruyn is

unable to determine or express an opinion about whether the results of the audit by

defendants of the financial statement of CCI Construction for 1997 would have been

different if additional audit procedures had been performed by defendants. DeBruyn

Deposition at pp. 115-116, 122. DeBruyn did not re-audit the CCI Construction

financial statements. DeBruyn Deposition at p. 293. Mr. DeBruyn did not perform

those additional audit procedures to determine whether such additional procedures would have altered the outcome.  DeBruyn Deposition at pp. 115, 122.

According to Mr. DeBruyn, a review of the CCI records was necessary to determine whether additional procedures by the auditors would have altered the outcome of the audits. DeBruyn Deposition at pp. 116, 118, 122, 124. While he requested the CCI Construction records from USF&G to perform the procedures to make this determination, he was informed by USF&G that the records were not available.  DeBruyn Deposition at p. 116, 118.[12]

Mr. DeBruyn agrees that an auditor's report is issued in connection with historical financial statements that purport to present a financial position at a stated date and results of operations and cash flows for a period ended on that date. DeBruyn Deposition at p. 94. He further agreed that the percentage of completion method of accounting requires a presumption that contractors generally have the

---

[12]As indicated in the statement of facts, the CCI Construction records, in fact, were provided to USF&G. *See* Deposition of Matthew Silverstein at pp. 28-29. USF&G obtained most of CCI's project files when USF&G took over performance of the projects from CCI.  *Id.* In certain instances the CCI files were turned over by USF&G to the completion contractor, in certain instances they were returned to CCI when the project was complete and in certain instances, Mr. Silverstein believed that those documents were still in USF&G's possession. *Id.*  A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994).  While USF&G had noted the possibility of filing suit against Brown Schultz as early as November 17, 1999, prior to USF&G's takeover of CCI's bonded projects,  *see* November, 1999 Memorandum from William Eskin to Mike Walter, Tony Phillips and Steve Salazar at pp. 7-8, (exhibit M hereto), USF&G either failed to preserve the records necessary to determine whether additional procedures by the auditors would have altered the outcome of the audits or chose not to provide them to their auditor expert.

ability to produce estimates that are sufficiently dependable to justify the use of the

percentage of completion method of accounting and that persuasive evidence to the

contrary is necessary to overcome that presumption. DeBruyn Deposition at p. 95.

Mr. DeBruyn also agreed that the previous reliability of a contractor's estimating

process is usually an indication of continuing reliability, particularly, if the present

circumstances are similar to those that prevailed in the past and that a profit fade

(reduction in profit from the amount of profit previously predicted) is not, alone,

indicative of a problem with job cost estimates or financial reporting by the

contractor. DeBruyn Deposition at pp. 95-96, 108. Estimating is an integral part of a

contractor's business activities and there is a necessity to revise estimates on

contracts continually as the work progresses. The fact that circumstances may

necessitate frequent revision of estimates does not indicate that the estimates are

unreliable for the purpose for which they are used, although results may differ widely

from original estimates. Because of the nature of the business, the contractor in the

conduct of his business, may still find the estimates reasonably dependable. Despite

these widely recognized conditions, a contractor's estimates of total contract revenue

and total contract costs should be regarded as reasonably dependable if the minimum

total revenue and the maximum total cost can be estimated with a sufficient degree of

confidence to justify the contractor's bids on contracts. DeBruyn Deposition at pp.

109-110. The audit relationship between CCI Construction existed since at least as

early as 1992. DeBruyn Deposition at pp. 107. Mr. DeBruyn agreed that defendants

properly considered their experience with CCI Construction when performing their audit work. DeBruyn Deposition at pp. 108.  DeBruyn testified he has no reason to believe that Sheri Phillips, the Chief Financial Officer of CCI Construction during the time at issue, was other than a competent accountant who understood construction industry accounting.  DeBruyn Deposition at p. 88.  The 1997 audit report was peer reviewed and there is no reason to believe the peer reviewers were other than qualified and competent.  DeBruyn Deposition at p. 91.

