UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

|  |  |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, <br>     Plaintiff <br><br> v. <br><br> BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, <br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO. 1:01-CV-00813 <br><br> HON. CHRISTOPHER CONNER |

**EMERGENCY MOTION OF UNITED STATES FIDELITY & GUARANTY COMPANY TO STRIKE SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT BY BRUCE J. BROWN AND BROWN SCHULTZ SHERIDAN & FRITZ AND RELATED PLEADINGS**
[filed electronically]
**(Expedited Determination Required)**

United States Fidelity & Guaranty Company ("USF&G") hereby moves that the Supplemental Motion for Summary Judgment by Bruce J. Brown and Brown Schultz Sheridan & Fritz (the "Supplemental Motion") and the related pleadings filed with it be stricken and that an order enter directing that USF&G need not file any pleadings in opposition thereto. The Supplemental Motion has not only been filed in unequivocal violation of the Court's scheduling orders and in complete disregard of several of the Local Rules of the United States District Court for the Middle District of Pennsylvania, but is also repetitive in both form and content of previously filed motions denied by the Court. It is difficult to believe that Bruce J. Brown and Brown Schultz Sheridan & Fritz (collectively, "Brown Schultz") have interposed the Supplemental Motion for any reason other than to harass USF&G and to interfere with its preparation for several upcoming deadlines, not the least of which is the trial of this matter scheduled to commence on October 20, 2003.

In further support of this Motion, USF&G avers and asserts as follows:

1. The Supplemental Motion was filed in clear, unequivocal and deliberate disregard of scheduling orders issued by the Court. According to an Order dated May 8, 2002, *the deadline for dispositive motions was August 30, 2002*. Brown Schultz did not seek to alter or amend the outstanding scheduling orders nor did Brown Schultz seek leave of the Court before filing the Supplemental Motion. No concessions were made by Brown Schultz to the time and budgetary constraints this second bite at the summary judgment apple places on both the Court and USF&G because of, *inter alia*, existing scheduling orders and the need for this case – filed on May 9, 2001 – to proceed to trial on October 20, 2003 as scheduled.

2. Brown Schultz seeks to justify its derelictions by asserting that Brown Schultz "did not have the benefit of the testimony of plaintiff's expert witnesses as of the deadline and filing of summary judgment motion [sic]." Supplemental Motion, p. 3, ¶11. Brown Schultz' plaint that the Supplemental Motion is justified by its putative lack of the "benefit of the testimony" of Steve J. DeBruyn ("DeBruyn"), USF&G's expert witness on accounting matters, before the expiration of the deadline for dispositive motions is as unpersuasive as it is highly misleading. The very last bit of remotely relevant information concerning DeBruyn's opinions that could have been obtained by Brown Schultz would have been gleaned no later than the deposition of DeBruyn which occurred on May 7, 2003.[1] Not only has Brown Schultz had four (4) full months *after* conclusion of the deposition of DeBruyn to prepare and file its

---

[1] USF&G notes that the depositions of DeBruyn and Donald Brenner, Brown Schultz' designated accounting expert, were originally scheduled to be held in Chicago on April 18 and 19, 2003. However, because USF&G was notified by Brown Schultz' counsel on or about April 11, 2003 of the putative "unavailability" of Brown Schultz' expert on either of those dates, the depositions – both to occur in Chicago – were postponed until May 6 and 7, 2003. Curiously, on May 6, 2003 Mr. Brenner testified that as of April 18 and 19, 2003 he had not received from Brown Schultz' counsel certain documents necessary to his supplemental report until *after* April 28, 2003 – over one week subsequent to when the depositions were originally to have taken place. This admission by Mr. Brenner draws into question, among other things, the veracity of the excuses used to postpone the depositions from the original April dates.

