UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States Fidelity and Guaranty Company : : : | |
| v. : : | Hon. Christopher Conner |
| Bruce J. Brown and Brown, Schultz Sheridan & Fritz : : | No: 01-CIV-813 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVE J. DEBRUYN**

Defendants, Bruce J. Brown and Brown Schultz Sheridan & Fritz move this court for an order precluding the testimony of plaintiff's expert, Steve J. DeBruyn on the grounds that his methodology does not comply with the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 379, 392 (1993) and its progeny.

**I.   Introduction**

Plaintiff, United States Fidelity & Guaranty Company ("USF&G"), brought this action against Bruce J. Brown and Brown Schultz Sheridan & Fritz (collectively "Brown Schultz") for alleged negligent misrepresentations contained in financial statements for the years ended December 31, 1996, 1997 and 1998 prepared by CCI Construction Company's ("CCI") management and which were audited by Brown Schultz. The action is based on the contention that USF&G issued certain payment and performance bonds for CCI based on the financial statements. Plaintiff contends

that the 1997 and 1998 financial statements misrepresented the financial condition of CCI and that defendants, as CCI's auditor's knew or should have known that CCI's financial statements were, in some way, inaccurate or misleading.

Plaintiff's auditor expert, Steve J. DeBruyn, stated in his original report that income and equity in the 1997 and 1998 financials were overstated in specific amounts supposedly due to the failure of defendants to perform sufficient audit procedures and adequate testing.[1]  Plaintiff's auditor expert's opinion and testimony regarding the adjustments he proposes to CCI's financial statements are inadmissible under Federal Rule of Evidence 702.  The proposed adjustments are not based on an accepted methodology or a reliable test of the proficiency employed by defendants under the circumstances presented at the time the audit was performed.  As such, Mr. De Bruyn should be precluded from testifying at trial.

## II. Factual Background

### A. USF&G's Claim

Plaintiff, USF&G, is a surety company. Complaint at ¶ 7. Plaintiff issued performance and payment bonds to its insured, CCI, in connection with construction work for which CCI contracted. Complaint at ¶¶ 16, 18, 20. Defendants, Bruce Brown and Brown Schultz Sheridan & Fritz are accountants who audited the financial statements of CCI and issued audit reports concerning the CCI financial statements prepared by the management of CCI. Complaint at ¶ 12.  The claim in this action

---

[1] Copies of Mr. DeBruyn's Expert Reports are attached hereto as Exhibit A through C.

stems from and is based on the audit reports issued by defendants for the financial statements of CCI for the calendar years ending December 31, 1997 and December 31, 1998. Complaint at ¶ 17-20.

CCI allegedly defaulted on its construction contracts and plaintiff performed on the bonds. Complaint at ¶ 22. The claimed damages are based on the amount plaintiff allegedly paid on the bonds issued for CCI. Complaint at ¶ 25.

Plaintiff, in support of its claim, produced expert witness reports from an accountant/auditor. *See* Expert Reports of Steve J. DeBruyn, CPA dated July 22, 2002; September 20, 2002 and October 8, 2002. Defendants conducted the depositions of plaintiff's expert witness May 7, 2003.[2]

### B.    Plaintiff's Proposed Adjustments to CCI's Financial Statements

Plaintiff's auditor expert witness, Steve J. DeBruyn, CPA ("DeBruyn") indicated in his original report that certain adjustments should be made to the financial statements for the financial statements of CCI Construction for 1997 and 1998. *See* 7/22/02 DeBruyn Report at p. 3; 9/20/02 DeBruyn Report. According to DeBruyn

> it is my opinion that the audit work performed by Brown Schultz for CCI for the fiscal years ended December 31, 1997 and 1998 did not conform to applicable standards of care of a Certified Public Accountant and this resulted in material misstatements and omission in Brown Schultz's 1997 and 1998 Audit Reports. Specifically, the negligent audit work performed by Brown Schultz resulted in an overstatement of both income and equity

