UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY,<br><br>Plaintiff<br><br>v.<br><br>BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ,<br><br>Defendants. | CIVIL ACTION NO. 1:01-CV-00813<br><br>JUDGE CONNER |

## UNITED STATES FIDELITY & GUARANTY COMPANY'S
## MOTION-IN-LIMINE TO BAR EVIDENCE OF PEER REVIEW

United States Fidelity & Guaranty Company ("USF&G") hereby moves that Bruce J. Brown and Brown Schultz Sheridan & Fritz (collectively, "Brown Schultz") be barred from introducing any testimony or documents relating to any peer review to which Brown Schultz was subjected and the results thereof.  Any such information is not only irrelevant to the issues extant in the instant litigation but is highly unreliable because, as discussed in greater detail, *infra*, it concerns a process that influential individuals – including an SEC chairman and accounting professors – believe is deeply flawed.

In further support of this Motion, USF&G avers and asserts as follows:

1.      The American Institute of Certified Public Accountants ("AICPA") defines on-site peer review as an examination of a firm's system of quality control over its accounting and auditing practices by reviewing selected accounting and auditing engagements.[1]  "The purpose of an on-site peer review is to express an opinion on whether a firm met the objectives of quality

---

[1] Material regarding on-site peer reviews may be found at the official AICPA website at http://www.aicpa.org.

control standards issued by the AICPA and whether these objectives of quality control were being complied with during the period under review."[2]

   2.  The introduction of testimony or documents concerning any peer review of Brown Schultz would almost certainly be hearsay.  Brown Schultz' list of designated witnesses – provided to USF&G on October 3, 2003, as required by Local Rule 16 – does not identify any witness from any of the firms that performed on-site peer review of Brown Schultz.  Mere introduction of the results of the examination by either testimony of a Brown Schultz employee or by means of documentary evidence would only enhance the very evils the hearsay rule was designed to eliminate; to wit, USF&G would be denied the opportunity to examine a knowing witness as to, *inter alia*, the manner and conduct of the examination, the meaning of the results and the extent to which, if any, review was made concerning the audits which comprise the gravamen of the instant litigation.

   3.  The results and findings of any peer review of Brown Schultz for the pertinent time period is wholly irrelevant to any germane issues in the litigation.  It matters not whether Brown Schultz had the best or the worst system of quality control in the entire industry.  The only relevant issue is whether or not the 1997 Audit Report and the 1998 Audit Report contained material misrepresentations.  Whether Brown Schultz' "peers" gave it a gold star or a block of coal for its general practice standards is irrelevant here.  Moreover, to the extent, *arguendo*, that any peer review touches directly on the issues raised in the instant case, it would be imperative that USF&G had been given an opportunity to have examined all personnel involved and all documents reviewed or created relative to that review.  Brown Schultz never identified Margolis & Company, P.C. , the firm that purportedly performed a peer review of Brown Schultz, in its

---

[2] AICPA, Standards for Performing and Reporting on Peer Reviews effective for Peer Review Years Beginning on or after January 1, 1997 (10/4/02), available at http://aicpa.org/members/div/practmon/stnd3100.htm.

- 3 -

initial disclosures nor in its responses to any interrogatories propounded by USF&G.  In addition, Brown Schultz has produced none of the back-up documentation or working papers regarding the peer review nor has a peer reviewer been designated as an expert or lay witness.  In fact, the first time that peer review was even mentioned in this litigation was during the deposition of Brown Schultz' expert, Donald Brenner ("Brenner"), on May 6, 2003.  Although Brenner's expert report never mentioned peer review, Brenner testified at his deposition that he relied upon Brown Schultz' representations that it had been peer reviewed.  Neither in his expert report nor during his deposition did Brenner lay a foundation for the introduction of any evidence on peer review.

     4.     The peer review process is deeply flawed and was not designed to measure whether all of a firm's audits were properly done.  In a 2002 public statement, then SEC chairman, Harvey Pitt ("Pitt"), spoke to the need of reformation of the regulation of the American accounting profession.  *Public Statement by SEC Chairman: Regulation of the Accounting Profession,* January 17, 2002.  Pitt proposed several changes in the accounting peer review process including:

- Avoiding firm on firm reviews;
- More frequent monitoring of audit quality (as opposed to the current triennial system); and
- Creation of a permanent Quality Control staff composed of individuals knowledgeable of the accounting industry, but not affiliated with any firm.

Pitt's proposed reform to the accounting industry's peer review system was due to the ineffectiveness of the current peer review system.[3]  For example, in August 2001, Arthur Andersen received what it called 'the most extensive peer review in the firm's history.'  Months later, it was discovered that Arthur Andersen had failed to either uncover or report Enron's accounting violations.[4]  Although Pitt brought the peer review process under scrutiny in 2002, the SEC had already begun drafting a report critical of the accounting peer review process and calling for its overhaul in 2000.[5]  "Exhibits to the draft report, some never before made public, showed that in performing peer reviews of each other, Big Five accounting firms repeatedly unearthed what the SEC staff considered major flaws in the way audits were conducted – but nevertheless gave each other clean bills of health in public reports of the reviews."[6]

     5.     Absent indicia of the reliability and quality of the peer review process, the peer reviewers and the specifics of the peer review performed, there is simply no value to allowing the introduction of any testimony or documents relating to any peer review to which Brown Schultz was subjected.

     WHEREFORE, United States Fidelity & Guaranty Company respectfully requests that the Court enter an order:

     1.     Barring the introduction of any testimony or documents referring or relating to any peer review to which Brown Schultz was subjected; and

     2.     Providing such other and further relief as is just and proper.

---

[3] Shalani M. Aggarwal, *From the Individual to the Institution:  The SEC's Evolving Strategy for Regulating the Capital Markets*, 2003 CLMBLR 581 (2003).
[4] CNN Money, *After Pitt Became Chairman Report "Just Petered Out"* (Jan. 29, 2002) *at:* http://money.cnn.com/2002/01/29/news/sec accounting/index.htm.
[5] NYSSCPA.org News Staff, *SEC Accounting Report Criticizing Peer Review Unfinished*, (Jan.28-Feb.1, 2002) at http://www.nysscpa.org/home/2002/102/4week/article22.htm.
[6] As reported in the Wall Street *edited by* Jeffrey Taylor, *Peer Review*, (Jan. 29, 2002) *at:* http://executivecaliber.ws/sys-tmpl/peerreview/.

- 5 -

                        UNITED STATES FIDELITY AND
                        GUARANTY COMPANY,
                        By its counsel,

                        s/ Bruce D. Levin_____
                        Peter B. McGlynn, Esquire
                        Bruce D. Levin, Esquire
                        Bernkopf, Goodman & Baseman LLP
                        125 Summer Street, Suite 1300
                        Boston, Massachusetts 02110
                        Telephone:   (617) 790-3000
                        Facsimile:   (617) 790-3300
                        blevin@bgblaw.com
                        pmcglynn@bgblaw.com

                                and

                        Peter Speaker, Esquire
                        Thomas, Thomas & Hafer
                        305 North Front Street
                        Harrisburg, PA  17101
                        Telephone:   (717) 237-7100
                        Facsimile:   (717) 237-7105
                        pjs@tthlaw.com

Dated: October 8, 2003
#277636 v1/36432/87