# EXHIBIT A

Case 1:01-cv-00813-CCC   Document 112-2   Filed 10/08/2003   Page 1 of 15



UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | : | CIVIL NO. 1:01-CV-0813 |
| Plaintiff | : | (Judge Kane) |
| v. | : | (Magistrate Judge Smyser) |
| BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, | : | |
| Defendants | : | |

FILED
HARRISBURG, PA
AUG 0 9 2002
MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

<u>ORDER</u>

The plaintiff, United States Fidelity and Guaranty Company, commenced this action by filing a complaint on May 9, 2001. The defendants are Bruce J. Brown and Brown Schultz Sheridan & Fritz.

The plaintiff alleges the following facts in the complaint. The plaintiff is in the business of issuing payment and performance bonds on behalf of contractors and subcontractors engaged in the performance of work on public and private construction projects. *Complaint* at ¶7.
CCI Construction Co. was a contractor engaged in construction work on public and private construction projects. *Id.* at ¶6.

AO 72A
(Rev 8/82)

As a condition of the issuance of payment and performance bonds to CCI, the plaintiff required CCI to furnish to it annually an audit report by an independent certified public accountant consisting of, *inter alia*, an audit of CCI's balance sheet and income statement. *Id.* at ¶10. The defendants perform work as independent certified public accountants including preparing audited financial statements for construction contractors and subcontractors for use by bonding companies. *Id.* at ¶11.

The defendants prepared audited financial statements for CCI for the years ending December 31, 1996, December 31, 1997 and December 31, 1998. *Id.* at ¶12. The defendants knew that the audited financial statements would be provided by CCI to its bonding company, which at all relevant times was the plaintiff. *Id.* at ¶13. The defendants knew that CCI's bonding company would rely upon the audited financial statements to determine whether to issue payment and performance bonds to CCI. *Id.* at ¶14. In reliance on the audited financial statements prepared by the defendants, the plaintiff extended surety credit to CCI and issued payment and performance bonds to CCI. *Id.* at ¶¶16, 18 & 20. The audited financial

statements prepared by the defendants were inaccurate, contained omissions and were misleading. *Id.* at ¶¶21, 32.

On or about September of 1999, CCI informed the plaintiff that it lacked the financial resources to continue its operations and that it would not be able to complete its work and pay its suppliers and subcontractors on the projects for which the plaintiff had issued payment and performance bonds. *Id.* at ¶ 22. On May 19, 2000, CCI filed for bankruptcy. *Id.* at ¶24. As surety for the payment and performance bonds, the plaintiff was required to and did expend substantial sums in completing the projects and satisfying the claims of CCI's unpaid vendors, employees and subcontractors. *Id.* at ¶23. The plaintiff has incurred losses of approximately $31,816,895 in connection with the bonds issued to CCI. *Id.* at ¶25.

The complaint contains only one count - a claim of negligent misrepresentation.

On June 20, 2002, the defendants filed a motion to compel the production of documents and a brief in support of that motion. On July 8, 2002, the plaintiff filed a brief in opposition, and on July 22, 2002, the defendants filed a reply

3

brief. The plaintiff sought and was granted leave to file a sur-reply brief. The plaintiff's sur-reply brief was filed on August 7, 2002.

The defendants' motion to compel concerns the following document requests:

> 1. All documents that evidence, relate or refer to communications with reinsurers regarding the bonding program and/or payment and performance bonds issued by USF&G to CCI.
> 2. All documents that evidence, relate or refer to communications with reinsurers regarding payments made or to be made by USF&G under any payment or performance bonds issued by USF&G to CCI.

The plaintiff objected to these document requests on the basis that the requests seek documents which are not relevant to any claims or defenses that have been raised in this case. The plaintiff further objected to the document requests on the basis that the requests seek information protected by attorney-client privilege and work product doctrine.

