UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

|  |  |  |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | ) ) ) ) | |
| Plaintiff | ) ) | CIVIL ACTION NO. 1:01-CV-00813 |
| v. | ) ) | JUDGE CONNER |
| BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, | ) ) ) | |
| Defendants. | ) ) | |

**UNITED STATES FIDELITY & GUARANTY COMPANY'S MOTION IN LIMINE TO BAR EVIDENCE CONCERNING CERTAIN AFFIRMATIVE DEFENSES RAISED IN THE ANSWER OF BRUCE J. BROWN AND BROWN SCHULTZ SHERIDAN & FRITZ**

United States Fidelity & Guaranty Company ("USF&G") hereby moves for an order barring all testimony and documents referring or relating to the **Third Affirmative Defense** ("Plaintiffs could have avoided its alleged loss without undue burden, expense or humiliation"), the **Fourth Affirmative Defense** ("Plaintiff failed to mitigate its alleged damages"), the **Fifth Affirmative Defense** ("Plaintiff's contributory negligence bars recovery from defendants"), and the **Sixth Affirmative Defense** ("Plaintiff assumed the risk of loss which forms the basis for this action") raised by Bruce J. Brown and Brown, Schultz, Sheridan & Fritz (collectively, "Brown Schultz") in the Answer of Bruce J. Brown and Brown Schultz Sheridan & Fritz to Complaint with Affirmative Defenses (the "Answer"). A true and complete copy of the Answer is attached hereto and incorporated herein as Exhibit "A."

In the Second Set of Interrogatories propounded by USF&G to Brown Schultz, USF&G sought the factual basis for each affirmative defense raised by Brown Schultz. A true and complete copy of the Second Set of Interrogatories is attached hereto and incorporated herein as

Exhibit "B." In its responses to USF&G's Second Set of Interrogatories, Brown Schultz objected to, *inter alia*, interrogatory nos. 3, 4, 5 & 6, which Brown Schultz deemed to be "contention interrogatories," presumably because the interrogatories were premature given that discovery had not yet been completed. A true and complete copy of Defendant's Responses to Plaintiff's Second Set of Interrogatories (the "Responses") are attached hereto as Exhibit "C." Without waiver of its objections, Brown Schultz provided scanty and incomplete answers to interrogatory nos. 3, 4, 5 & 6, implying that responses to those interrogatories concerning Brown Schultz' third, fourth, fifth and sixth affirmative defenses would be supplemented after discovery was complete. However, despite its unambiguous obligation to do so under the Federal Rules of Civil Procedure, Brown Schultz has *never* supplemented its answers to those interrogatories, which remain incomplete and, for all practical purposes, totally non-responsive.

In further support of this Motion, USF&G avers and asserts as follows:

1.   In its tardily filed Responses, Brown Schultz objected to interrogatories nos. 3, 4, 5, and 6 on the basis that the "contention interrogatories" are an improper use of interrogatories under the Federal Rules of Civil Procedure. Brown Schultz also objected on the grounds that the interrogatories were premature and discovery had not been completed, indicating that its responses would be supplemented after discovery was completed.

2.   Contention interrogatories ask a party "to state what it contends . . . to state all the facts upon which it bases a contention, to take a position and explain or defend that position . . ." See, *e.g. Braun Medical Inc. v. Abbott Laboratories*, 155 F.R.D. 525 (E.D. Pa. 1994). In addition, contention interrogatories are "not necessarily objectionable because an answer to the interrogatories invokes an opinion or contention that relates to fact or the application of law to fact." *Id.* Although not objectionable merely because they are contention interrogatories, courts may "defer contention interrogatories until a later stage of discovery." *Id.* In fact, the answers

may be deferred until the end of the discovery period. *Id.* Brown Schultz never sought permission from the Court to defer its answers to the interrogatories. However, in its objections to *each* interrogatory, Brown Schultz states that "defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as such, defendants reserve the right to amend and/or supplement their responses." Responses at No. 3, 4, 5 & 6. While lack of sufficient discovery may originally have justified Brown Schultz in not fully and immediately responding to certain interrogatories in April, 2002, when the second set of interrogatories was served upon Brown Schultz, the discovery period for non-expert discovery in this action ended on June 22, 2002. Brown Schultz had ample opportunity to conduct discovery and, in fact, was not sparing in its use of depositions. However, despite requests by USF&G and Brown Schultz' unequivocal obligations pursuant to Fed. R. Civ. P. 26(e), at no time has Brown Schultz supplemented the incomplete and inadequate responses. In addition, Brown Schultz never filed a motion for a protective order in connection with the discovery sought by USF&G.

