# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES FIDELITY & COMPANY,<br>　　　　Plaintiff<br><br>　　v.<br><br>BRUCE BROWN and<br>BROWN, SCHULTZ SHERIDAN & FRITZ,<br>　　　　Defendants | :<br>:<br>:<br>:  CIVIL ACTION NO.<br>:  1-01-CV-00813<br>:<br>:<br>:<br>: |

**DEFENDANTS' RESPONSES TO PLAINTIFF'S
SECOND SET OF INTERROGATORIES**

Defendants, by and through their attorneys, hereby respond to plaintiff's second set of interrogatories, as follows:

**I.   General Statement**

The responses set forth herein are made based upon the documents produced by USF&G and the depositions of USF&G personnel taken to date. There are a number of depositions which remain to be completed. In addition, defendants' motion to compel reinsurance documents is pending before the court and could result in the production of additional documents. Finally, defendants are still in the process of reviewing the payment and performance bond files produced by USF&G. As such, defendants reserve the right to supplement and/or amend their responses to these interrogatories as and if warranted by further investigation and discovery.

1

## II.   Response to Interrogatories

1. Please identify all facts upon which you base the contention that USF&G "does not state a cause of action for which relief may be granted."

**RESPONSE:**

Defendants object to this interrogatory to the extent that this and the following contention interrogatories purport to require defendants to recite each and every fact that would support each and every affirmative defense raised by defendants. As such, they are an improper use of interrogatories under the Federal Rules of Civil Procedure. However, defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as such, defendants reserve the right to amend and/or supplement their responses. Subject to and without waiver of its objections, defendants respond as follows:

Plaintiff's contentions relate to a negligence claim rather than a negligent misrepresentation claim. Plaintiff's complaint asserts a claim for negligent misrepresentation. However, Plaintiff has not identified the manner in which the CCI audited financial statements for the years ended December 31, 1996, December 31, 1997 and December 31, 1998 misrepresent the financial condition of CCI. While plaintiff in its interrogatory answers purports to identify certain inadequacies in the financial statement, Plaintiff has not identified what, if any, impact the purported inadequacies would have had on the audited financials for the years at issue. As

such, plaintiff cannot state a claim for negligent misrepresentation. Moreover, the gravamen of Plaintiff's claim is that Defendants' audits allegedly failed to conform to GAAP and/or GAAS. While this may be a basis for a negligence claim, it is not, in and of itself, a basis for a negligent misrepresentation claim. In addition, Plaintiff cannot maintain a claim for professional negligence against defendants as it was not the client of Defendants in connection with these audits.

2. Please identify all facts upon which you base the contention that USF&G's "claims are or may be barred in whole or in part by the applicable statute of limitations."

**RESPONSE:**

Defendants object to this interrogatory to the extent that this and the following contention interrogatories purport to require defendants to recite each and every fact that would support each and every affirmative defense raised by defendants. As such, they are an improper use of interrogatories under the Federal Rules of Civil Procedure. However, defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as such, defendants reserve the right to amend and/or supplement their responses. Subject to and without waiver of its objections, defendants respond as follows:

This action was filed on May 9, 2001. USF&G received the audited financial statements at least by in or around April, 1997, April, 1998, and March, 1999.

Certain of the items complained of by USF&G such as the presentation of indirect costs, were evident from the face of each of the financial statements. To the extent that plaintiff contends that the presentation of values in the financial statements were not in conformity with GAAP, then it knew or should have known of this alleged breach of duty at or about the time it received each of the audited financial statements. Similarly, deviations in profitability with regard to a particular project would be evident from the statements each year. Finally, disclosures with regard to to the existence of PCIC, its identity as a related party and the transaction or transactions at issue, were evident from the financial statements. Therefore, plaintiff's claims with respect to the 1996, 1997 and 1998 audited financials time are either wholly or partially time barred.

3. Please identify all facts upon which you base the contention that USF&G "could have avoided its alleged loss without undue burden, expense or humiliation."

