## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States Fidelity and Guaranty Company : : : v. : : Bruce J. Brown and Brown, Schultz : Sheridan & Fritz : | Hon. Christopher J. Conner  No: 01-CIV-813 |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO F.R.C.P. 52

Defendants submit this memorandum in reply to plaintiff's opposition to Defendants' Motion for Judgment as a Matter of Law. Without reiterating all of the arguments set forth in their motion, defendants take this opportunity to reply to certain arguments raised by plaintiff to the extent not already addressed by in defendants moving papers.

**I.    The Existence of a Misrepresentation**

At the outset, it should be noted that whether or not the work done by Brown Schultz in connection with its audits of CCI was in conformance with generally accepted auditing standards does not form the basis for a misrepresentation. Whether the audit work done by Brown Schultz was done in accordance with auditing standards does not relate to the truth or falsity of the information contained in the financial statements. While plaintiff's arguments appear to suggest to the contrary, plaintiff cannot use the failure to conform to auditing standards to establish the existence of a misrepresentation.

### A.     Contract Revenue

Mr. DeBruyn's testimony did not establish the existence of a misrepresentation with regard to contract revenue. Plaintiff simply ignores the fact that Mr. DeBruyn used information which was not available to the auditors at the time they were performing their audits. Mr. DeBruyn's testimony, at most, established that the amounts on the 1997 and 1998 financial statements concerning contract revenue derived from uncompleted contracts differed from the actual amount of revenue derived from those contract upon completion or from the amount of contract revenue reflected on Plaintiff's Exhibit 337. The existence of disparity between an estimate and actual or later results does not establish that the estimate was incorrect or wrong at the time it was made.

For the reasons previously stated, the proof concerning the Mr. DeBruyn's proposed restatements to the 1997 and 1998 audited financial statements was not derived from an accepted and appropriate method for determining the propriety of estimates on those financial statements. The method used by DeBruyn to develop his restated financial statements was inappropriate to determine whether the representations by defendants were true at the time they were made. DeBruyn was not aware of another instance where his "look back" method has been employed to evaluate the propriety of work done by auditors performing audits of financial statements. N.T. at p. 1939.

The pages cited by plaintiff in support of the statement that Mr. DeBruyn's

look back methodology was used and employed by member of DeBruyn's profession and was a reliable tool in analyzing and restating financials make no reference to that issue.

Likewise, the cases cited by plaintiff in support of the look back method relate to ascertaining damages and are completely inapposite to this case. *See Metropolitan Area Transit Authority v. One Parcel of Land in Prince George's County Maryland*, 1993 U.S. Dist. LEXIS 18485 (D. Md. 1993) (addressing landowners' entitlement to severance damages in eminent domain proceedings); *Sinclair Ref. Co. v. Jenkins Petroleum*, 289 U.S. 689 (1933)(assessment of the value of a patent). Neither are even remotely analogous to the situation here where plaintiff's expert is using information unavailable to the auditors at the time of their audit to assess what the auditors should have know or discovered at the time of the audit.

With respect to the reliability of Exhibit 337, plaintiff attempts to rely on the testimony of James Daily, Sheri Phillips and Exhibit 750. Exhibit 750 was not admitted into evidence for the truth of the matters contained therein. *See* N.T. at p. 3177 ( Ex. 750 admitted into evidence for the limited purpose of identifying that a communication was made by Mr. Eskin to Mike Walter, Tony Phillips, and Steve Salazar, on or about November 17, 1999 which related to a meeting that Mr. Eskin had with management of CCI on November 8 and 9, 1999.) The cited portions of Ms. Phillips testimony have nothing to do with the reliability of CCI's in-house financials statements. *See* N.T. at p. 2124-2125. Mr. Daily merely testified that, prior to

February of 2000, he personally did not have a reason to doubt the accuracy of CCI prepared financial information. He did not reference any measures either he or anyone else at USF&G undertook to assure or verify the accuracy of the information contained in Exhibit 337.

