UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

|  |  |  |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | ) ) ) ) |  |
| Plaintiff | ) ) |  |
| v. | ) ) ) | CIVIL ACTION NO. 1: 01-CV-00813 |
| BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, | ) ) ) | JUDGE CONNER |
| Defendants. | ) ) |  |

**UNITED STATES FIDELITY AND GUARANTY COMPANY'S RESPONSE
TO POST-TRIAL MEMORANDUM OF BROWN SCHULTZ SHERIDAN & FRITZ**

**I. INTRODUCTION**

United States Fidelity and Guaranty Company ("USF&G") submits this memorandum in response to the Post-Trial Memorandum of Defendants in Support of Verdict for Defendants (the "Post-Trial Memorandum") and other pleadings submitted by Bruce J. Brown and Brown Schultz Sheridan & Fritz (collectively, "Brown Schultz"). The Post-Trial Memorandum and Brown Schultz' proposed findings seem designed to hide the substantial evidence of Brown Schultz' professional derelictions amongst a forest of irrelevant proposed findings. Based on Brown Schultz' proposed findings, it would appear that the record keeping prowess of CCI Construction Inc. ("CCI") and the underwriting procedures utilized by USF&G were determinative issues. However, neither of these issues – even if they are as presented in Brown Schultz' proposed findings – excuse Brown Schultz' failure to utilize "professional skepticism,"

to properly plan and supervise field work and to observe due care relative to its preparation for and conduct of the audit report for the year ending December 31, 1997 (the "1997 Audit Report") or the audit report for the year ending December 31, 1998 (the "1998 Audit Report") (collectively, the "Audited Financial Statements").  The bottom line:  CCI's reputation – whether good or poor – does not excuse Brown Schultz' failure to utilize "professional skepticism" in planning and performing audits of CCI nor does USF&G's underwriting practices – whether good or poor – allow Brown Schultz to escape liability for the unsupported assertion that USF&G was purportedly not justified in relying upon Audited Financial Statements which falsely portray CCI's true financial condition.

## II.  ARGUMENT

    A.    The Economic Loss Doctrine Is Inapplicable.

        1.    Restatement (Second) of Torts, §552 contains exceptions to the economic loss doctrine.

For the very first time in the instant litigation, Brown Schultz has asserted that USF&G's action is barred by the economic loss doctrine.  The economic loss doctrine bars a claim for negligence that results only in economic loss.  *Diaz Contracting, Inc. v. Lisbon Contractors, Inc.*, 1991 WL 101427 (E.D. Pa), citing *Aikens v. Baltimore & Ohio R.R.*, 348 Pa. Super. 17 (1985). "In adopting this rule, the Pennsylvania Superior Court stressed the lack of foreseeability in such cases, finding that negligent harm to economic advantage alone . . . would open the door to every person in the economic chain of the negligent person . . to bring a cause of action." *Id.*  While in certain cases the economic loss doctrine may bar claims for *negligent misrepresentation* as well as for negligence, §552 is an exception to its application.  *See, e.g., Diaz*, 1991 WL 101427.

USF&G fits squarely within the recognized exceptions to the economic loss doctrine. The economic loss doctrine does not bar claims for negligent misrepresentation if the defendant

is in the business of supplying information for the guidance of others. *See, e.g.*, *Diaz,* 1991 WL 101427.  "One such exception [to the economic loss doctrine] is stated in Restatement (Second) of Torts, §552 . . . ." *Id.*  Several of the United States District Courts for the District of Pennsylvania have refused to apply the economic loss doctrine as a bar to recovery for negligent misrepresentation where one is in the business of supplying information to others.  *See, e.g.*, *I&S Associates Trust v. LaSalle National Bank*, 2001 WL 1287522*3 (E.D. Pa) (action for negligent misrepresentation against attorney not barred by the economic loss doctrine); *Diaz Contracting*, 1991 WL 101427 (action for negligent misrepresentation against architects and engineers not barred by economic loss doctrine); *Sunquest Information Systems, Inc. v. Dean Witter Reynold, Inc.*, 40 F. Supp. 2d 644 (W.D. Pa. 1999) (action for negligent misrepresentation against investment banker not barred by the economic loss doctrine).  It has been undisputed in the present action that Brown Shultz is an accounting firm "in the business of supplying information for the guidance of others." *See id.*

This exception to the economic loss doctrine is in keeping with the doctrine's underlying rationale because, pursuant to §552 of the Restatement, liability is limited to, *inter alia*, loss suffered by a "person or one of a limited group of persons."  Thus, "allowing liability for purely economic losses will not 'open the door' to an infinite number of plaintiffs, since recovery is limited to only those persons whose reliance on the information is foreseeable." *Diaz*, 1991 WL 101427 at 2.