DeBruyn asserts that the 1997 and 1998 financial statements by CCI were not reliable, however, the subsequent information relied upon by DeBruyn was from CCI and was not audited or otherwise evaluated to determine its validity in spite of his assertion that information was not reliable. DeBruyn Deposition at p. 286.

DeBruyn's opinion that the 1997 and 1998 financial statements of CCI contained misrepresentations about which the defendants should have known or learned during the course of their audit is based on speculation and conjecture and is, therefore, insufficient as a matter of law. DeBruyn did not use information available to the auditors in making his proposed adjustments to the CCI financial statements and did not attempt to determine what that information was. DeBruyn did not perform the additional procedures to the CCI financial records which he claims were necessary and should have been performed by Brown Schultz.  He cannot state that if those procedures had been performed by Brown Schultz, the results of defendants' audits would have been different.  they has no He does cannot say that if defendants

had done the additional procedures he believes are required that it would have affected the outcome of the audit. DeBruyn's opinions are not based upon a reliable test of the proficiency employed by defendants and are insufficient as a matter of law to establish that the 1997 and 1998 financial statements contained inaccurate or misleading information about which Brown Schultz ought should have learned during the course of their audits of those financials. As these are necessary elements of plaintiff's claim, summary judgment should be granted in favor of defendants.

###    D.    Mr. DeBruyn's Testimony is Inadmissible Because His Use of a "Look Back" Method

Under Federal Rule of Evidence 702 when

> faced with a proffer of expert scientific testimony. . . the trial judge must determine at the outset, pursuant to Rule 104(a) whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 379, 392 (1993). This gatekeeping function extends beyond scientific testimony to "testimony based on "technical" and other "specialized knowledge." *Kumho Tire Co., Ltd v. Carmichael*, 309 U.S. 141 (1999).

Rule 702 as interpreted by *Daubert* and its progeny embodies "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." *U.S. v. Mathis,* 264 F.3d 321 (3d Cir. 2001). The proponent of the expert testimony bears the burden of establishing its admissibility by a

preponderance of the evidence. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000).

> The factors which govern reliability are:
>
> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Elcock v Kmart Corp*, 233 F.3d 734, 745-46 (3d Cir. 2000). Because these factors were developed in the context of testing the reliability of scientific methods of proof, they may not readily apply in the context of testing the reliability of opinions in other context. *See Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.*, 1998 U.S. Dist. LEXIS 4235 (E.D. Pa. Apr. 1, 1998). However, *Daubert*

> makes certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. . . The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors in Daubert where they are reasonable measures of the reliability of expert testimony.

*Elcock*, 233 F.3d at 745-46.

The fit requirement stems from the requirement that scientific, technical or other specialized knowledge  assist the trier of fact to understand the evidence so as to determine a fact in issue. *Mathis*, 264 F.3d at 335; F.R.E. 702. Admissibility

under the "fit" requirement turns on the "proffered connection between the scientific research or test result to be presented and the particular disputed factual issue in the case." *Oddi*, 234 F.3d at 145.   Here, the testimony of plaintiff's auditor expert witness meets neither the requirements of reliability or fit so as to be admissible.

Mr. DeBruyn used a "look back" method, or a modification of the "look back" method to arrive at his proposed adjustments to the estimated costs to complete contracts in progress reflected in the 1997 and 1998 financial statements.  DeBruyn Deposition at pp. at 223; DeBruyn Supplemental Expert Report at p. 1.  The "look back" method utilizes information obtained subsequent to the event to determine the actual situation and is not a test of the reasonableness of the auditor's assessment of the financial information as of the audit. DeBruyn Deposition at p. 271. The look back method is used by the Internal Revenue Service for tax-related issues.  DeBruyn Deposition at p. 226.

The use of the "look back method" to evaluate Brown Schultz's audits of the 1997 and 1998 financial statements is, by Mr. DeBruyn's own admission, not generally accepted.  Mr. DeBruyn is not aware of any instance in which the look back method is used other than in connection with tax-related issues.  DeBruyn Deposition at p. 228.  There is no support in the accounting literature for the use of the "look back" method used by plaintiff's auditor expert witness to derive the adjustments he proposes to the 1997 and 1998 financial statements.  DeBruyn Deposition at pp. 228-29. Mr. DeBruyn is not aware of any instance in which the "look back" method was

31

used to evaluate the propriety of the work performed by auditors of financial statements. DeBruyn Deposition at p. 263.