Supplemental Motion (and also to seek appropriate leave thereafter) but Brown Schultz' plaint is severely misleading because it previously received exhaustively detailed reports and affidavits regarding the basis, source, extent and nature of DeBruyn's opinions on the subject matter of the instant litigation. Such previously received information was – at least in Brown Schultz' opinion – sufficient to warrant the numerous pleadings filed by Brown Schultz seeking to strike DeBruyn's testimony, as described in paragraph 3, *infra*. DeBruyn's initial expert report was served on July 22, 2002. A supplemental expert report by DeBruyn was served on September 20, 2002 (a full month *before* the Court-established deadline for submission of supplemental expert reports). On or about October 8, 2002, USF&G served a detailed affidavit from DeBruyn in support of USF&G's opposition to Brown Schultz' lengthy and prolix summary judgment motion. On April 10, 2003, USF&G filed supplemental interrogatory responses, which contain detailed descriptions of USF&G's position – based in large part on the opinions of DeBruyn – that the audits prepared for CCI by Brown Schultz for the years ending December 30, 1997 and 1998 fell markedly short of acceptable professional standards.

   3. The Supplemental Motion is also substantially repetitive of numerous pleadings previously filed by Brown Schultz (and denied by the Court). Not only has Brown Schultz long had detailed information concerning DeBruyn's opinions, as discussed in paragraph 2, *supra*, but Brown Schultz has repeatedly – and unsuccessfully – sought to attack DeBruyn and his opinions for reasons that are substantially similar to those raised – again – in the Supplemental Motion. On August 30, 2002 – the deadline for "dispositive motions" – Brown Schultz filed a 29 page summary judgment motion, supported by a 52 page memorandum of law and a thick packet of exhibits. A significant portion of the memorandum is devoted to an attack on DeBruyn and the putative inadmissibility of his opinions. Brown Schultz later filed a 17 page reply memorandum

that essentially covered the same ground.  After Magistrate Judge Smyser issued the Report and Recommendation dated November 5, 2002 which, *inter alia*, rejected Brown Schultz' position that DeBruyn's testimony was inadmissible, Brown Schultz filed an approximately 40 page brief in support of its objections to the Report and Recommendation.  On December 16, 2002 Brown Schultz filed a reply brief in further support of its objections to the Report and Recommendation that dedicated the entirety of its 7 pages to attacking the admissibility of opinions of USF&G's designated experts.  Not content with the results of its original summary judgment motion, on January 23, 2003 Brown Schultz filed the Motion to Strike Supplemental Expert Report and Affidavit of Stephyn [sic] DeBruyn, CPA (the "Motion to Strike").  The arguments raised in the Motion to Strike are substantially similar to those in the summary judgment motion and now resurrected in the Supplemental Memorandum.  For good measure, on January 24, 2003 Brown Schultz filed a motion to strike the expert report submitted 6 months prior by Richard Farnsworth, USF&G's designated expert on underwriting issues.  On January 31, 2003, the Court denied Brown Schultz' objection to the Report and Recommendation and adopted the entirety of the recommendations of Magistrate Judge Smyser.  Not content to let the Court's rejection of their several attempts to have DeBruyn's reports and affidavits ruled inadmissible in the summary judgment motion pass quietly, Brown Schultz filed a lengthy reply brief in further support of its Motion to Strike on February 24, 2003.  On March 1, 2003, the Court issued a Memorandum on the Motions to Strike and an Order denying them entirely.  Further, the Court prefaced the Memorandum by finding that "the parties have briefed the issues *and the matter is ripe for disposition*."  (emphasis supplied).

    4.  It is difficult to believe that the Supplemental Motion is designed to accomplish any legitimate purpose.  Even if, *arguendo*, Brown Schultz lacked needed information on

DeBruyn's opinion prior to May 7, 2002, no excuse has been proffered for Brown Schultz' decision to wait until the eve of trial to file a "supplemental" summary judgment motion. Several pretrial deadlines are imminent. As required by LR 16.3(b), counsel must meet no later than October 3, 2003 to discuss stipulations, evidentiary issues and settlement. Pretrial memoranda and motions-in-limine are due on October 8, 2003. October 10, 2003 is the deadline for the memoranda required by Local Rule 16.6, which require submission of, *inter alia*, proposed findings of fact and law and exhibit lists. The final pretrial conference is on October 15, 2003 and trial is scheduled to commence on October 20, 2003. Needless to say, not only will the 18 page Supplemental Motion, its accompanying 40 page memorandum of law and the two inch think stack of exhibits create an undue burden for USF&G but it is difficult to imagine that the Court will have sufficient time to review the pertinent pleadings and to issue an opinion prior to trial, particularly in light of the already *scheduled* pleadings and memoranda that will soon be filed. Accordingly, little credence can be given to Brown Schultz' assertion that its procedurally deviant motion "may avoid the necessity of a trial altogether or limit the issues to be tried." Supplemental Motion, p. 3, n. 4. Moreover, it is difficult to imagine that the settlement meeting required by LR 16.3(b) to be held "at least 10 days prior to the final pretrial conference" will be fruitful if Brown Schultz is convinced (regardless of the justifiability of such belief) that a pending motion may eliminate the need for trial. In essence, on the eve of trial Brown Schultz has unilaterally overruled the Court's scheduling orders and made matters worse for both the Court and the parties.