---

[2]The pertinent portions of Mr. DeBruyn's deposition transcript are attached hereto as Exhibit D.

in the amount of $815,960 for 1997 and $3,126,508 for 1998. 7/22/02 DeBruyn Report at p. 3. The proposed adjustments indicated by DeBruyn relate to estimated job costs and, therefore, the estimated costs to complete contracts in process, and the inclusion in revenue $1,162,000 on the 1998 financial statement based on a guaranty by an insurer of a payment on an insurance claim. *See* 7/22/02 DeBruyn Report at pp. 5-6; 9/20/02 DeBruyn Report.

Plaintiff's auditor expert witness used a "look back" method, or a modification of the "look back" method to arrive at his proposed adjustments to the estimated costs to complete contracts in progress reflected in the 1997 and 1998 financial statements. DeBruyn Deposition at pp. at 223; DeBruyn Supplemental Expert Report at p. 1. The "look back" method utilizes information obtained subsequent to the event to determine the actual situation and is not a test of the reasonableness of the auditor's assessment of the financial information as of the audit. DeBruyn Deposition at p. 271. The proposed adjustments to the financial statements by DeBruyn were entirely based on information developed <u>after the audits were completed</u> and not information known or available to defendants when the audits were performed.[3] DeBruyn Deposition at pp. 137-139.

The "look back" method is used by the Internal Revenue Service for tax related issues. DeBruyn Deposition at p. 226. DeBruyn is not aware of any instance

---

[3]The financial statement is the representation of management of the company about the financial condition of the company and the audit report is the auditor's report about the results of the audit of the financial statements. DeBruyn Deposition at pp. 125-126.

in which the "look back" method has been used other than in connection with tax related issues. DeBruyn Deposition at p. 228. There is no support in the accounting literature for the use of the "look back" method used by DeBruyn to derive the proposed adjustments to the 1997 and 1998 financial statements. DeBruyn Deposition at pp. 228-29. DeBruyn is not aware of any instance in which the "look back" method was used to evaluate the propriety of the work performed by auditors of financial statements. DeBruyn Deposition at p. 263.

    DeBruyn did not limit his use of the "look back" method to data known to be available to defendants when defendants performed their audit work for CCI Construction. DeBruyn Deposition at p. 235. DeBruyn does not know what information was available to defendants when they performed their audit work; has no reason to believe the documents from which he derived information used to develop adjustments to the financial statements existed when defendants performed the audit of the 1997 and 1998 financial statements; or that the information reflected in those documents was known or available to defendants when they performed their audit of the 1997 financial statement. DeBruyn Deposition at pp. 130-132.

    DeBruyn's proposed adjustments to estimated costs to complete are based on information concerning the actual cost to complete the contract once the contract was completed which revealed that the cost to complete was actually greater than the estimates included in the financial statements. DeBruyn Deposition at p. 138. DeBruyn did not determine the reason for the increased cost to complete for each

contract in excess of the estimated cost to complete. DeBruyn Deposition at p. 140. According to DeBruyn, the reason for the difference between the estimated cost to complete reflected on the financial statements and the actual cost to complete should be reflected in the CCI records, but he did not review those records. DeBruyn Deposition at p. 141. Without the CCI records, DeBruyn cannot determine the reason for the increased contract costs and whether the increased costs are attributable to conditions of which defendants were or should have been aware when they conducted the audit. DeBruyn Deposition at pp. 141, 148-149, 150-151. While he requested those records he was informed by USF&G that the records were not available.[4] DeBruyn Deposition at p. 116.