The document requests at issue concern reinsurance. "Reinsurance is purchased by insurance companies to insure

4

their liability under policies written to their insureds." *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1199 (3d Cir. 1995). "Typically, an insurer who has provided coverage against a large loss will cede all or part of that risk to other insurance companies along with a portion of the premiums." *Id.* Ceding risk increases the insurer's capacity to insure other customers and decreases the likelihood that the insurer will become insolvent as a result of a large claim. *Id.* There are two types of reinsurance contracts: treaty and facultative. *Id.* Under a reinsurance treaty, the reinusurer agrees to accept an entire block of policies, including those as yet unwritten, from the reinsured. *Id.* On the other hand, facultative reinsurance entails the ceding of only a particular risk or policy. *Id.*

We will first address the plaintiff's relevancy objection.

Federal Rule of Civil Procedure 26(b)(1) provides, in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books,

5

> documents or other tangible things and the
> identity and location of persons having
> knowledge of any discoverable matter. For
> good cause, the court may order discovery of
> any matter relevant to the subject matter
> involved in the action. Relevant information
> need not be admissible at the trial if the
> discovery appears reasonably calculated to
> lead to the discovery of admissible evidence.

The discovery rules "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). When relevance is in doubt the court should be permissive in allowing discovery. *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed.Cir. 1986).

The plaintiff asserts that there are three category of documents responsive to the document requests.

The first category of documents consists of the various insurance treaties and agreements between and among USF&G and its reinsurers concerning the financial, business and legal parameters of their reinsurer-cedent relationship. These agreements are not relevant to any claim or defense in this case and the discovery of these agreements does not appear

reasonably calculated to lead to the discovery of admissible evidence. Thus, the defendants' motion to compel the production of these documents will be denied.

The second category of documents responsive to the discovery requests consists of correspondence and other documentation between USF&G and its reinsurers that was created prior to or contemporaneously with USF&G's decision to issue bonds on behalf of CCI. To prove its negligent misrepresentation claim, the plaintiff must establish that it justifiably and to its detriment relied upon a material misrepresentation made by the defendants. *Dorts v. Noon*, 729 A.2d 555, 561 (Pa. 1999). Discovery of documents in the second category appear reasonably calculated to lead to the discovery of admissible evidence because these documents may contain statements or information relevant to the issue of what information the plaintiff relied upon when issuing the bonds on behalf of CCI. *See National Union Fire Ins. Co. v. Continental Illinois Corp.*, 116 F.R.D. 78, 82 (N.D.Ill. 1987)(holding that an insurer's communications with reinsurers prior to issuance of the policy "may reveal what financial information Insurers relied upon when deciding to issue the Policies."). The plaintiff states that it has provided to the defendants all

7

such documents contained in the underwriting file. However, the plaintiff does not state whether there are other documents in the second category that have not been produced. We will grant the motion to compel with regard to the second category of documents, and we will order the plaintiff to produce any correspondence and other documentation between USF&G and its reinsurers that was created prior to or contemporaneously with USF&G's decision to issue bonds on behalf of CCI and that has not already been produced.

The third category of documents responsive to the discovery requests consists of correspondence and other documentation between and among USF&G and its reinsurers concerning losses on the CCI bonds.

Gregory Daily, an employee of the plaintiff, testified at a deposition that, for accounts that require over a two and half million dollar loss reserve, the plaintiff prepares narrative reports that are sent to it reinsurers on a periodic basis. *Daily Dep.* at 46-47. Mr. Daily testified that if it is a file that he is handling he will draft the initial narrative report to the reinsurers. *Id.* at 15. These reports contain the background of the contractor, what type of work the contractor

8

does, what is left for USF&G to complete and how the situation of a default arose. *Id.* at 16. Subsequent reports will provide an update of the status of the matter. *Id.* Mr. Daily testified that he believes that he is required to make such reports pursuant to the terms of the reinsurance agreements and that such reports are prepared in the ordinary course of communicating with reinsurers to advise them of particular claims. *Id.* at 16 & 24. Mr. Daily testified that he has prepared reports to reinsurers regarding CCI. *Id.* at 20.