        3.       Brown Schultz has a duty to supplement its answers to interrogatories under Fed. R. Civ. P. 26(e). "Where a party at the time of answering an interrogatory is unable to fully respond, it is under a continuing obligation to provide the information when it becomes available." *SPS Technologies, Inc. v. N.L. Industries, Inc.*, 1986 WL 5171, (E.D. Pa. 1986); *see also Roesberg v. John-Maville Corp.*, 85 F.R.D. 292 (E.D. Pa. 1980). "Federal Rule of Civil Procedure 26(e) creates a duty on the parties to supplement their discovery responses." *See e.g. Puicelli v. Houston*, 2000 WL 298922, (S.D. Pa.) As Brown Schultz specifically cited lack of sufficient discovery as a reason for not providing full answers to *each* interrogatory, Brown Schultz acknowledged a duty to supplement its Responses.

4.  In Interrogatory No. 4, USF&G asked Brown Schultz to identify all facts upon which Brown Schultz based its contention that USF&G failed to mitigate its damages. After raising the objection that the depositions of certain USF&G and CCI personnel have yet to be completed, Brown Schultz' <u>only</u> substantive response to this interrogatory was the following: "USF&G has not pursued affirmative CCI claims on the Scott Air Force Base project which CCI believed to be in $4,000,000.00 range and the Albemarle Prison Project which CCI believed to be in the $2,500,000.00 range. Defendants are still in the process of reviewing the project files produced by USF&G and, as such, reserve the right to amend and/or supplement this response as and if warranted upon the completion of that review and the completion of the depositions of Mr. Silverstein and Mr. Daily." No detail is given as to, *inter alia*, the supposed factual basis for the conclusory statements regarding USF&G's alleged non-pursuit of two claims and the figures purporting to be the range of those claims. Brown Schultz, however, never supplemented this response. Testimony and documents related to any failure to mitigate should be barred.[1]

5.  In Interrogatory No. 5, USF&G asks Brown Schultz to identify all facts upon which it bases its contention that USF&G's contributory negligence bars recovery from defendants. In its answer to Interrogatory No. 5, *Brown Schultz provides no substantive answer whatsoever*.[2] Brown Schultz merely raises the exact same objections raised in every other response, mainly that the depositions of certain USF&G and CCI personnel have yet to be

---

[1] Brown Schultz incorporated its response to "interrogatory number 4 above." However, this reference to "interrogatory number 4" appears to be a typographical error, as "interrogatory number 4" is the interrogatory that requests all facts upon which Brown Schultz bases its contention that USF&G failed to mitigate its damages. If Brown Schultz' intent was to incorporate an earlier response, it is impossible to guess which one. Moreover, all responses contain the exact same objection that "defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as such, defendants reserve the right to amend and/or supplement their responses."

[2] Again, Brown Schultz attempts to incorporate its response to "interrogatory number 4 above." However, "interrogatory number 4" is the interrogatory that requests all facts upon which Brown Schultz bases its contention that USF&G failed to mitigate its damages. Incorporating this response is non-responsive to interrogatory number 5.

completed. By its own admission, the interrogatory response proffered was incomplete. Yet, Brown Schultz has steadfastly refused to provide more complete responses despite the completion of discovery in this action.