**RESPONSE:**

Defendants object to this interrogatory to the extent that this and the following contention interrogatories purport to require defendants to recite each and every fact that would support each and every affirmative defense raised by defendants. As such, they are an improper use of interrogatories under the Federal Rules of Civil Procedure. However, defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as

4

such, defendants reserve the right to amend and/or supplement their responses. Subject to and without waiver of its objections, defendants respond as follows:

In addition to year end audited financials, USF&G received interim financial statements from CCI. USF&G also monitored the work in progress on particular projects. USF&G received or had available to it, reports from Dun & Bradstreet regarding CCI. USF&G personnel did their own analysis of the information provided to them by CCI and/or others relating to CCI. USF&G also received regular reports from the agent, The Byerly Agency and later DJL Associates with regard to issues confronting CCI financially and with regard to specific projects during the entire period USF&G bonded CCI projects. USF&G, therefore, had all of the information necessary to evaluate the risks of underwriting a bonding program for CCI at any given point in time.

USF&G bonded CCI's contracts in 1994 notwithstanding its concerns because of substantial losses and profit fades on CCI jobs. In the early days of the CCI account, USF&G's own reinsurers expressed skepticism about CCI's ability to compete in the public bid market. Mr. Hussey testified that in 1995 notwithstanding a concern about a loss which was sustained in the operations of CCI, USF&G continued with the bonding program. The analysis of the 1996 year end financial statement showed a yellow stress score and bear flags because the gross profit fade factor was greater than 20% and because equity was less that 10% of the total program. In 1997, according to Mr. Hussey, CCI projected a deficit and yet USF&G

5

continued to bond the company. The analysis of the 1997 year end financial statements showed the same warning indicators as the year before, a yellow stress score and bear flags due to a gross profit fade factor of more than 20% and equity less than 10% of the total program. In 1998, CCI reported a $1.6 million loss to USF&G for the first half of 1998. USF&G nevertheless continued to bond CCI's contracts. At the end of 1998, CCI showed a only nominal profit, but USF&G continued to bond the program. In 1999, USF&G was aware that CCI had drawn substantially on its line of credit with the bank indicating a cash flow issue and still continued to bond CCI projects. Remarkably, as of January 18, 2002, USF&G was still taking a "wait and see" position with regard to providing additional bonds for CCI.

Mr. Hussey testified that for CCI, a change in the net worth of $500,000 would have caused USF&G concern and conceded that the net worth of the company fluctuated by amounts greater that $500,000 over the course of its bonding relationship with USF&G. Moreover, notwithstanding CCI's financial peaks and valleys, USF&G agreed to release Mr. Ortenzio from his personal indemnity in the Fall of 1997.

At least one USF&G individual involved in the underwriting of the bond program, Jim Daily, questioned the advisability of CCI self-performing work previously performed by subcontractors. His concerns, however, were either ignored or overridden and CCI continued to be bonded by USF&G. It later turned out, as indicated by Mr. Ortenzio in his letter dated October 6, 1999 that the decision by CCI

to self perform was a bad one and that CCI was unable to hire qualified management and trades people and the increased overhead required to manage the trades people and the capital expenditure for plant and equipment was greater than the incremental gross profit on most projects.

USF&G failed to request that Mr. Ortenzio reinstate his personal guaranty in early 1999 even though that possibility had been raised by Dave Dominiani in his correspondence with Mr. Phillips. However, no request for the guaranty of John Ortenzio or any related entity was sought at that time. Mr. Phillips also indicated that USF&G agreed to write the program on a 3% working capital and 5% stockholder's equity basis. Anything greater than these ratios would require "additional enhancement by full or limited indemnities" of Mr. Ortenzio or other related companies. It appears that no request for the indemnity of the owner was made by USF&G until the October or November of 1999.

USF&G's underwriting personnel had available to it through some or all of the years USF&G provided bonding to CCI, the accounting group headed by Mr. Eskin, but USF&G underwriters never requested its assistance in evaluating CCI's financial condition even though in 1998, CCI reported it had sustained a $1.6 million loss at mid-year and was only nominally profitable at year end.