### B. The PCIC Guaranteed Claim

Plaintiff's contention about PCIC does, in fact, relate to the inadequacy of the disclosure which is insufficient to support a negligent misrepresentation claim. Plaintiff's contention that an omission of information can serve as the basis for a negligent misrepresentation is incorrect. Plaintiff's reliance on *Fox Foods, Inc. v. Kmart Corp.*, 870 F. Supp. 599, 610 ( M.D. Pa. 1994) and *Sylk v. Bernsten*, 2003 WL 1848565 (Pa. Com. Pl. Phila. County) as support for its contention is misplaced. Both *Fox Foods* and *Sylk* involved fraud claims, not claims for negligent misrepresentation. As the court pointed out in *Lazin v. Pavilion Partners*, Civ. A. No. 95-601, 1995 U.S. Dist LEXIS 15255, 1995 WL 614018 at *7 (E.D. Pa. Oct.11, 1995), while non-disclosure of a material fact would give rise to a cause of action for fraudulent non-disclosure, it will not give rise to a claim for negligent misrepresentation. *Lazin, citing, Lang v. Helios Capital Corp.*, No. 86-08031, 1989 WL 299241, at *4 n.6 (Pa. Com. Pl. Ct. Jan. 20, 1989).

The evidence establishes that the disclosure was adequate. USF&G's underwriting expert admitted that a reader of the financial statement would conclude that the claim guaranteed by PCIC was included in revenue and that, if it were not, it

4

should have been disclosed. N.T. at p. 1536. Mr. Daily admitted that he gave no consideration to whether the PCIC guaranteed claim amount was included in the balance sheet somewhere. N.T. at p. 697. Mr. Phillips testified

> Q. Okay. So is it the situation, Mr. Phillips, that during the time you were involved in underwriting the CCI bond account you did not realize the content of footnote 8 particularly as it pertains to the 1.162 million dollar claim guaranteed by PCIC?
> A. That's correct then.
> Q. Sir, if you had read footnote 8 during your involvement with the underwriting for the CCI bond account, you would have understood footnote 8?
> A. I believe so.
> Q. And it's your understanding that the guarantee amount of 1.162 million dollars would be or should be included in revenue, is that right?
> A. Yes.

N.T. at p. 2517.

Plaintiff's contention that the guaranteed amount should not have been included in revenue, among other reasons, because there was no consideration for the PCIC guaranty agreement and that the lack of consideration rendered the guaranty agreement invalid. Plaintiff's Opposition Brief at p. 23. However, pursuant to 33 Pa. C. S. § 6.

> A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound.

*Id.* The guaranty agreement contains the recitation that PCIC intended to be legally bound. *See* Exhibit 264. Given the inclusion of that language, no consideration was required in order for the agreement to be enforceable.

## II. The Materiality of the Representation

Plaintiff attempts to run from its own decision not to call David Hussey as a witness at trial by mischaracterizing the testimony of Mr. Daily and then claiming that defendants are misquoting that testimony. Mr. Daily testified unequivocally that it was David Hussey's authority that was required to renew the bond program each year. N.T. at p. 440. Mr. Daily did not have the authority to renew the bond program. N.T. at p. 516. The decision about whether or not to suspend bonding rested with Hussey throughout the CCI bond program. N.T. at p. 723. Daily's testimony was not that Mr. Hussey could overrule his decisions as plaintiff suggests. Rather, Mr. Daily simply did not have the authority to make these decisions in the first instance. Without Mr. Daily's testimony, plaintiff failed to establish a misrepresentation of fact that was material to USF&G a required element of plaintiff's claim and one on which plaintiff bore the burden.

## III. The Evidence Did Not Establish that Brown Schultz, In the Exercise of Appropriate Care, Should Have Know that the 1997 and 1998 Financial Statements for CCI Did Not Fairly Represent the Financial Condition of the Company

Plaintiff simply does not address the fact that there was no evidence presented to establish that defendants had any reason to know the information included in the 1997 and 1998 financial statements was not correct. Mr. DeBruyn, agreed that an auditor's report is based on information available to the auditor as of the audit date and through their field work. N.T. at p. 1897. Mr. DeBruyn conceded that he does not know and did not make a determination about the specific information which was available to the auditors when they performed the audits for 1997 and 1998. N.T. at pp. 1897-98. Mr. DeBruyn agreed his proposed adjustments to the 1997 and 1998 financial statements were based on data developed after the audits were performed by Brown Schultz. N.T. at p. 1911. Mr. DeBruyn merely assumed that the

information was there for the auditors but did not bother to confirm the validity of his assumption. N.T. at p. 1924. *Id.* Mr. DeBruyn admitted that the only way he could tell whether the results of the audit would have been different if Brown Schultz had applied the correct and/or additional audit procedures he contends should have been performed would be to look at CCI's records. N.T. at p. 1910. Mr. DeBruyn did not gain access to those records. N.T. 1911.