In addition, the Third Circuit has also held that the economic loss doctrine bars recovery only when the parties are in privity of contract with each other. *Dusquene Light Company v. Westinghouse Electric Corp.*, 66 F.3d 604, 620 (3rd Cir.1995).  Essentially, the goal of the economic loss doctrine is to prevent the blurring of the line between contracts and torts.  If a

contract law remedy is available, a tort claim cannot be used as an "end around" to avoid contractually stipulated damages. *See id*. at 618; *see also Polymer Dynamics, Inc. v. Bayer Corporation,* 2000 WL 1146622 (E.D. Pa.) (economic loss doctrine not intended to compensate parties for losses suffered as a result of breach of agreement). In the instant case, USF&G has no contract remedies or causes of action available, as it is undisputed that Brown Schultz and USF&G were not in privity of contract. As this Court has already determined, this lack of privity does not bar USF&G's right to recovery for negligent misrepresentation. As pointed out in its Report and Recommendation, dated August 10, 2001, " 'a close reading of section 552 itself reveals that the Restatement is concerned in cases where contract remedies are unavailable,' i.e. where there is no privity of contract." Report and Recommendation, p. 6, citing *Dusquesne*, 66 F.3d at 604. The economic loss doctrine, then, is not at odds with section 552, but only covers situations in which "a party in privity of contract with another suffers an injury to a product itself, resulting in purely economic loss." *Dusquesne*, 66 F.3d at 620.

Ironically, the very case relied upon by Brown Schultz for its proposition that the economic loss doctrine applies recognizes the validity of the exception contained in Restatement (Second) of Torts, §552, Illustration 9.[1] The Court in *Pflumm v. Foundation Services, Co.*, 2003 Pa. Super. 41, 816 A.2d 1164 (2003), explicitly recognized the existence of specific exceptions to the economic loss doctrine by stating that "[w]e have no particular disagreement with a finding under [the circumstances outlined in Restatement (Second) of Torts, §552, Illustration

---

[1] Illustration 9 provides as follows: The City of A is about to ask for bids for work on a sewer tunnel. It hires B Company, a firm of engineers, to make boring tests and provide a report showing the rock and soil conditions to be encountered. It notifies B Company that *the report will be made available to bidders as a basis for their bids and that it is expected to be used by the successful bidder in doing the work*. Without knowing the identity of any of the contractors bidding on the work, B Company negligently prepares and delivers to the City an inaccurate report, containing false and misleading information. On the basis of the report C makes a successful bid, and also on the basis of the report D, a subcontractor, contracts with C to do a part of the work. By reason of the inaccuracy of the report, C and D suffer pecuniary loss in performing their contracts. B Company is subject to liability to C and to D.

4

9]." *Pflumm*, 2003 Pa. Super. 41, ¶¶20 and 21, 816 A.2d. at 1171. The *Pflumm* Court distinguished the facts in its case from those in Illustration 9 by finding that the negligent misrepresentation claim in *Pflumm* was barred because the plaintiff purportedly relied upon a report on which the "*bidders were specifically told not to rely . . . .*" 2003 Pa. Super. 41, ¶21, 816 A.2d at 1171. (emphasis in original). In essence, the Court found that based on the facts extant there could not be any foreseeable users of the report. Thus, the Court itself directs the parties' attention to Restatement (Second) of Torts, §552, Comment *i,* which states that the "maker of the negligent misrepresentation is subject to liability to only those persons for whose guidance he knows the information to be supplied . . ." *Id.* at 41, ¶19, 1170. The Court finds that because it is undisputed that *Plfumm* could not have been a foreseeable user of the report at issue, perforce, Section 552 was inapplicable. Unlike *Plfumm*, the facts in the instant case fit squarely within the exception allowed by the Restatement and are, for all practical purposes, identical to those in §552, Illustration 9. There is a plethora of evidence that USF&G was a foreseeable user of the Audited Financial Statements.

        2.        Brown Schultz' defense was not timely raised.

Even if, *arguendo*, the economic loss doctrine was applicable, it has been waived by, *inter alia*, Brown Schultz' failure to raise it as an affirmative defense, its failure to identify it in pertinent interrogatories and its failure to raise it until post-trial pleadings. "Failure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense." *Charpentier v. Godsil,* 937 F.2d 859, 863 (3rd Cir. 1991); *DVI Financial Services, Inc. v. Kagan, M.D.,* 2001 WL 7063656, *2 (E.D. Pa), *Donohoe v. American Isuzu Motors, Inc.,* 155 F.R.D. 515, 517 (M.D. Pa 1994). There may be an exception only where a defendant "raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced

in its ability to respond." *Charpentier,* 937 F.2d at 864 quoting *Lucas v. United States,* 807 F.2d 414, 418 (5th Cir. 1986). The purpose of this rule is to provide a plaintiff with notice of the affirmative defense and an opportunity to defend against it. *Blizzard v. Motorola, Inc.,* 1995 WL 216938 (E.D. Pa 1995).