Mr. DeBruyn's use of the look back method will not assist the trier of fact in determining whether the financial statements contained misrepresentations and whether Brown Schultz ought to have known this. Mr. DeBruyn concedes that he was required to use the same audit procedures employed by, or which should have been employed by, defendants when testing the quality of the audit work performed by defendants. DeBruyn Deposition at p. 231-32. Defendants did not use, and were not able to use, the "look back" method during their audit of the estimated costs to complete contracts in progress since the data necessary for the "look back" method was not available during the audit. DeBruyn Deposition at pp. 234-35. DeBruyn did not limit his use of the "look back" method to data known to be available to defendants when defendants performed their audit work for CCI. DeBruyn Deposition at p. 235. In fact, he does not know the information which was available to defendants when they performed their audit work. DeBruyn Deposition at p. 235.

DeBruyn admits that the "look back" method is not a reliable test of the proficiency employed by the defendants in their audits of CCI. He concedes that his use of this method may have led to proposed adjustments to the financial statements based on data not available to defendants during defendants' audit of the CCI Construction financial statements. DeBruyn Deposition at p. 235.

Expert testimony is required in this case to establish the existence of misrepresentation and whether defendants should have known of such a misrepresentation had they performed additional audit procedures with regard to estimated costs to complete. Mr. DeBruyn's testimony does not meet the requirements of reliability and fit so as to be admissible. His look back methodology is not generally accepted. It does not take into account the information which was available to the auditors during the audit. It is inherently unreliable because it looks to information obtained subsequent to the event to determine the actual situation and, therefore, can lead to adjustments to the financial statements which are simply not warranted based on the information available as of the time of the audit. Without the testimony of Mr. DeBruyn, plaintiff cannot establish the existence of a misrepresentation of material fact that was known or should have been known to the defendants. As such, plaintiff cannot establish a required element of its case and summary judgment should be granted in favor of defendant.

### E. Plaintiff Cannot Establish that Not Including Indirect Costs in Job Costs Was Misleading or Resulted in a Misrepresentation of Material Fact in the 1997 or 1998 Financial Statements.

Mr. DeBruyn in his initial report was critical of the treatment of indirect costs in the 1997 and 1998 financial statements. According to Mr. DeBruyn's original report, CCI was not properly allocating indirect costs to individual contract. DeBruyn Report at p. 4. At his deposition, however, Debruyn testified that he did not determine whether the absence of allocation of the indirect costs to specific contracts

33

was material.  DeBruyn Deposition at p. 252. Mr. DeBruyn conceded that without a determination that the absence of allocation of the indirect costs to specific contracts was material, the absence of allocation of indirect costs to specific contracts by CCI Construction was not a basis on which an auditor could properly withhold an opinion on the financial statements.  DeBruyn Deposition at p. 253. Mr. DeBruyn also testified that this treatment of indirect costs was adequately disclosed in the financial statements.  DeBruyn Deposition at p. 253.

Finally, Mr. Farnsworth, plaintiff's underwriting expert, testified that from an underwriting standpoint, the presentation by Brown Schultz of indirect costs as a separate line item was acceptable.  According to Mr. Farnsworth

> they [Brown Schultz] gave you the information that the analysts needed to make a proper determination of profit or loss on individual jobs as well as the, you know, income or loss for the period covered by the financial statement.

Deposition of Richard Farnsworth at p. 178.

Plaintiff cannot establish a misrepresentation of material fact with regard to the treatment of indirect costs in the 1997 and 1998 financial statements.  As such, plaintiff cannot establish its cause of action with regard to the treatment of indirect costs and summary judgment should be granted to defendants on this basis as well.

**F.    Plaintiff Cannot Establish that the 1998 Financial Statements Materially Misrepresented the Financial Condition of CCI Because the PCIC Guaranty Was Included in Revenue**

Plaintiff cannot establish that the inclusion of $1,162,000 in revenue in the 1998 financial statements resulted in misrepresentation of material fact with regard CCI's financial condition.