   5.  Not only is the Supplemental Motion is yet another example of Brown Schultz' utilization of scorched-earth and Rambo-style litigation tactics, but it was filed and served in a discourteous and unprofessional manner designed to maximize the burden and inconvenience to

USF&G and, possibly, to force the pending trial date to be postponed.  Not only did Brown Schultz ignore LR 7.1 but Brown Schultz filed the Supplemental Motion and related pleadings electronically *subsequent to 5:00 p.m. on Friday, September 14, 2003*.  To give its action a veneer of reasonableness, Brown Schultz served the motion by UPS "Saturday Delivery."  However, absent warning that such motion was being sent to it by that method, USF&G's counsel was unable to sign for receipt of the package on Saturday morning and, accordingly, did not receive it until Monday, September 15, 2003.  It is difficult to ascribe any motive to Brown Schultz' chosen method of filing and service other than a desire to lessen the time in which USF&G would have to respond to the lengthy pleadings and voluminous exhibits.

   6. Brown Schultz has flagrantly disregarded the Local Rules of the United States District Court for the Middle District of Pennsylvania.  The Supplemental Motion is not accompanied by a certification that counsel for Brown Schultz "has sought concurrence in the motion from each party, and that it has been either given or denied."  LR 7.1.  Additionally, Brown Schultz did not seek leave to file a brief in excess of fifteen pages *prior* to filing its lengthy papers.  Apparently, Brown Schultz believes that it is better to ignore explicit and unambiguous rules – and present its improper pleading as a *fait accompli* – than to comply with rules which are obviously intended to ease the Court's burdens and discourage unnecessary litigation.  While USF&G cannot state that it would have consented to allowance of the Supplemental Motion if – as required by the Local Rules – it was contacted by Brown Schultz prior to Brown Schultz' filing of the Supplemental Motion and accompanying pleadings, USF&G believes that it could have addressed and possibly resolved (subject, of course, to the Court's approval) issues concerning, *inter alia*, scheduling, length of briefs and the narrowing of issues.  Brown Schultz' unilateral actions denied the Court and USF&G this benefit.

7. Because of the numerous and rapidly approaching deadlines in the instant litigation, as discussed in paragraph 4, *supra*, expedited determination of this motion is merited and necessary. The need that the Supplemental Motion has created for both the Court and USF&G to perform extra and unnecessary work has already allowed Brown Schultz unearned tactical advantage; a delayed adjudication will only exacerbate the harm suffered. So that the instant motion may be determined on an expedited basis, USF&G represents that it will send a copy to counsel for Brown Schultz by facsimile promptly after it is filed electronically with the Court.

WHEREFORE, United States Fidelity & Guaranty Company respectfully requests that the Court enter an Order:

1. Striking the Supplemental Motion for Summary Judgment by Bruce J. Brown and Brown Schultz Sheridan & Fritz and related pleadings;

2. Ruling that USF&G need not file any pleadings in opposition to the Supplemental Motion and related pleadings; and

3. Providing such other and further relief as is just and proper.

- 8 -

        Respectfully submitted,
UNITED STATES FIDELITY AND
GUARANTY COMPANY,
By its counsel,


   s/ Bruce D. Levin_____
Peter B. McGlynn, Esquire
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts 02110
Telephone: (617) 790-3000
Facsimile: (617) 790-3300
blevin@bgblaw.com
pmcglynn@bgblaw.com


       and

Peter Speaker, Esquire
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA  17101
Telephone: (717) 237-7100
Facsimile: (717) 237-7105

Dated: September 16, 2003
#276145 v1/36432/87