DeBruyn concedes that he was required to use the same audit procedures employed by, or which should have been employed by, defendants when testing the quality of the work performed by defendants. DeBruyn Deposition at p. 231-32. DeBruyn did not do this. DeBruyn Deposition at pp. 115, 122, 293. DeBruyn did not re-audit the 1997 and 1998 CCI financial statements. While DeBruyn opined that additional procedures should have been employed by Brown Schultz to test job costs as a means to scrutinize the amount reflected on the financial statements of CCI as

---

[4] While USF&G advised DeBruyn that the records were not available, USF&G had obtained most of CCI's project files when USF&G took over performance of the projects from CCI. *See* Deposition of Matthew Silverstein at pp. 28-29. According to Matt Silverstein of St. Paul's surety claim department, in certain instances the CCI files were turned over to the completion contractor, in certain instances they were returned to CCI when the project was complete and in certain instances they are still in USF&G's possession. *Id.* The pertinent portions of the deposition of Mr. Silverstein are attached hereto as Exhibit E.

the estimated cost to complete the contract, he did not perform any of these additional procedures. DeBruyn Deposition at pp. 114-116, 120-121. He is unable to determine or express an opinion about whether the results of the audits by defendants of the financial statements of CCI Construction would have been different if additional procedures had been performed by defendants. DeBruyn Deposition at pp. 112, 115-116, 122. Finally, the subsequent information relied on by Mr. DeBruyn was from CCI and was not audited, reviewed, or otherwise evaluated to determine the validity of the information in spite of a determination by DeBruyn that earlier financial information from CCI was not reliable. DeBruyn Deposition at p. 286.

DeBruyn admits that the use of the "look back" method by him may have led to proposed adjustments to the financial statements based on data not available to defendants during defendants' audit of the CCI financial statements. DeBruyn Deposition at p. 235.

### III. Argument

#### A. Mr. DeBruyn's Testimony is Inadmissible Because His Use of a "Look Back" Method Fails to Comply with Federal Rule of Evidence 702

Under Federal Rule of Evidence 702 when

> faced with a proffer of expert scientific testimony. . . the trial judge must determine at the outset, pursuant to Rule 104(a) whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 379, 392 (1993).  This gatekeeping function extends beyond scientific testimony to "testimony based on "technical" and other "specialized knowledge." *Kumho Tire Co., Ltd v. Carmichael*, 309 U.S. 141 (1999).

Rule 702 as interpreted by *Daubert* and its progeny embodies "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." *U.S. v. Mathis,* 264 F.3d 321 (3d Cir. 2001).  The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.  *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000).

The factors which govern reliability are:

(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Elcock v Kmart Corp*, 233 F.3d 734, 745-46 (3d Cir. 2000). Because these factors were developed in the context of testing the reliability of scientific methods of proof, they may not readily apply in the context of testing the reliability of opinions in other context.  *See Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.*, 1998 U.S. Dist. LEXIS 4235 (E.D. Pa. Apr. 1, 1998).  However, *Daubert*

makes certain that an expert, whether basing testimony upon

> professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. . . The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors in Daubert where they are reasonable measures of the reliability of expert testimony.

*Elcock*, 233 F.3d at 745-46.

The fit requirement stems from the requirement that scientific, technical or other specialized knowledge assist the trier of fact to understand the evidence so as to determine a fact in issue. *Mathis*, 264 F.3d at 335; F.R.E. 702. Admissibility under the "fit" requirement turns on the "proffered connection between the scientific research or test result to be presented and the particular disputed factual issue in the case." *Oddi*, 234 F.3d at 145. Here, the testimony of plaintiff's auditor expert witness meets neither the requirements of reliability or fit so as to be admissible.

Mr. DeBruyn used a "look back" method, or a modification of the "look back" method to arrive at his proposed adjustments to the estimated costs to complete contracts in progress reflected in the 1997 and 1998 financial statements. DeBruyn Deposition at pp. at 223; DeBruyn Supplemental Expert Report at p. 1. The "look back" method utilizes information obtained subsequent to the event to determine the actual situation and is not a test of the reasonableness of the auditor's assessment of the financial information as of the audit. DeBruyn Deposition at p. 271. The look back method is used by the Internal Revenue Service for tax-related issues. DeBruyn Deposition at p. 226.