Since documents in the third category were generated after the plaintiff issued the bonds on behalf of CCI, these documents are less likely than documents in the second category to contain evidence relevant to the issue of what information the plaintiff relied upon when issuing the bonds on behalf of CCI. The defendants contend that documents in the third category may be relevant to the plaintiff's understanding of the cause of its losses and may contain admissions by the plaintiff with regard to the cause of its losses. The defendants also contend that documents in this category may contain information regarding the extent of the plaintiff's claimed losses and may be relevant to the issue of damages and to some of the defenses they have raised such as the

9

plaintiff's failure to mitigate damages. We have some doubt about whether documents in this third category will actually lead to the discovery of admissible evidence. However, when relevance is doubtful but possible the court should permit discovery. We conclude that discovery of documents in the third category appears reasonably calculated to lead to the discovery of admissible evidence.

The plaintiff contends that documents in the third category are protected from discovery by the work-product doctrine.

The work-product doctrine was announced by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). The work product doctrine has been codified in the Federal Rules of Civil Procedure. Rule 26(b)(3) provides:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the

party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The party claiming work-product immunity bears the burden of showing that the materials in question were prepared in anticipation of litigation. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). The appropriate inquiry in determining whether a document was prepared in anticipation of litigation is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)). Litigation does not need to be imminent as long as the main purpose behind the creation of the document was to aid in possible future litigation. *George v. Siemens Indus. Automation, Inc.*, 182 F.R.D. 134, 141 (D.N.J. 1998). However, the mere possibility of future litigation is not sufficient to meet the "in anticipation of litigation"

11

standard. *Id.* The work product doctrine does not protect "materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." *Martin, supra*, 983 F.2d at 1260.

The defendants contend that the documents at issue, which are described in the plaintiff's brief as "Communication re: status of claims," were not prepared in anticipation of litigation and, thus, are not covered by the work-product doctrine. The defendants support their assertion that the documents were not prepared in anticipation of litigation with the testimony of Mr. Daily who testified that he believes that he is required to make reports to reinsurers pursuant to the terms of the reinsurance agreements and that such reports are prepared in the ordinary course of communicating with reinsurers to advise them of particular claims. *Id.* at 16 & 24. Although the plaintiff argues that the documents at issue are protected by the work-product doctrine, the plaintiff presents no evidence, and does not even specifically argue, that the documents were prepared in anticipation of litigation. The plaintiff has failed to meet it burden of establishing that the documents are protected by the work-product doctrine. *See generally Front Royal Ins. Co. v. Gold Players, Inc.*, 187

12

F.R.D. 252 (W.D.Va. 1999)(finding that reinsurance loss notice and general reinsurance report sent by insurer to reinsurer were not prepared in anticipation of litigation and, therefore, are not protected from production by the work-product doctrine).

In its responses to the document requests, the plaintiff objected on the ground of attorney-client privilege. However, in connection with the motion to compel, the plaintiff has not briefed the issue of attorney-client privilege. Therefore, that issue is waived.

We will grant the motion to compel with regard to the third category of documents, and we will order the plaintiff to produce any correspondence and other documentation between and among USF&G and its reinsurers concerning losses on the CCI bonds.

AND NOW, this 9th day of August, 2002, **IT IS HEREBY ORDERED** that the defendants' motion (doc. 33) to compel is **DENIED IN PART AND GRANTED IN PART**. The motion to compel is denied with respect to the production of the various insurance treaties and agreements between and among USF&G and its

13

reinsurers concerning the financial, business and legal parameters of their reinsurer-cedent relationship. The motion to compel is granted with respect to correspondence and other documentation between USF&G and its reinsurers that was created prior to or contemporaneously with USF&G's decision to issue bonds on behalf of CCI and that has not already been produced and with respect to correspondence and other documentation between and among USF&G and its reinsurers concerning losses on the CCI bonds. Within ten days of the date of this Order the plaintiff shall provide to the defendants the documents in the latter two categories of documents.

                                                     J. Andrew Smyser
                                                     Magistrate Judge

Dated: August 9, 2002.

AO 72A
(Rev 8/82)