6. Moreover, all testimony or documents Brown Schultz intends to introduce in support of the fifth affirmative defense of USF&G's contributory negligence should be barred because Pennsylvania upholds the "audit interference rule." The audit inference rule provides that an accountant may only utilize the defense of contributory negligence to the extent that such contributory negligence consists of actions *by the plaintiff that interfere with the conduct of the audit*. *Jewelcor Jewelers and Distributors, Inc. v. Corr*, 373 Pa. Super. 536, 551-52 (P.A. Super. 1988) (emphasis supplied). An accounting firm which has been sued for negligently performing an audit may assert the defense of contributory negligence *only* when the plaintiff's conduct interfered with the audit and this interference was a substantial factor in causing the plaintiff's loss. *In re Jack Greenburg, Inc.,* 212 B.R 76 (E.D. Pa. 1997). Further, the plaintiff must be negligent and the negligence must contribute to the defendant's failure to perform his contract and report the truth. *Id.* "Under Pennsylvania law, a party's contributory negligence is not a defense to an action against an accountant for professional negligence unless that contributory negligence impeded the accountant from performing its obligations satisfactorily-- the so-called 'audit interference rule'" *Medical Consultants Network, Inc. v. Cantor & Johnston, P.C.,* 2001 WL 10788(E.D. Pa.), citing *Jewelcor Jewelers and Distributors, Inc. v. Corr*, 373 Pa. Super. 536, 551-52 (P.A. Super. 1988). Neither in Response No. 5 nor in any other substantive pleading has Brown Schultz even *alleged* that USF&G participated in the conduct of any aspect of Brown Schultz' audit of CCI. Absent *any* degree of participation, it is hard to imagine that Brown Schultz could demonstrate any active interference by USF&G in the preparation and conduct of

the audits performed by Brown Schultz. As such, the "audit interference rule" is applicable and contributory negligence may not be raised by Brown Schultz as a defense.

7. In Interrogatory No. 6, USF&G asks Brown Schultz to identify all facts upon which it bases its contention that USF&G assumed the risk of loss which forms the basis for this action. In its answer to Interrogatory No. 6, *Brown Schultz again provides no substantive answer whatsoever.*[3] Again, Brown Schultz merely raises the exact same objections raised in every other response, mainly that the depositions of certain USF&G and CCI personnel have yet to be completed. Accordingly, all testimony or documents related to the sixth affirmative defense should be barred.

8. In Interrogatory No. 3, USF&G asked Brown Schultz to provide all facts upon which Brown Schultz based its contention that USF&G could have avoided its alleged loss without undue burden, expense or humiliation. Without waiving its objections, including its objection that the depositions of certain USF&G and CCI personnel have yet to be completed, Brown Schultz stated, *inter alia,* that USF&G received interim financial statements, Dunn & Bradstreet reports, and reports from the Byerly Agency upon which it relied. In addition, Brown Schultz alleged, *inter alia*, that USF&G bonded contracts despite its concerns over profit fades, losses, bear flags and a yellow stress score on the 1996 year end financial statement, and self-performing work. While Brown Schultz did provide a substantive response to Interrogatory No. 3, Brown Schultz never supplemented this response with additional facts, although the non-expert discovery period had ended on June 22, 2002. Brown Schultz had numerous opportunities

---

[3] Again, Brown Schultz attempts to incorporate its response to "interrogatory number 4 above." However, "interrogatory number 4" is the interrogatory that requests all facts upon which Brown Schultz bases its contention that USF&G failed to mitigate its damages. Incorporating this response is non-responsive to interrogatory number 6.

to supplement this response, but failed to do so even after USF&G attempted to set a mutually convenient date for the exchange of supplemental discovery.

9. To avoid the necessity of embroiling the court in discovery disputes, USF&G suggested that it would be most in keeping with the spirit of cooperation embedded in the Federal Rules for counsel to agree upon a mutually convenient date for any supplements to be exchanged. Brown Schultz has ignored these requests, refusing to even respond to letters sent by USF&G's counsel. In May and June 2002, USF&G and Brown Schultz exchanged several letters addressing supplementation of discovery. In USF&G's letter dated May 10, 2002, USF&G suggested "that [Brown Schultz and USF&G] agree upon a date by which all parties will exchange amended or supplemental answers. . . [USF&G suggests] a date at the end of August, after [Brown Schultz'] expert report is due." A true and complete copy of the May 10, 2002 letter is attached hereto as Exhibit "D." USF&G repeated its request for a mutually agreeable date in letters to Brown Schultz dated May 17, 2002 and June 18, 2002. In its June 18, 2002 letter, USF&G again suggested that the parties agree upon a date for the exchange of supplemented discovery responses, particularly as to "contention requests." Brown Schultz rejected all of USF&G's proposed dates and refused to propose any alternative dates. A true and complete copy of the June 18, 2002 letter is attached hereto as Exhibit "E."