Finally, no one from USF&G ever contacted anyone affiliated with defendants.

4. Please identify all facts upon which you base the contention that "USF&G failed to mitigate its alleged damages."

**RESPONSE:**

Defendants object to this interrogatory to the extent that this and the following contention interrogatories purport to require defendants to recite each and every fact that would support each and every affirmative defense raised by defendants. As such, they are an improper use of interrogatories under the Federal Rules of Civil Procedure. However, defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as such, defendants reserve the right to amend and/or supplement their responses. Subject to and without waiver of its objections, defendants respond as follows:

Defendants incorporate by reference their response to interrogatory number 4 above. In addition, USF&G has not pursued affirmative CCI claims on the Scott Air Force Base project which CCI believed to be in $4,000,000 range and the Albemarle Prison project which CCI believed to be in the $2,500,000 range. Defendants are still in the process of reviewing the project files produced by USF&G and, as such, reserve the right to amend and/or supplement this response as and if warranted upon the completion of that review and the completion of the depositions of Mr. Silverstein and Mr. Daily.

5. Please identify all facts upon which you base the contention that USF&G's "contributory negligence bars recovery from defendants."

**RESPONSE:**

8

Defendants object to this interrogatory to the extent that this and the following contention interrogatories purport to require defendants to recite each and every fact that would support each and every affirmative defense raised by defendants. As such, they are an improper use of interrogatories under the Federal Rules of Civil Procedure. However, defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as such, defendants reserve the right to amend and/or supplement their responses. Subject to and without waiver of its objections, defendants respond as follows:

Defendants incorporate by reference their response to interrogatory number 4 above.

6. Please identify all facts upon which you base the contention that USF&G "assumed the risk of loss which forms the basis for this action."

**RESPONSE:**

Defendants object to this interrogatory to the extent that this and the following contention interrogatories purport to require defendants to recite each and every fact that would support each and every affirmative defense raised by defendants. As such, they are an improper use of interrogatories under the Federal Rules of Civil Procedure. However, defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as such, defendants reserve

the right to amend and/or supplement their responses. Subject to and without waiver of its objections, defendants respond as follows:

Defendants incorporate by reference their response to interrogatory number 4 above.

7. Please identify all facts upon which you base the contention that USF&G "is estopped from litigating in this action issues which have been adjudicated in other proceedings in which plaintiff or its privy was a party.

**RESPONSE:**

Defendants object to this interrogatory to the extent that this and the following contention interrogatories purport to require defendants to recite each and every fact that would support each and every affirmative defense raised by defendants. As such, they are an improper use of interrogatories under the Federal Rules of Civil Procedure. However, defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as such, defendants reserve the right to amend and/or supplement their responses. Subject to and without waiver of its objections, defendants respond as follows:

USF&G has been involved in CCI's bankruptcy. Matters relating to CCI have been or are being adjudicated in that proceeding. USF&G is either a party to those proceedings or arguably is in privity with CCI's estate with regard to those proceedings. Similarly, USF&G has been involved in litigation regarding particular

10

projects which USF&G took over as a result of CCI's default. As such, to the extent issues have been adjudicated in those proceedings which bear on issues in this proceeding, USF&G is foreclosed from relitigating those issues in this case.

8. Please identify all facts upon which you base the contention that USF&G "is estopped from asserting a contention or establishing a fact which is different than a contention or fact which plaintiff agreed existed or which plaintiff asserted in other proceedings including its proof of claim in the CCI bankruptcy.

**RESPONSE:**

Defendants object to this interrogatory to the extent that this and the following contention interrogatories purport to require defendants to recite each and every fact that would support each and every affirmative defense raised by defendants. As such, they are an improper use of interrogatories under the Federal Rules of Civil Procedure. However, defendants are providing responses to this interrogatory based on information known or available to them at this time. The depositions of certain USF&G and CCI personnel have yet to be completed and, as such, defendants reserve the right to amend and/or supplement their responses. Subject to and without waiver of its objections, defendants respond as follows:

USF&G has been involved in CCI's bankruptcy. Matters relating to CCI have been or are being adjudicated in that proceeding. USF&G is either a party to those proceedings or is in privity with CCI's estate with regard to those proceedings. Simlarly, USF&G has been involved in litigation regarding particular projects which

11

USF&G took over as a result of CCI's default. As such, to the extent plaintiff has taken positions in those proceedings which bear on issues in this proceeding, USF&G is foreclosed from taking a different position in this case with regard to those issues.