Plaintiff's comments that the Brown Schultz audits were "conversational audits" is not supported by the evidence elicited during plaintiff's case. Ms. Bowman did confirm management's representations to her regarding estimated costs to complete. She reviewed project or job files for specific contracts. N.T. at p. 1412. She reviewed the job cost history reports and the estimated costs to complete reports maintained by CCI. N.T. at 1412-1414. She interviewed CCI personnel with respect issues she had identified during the audit. She obtained substantiation and detail for estimated costs to complete and job costs. Plaintiff, having called Ms. Bowman in its case, is bound by her testimony, which is uncontradicted. *See Alfonsi v. Huntington Hospital, Inc.*, 798 A.2d 216 (Pa. Super. 2002)

### IV.  Contributory Negligence

Plaintiff misunderstands defendants' contention concerning contributory negligence. Defendants' contention concerning contributory negligence relates to the treatment of the PCIC guaranteed claim. The information included in the 1998 audited financial statement was sufficient, even if it did not include all the information plaintiff contends should have been included about the transaction, to either realize the PCIC transaction affected the balance sheet of the financial statement, or that it did not know how or whether the PCIC transaction affected the balance sheet of the financial statement. In either situation, plaintiff proceeded without an understanding about the nature and extent of the impact of the PCIC

transaction on the balance sheet.  Therefore, plaintiff did not exercise appropriate care for its own protection when it proceeded in reliance on the information in the audited financial statement aware that the information was not complete sufficient to allow meaningful use of the financial statement.

The concept that contributory negligence applies only if the plaintiff interfered with the accountant's work in connection with the audit does not apply.  The cases cited by plaintiff are both instances in which the audits were for parties in privity with the auditors and did not detect the information for which the audit was conducted.  In *Jewelcor*, the defendant wanted to avoid liability by contending that it was the conduct of the plaintiff which led to the problem which went undetected by the audit.  In *Medical Consultants*, the defendant defended on the basis that the plaintiff did not proceed with appropriate care when it decided to enter into the transaction without regard for the information included in the audit report.  Both cases involve circumstances materially different than presented in this action which involves the adequacy of the disclosures about the transaction and the treatment of the transaction in the financial statement presentation rather than the absence of discovery about the transaction.

**V.  Conclusion**

Based on the foregoing reply brief and the defendants' previously submitted motion and memorandum for judgment as a matter of law, defendants' respectfully request that this court enter judgment in their favor and against plaintiff.

    Respectfully submitted,

    SWARTZ CAMPBELL LLC


BY:   s/Kathleen M. Carson
       JEFFREY B. MC CARON
       KATHLEEN M. CARSON

                                                    1601 Market Street  
                                                    34th Floor  
                                                    Philadelphia, PA 19103  
                                                    (215) 299-4376

                                                    Attorneys for Defendants

Dated: February 23, 2004

# CERTIFICATE OF SERVICE

      I, Jeffrey B. McCarron, Esquire, counsel for defendants, Bruce J. Brown and Brown, Schultz Sheridan & Fritz, hereby certify that a copy of DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO F.R.C.P. 52 was served upon all counsel listed below by first class U.S. mail, postage prepaid on February 23, 2004

| | |
|---|---|
| Peter Speaker, Esquire | Peter B. McGlynn, Esquire |
| Thomas, Thomas & Hafer | Bruce D. Levin, Esquire |
| 305 North Front Street | Bernkopf, Goodman & Baseman LLP |
| Harrisburg, PA 17101 | 125 Summer Street, Suite 1300 |
| | Boston, MA 02110 |

                                                                    s/Jeffrey B. McCarron
                                                                    Jeffrey B. McCarron

Date: February 23, 2004