The record reflects that Brown Schultz did not plead the economic loss doctrine as an affirmative defense in its answer to USF&G's complaint. Moreover, Brown Shultz has *never* raised the economic loss doctrine as a bar to USF&G's recovery as part of its numerous pre-trial pleadings nor did it do so at the trial. Raising an affirmative defense for the first time *after* the close of trial unduly prejudices USF&G by depriving it of its right to notice and the ability to adequately respond. *See Blizzard*, 1995 WL 216938.

      B.      Contributory Negligence Is Inapplicable.

            1.      Audit Interference Rule

The defense of contributory negligence is inapplicable in this case because of Pennsylvania's adoption of the "audit interference" rule. *Jewelcor Jewelers and Distributors, Inc. v. Corr.*, 373 Pa. Super. 536, 551-552 (P.A. Super. 1988). "Under Pennsylvania law, a party's contributory negligence is not a defense to an action against an accountant for professional negligence unless that contributory negligence impeded the accountant from performing its obligations satisfactorily . . . ." *Medical Consultants Network, Inc. v. Cantor & Johnson, P.C.*, 2001 WL 10788 (E.D. Pa. ), citing *Jewelcor Jewelers and Distributors, Inc. v. Corr.*, 373 Pa. Super. at 551-552. Brown Schultz failed to introduce evidence of any purported obstruction or interference by USF&G.

Brown Schultz asserts that factual distinctions between the present case and those in *Medical Consultants* are not material to determining whether the audit interference rule bars

contributory negligence. In *Medical Consultants*, the plaintiff was a third-party purchaser of a business who relied upon an audit and brought a claim for negligent misrepresentation. Similarly, USF&G is a third party that relied upon an audit to its detriment and now brings a claim for negligent misrepresentation. Although the defendants in *Medical Consultants* argued that the audit interference rule did not apply because of a lack of privity between the plaintiff and the accountant, the Court did not find that argument compelling. This Court has already determined that USF&G's claim for negligent misrepresentation does not fail for lack of privity.

>     2.     Even if, *arguendo*, the doctrine of contributory negligence applied, such putative negligence did not relate to the audits.

Contributory negligence concerns actions of the plaintiff that were a contributing cause of the purportedly negligent act. The negligent act is Brown Schultz' issuance of audit reports containing material misrepresentations.

Perhaps the reason Brown Schultz has tried so hard to prove contributory negligence – despite its almost indisputable inapplicability – is in the hope that it can blur the line between contributory negligence and justifiable reliance. "The same facts that support a finding of justifiable reliance also serve to defeat any argument that the party was contributorily negligent." *Laken v. Fryer Group of Cos.*, 32 Fed. Appx. 24, 28 (3rd Cir. 2002). The Court has already found that USF&G relied on the Audited Financial Statements. A party to whom a misrepresentation is made is justified in relying upon the truth of that statement unless he *knows* it is false or its falsity would be *obvious* to him upon a cursory inspection. *See, Silverman v. Bell Savings & Loan Association*, 367 Pa. Super. 464, 533 A.2d 110, 115 (Pa. Super. Ct. 1987); Restatement (Second) of Torts §541 cmt. a (1977). There is *no* evidence that USF&G's underwriters *knew* the Audited Financial Statements to be false. Moreover, it would bespeak an

extraordinarily low level of professional pride and competence for Brown Schultz to assert that an intended user is not justified on relying on Brown Schultz' work product.

        3.        No contributory negligence has been proven.

Even if, *arguendo*, the defense of contributory negligence was applicable, Farnsworth opined that USF&G's underwriting of the CCI account conformed to the applicable standards of care of the surety industry that were in effect during the 1993-1999 time period. Testimony of Farnsworth, Transcript, pp. 1529-1530. Brown Schultz was unable to provide any testimony as to the standards of the surety industry. Testimony of Neuschaefer, Transcript, pp. 2193-2196, 2185-2187.