In that regard Mr. DeBruyn criticizes the audit report for the 1998 financial statement because the amount of a guaranty ($1,162,000) was included in revenue. The guaranty related to an insurance claim by CCI Construction under an Remedial Work Period Insurance Policy issued by PCIC to CCI construction. DeBruyn Deposition at p. 180; PCIC Policy No. 97-003.[13]  PCIC and CCI were both owned by John Ortenzio. The insurance policy provided coverage for remedial work in connection with the Mahanoy Prison contract.  DeBruyn Deposition at p. 180. In addition to the insurance policy, PCIC also guaranteed that it would pay CCI that amount of the claim which was not paid by the contract owner.  *See* PCIC Guaranty. According to DeBruyn, the amount of the guaranty should not have been included in revenue on the 1998 financial statement because (1) the insurance policy did not cover the Mahanoy Prison claim, and (2) it was a guaranty by a stockholder of CCI Construction.[14]  DeBruyn Deposition at pp. 177, 181, 182.

---

[13]A copy of the PCIC Remedial Work Insurance Policy is attached hereto as Exhibit N

[14]Mr. DeBruyn's willingness to "look back" is somewhat selective. While he is willing to use information not available to the auditors with regard to adjustments to estimated costs to complete contracts, he ignores the undisputed fact that PCIC paid

However, Mr. DeBruyn, in his deposition, agreed that he was no more qualified than the defendants to determine if the claim was covered by the PCIC insurance policy. DeBruyn Deposition at p. 193. Mr. DeBruyn's conceded that his belief that the $1,162,000 should not have been included in revenue was based on his own lay, non-law trained determination that the insurance policy did not provide coverage for the claim presented. DeBruyn Deposition at pp. 191-92.

Even assuming he was more qualified to than the defendants to determine coverage for the Mahanoy claim under the remedial work policy, DeBruyn concedes that the claim was, in fact, covered under the PCIC policy. Mr. DeBruyn testified that the insurance contract issued by PCIC to CCI Construction provided coverage for remedial work. DeBruyn Deposition at p. at 293. According to Mr. DeBruyn, the claim by CCI Construction under the PCIC insurance policy was for warranty related work. DeBruyn Deposition at p. 293. Mr. DeBruyn agreed that warranty work is considered remedial work. DeBruyn Deposition at p. 293. Mr. DeBruyn agrees that insurance claims can properly be included as revenue on the financial statement if there is a legal basis for the claim. DeBruyn Deposition at p. 191.

Even if not covered by the insurance policy, the amount of the claim was guaranteed by PCIC. The guaranty from PCIC provided:

> PCIC will guarantee the claim that was filed by CCI, in the amount of One Million Two Hundred Thousand Dollars ($1,200,000), with the Department of General Services,

---

the amount of the claim which was not paid by the contract owner in 1999 and that the full $1,162,000 was received by CCI.

> Commonwealth of Pennsylvania, for the project known as
> Mahanoy State Correctional Institution, Frackville,
> Pennsylvania.  If the Department of General Services,
> Commonwealth of Pennsylvania, fails to pay all or any part
> of the subject claim, PCIC will pay the difference owing or
> the full amount of the claim if no part of the claim is paid.

Guaranty Agreement dated December 1, 1998 between Pennsylvania Contractors

Insurance Company and CCI Construction Company.  Mr. DeBruyn testified that the

PCIC guaranty was assumed to be valid. DeBruyn Deposition at pp. 179-80. He also

agreed that the guaranty was not a guaranty by a stockholder of CCI Construction

but rather a guaranty from a company under common ownership with CCI.  DeBruyn

Deposition at p. 190. He agrees that it was not necessary for the $1,162,000 to

actually be received by CCI during the period for which the financial statement was

issued in order to be included in revenue and he testified that PCIC paid CCI on the

guaranty in full.  DeBruyn Deposition at pp. 196-197.  Moreover, plaintiff's

underwriting expert, Richard Farnsworth testified at his deposition that whatever

concern might have existed by the inclusion of the PCIC guaranty in revenue was not

a problem for underwriting if the amount was paid in full to CCI Construction. *See*

Deposition of Richard D. Farnsworth  at p. 237.