9

The use of the "look back method" to evaluate Brown Schultz's audits of the 1997 and 1998 financial statements is, by Mr. DeBruyn's own admission, not generally accepted. Mr. DeBruyn is not aware of any instance in which the look back method is used other than in connection with tax-related issues. DeBruyn Deposition at p. 228. There is no support in the accounting literature for the use of the "look back" method used by plaintiff's auditor expert witness to derive the adjustments he proposes to the 1997 and 1998 financial statements. DeBruyn Deposition at pp. 228-29. Mr. DeBruyn is not aware of any instance in which the "look back" method was used to evaluate the propriety of the work performed by auditors of financial statements. DeBruyn Deposition at p. 263. For that reason there also do not appear to be any standards with regard to use of this technique to evaluate the propriety of work performed by auditors of financial statements.

Mr. DeBruyn concedes that he was required to use the same audit procedures employed by, or which should have been employed by, defendants when testing the quality of the work performed by defendants. DeBruyn Deposition at p. 231-32. However, he did not do a re-audit of CCI's financials and did not perform the additional procedures he contends that Brown Schultz should have performed. He did not employ the same level of intellectual rigor that characterizes the practice of an auditor of financial statements.

Mr. DeBruyn's use of the look back method will not assist the trier of fact in determining whether the financial statements contained misrepresentations and

whether Brown Schultz ought to have known this. Defendants did not use, and were not able to use, the "look back" method during their audit of the estimated costs to complete contracts in progress since the data necessary for the "look back" method was not available during the audit. DeBruyn Deposition at pp. 234-35. DeBruyn did not limit his use of the "look back" method to data known to be available to defendants when defendants performed their audit work for CCI. DeBruyn Deposition at p. 235. In fact, he does not know what information which was available to defendants when they performed their audit work. DeBruyn Deposition at p. 235.

The "look back" method is not a reliable test of the proficiency employed by the defendants in their audits of CCI. DeBruyn concedes that his use of this method may have led to proposed adjustments to the financial statements based on data not available to defendants during defendants' audit of the CCI Construction financial statements. DeBruyn Deposition at p. 235.

Mr. DeBruyn's testimony does not meet the requirements of reliability and fit so as to be admissible. His look back methodology is not generally accepted. It does not take into account the information which was available to the auditors during the audit. It is inherently unreliable because it looks to information obtained subsequent to the event to determine the actual situation and, therefore, can lead to adjustments to the financial statements which are simply not warranted based on the information available as of the time of the of the audit.

## IV.    Conclusion

Based on the foregoing, defendants respectfully request that this Court grant its motion in limine and preclude the testimony of plaintiff's auditor expert, Steve J. DeBruyn.

Respectfully submitted,

SWARTZ CAMPBELL LLC


BY: <u>s/Kathleen M. Carson</u>
     Jeffrey B. McCarron
     Kathleen M. Carson
     I.D. Nos. 49467/47981
     1601 Market Street
     34th Floor
     Philadelphia, PA 19103
     (215) 299-4272

Attorneys for Defendants

Dated:    October 8, 2003

## **CERTIFICATE OF SERVICE**

I, Kathleen M. Carson, Esquire, counsel for defendants, Bruce J. Brown and Brown, Schultz Sheridan & Fritz, hereby certify that a copy of Defendant's Motion in Limine to Preclude the Testimony of Steve J. DeBruyn and Memorandum in Support thereof, was served upon all counsel listed below by U.S. regular mail and postage prepaid and via overnight mail on October 8, 2003

| | |
|---|---|
| Peter Speaker, Esquire<br>Thomas, Thomas & Hafer<br>305 North Front Street<br>Harrisburg, PA 17101 | Peter B. McGlynn, Esquire<br>Bruce D. Levin, Esquire<br>Bernkopf, Goodman & Baseman LLP<br>125 Summer Street, Suite 1300<br>Boston, MA 02110 |

s/ Kathleen M. Carson
Kathleen M. Carson

Date:   October 8, 2003