10. Although supplementation requests are not required by the Federal Rules of Civil Procedure, on September 15, 2003, USF&G made a final request to Brown Schultz for all supplementation of discovery to be completed by September 30, 2003. Specifically, USF&G requested supplemental responses to the Second Set of Interrogatories. A copy of this September 15, 2003 letter is attached hereto as Exhibit "F." To date, less than two weeks before the commencement of trial, Brown Schultz has failed to supplement its Responses. *In fact, Brown Schultz has utterly failed to respond to the correspondence from USF&G's counsel.*

Accordingly, Brown Schultz should be barred from introducing any evidence in support of its affirmative defenses except that which was specifically identified in Brown Schultz' responses to the interrogatories propounded by USF&G.

11. Under Fed. R. Civ. P. 37(c)(1), the court has discretion to prohibit a party from introducing designated matters in evidence. "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness information not so disclosed." Fed R. Civ. P. 37 (c)(1). "Preclusion [of evidence] can also result if a party violates a scheduling order . . . or if an important contention or theory . . . is omitted . . ." *Astrazeneca AB v. Mutual Pharmaceutical Co., Inc.*, 2003 WL 21982065 (E.D. Pa). In *Astrazeneca*, the defendants' answers to contention interrogatories were insufficient, and the Plaintiff filed a motion to exclude certain theories unless set forth in their answers to contention interrogatories. *Id.* at p. 9.

12. The most frequently cited third circuit case on the exclusion of evidence as a result of insufficient discovery responses is *Meyers v. Penny Pack Woods Home Ownership Ass'n*, 559 F. 2d 894, 903 (3rd Cir. 1977), *overruled on other grounds*. The *Meyers* Court set forth several factors to be weighed in deciding to exclude evidence not previously disclosed in discovery. These factors include the prejudice against the other party, the ability to cure the prejudice, the extent to which the waiver of the rule would disrupt the trial, and bad faith in failing to comply with a court order. *Id.* After applying the *Meyers* factors, the *Astrazeneca* Court precluded the defendant from presenting certain evidence. In so doing, the *Astrazeneca* case pointed out that *Meyers* involved civil rights, and that courts "need not be so indulgent in . . . [cases] involving large business entities, with expertise in their respective fields, and with highly competent counsel representing them." *Astrazeneca*, 2003 WL 21982065 at 17. In

addition, "the carefully orchestrated pretrial process was designed to flush out each party's contentions during discovery. Allowing [the defendants] to assert [new evidence] at the very end of that process is simply not fair to Plaintiffs." *Id.* at 18.

13.   Brown Schultz' failure to supplement its interrogatory responses was certainly not "harmless." Fed. R. Civ. P. 37(c)(1). In light of the complex nature of this case and the thousands of relevant documents produced by both parties to allow Brown Schultz to introduce evidence in support of the very affirmative defenses on which it has failed to attribute a factual basis would be nothing less than "trial by ambush." Numerous equitable considerations also mandate that Brown Schultz be barred from introducing any testimony in support of certain affirmative defenses. The period for discovery has long been complete and the trial is scheduled to begin on October 20, 2003. Brown Schultz has taken the deposition of eight different individuals, several of which continued for more than one day. In addition, thousands of pages of documents have been produced by USF&G. For Brown Schultz to present theories on, *inter alia*, why USF&G's claims are barred by contributory negligence or why USF&G failed to mitigate its damages, would be unfair in light of Brown Schultz' wanton disregard of its duties and obligations. USF&G has not only been prejudiced by Brown Schultz' failures, but even if, *arguendo*, Brown Schultz were to promptly provide the requisite supplementation, such prejudice would not be ameliorated because USF&G would not have the opportunity to re-open depositions or conduct any discovery necessitated by such supplementation. Brown Schultz has had every opportunity to supplement its discovery and has obstinately declined to do so. Therefore, Brown Schultz should be barred from introducing any testimony or documents referring or relating to its third, fourth, fifth and sixth affirmative defenses.

WHEREFORE, USF&G respectfully requests that the Court enter an order:

1. Barring all testimony and documents referring or relating to Brown Schultz' third, fourth, fifth and sixth affirmative defenses; and

2. Providing such other and further relief as is just and proper.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
By its counsel,

 s/ Bruce D. Levin
Peter B. McGlynn, Esquire
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts 02110
Telephone:    (617) 790-3000
Facsimile:    (617) 790-3300
blevin@bgblaw.com
pmcglynn@bgblaw.com

and

Peter Speaker, Esquire
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, PA  17101
Telephone:    (717) 237-7100
Facsimile:    (717) 237-7105
pjs@tthlaw.com

Dated:  October 8, 2003
#277428 v1/36432/87