9. Please identify all facts upon which you base the contention that USF&G's claims is barred in whole or in part by payment and satisfaction from CCI or on behalf of CCI.

**RESPONSE:**

CCI is in bankruptcy. USF&G has filed a proof of claim in that bankruptcy and is apparently the largest creditor of CCI. CCI's estate has filed a preference action in the bankruptcy proceedings seeking to avoid certain transfers to Allfirst Bank. To the extent there is a recovery and a distribution to USF&G as a result, plaintiff's claim would be barred to that extent. Similarly, to the extent that there are affirmative claims to be asserted by or on behalf of CCI, which are ultimately successful, such recovery would bar USF&G claim against defendants in this action.

10. Please identify all facts upon which you base the contention that USF&G's claim is barred in whole or in part by any release to which plaintiff was a party."

**RESPONSE:**

Defendants raised this defense at the outset of the litigation given the pendency of the bankruptcy and other proceedings relating to specific projects and prior to the commencement of discovery. Defendants at this time are at this time unaware of any facts to support the defense and, therefore, it is withdrawn. However, defendants

reserve the right to re-assert this defense in the event facts subsequently develop which would support the defense.

11. Please identify by name, address and title, all officers, directors and shareholders of Pennsylvania Contractors Insurance Company

**RESPONSE**

There are currently no officers, directors or shareholders of PCIC as it has been liquidated. To the extent that plaintiff seeks the identities of the officers, directors and shareholders of PCIC while it was in existence, the burden of ascertaining that information is substantially the same for plaintiff and, therefore, defendants refer plaintiff to PCIC permanent file produced by defendants from which the information sought may be derived.

12. Please identify any and all payment and performance bond claims made relative to the projects identified in paragraphs 16, 18 and 20 of USF&G's Complaint that Brown Schultz contends were settled or paid in bad faith and identify all facts which support that contention.

**RESPONSE:**

Defendants do not contend that USF&G has paid claims under the bonds issued on CCI projects in bad faith. Defendants, however, reserve the right to contest the reasonableness of payments made thereunder. Defendants have not yet completed the depositions of Mr. Silverstein and Mr. Daily and are still in the process of reviewing the claims documents produced by plaintiff. Accordingly, defendants reserve the right

to supplement their response to this interrogatory as and if warranted by further information.

Defendants do note that based upon the testimony of Mr. Daily, it appears that the amount listed as losses for Pennsylvania Turnpike Administration Building are not entirely made up of losses sustained on that job. Rather, costs unrelated to that or any of the other projects at issue were charged to that project such costs and contest the recoverability of those costs in this action.

SWARTZ, CAMPBELL & DETWEILER

BY: *Kathleen M. Carson*
JEFFREY B. MC CARRON
KATHLEEN M. CARSON

Dated: June 27, 2002

# VERIFICATION

COMMONWEALTH OF PENNSYLVANIA  :
                              :SS.
COUNTY OF DAUPHIN             :

    Bruce J. Brown, being duly sworn, deposes and says: that he is a principal in the firm of Brown Schultz Sheridan & Fritz; that he does not have personal knowledge of facts set forth in the foregoing responses to interrogatories; that upon information and belief the information contained in the answers was obtained from a review of the documents produced in this litigation by USF&G and depositions taken of USF&G personnel. Upon information and belief the responses to the foregoing interrogatories are true and correct to the best of his knowledge.

_____
Bruce J. Brown

Sworn to and Subscribed

Before Me this 27 Day

of June 2002

_____
Notary Public

NOTARIAL SEAL
FRANCES L. SMITH, Notary Public
Camp Hill, Cumberland County
My Commission Expires April 21, 2006