        C.        Brown Schultz' Plaints Regarding Documents Are Inappropriate.

Brown Schultz peppers its Post-Trial Memorandum with innuendo hinting at spoliation of evidence. The Court has already dismissed the late-raised and unsupported insinuations concerning the alleged destruction or withholding of purportedly relevant documents. Trial Transcript, pp. 2499-2502; 2699-2702. Moreover, Brown Schultz has never explained why it failed to undertake efforts to obtain documents from third parties, such as CCI, project owners and contractors. Brown Schultz had access to all available documents and is believed to have spent approximately $40,000 in copying onto CD ROM format thousands of documents made available to Brown Schultz by USF&G during the discovery phase of the litigation. Testimony of Silverstein, Transcript, pp. 2621-2624. Finally, the attempt to focus on architectural drawings, plans, invoices and other detritus of the construction process seems calculated to deflect attention from the one germane issue; to wit, did the Audited Financial Statements contain material misrepresentations because Brown Schultz did not conduct its audit in compliance with Generally Accepted Accounting Standards?

D.   Brown Schultz' Arguments Regarding Privity Are Still Misguided.

In the Report and Recommendation dated November 5, 2002 (the "Report")[2] the Court acknowledged the applicability of Restatement (Second) of Torts §552 and set out the limits of liability therein.  The Court recognized that the instant case was distinguishable from *North American Specialty Ins. Co. v. LaPalme*, 258 F.3d 35 (1st Cir. 2001) because "there is evidence from which a reasonable fact finder could conclude that the defendants knew their reports would be used by the plaintiff in deciding whether or not to issue future bonds on behalf of CCI."  Report, p. 24.

The evidence adduced at trial only buttressed the prior finding that Brown Schultz knew that USF&G would rely upon the Audited Financial Statements in deciding whether or not to issue future bonds on behalf of CCI.  Exhibit 144, p. 11, Exhibit 202, Exhibit 203, Exhibit 209, Exhibit 211, Exhibit 213, pp. 29, 43 and 238, Exhibit 222, pp. 19, 146, 265, 271.  Testimony of Brown, Transcript, pp. 835, 887, 888, 893, 902, 904, 907, 908, 921; Testimony of S. Phillips, Transcript, p. 2154; Testimony of Bowman, Transcript, pp. 1307-1387.

E.   Unanswered Questions.

A bevy of post trial pleadings should not obscure Brown Schultz' failure to address the following lingering questions:

1.   Why has Brown Schultz submitted no proposed findings relative to the double-counting error of approximately $450,000 in the 1998 Audit Report?;

2.   If not to improperly assist John Ortenzio, why did Brown Schultz refrain from adding to the 1998 Audit Report the few words that would have disclosed that the claim of $1,162,460 was included in revenue and underbillings?;

---

[2] The Report was adopted by Order dated January 31, 2003.

      3.      Why, for the first time in its history, did PCIC not only issue two guarantees for the same claim but the later guarantee was in an amount almost identical to CCI's loss for the 10 month period ended October 31, 1998?;

      4.      Who decided to book the claim of $1,162,460 as revenue since neither Brown, Bowman nor Sheri Phillips admitted to making that decision nor did they know who did?; and

      5.      In light of significant changes to CCI's size, revenue and business operations from 1993-1999, why was the audit plan never adjusted?

### III.  CONCLUSION

For the foregoing reasons and the reasons in USF&G's Post-Trial Memorandum, judgment should enter in USF&G's favor in the amount of $25,927,054.76.

Respectfully submitted,
UNITED STATES FIDELITY AND
GUARANTY COMPANY,
By its counsel,

s/ Bruce D. Levin
Peter B. McGlynn, Esquire
Bruce D. Levin, Esquire
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts 02110
Telephone:   (617) 790-3000
Facsimile:    (617) 790-3300
      and
Peter Speaker, Esquire
Thomas, Thomas & Hafer
305 North Front Street
Harrisburg, Pennsylvania  17101
Telephone:   (717) 237-7100
Facsimile:    (717) 237-7105

Dated:  April 7, 2004
#287568 v1/36432/87

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Harrisburg Division)

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | |
| Plaintiff | |
| v. | CIVIL ACTION NO. 1: 01-CV-00813 |
| | JUDGE CONNER |
| BRUCE J. BROWN and BROWN SCHULTZ SHERIDAN & FRITZ, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

    I, Bruce D. Levin, counsel for Plaintiff United States Fidelity & Guaranty Company, hereby certify that a copy of **United States Fidelity and Guaranty Company's Response to Post-Trial Memorandum of Brown Schultz Sheridan & Fritz** was served upon the following by first class mail, postage pre-paid on April 7, 2004:

Kathleen Carson, Esquire
Swartz Campbell LLC
1601 Market Street, 34th Floor
Philadelphia, PA  19102


                                              s/ Bruce D. Levin
                                              Bruce D. Levin

Dated:  April 7, 2004
#287568 v1/36432/87