Perhaps more importantly, without regard to whether the amount should have

been recognized as revenue, the fact that the $1,162,000 was included in revenue was

adequately disclosed in CCI's 1998 financial statement and was in no way misleading

to a user of the financial statement.  CCI's financial statement for 1998 specifically

informed the reader in footnote 8 that:

**8.  Related party transactions**:

. . . .  During 1997, the Company incurred warranty
insurance expense of $825,000 with Pennsylvania
Contractors Insurance Company, a corporation under
common control.  These costs are allocated as a direct cost
of contracts.  There were no such costs in 1998. . . .

        In addition, Pennsylvania Contractors Insurance
Company has guaranteed a claim of $1,162,460 filed by the
Company with a contract owner.  If the owner fails to pay
all or any part of this claim, the insurance company will
pay the unpaid portion.

*See* CCI Financial Statement for the Years Ended December 31, 1998 and 1997 at fn.

8. DeBruyn asserts that this disclosure was misleading because the guaranty was

recorded as contract revenue and not a separate line item on the balance sheet clearly

denoted as a related party transaction.  *See* Affidavit of Steve J. DeBruyn, CPA at ¶

17. *See also*, Supplemental Expert Report at p. 3 ("In addition, a more useful

disclosure would have been to report the transaction as a separate line on the balance

sheet of CCI indicating that it was a guarantee by the stockholder.").

        Notwithstanding DeBruyn's criticisms, plaintiff's underwriting expert, upon

review of the foregoing footnote clearly understood that the $1,162,000 was included

in revenue on the 1998 financial statement.  Mr. Farnsworth stated:

I believe that the way the disclosure reads it's a guaranteed claim of
$1,162,000.  A reader of the financial report would reasonably interpret
that it was included in revenue.  If it was not then it should certainly
have been disclosed.  But I believe that the way it's stated one could
reasonably conclude that it was included in revenue.

Farnsworth Deposition at p. 236. As the inclusion of this amount in revenue is apparent to Mr. Farnsworth, it should have been equally apparent to USF&G's underwriters when they reviewed the 1998 financial statement.

Mr. DeBruyn's testimony is insufficient to establish that the $1,162,000 should not have been included in revenue in CCI's 1998 financial statements. As such, plaintiff cannot establish the 1998 financial statement was misleading or misrepresented CCI's financial condition by this amount. Nor can plaintiff establish that disclosures relating to the $1,162,000 were misleading as plaintiff's own underwriting expert read and understood that the guaranteed claim was included in revenue. Perhaps most importantly, plaintiff's underwriting expert agreed that whatever concern might have existed by the inclusion of the PCIC guaranty in revenue was not a problem for underwriting if the amount was paid in full to CCI Construction. *See* Deposition of Richard D. Farnsworth at p. 237. There is no dispute that the amount was paid by PCIC. Plaintiff cannot establish a misrepresentation of material fact with regard to the PCIC guaranty, a necessary element of its cause of action. As such, summary judgment should be granted to defendants for this reason as well.

## V.    Conclusion

Based on the foregoing, defendants respectfully request that this court grant

summary judgment in their favor and dismiss this action with prejudice.

Respectfully submitted,

SWARTZ CAMPBELL LLC


BY: s/Kathleen M. Carson
        Jeffrey B. McCarron
        Kathleen M. Carson

Dated:    September 12, 2003

## **CERTIFICATE OF SERVICE**

I, Kathleen M. Carson, Esquire, counsel for defendants, Bruce J. Brown and

Brown, Schultz Sheridan & Fritz, hereby certify that a copy of Defendant's

Statement of Material Undisputed Facts, Motion and Memorandum in Support of

Supplemental Summary Judgment, was served upon all counsel listed below by U.S.

regular mail and postage prepaid and via overnight mail on September 12, 2003

Peter Speaker, Esquire
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA 17101

Peter B. McGlynn, Esquire
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, MA 02110

 

 

_____
Kathleen M. Carson

Date:   September 12, 2003